IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STAMBAUGH'S AIR SERVICE, INC., Plaintiff | : | 1:CV 00-0660 |
| vs. | : | CIVIL ACTION NO. |
| SUSQUEHANNA AREA REGIONAL AIRPORT AUTHORITY, BAA HARRISBURG, INC., DAVID FLEET, individually, DAVID HOLDSWORTH, individually, and DAVID C. MCINTOSH, individually Defendants | : | JURY TRIAL DEMANDED |

**COMPLAINT**

Stambaugh's Air Service, Inc. ("Stambaugh's") by and through its undersigned attorneys, complaining against defendants Susquehanna Area Regional Airport Authority ("SARAA"), BAA Harrisburg, Inc. ("BAA"), David Fleet ("Fleet"), David Holdsworth ("Holdsworth"), and David C. McIntosh ("McIntosh") avers as follows:

**INTRODUCTORY STATEMENT**

This matter arises out of SARAA's and BAA's attempt to destroy Stambaugh's longstanding fixed base operator ("FBO") business at the Harrisburg International Airport

("HIA"). SARAA, BAA, Fleet, Holdsworth, and McIntosh conspired together to grant an exclusive FBO right at HIA in direct violation of federal law. SARAA, through Holdsworth, and McIntosh, fraudulently represented to the federal government that SARAA had not and would not create such an exclusive arrangement in order to obtain federal funds. On information and belief, as the result of these fraudulent representations, SARAA has obtained at least $4,983,869.00 in federal funds between 1998 and the present. Additionally, SARAA, BAA, Fleet, Holdsworth, and McIntosh conspired together to violate Stambaugh's federal and state constitutional rights by depriving it of its right to provide FBO services at HIA. Finally, SARAA, BAA, Fleet, Holdsworth, and McIntosh tortiously interfered with Stambaugh's contracts and SARAA violated the Pennsylvania Municipality Authorities Act by establishing an enterprise to compete with Stambaugh's existing business. As a result of these actions, Stambaugh's has suffered and will suffer damages in excess of $35,000,000.00. Stambaugh's brings this suit to recover those damages.

**PARTIES**

1. Stambaugh's is a Pennsylvania corporation with its principal place of business at Harrisburg International Airport, P.O. Box 149, Middletown, PA, 17057.

2. SARAA is a municipal authority created pursuant to the Municipal Authorities Act of 1945, 53 P.S. § 301, *et seq.*, located at 135 York Drive, Suite 100, Harrisburg International Airport, Middletown, PA 17057. SARAA owns and operates the Harrisburg International Airport ("HIA"), having assumed ownership of HIA from the Commonwealth of Pennsylvania on January 1, 1998.

3. BAA is a Pennsylvania corporation located at 135 York Drive, Suite 100, Harrisburg International Airport, Middletown, PA 17057. BAA manages HIA on behalf of SARAA.

4. David Fleet is an adult individual with a business address of 135 York Drive, Suite 100, Harrisburg International Airport, Middletown, PA 17057. Fleet is the Airport Director of HIA and is an employee of BAA.

5. David Holdsworth is an adult individual with a business address of 135 York Drive, Suite 100, Harrisburg International Airport, Middletown, PA 17057. Holdsworth is the Executive Director of SARAA.

6. David C. McIntosh is an adult individual with a business address of 135 York Drive, Suite 100, Harrisburg International Airport, Middletown, PA 17057. McIntosh is the Chairman of the Board of Directors of SARAA.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter by virtue of the provisions of 28 U.S.C. § 1331 as a matter arising under the Constitution and laws of the United States and may, by virtue of 28 U.S.C. § 1367(a), exercise supplemental jurisdiction over all state law claims because they form part of the same case or controversy as the federal claims.

8. Venue lies within this District pursuant to 28 U.S.C. §1391(a) because the defendants reside, and the events giving rise to this claim occurred within this District.

## FACTUAL BACKGROUND

9. Stambaugh's has operated continuously as a tenant at HIA since 1975, where it is engaged in the business of, *inter alia*, repairing and maintaining airplanes, and has also

provided fixed base operator ("FBO") services, including fueling, maintenance, and cargo handling.

10. Stambaugh's provided those FBO and maintenance operation services out of the hangar that it currently rents from SARAA and which it had rented previously from the Commonwealth of Pennsylvania ("Stambaugh's Hangar").

11. At various times prior to 1997, Stambaugh's was the only FBO at HIA.

12. Beginning in 1997, AERO Services International Incorporated ("AERO") also began to provide certain FBO services at HIA.

13. During the time that it owned and operated HIA, the Commonwealth of Pennsylvania developed and published minimum standards required in order to operate at HIA as an FBO ("HIA Minimum Standards"). 67 Pa. Code § 476.1, *et seq.*

14. The HIA Minimum Standards have been incorporated as a requirement of Stambaugh's lease with SARAA.

15. Stambaugh's has always met or exceeded the HIA Minimum Standards for operating as an FBO.

**THE CAMPAIGN TO DRIVE STAMBAUGH'S OUT OF HIA TO CREATE AN EXCLUSIVE FBO ARRANGEMENT**

16. Stambaugh's had a lease agreement with SARAA that terminated as of January 19, 2000.

17. SARAA receives funds from the Federal Aviation Administration ("FAA").

18.    As a recipient of such funds, SARAA and HIA are prohibited from creating exclusive arrangements or engaging in economic discrimination pursuant to 49 U.S.C. §§ 47107(a)(4) and (5).

19.    When negotiating with Stambaugh's regarding its new lease, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, refused to offer Stambaugh's any lease that would permit it to continue to provide FBO services at HIA, even though Stambaugh's did not require any additional leased space to continue to provide FBO services beyond that which was leased to it previously and that which it currently leases.

20.    When negotiating with Stambaugh's regarding its new lease, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, refused to offer Stambaugh's any lease that would permit it to remain in the Stambaugh's Hangar at HIA beyond 2003, even though, according to the HIA "Master Plan" which provides planning of HIA the Stambaugh's Hangar is not scheduled to be torn down until 2008 at the earliest.

21.    SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has permitted AERO to continue to provide FBO services at HIA.

22.    As part of its effort to force Stambaugh's out of HIA to establish an exclusive FBO arrangement, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has not enforced lease terms against AERO that have been enforced against Stambaugh's.

23.    Specifically, on information and belief, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has permitted AERO to continue to operate at HIA despite its failure to pay rent.

24. SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has engaged in economic discrimination in violation of 49 U.S.C. § 47107(a)(5) by permitting AERO to continue to operate as an FBO at HIA despite its failure to pay rent.

25. In a further effort to create an exclusive FBO at HIA, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has engaged in a policy of intimidation and harassment directed at Stambaugh's and its employees.

26. SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has repeatedly harassed Stambaugh's employees and forced them to discontinue working on Stambaugh's projects under the guise of checking the identities of the employees. In order to continue this harassment, SARAA representatives routinely require Stambaugh's employees to stop working and to produce identification despite the fact that the SARAA representatives involved know both the identity of the Stambaugh's employees and are aware that the people involved are employed by Stambaugh's.

27. On information and belief, SARAA does not engage in this harassing conduct with any other tenant at HIA and specifically does not engage in this conduct with AERO.

28. SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has attempted to create an exclusive FBO by manufacturing disputes and fabricating alleged lease violations by Stambaugh's.

29. On information and belief, SARAA does not engage in this harassing conduct with any other tenant at HIA and specifically does not engage in this conduct with AERO.

**SALE OF THE AMP HANGAR**

30. In 1999, Stambaugh's learned that an aircraft hangar at HIA that was owned by the AMP Corporation ("AMP Hangar") was going to be available for purchase.

31. Stambaugh's entered into negotiations with AMP to purchase the AMP Hangar.

32. Stambaugh's intended to use the AMP Hangar to provide FBO services at HIA.

33. In an effort to drive Stambaugh's out of HIA to create an exclusive FBO arrangement and to interfere with Stambaugh's contracts and business operations, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, interfered in those negotiations and threatened that it would refuse to allow any purchaser of the AMP Hangar to extend the AMP lease despite the fact that the AMP lease permitted such extensions.

34. As a result of this interference, Stambaugh's was unable to purchase the AMP Hangar.

35. Recently SARAA announced that it had purchased the AMP Hangar for $1.5 million, the same price that Stambaugh's would have paid for the hangar had SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, not interfered in the negotiations.

36. After purchasing the AMP Hangar, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, refused to negotiate in good faith with Stambaugh's for the lease of the AMP Hangar.

**ABUSE OF THE REQUEST FOR QUALIFICATIONS PROCESS TO CREATE AN EXCLUSIVE ARRANGEMENT AT HIA**

37. SARAA purchased the AMP Hangar to lease it to an entity to provide FBO services out of the hangar.

38. As part of that process, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, issued a Request for Qualifications from FBO service providers on October 5, 1999 ("RFQ"). (A copy of the RFQ is attached as Exhibit "A").

39. The RFQ required that anyone who wished to submit a proposal was required to participate in a pre-submission conference and a tour of the AMP Hangar on October 19, 1999.

40. The RFQ specifically provided that "ATTENDANCE AT THIS MEETING IS MANDATORY IN ORDER FOR YOUR COMPANY TO BECOME A CANDIDATE FOR CONSIDERATION" for the AMP Hangar.

41. Stambaugh's participated in the pre-submission conference and tour of the AMP Hangar.

42. The RFQ also provided that anyone who wished to be considered to provide FBO services out of the AMP Hangar was required to submit a proposal by 4:00 p.m. EST, on November 2, 1999.

43. The RFQ specifically provided that "only those submittals received prior to this date and time and meeting all the requirements of the RFQ will be considered."

44. Stambaugh's submitted its proposal on November 2, 1999, before 4:00 p.m. EST.

45.    Stambaugh's was the only company which both participated in the pre-submission conference and tour and submitted a proposal in a timely fashion.

46.    Nonetheless, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, refused to permit Stambaugh's to provide FBO services at the AMP Hangar.

47.    In furtherance of the scheme to deprive Stambaugh's of the right to provide FBO services and to create an exclusive FBO at HIA and to interfere with Stambaugh's rights, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, solicited proposals from entities which had not attended the pre-submission conference and tour and accepted proposals that were not submitted by November 2, 1999.

48.    By accepting these proposals, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, violated the express terms of the RFQ.

49.    SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, accepted these non-conforming proposals secretly without providing any notice to Stambaugh's or any other potential bidder that it had changed the requirements of the RFQ.

50.    On information and belief, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, accepted these non-conforming proposals to ensure that Stambaugh's would not be able to lease the AMP Hangar and to interfere with Stambaugh's contracts to provide FBO services.

51.    On information and belief, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, solicited and accepted non-conforming proposals that were conditioned on the requirement that SARAA, in conjunction with BAA, Fleet, Holdsworth, and

McIntosh, create an exclusive arrangement by forcing Stambaugh's out of the FBO business at HIA.

52. On information and belief, on January 10, 2000, Fleet contacted various customers of Stambaugh's and informed them that Stambaugh's would not be awarded the lease to the AMP Hangar and would not have FBO rights.

53. Fleet made this representation to Stambaugh's customers despite the fact that the SARAA board had not yet voted on who would receive the lease to the AMP Hangar and the SARAA board was not even presented with an opportunity to vote on this issue until January 11, 2000, the day after Fleet informed Stambaugh's customers that Stambaugh's would not receive the lease to the AMP Hangar and would not have FBO rights.

54. On information and belief, the RFQ process was merely a subterfuge to create an exclusive FBO and to interfere with Stambaugh's rights.

55. On information and belief, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, never intended to award the AMP Hangar to Stambaugh's, even though Stambaugh's was the only bidder to comply with the RFQ.

**SARAA HAS CREATED AN EXCLUSIVE FBO ARRANGEMENT IN VIOLATION OF 49 U.S.C. § 47107(a)(5)**

56. FAA Order 5190.1A, a copy of which is attached as Exhibit B, defines an exclusive right as follows:

> [A] power, privilege, or other right excluding or debarring another from enjoying or exercising a like power, privilege, or right. An exclusive right may be conferred either by express agreement, by imposition of unreasonable standards or requirements, or by any other means. *Such a right conferred on one or more parties but excluding others from enjoying or exercising a similar right or rights would be an exclusive right.* (emphasis supplied)

57. FAA Order 5190.6A, a copy of relevant portions of which is attached as Exhibit C, utilizes the same definition of the term "exclusive right."

58. In addition to the above-referenced Orders, the FAA also has the right to issue Advisory Circulars to inform the aviation public in a systematic way of non-regulatory material. (*See, e.g.*, 49 U.S.C. § 106 (p), noting authority of FAA Management Council to review Advisory Circular process).

59. FAA Advisory Circular No. 15015190-2A, a copy of which is attached as Exhibit D, contains the same definition of "exclusive right."

60. Once federal funds have been expended at an airport, the "exclusive rights prohibition is applicable for as long as it is operated as an airport." FAA Order 5190.6A, ¶ 3-8(c).

61. As the result of SARAA's refusal to allow Stambaugh's to provide FBO services at the Stambaugh's Hangar or the AMP Hangar, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has created an exclusive FBO right at HIA in violation of 49 U.S.C. § 47107(a)(4).

62. By permitting AERO and Piedmont Hawthorne to operate as FBOs while forcing Stambaugh's to discontinue its FBO operations, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has excluded or debarred Stambaugh's from exercising a like power, privilege, or right in violation of the prohibition against exclusive rights contained in 49 U.S.C. § 47107(a)(4).

63.     By conferring the right to operate an FBO on one or more parties but excluding Stambaugh's from enjoying or exercising a similar right or rights SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has created an exclusive right

64.     SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has created an exclusive right by refusing Stambaugh's the opportunity to engage in an aeronautical activity despite the fact that it is qualified to do so and despite the fact that SARAA has no minimum standards for such activities.

65.     SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has engaged in economic discrimination in violation of 49 U.S.C. § 47107(a)(5) by permitting AERO to continue to operate as an FBO at HIA despite its failure to pay rent, harassing Stambaugh's employees, and fabricating lease disputes with it while treating other similarly situated entities more favorably.

66.     SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has engaged in economic discrimination in violation of 49 U.S.C. § 47107(a)(5) by permitting AERO to continue to operate as an FBO at HIA despite its failure to pay rent.

67.     Between August 1998 and the present, SARAA has obtained at least $4,983,869.00 in federal funds from FAA through various Grant Agreements.

68.     With respect to each of these Grant Agreements, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh certified falsely to FAA that no exclusive rights had been or would be granted at HIA.

**COUNT I**

**Violation of Stambaugh's Rights to Due Process Pursuant to 42 U.S.C. § 1983**
**Stambaugh's vs. SARAA, BAA, Fleet, Holdsworth, and McIntosh**

69. Stambaugh's incorporates by reference the allegations contained in paragraphs 1 through 68, above, as fully as though the same were set forth herein at length.

70. As a municipal authority, SARAA is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

71. As the manager of HIA for SARAA, BAA is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

72. As the Airport Director of HIA for SARAA and BAA, Fleet is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

73. As the Executive Director of SARAA, Holdsworth is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

74. As the Chairman of the Board of Directors of SARAA, McIntosh is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

75. Stambaugh's has a constitutionally protected interest in its ability to continue to engage in FBO and maintenance operation services at HIA.

76. 42 U.S.C. § 1983 provides Stambaugh's, *inter alia*, with a right to bring suit to redress violations of Stambaugh's constitutional rights.

77. SARAA, BAA, Fleet, Holdsworth, and McIntosh were specifically prohibited from taking action designed to drive Stambaugh's out of business or to refuse to allow

it to continue to provide FBO services at HIA by the prohibition against creating exclusive arrangements contained in 49 U.S.C. § 47107(a)(4).

78.    SARAA, BAA, Fleet, Holdsworth, and McIntosh violated Stambaugh's rights to substantive due process by arbitrarily and irrationally refusing to allow it to continue to provide FBO services at HIA.

79.    SARAA, BAA, Fleet, Holdsworth, and McIntosh acted arbitrarily and irrationally without legal justification in depriving Stambaugh's of its due process rights.

80.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's has suffered, and will continue to suffer, substantial business losses as the result of its inability to perform FBO services at HIA.

81.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh has been deprived of the right to perform FBO services at HIA.

82.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's has lost customers and substantial income due to its inability to provide FBO services at HIA.

83.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's has lost the value of its FBO business.

84.    Stambaugh's FBO business was valued at approximately $5,000,000.00.

85.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

86.    Stambaugh's has incurred or will incur expenses in excess of $1,000,000.00 related to the dismantling and relocation of its FBO and maintenance operations.

87.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's will have to incur substantial expenses in order to relocate dislocated employees.

88.    Stambaugh's estimates that it will have to incur expenses in excess of $1,000,000.00 related to the relocation of its employees.

89.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's has lost the substantial past and future income it would have derived from providing FBO services at HIA due to its inability to provide FBO services at HIA.

90.    Based on SARAA's and BAA's own projections, Stambaugh's nominal net income for FBO services over the next 18 years would have exceeded $13,000,000.00.

91.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's will incur substantial damages related to business interruption.

92.    Stambaugh's estimates that it will have to incur expenses in excess of $1,500,000.00 related to business interruption.

93. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's will incur substantial damages related to lost productivity.

94. Stambaugh's estimates that it will have to incur expenses in excess of $3,000,000.00 to $5,000,000.00 related to lost productivity.

95. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's will incur substantial damages related to its need to construct new facilities at a different location.

96. Stambaugh's estimates that it will have to incur expenses in excess of $16,000,000.00 plus interest over the next 30 years related to its need to construct new facilities at a different location for its FBO and maintenance operation.

WHEREFORE, Stambaugh's demands that judgment be entered in its favor and against SARAA, BAA, Fleet, Holdsworth, and McIntosh in an amount not less than the damages set forth above, plus costs of this suit, attorney fees, and all other relief which the Court deems to be equitable.

**COUNT II**
**Violation of Stambaugh's Rights to Due Process Guaranteed by Article I, Section 1, of the Pennsylvania Constitution**
**Stambaugh's vs. SARAA, BAA, Fleet, Holdsworth, and McIntosh**

97. Stambaugh's incorporates by reference the allegations contained in paragraphs 1 through 96 above as fully as though the same were set forth herein at length.

98. Stambaugh's has a constitutionally protected interest in its ability to continue to engage in FBO services at HIA.

99. As a citizen of Pennsylvania, Stambaugh's, *inter alia*, has a right to bring suit to redress constitutional grievances.

100. SARAA, BAA, Fleet, Holdsworth, and McIntosh were specifically prohibited from taking action designed to drive Stambaugh's out of business or to refuse to allow it to continue to provide FBO services at HIA by the prohibition against creating exclusive arrangements contained in 49 U.S.C. § 47107(a)(4).

101. SARAA, BAA, Fleet, Holdsworth, and McIntosh violated Stambaugh's rights to substantive due process guaranteed by Article I, Section 1, of the Pennsylvania Constitution by refusing to allow it to continue to provide FBO services at HIA.

102. SARAA, BAA, Fleet, Holdsworth, and McIntosh acted irrationally and without legal justification in depriving Stambaugh's of its due process rights.

103. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's has suffered, and will continue to suffer, substantial business losses as the result of its inability to perform FBO services at HIA.

104. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's has lost the value of its FBO business.

105. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

106. Stambaugh's has incurred or will incur expenses in excess of $1,000,000.00 related to the dismantling and relocation of its FBO and maintenance operations.

107. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's will have to incur substantial expenses in order to relocate dislocated employees for its of its FBO and maintenance operations.

108. Stambaugh's estimates that it will have to incur expenses in excess of $1,000,000.00 related to the relocation of its employees.

109. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's has lost the substantial past and future income it would have derived from providing FBO services at HIA due to its inability to provide FBO services at HIA.

110. Based on SARAA's and BAA's own projections, Stambaugh's nominal net income for FBO services over the next 18 years would have exceeded $13,000,000.00.

111. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's will incur substantial damages related to business interruption.

112. Stambaugh's estimates that it will have to incur expenses in excess of $1,500,000.00 related to business interruption.

113. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's will incur substantial damages related to lost productivity.

114. Stambaugh's estimates that it will have to incur expenses in excess of $3,000,000.00 to $5,000,000.00 related to lost productivity.

115. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its due process rights, Stambaugh's will incur substantial damages related to its need to construct new facilities at a different location.

116. Stambaugh's estimates that it will have to incur expenses in excess of $16,000,000.00 plus interest over the next 30 years related to its need to construct new facilities at a different location for its FBO and maintenance operation.

WHEREFORE, Stambaugh's demands that judgment be entered in its favor and against SARAA, BAA, Fleet, Holdsworth, and McIntosh in an amount not less than the damages set forth above, plus costs of this suit, attorney fees, and all other relief which the Court deems to be equitable.

**COUNT III**
**Violation of Stambaugh's Rights to Equal Protection Pursuant to 42 U.S.C. § 1983**
**Stambaugh's vs. SARAA, BAA, Fleet, Holdsworth, and McIntosh**

117. Stambaugh's incorporates by reference the allegations contained in paragraphs 1 through 116, above, as fully as though the same were set forth herein at length.

118. The Fourteenth Amendment to the United States Constitution guarantees all citizens the right to equal protection under the law.

119. 42 U.S.C. § 1983 provides Stambaugh's, *inter alia*, with a right to bring suit to redress constitutional grievances.

120. As a municipal authority, SARAA is a state actor for purposes of constitutional analysis and, at all times relevant to this Complaint, acted under color of state law.

121.    As the entity managing HIA for SARAA, BAA is also a state actor for purposes of constitutional analysis and, at all times relevant to this Complaint, acted under color of state law.

122.    As the Airport Director of HIA for SARAA and BAA, Fleet is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

123.    As the Executive Director of SARAA, Holdsworth is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

124.    As the Chairman of the Board of Directors of SARAA, McIntosh is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

125.    As the Airport Director of HIA for SARAA and BAA, Fleet is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

126.    SARAA, BAA, Fleet, Holdsworth, and McIntosh have treated Stambaugh's differently from AERO, a similarly situated FBO, without any rational basis for doing so, in violation of  Stambaugh's right to equal protection under the law

127.    SARAA, BAA, Fleet, Holdsworth, and McIntosh have treated Stambaugh's differently from AERO, a similarly situated FBO, by refusing to enforce lease terms requiring payment of rent against SARAA while, at the same time, requiring that Stambaugh's comply with its lease terms.

128.    SARAA, BAA, Fleet, Holdsworth, and McIntosh have treated Stambaugh's differently from other similarly situated entities without any rational basis for doing so by refusing to permit it to provide FBO services at HIA.

129.    SARAA, BAA, Fleet, Holdsworth, and McIntosh treated Stambaugh's differently from AERO to inhibit or to prevent Stambaugh's from engaging in commercial activity and to afford others the opportunity to do so.

130.    SARAA, BAA, Fleet, Holdsworth, and McIntosh have violated Stambaugh's constitutional right to equal protection under the law.

131.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's treatment of Stambaugh's, Stambaugh's has suffered, and will continue to suffer, substantial business losses as the result of its inability to provide FBO services at HIA.

132.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's has lost the value of its FBO business.

133.    Stambaugh's FBO business was valued in excess of $5,000,000.00.

134.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

135.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

136.    Stambaugh's has incurred or will incur expenses in excess of $1,000,000.00 related to the dismantling and relocation of its FBO and maintenance operations.

137.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will have to incur substantial expenses in order to relocate dislocated employees.

138.    Stambaugh's estimates that it will have to incur expenses in excess of $1,000,000.00 related to the relocation of its employees.

139.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's has lost the substantial past and future income it would have derived from providing FBO services at HIA due to its inability to provide FBO services at HIA.

140.    Based on SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's own projections, Stambaugh's nominal net income for FBO services over the next 18 years would have exceeded $13,000,000.00.

141.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will incur substantial damages related to business interruption.

142.    Stambaugh's estimates that it will have to incur expenses in excess of $1,500,000.00 related to business interruption.

143.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will incur substantial damages related to lost productivity.

144. Stambaugh's estimates that it will have to incur expenses in excess of $3,000,000.00 to $5,000,000.00 related to lost productivity.

145. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will incur substantial damages related to its need to construct new facilities at a different location.

146. Stambaugh's estimates that it will have to incur expenses in excess of $16,000,000.00 plus interest over the next 30 years related to its need to construct new facilities at a different location for its FBO and maintenance operation.

WHEREFORE, Stambaugh's demands that judgment be entered in its favor and against SARAA, BAA, Fleet, Holdsworth, and McIntosh in an amount not less than the damages set forth above, plus costs of this suit, attorney fees, and all other relief which the Court deems to be equitable.

**COUNT IV**
**Violation of Stambaugh's Rights to Equal Protection Guaranteed by Article I, Sections 1 and 26, and Article III, Section 32, of the Pennsylvania Constitution**
**Stambaugh's vs. SARAA, BAA, Fleet, Holdsworth, and McIntosh**

147. Stambaugh's incorporates by reference the allegations contained in paragraphs 1 through 146 above as fully as though the same were set forth herein at length.

148. Article I, Sections 1 and 26, and Article III, Section 32, of the Pennsylvania Constitution guarantees all citizens the right to equal protection under the law.

149. As a citizen of Pennsylvania, Stambaugh's, *inter alia*, has a right to bring suit to redress constitutional grievances.

150.    As a municipal authority, SARAA is a state actor for purposes of constitutional analysis and, at all times relevant to this Complaint, acted under color of state law.

151.    As the entity managing HIA for SARAA, BAA is also a state actor for purposes of constitutional analysis and, at all times relevant to this Complaint, acted under color of state law.

152.    As the Airport Director of HIA for SARAA and BAA, Fleet is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

153.    As the Executive Director of SARAA, Holdsworth is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

154.    As the Chairman of the Board of Directors of SARAA, McIntosh is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

155.    SARAA, BAA, Fleet, Holdsworth, and McIntosh have treated Stambaugh's differently from AERO, a similarly situated FBO, without any rational basis for doing so, in violation of Stambaugh's right to equal protection under the law

156.    SARAA, BAA, Fleet, Holdsworth, and McIntosh have treated Stambaugh's differently from AERO, a similarly situated FBO, by refusing to enforce lease terms requiring payment of rent against SARAA while, at the same time, requiring that Stambaugh's comply with its lease terms.

157.    SARAA, BAA, Fleet, Holdsworth, and McIntosh have treated Stambaugh's differently from other similarly situated entities, including Piedmont Hawthorne and

AERO, without any rational basis for doing so by refusing to permit it to provide FBO services at HIA.

158.    SARAA, BAA, Fleet, Holdsworth, and McIntosh treated Stambaugh's differently from AERO to inhibit or to prevent Stambaugh's from engaging in commercial activity and to afford others the opportunity to do so.

159.    SARAA, BAA, Fleet, Holdsworth, and McIntosh have violated Stambaugh's constitutional right to equal protection under the law.

160.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's treatment of Stambaugh's, Stambaugh's has suffered, and will continue to suffer, substantial business losses as the result of its inability to provide FBO services at HIA.

161.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's has lost the value of its FBO business.

162.    Stambaugh's FBO business was valued in excess of $5,000,000.00.

163.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

164.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

165.    Stambaugh's has incurred or will incur expenses in excess of $1,000,000.00 related to the dismantling and relocation of its FBO and maintenance operations.

166. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will have to incur substantial expenses in order to relocate dislocated employees.

167. Stambaugh's estimates that it will have to incur expenses in excess of $1,000,000.00 related to the relocation of its employees.

168. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's has lost the substantial past and future income it would have derived from providing FBO services at HIA due to its inability to provide FBO services at HIA.

169. Based on SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's own projections, Stambaugh's nominal net income for FBO services over the next 18 years would have exceeded $13,000,000.00.

170. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will incur substantial damages related to business interruption.

171. Stambaugh's estimates that it will have to incur expenses in excess of $1,500,000.00 related to business interruption.

172. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will incur substantial damages related to lost productivity.

173. Stambaugh's estimates that it will have to incur expenses in excess of $3,000,000.00 to $5,000,000.00 related to lost productivity.

174. As the result of SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will incur substantial damages related to its need to construct new facilities at a different location.

175. Stambaugh's estimates that it will have to incur expenses in excess of $16,000,000.00 plus interest over the next 30 years related to its need to construct new facilities at a different location for its FBO and maintenance operation.

WHEREFORE, Stambaugh's demands that judgment be entered in its favor and against SARAA, BAA, Fleet, Holdsworth, and McIntosh in an amount not less than the damages set forth above, plus costs of this suit, attorney fees, and all other relief which the Court deems to be equitable.

**COUNT V**
**Conspiracy**
**Stambaugh's vs. SARAA, BAA, Fleet, Holdsworth, and McIntosh**

176. Stambaugh's incorporates by reference the allegations contained in paragraphs 1 through 175 above as fully as though the same were set forth herein at length.

177. On information and belief, SARAA, BAA, Fleet, Holdsworth, and McIntosh agreed not later that November 1999 to force Stambaugh's out of the FBO business at HIA.

178. On information and belief SARAA, BAA, Fleet, Holdsworth, and McIntosh agreed that they would deprive Stambaugh's of its right to provide FBO services at HIA, even though, pursuant to the terms of the RFQ, Stambaugh's was the only bidder who was actually eligible to bid to provide FBO services at the AMP Hangar.

179.    In furtherance of the conspiracy, SARAA, BAA, Fleet, Holdsworth, and McIntosh contacted other potential FBO providers and informed them that Stambaugh's would not be permitted to provide FBO services at HIA even though Stambaugh's was the only qualified bidder on the AMP Hangar pursuant to the terms of the RFQ.

180.    On information and belief SARAA, BAA, Fleet, Holdsworth, and McIntosh solicited proposals from other bidders by promising that Stambaugh's would be prohibited from providing FBO services at HIA despite the prohibition on exclusive arrangements and despite the fact that Stambaugh's had submitted the only responsive proposal to the RFQ.

181.    These contacts with other potential bidders occurred *before* the proposals submitted on the AMP Hangar had been submitted to the SARAA board for approval.

182.    In furtherance of the conspiracy, SARAA, BAA, Fleet, Holdsworth, and McIntosh contacted customers of Stambaugh's and informed them that Stambaugh's would not be permitted to provide FBO services at HIA.

183.    These contacts with Stambaugh's customers occurred *before* the proposals submitted on the AMP Hangar had been submitted to the SARAA board for approval.

184.    In furtherance of the conspiracy, SARAA, BAA, Fleet, Holdsworth, and McIntosh refused to permit Stambaugh's to provide FBO services out of the AMP Hangar.

185.    In furtherance of the conspiracy, SARAA, BAA, Fleet, Holdsworth, and McIntosh refused to permit Stambaugh's to provide FBO services out of the Stambaugh Hangar.

186.    As the result of the conspiracy, Stambaugh has been deprived of the right to perform FBO services at HIA.

187. As the result of the conspiracy, Stambaugh's has lost customers and substantial income due to its inability to provide FBO services at HIA.

188. As a result of the conspiracy, Stambaugh's has lost the value of its FBO business.

189. Stambaugh's FBO business was valued in excess of $5,000,000.00.

190. As the result of the conspiracy, Stambaugh's has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

191. As the result of the conspiracy, Stambaugh's has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

192. Stambaugh's has incurred or will incur expenses in excess of $1,000,000.00 related to the dismantling and relocation of its FBO and maintenance operations.

193. As the result of the conspiracy, Stambaugh's will have to incur substantial expenses in order to relocate dislocated employees.

194. Stambaugh's estimates that it will have to incur expenses in excess of $1,000,000.00 related to the relocation of its employees.

195. As the result of the conspiracy, Stambaugh's has lost the substantial past and future income it would have derived from providing FBO services at HIA due to its inability to provide FBO services at HIA.

196. Based on SARAA's and BAA's own projections, Stambaugh's nominal net income for FBO services over the next 18 years would have exceeded $13,000,000.00.

197. As the result of the conspiracy, Stambaugh's will incur substantial damages related to business interruption.

198. Stambaugh's estimates that it will have to incur expenses in excess of $1,500,000.00 related to business interruption.

199. As the result of the conspiracy, Stambaugh's will incur substantial damages related to lost productivity.

200. Stambaugh's estimates that it will have to incur expenses in excess of $3,000,000.00 to $5,000,000.00 related to lost productivity.

201. As the result of the conspiracy, Stambaugh's will incur substantial damages related to its need to construct new facilities at a different location.

202. Stambaugh's estimates that it will have to incur expenses in excess of $16,000,000.00 plus interest over the next 30 years related to its need to construct new facilities at a different location for its FBO and maintenance operation.

203. SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's conduct was willful, wanton, and outrageous, entitling Stambaugh's to punitive damages.

WHEREFORE, Stambaugh's demands that judgment be entered in its favor and against SARAA, BAA, Fleet, Holdsworth, and McIntosh in an amount not less than the damages set forth above, plus costs of this suit, attorney fees, punitive damages, and all other relief which the Court deems to be equitable.

**COUNT VI**
**Violation of the Pennsylvania Municipality Authorities Act**
**Stambaugh's vs. SARAA**

204. Stambaugh's incorporates by reference the allegations contained in paragraphs 1 through 203 above as fully as though the same were set forth herein at length.

205. SARAA is a municipal authority created pursuant to the Pennsylvania Municipality Authorities Act of 1945, 53 P.S. § 301, *et seq*.

206. The Pennsylvania Municipal Authorities Act specifically prohibits Authorities from unnecessarily burdening or interfering with existing businesses by the establishment of competitive enterprises. 53 P.S. § 306A(b)(2).

207. That act provides that a municipal authority may not exercise its powers "in the construction financing, improvement, maintenance, extension or operation of any project...which in whole or in part shall duplicate or compete with existing enterprises serving substantially the same purpose." 53 P.S. § 306A(b)(2).

208. Stambaugh's FBO business constituted an existing enterprise as that term is used in the Municipality Authorities Act.

209. By interfering with Stambaugh's attempt to purchase the AMP Hangar for the purpose of providing FBO services, SARAA unnecessarily burdened and interfered with Stambaugh's existing FBO business in violation of the Municipality Authorities Act.

210. By refusing to lease the AMP Hangar to Stambaugh's and depriving it of the opportunity to provide FBO services at HIA so that SARAA could install an FBO operation which had not satisfied the RFQ in the AMP Hangar, SARAA unnecessarily duplicated or compete with Stambaugh's existing enterprise serving substantially the same purpose.

211. By refusing to permit Stambaugh's to provide FBO services at HIA so that they could have another enterprise provide those services, SARAA, BAA, and Fleet unnecessarily burdened and interfered with Stambaugh's existing FBO business in violation of the Municipality Authorities Act.

212. As a result of that interference, Stambaugh's has lost the value of its FBO business.

213. Stambaugh's FBO business was valued in excess of $5,000,000.00.

214. As the result of that interference, Stambaugh's has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

215. Stambaugh's has incurred or will incur expenses in excess of $1,000,000.00 related to the dismantling and relocation of its FBO and maintenance operations.

216. As the result of that interference, Stambaugh's will have to incur substantial expenses in order to relocate dislocated employees.

217. Stambaugh's estimates that it will have to incur expenses in excess of $1,000,000.00 related to the relocation of its employees.

218. As the result of that interference, Stambaugh's has lost the substantial past and future income it would have derived from providing FBO services at IIIA due to its inability to provide FBO services at HIA.

219. Based on SARAA's and BAA's own projections, Stambaugh's nominal net income for FBO services over the next 18 years would have exceeded $13,000,000.00.

220. As the result of that interference, Stambaugh's will incur substantial damages related to business interruption.

221. Stambaugh's estimates that it will have to incur expenses in excess of $1,500,000.00 related to business interruption.

222. As the result of that interference, Stambaugh's will incur substantial damages related to lost productivity.

223. Stambaugh's estimates that it will have to incur expenses in excess of $3,000,000.00 to $5,000,000.00 related to lost productivity.

224. As the result of that interference, Stambaugh's will incur substantial damages related to its need to construct new facilities at a different location.

225. Stambaugh's estimates that it will have to incur expenses in excess of $16,000,000.00 plus interest over the next 30 years related to its need to construct new facilities at a different location for its FBO and maintenance operation.

WHEREFORE, Stambaugh's demands that judgment be entered in its favor and against SARAA in an amount not less than the damages set forth above, plus, costs of this suit, attorney fees, and all other relief which the Court deems to be equitable.

**COUNT VII**
**Tortious Interference With Existing Contractual Relationships**
**Stambaugh's vs. SARAA, BAA, Fleet, Holdsworth, and McIntosh**

226. Stambaugh's incorporates by referenced the allegations contained in paragraphs 1 through 225 above as fully as though the same were set forth herein at length.

227. Stambaugh's had existing contractual relationships with various customers to provide FBO services at HIA.

228. SARAA, BAA, Fleet, Holdsworth, and McIntosh were aware of the existence of those relationships.

229. SARAA, BAA, Fleet, Holdsworth, and McIntosh intentionally interfered with these relationships for the purpose of harming Stambaugh's.

230. SARAA, BAA, Fleet, Holdsworth, and McIntosh intentionally interfered with those relationships by contacting Stambaugh's customers and informing them that

Stambaugh's would no longer be permitted to provide those services at HIA before the SARAA board had even voted on the question of who would provide FBO services at the AMP Hangar at HIA.

231.    SARAA, BAA, Fleet, Holdsworth, and McIntosh intentionally interfered with those relationships by refusing to allow Stambaugh's to provide FBO services at HIA out of the Stambaugh Hangar despite the prohibition on creating exclusive arrangements.

232.    SARAA, BAA, Fleet, Holdsworth, and McIntosh intentionally interfered with those relationships by refusing to allow Stambaugh's to provide FBO services at HIA out of the AMP Hangar despite the fact that Stambaugh's was the only entity to satisfy the requirements of the RFQ.

233.    The interference with Stambaugh's contacts by SARAA, BAA, and Fleet was not privileged or justified.

234.    As the result of this interference with Stambaugh's existing contracts, Stambaugh's has lost the substantial past income it would have derived from providing FBO services at HIA due to its inability to provide FBO services at HIA.

235.    As the result of this interference with Stambaugh's existing contracts, Stambaugh's has lost the substantial future income it would have derived from providing FBO services at HIA due to its inability to provide FBO services at HIA.

236.    Based on SARAA's and BAA's own projections, Stambaugh's nominal net income for FBO services over the next 18 years would have exceeded $13,000,000.00.

237.    SARAA's, BAA's, Fleet's, Holdsworth's, and McIntosh's conduct was willful, wanton, and outrageous, entitling Stambaugh's to punitive damages.

WHEREFORE, Stambaugh's demands that judgment be entered in its favor and against SARAA, BAA, Fleet, Holdsworth, and McIntosh in an amount not less than the damages set forth above, plus punitive damages, costs of this suit, attorney fees, and all other relief which the Court deems to be equitable.

Respectfully submitted,

THOMAS B. SCHMIDT, III (19196)
BRIAN P. DOWNEY (59891)
RANDY L. VARNER (81943)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
Post Office Box 1181
Harrisburg, PA 17108-1181
(717) 255-1155
(717) 238-0575 (Fax)

Attorneys for Plaintiff
Stambaugh's Air Service, Inc.

Date: April 10, 2000

**VERIFICATION**

I, Mark R. Stambaugh, state that I am the President of Stambaugh's Air Service, Inc., that I make this affidavit on its behalf, and that the averments of fact in the foregoing document are true and correct to the best of my knowledge, information and belief. This statement is made subject to the penalties of 18 Pa. C. S. §4904 (unsworn falsification to authorities).

STAMBAUGH'S AIR SERVICE, INC.

By: ______________________
MARK R. STAMBAUGH, PRESIDENT

Dated: April 10, 2000