

FILED

MA    2000

MARY E. [...] ANDREA CLERK
Per _____ Deputy Clerk

## IN THE

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF PENNSYLVANIA

---

No. 1:CV-00-0660

---

## STAMBAUGH'S AIR SERVICES, INC.,

v.

## SUSQUEHANNA AREA REGIONAL AIRPORT AUTHORITY, BAA HARRISBURG, INC., DAVID FLEET, individually, DAVID HOLDSWORTH, individually, and DAVID C. McINTOSH, individually

---

## BRIEF IN SUPPORT OF MOTION TO DISMISS

---

**RHOADS & SINON LLP**
**Dean F. Piermattei, Esquire**
**Timothy J. Neiman, Esquire**
**Susan E. Schwab, Esquire**
**One South Market Square**
**P. O. Box 1146**
**Harrisburg, PA 17108-1146**
**(717) 233-5731**
**Attorneys For Defendants**

## TABLE OF CONTENTS

I.  PROCEDURAL HISTORY ..................................................................2

II.  FACTUAL BACKGROUND ...........................................................2

III.  QUESTIONS PRESENTED ...........................................................5

IV.  ARGUMENT....................................................................................6

    A.  STANDARD OF REVIEW ......................................................6

    B.  PLAINTIFF FAILS TO PLEAD A VIOLATION
       OF ITS CIVIL RIGHTS (COUNTS I-IV)...................................6

        1.  Stambaugh's Federal Due Process and
           Equal Protection Claims Fail To Allege
           A Constitutionally Protected Property Right.....................7

        2.  Stambaugh's Federal Equal Protection Claim Fails
           To Allege Conduct That Is Constitutionally Impermissible ..........13

        3.  Stambaugh's Due Process and Equal Protection
           Claims Against the Individual Defendants are
           Barred by Qualified Immunity ..............................................16

        4.  Stambaugh's State Due Process and Equal
           Protection Claims Are Barred Because There
           Is No Private Right of Action for Violations of
           The Pennsylvania Constitution ..........................................19

345869.1

5.  Stambaugh's State Due Process and Equal
Protection Claims Fail To Allege A Constitutionally
Protected Property Right .................................................................22

C.  STAMBAUGH'S FAILS TO STATE
A CLAIM FOR CONSPIRACY (COUNT V).............................................22

D.  STAMBAUGH'S FAILS TO STATE A
CLAIM FOR VIOLATION OF THE
PENNSYLVANIA MUNICIPAL
AUTHORITIES ACT (COUNT IV) ...........................................................24

E.  STAMBAUGH'S FAILS TO STATE
A CLAIM FOR TORTIOUS INTERFERENCE
WITH EXISTING CONTRACTUAL
RELATIONSHIPS (COUNT VII) .............................................................28

F.  STAMBAUGH'S STATE CAUSES OF
ACTION AGAINST SARAA, MR. HOLDSWORTH
AND MR. McINTOSH ARE BARRED BY
GOVERNMENTAL IMMUNITY ................................................................30

1.  Claims against SARAA.........................................................................31

2.  Claims against Mr. Holdsworth and Mr. McIntosh .......................32

V.  CONCLUSION .............................................................................................33

## TABLE OF AUTHORITIES

### FEDERAL CASES

Agresta v. Goode, 797 F. Supp. 399 (E.D. Pa. 1992) ...........................................32

Allen v. Washington Hospital, 34 F. Supp. 2d 958 (W.D. Pa. 1999) ...............................30

Anderson v. Creighton, 483 U.S. 635 (1987) .......................................16, 17, 18

Black v. Bayer, 672 F.2d 309 (3d Cir. 1982)...................................................17

Crighten v. Schuylkill County, 882 F. Supp. 411 (E.D. Pa. 1995)....................................32

D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364
    (3d Cir. 1992)...................................................................................17

Gemini Physical Therapy & Rehabilitation, Inc. v. State Farm Mutual
    Automobile Insurance Co., 40 F.3d 63 (3d Cir. 1994) .................................30

Gruenke v. Seip, No. 97-5454, 1998 U.S. Dist. LEXIS 16439 (E.D. Pa.
    October 21, 1998) ...................................................................................18

Gruenke v. Seip, No. 97-5454, 1998 U.S. Dist. LEXIS 16439 (E.D. Pa.
    October 21, 1998) (citing Johnson v. Horn, 150 F. 3d 276,
    286 (3d Cir. 1998)...................................................................................18

Harley v. Schuylkill County, 476 F. Supp. 191 (E.D. Pa. 1979)........................................21

Harlow v. Fitzgerald, 457 U.S. 800 (1982)....................................................16,17

Holder v. City of Allentown, No. 91-240, 1994 U.S. Dist. LEXIS 7220 (E.D.
    Pa. May 27, 1994)...................................................................................20

Holt Cargo System, Inc. v. Delaware River Port Authority, 20 F. Supp.
    2d 803 (E.D. Pa. 1998) .................................................................15

Holt Cargo System, Inc. v. Delaware River Port Authority, 20 F. Supp.
    2d 803 (E.D. Pa. 1998) (quoting Huebschen v. Department of Health &
    Social Services, 716 F.2d 1167, 1171 (7th Cir. 1983) .................................14

Holt Cargo System, Inc. v. Delaware River Port Authority, 20 F. Supp.
    2d 803 (E.D. Pa. 1998) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982) ....................13

Illinois Health Care Associate v. Illinois Department of Public Health, 879
    F.2d 286 (7th Cir. 1989) (quoting Evans v. City of Chicago, 873 F.2d
    1007, 1016 (7th Cir. 1989) and citing United States R.R. Retirement
    Bd. v. Fritz, 449 U.S. 166, 179 (9180)............................................................15

Independent Enterprise, Inc. v. Pittsburgh Water & Sewer Authority, 103
    F.3d 1165 (3d Cir. 1997)..............................................................................9

Kaehly v. City of Pittsburgh, 988 F. Supp. 888 (W.D. Pa. 1997)......................................22

Labalokie v. Capitol Area Intermediate Unit, 926 F. Supp. 503 (M.D. Pa.
    1996) ...................................................................................................8, 9

Labalokie v. Capitol Area Intermediate Unit, 926 F. Supp. 503 (M.D. Pa.
    1996) (citing Colburn v. Upper Darby Township, 838 F.2d 663, 665-66
    (3d Cir. 1988) ...........................................................................................6

Labalokie v. Capitol Area Intermediate Unit, 926 F. Supp. 503 (M.D. Pa.
    1996) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)) .........................................6

Lees v. West Greene Sch. District, 632 F. Supp. 1327 (W.D. Pa. 1986) ...........................20

Linan-Faye Construction Co., Inc. v. Housing Authority of the City of Camden,
    49 F.3d 915 (3d Cir. 1995)..............................................................................9

Malley v. Briggs, 475 U.S. 335 (1986)..............................................................17

Mitchell v. Forsyth, 472 U.S. 511 (1985).........................................................17

Montauk-Caribbean Airways, Inc. v. Hope, 784 F.2d 91 (2d Cir. 1986)............................7

Northeast Jet Center, Ltd. v. Lehigh-Northampton Airport Authority, 767
    F. Supp. 672 (E.D. Pa. 1991) ...............................................................7, 10, 11

Northeast Jet Center, Ltd. v. Lehigh-Northampton Airport Authority, No.
    90-CV-1262 1997 U.S. Dist. LEXIS 6493 (E.D. Pa. May 5, 1997).....................12, 13

Northeast Jet Center, Ltd. v. Lehigh-Northampton Airport, No. 90-1262,
    1996 U.S. Dist. LEXIS 11177 (E.D. Pa. August 1, 1996) .................................27

Northeast Jet Center, Ltd. v. Lehigh-Northampton Airport, No. 90-1262,
    1996 U.S. Dist. LEXIS 11177 (E.D. Pa. August 1, 1996) (citing
    Helmerick Drive-It-Yourself v. Eric Mun. Airport Auth., 149 Pa.
    Commw. 1, 3-4, 612 A.2d 562, 564 n.2 (1992)...........................................24

- iv -

In re Orthopedic Bone Screw Product Liability Litigation, 193 F.3d 781 (3d
        Cir. 1999) ...................................................................................................23

Pendress v. Chatham College, 386 F. Supp. 341 (W.D. Pa. 1974)...................20

Pro v. Donatucci, 81 F.3d 1283 (3d Cir. 1996)................................................18

Queen City Aviation, Inc. v. City of Allentown, No. 91-7776,
        1992 U.S. Dist.LEXIS 9042 (E.D. Pa. June 5, 1992), aff'd, 993 F.2d
        225 (3d Cir. 1993)....................................................................8, 9, 10, 13

Sabatini v. Reinstein, No. 99-2393, 1999 U.S. Dist. LEXIS 12820 (E.D. Pa.
        August 20, 1999)......................................................................................20

Sameric Corp. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998) ...............32

Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997) .........................................16, 18

Unger v. National Residents Matching Program, 928 F.2d 1392 (3d Cir.
        1991) ..........................................................................................................9

Weinerman v. City of Philadelphia, 785 F. Supp. 1174 (E.D. Pa. 1992) ..........31

Windsor Security, Inc. v. Hartford Life Insurance, 986 F.2d 655 (3d Cir.
        1993) ........................................................................................................29

**STATE CASES**

American Totalisator Co., Inc. v. Seligman, 489 Pa. 568, 414 A.2d 1037
        (1980)........................................................................................................10

Beaver Falls Municipal Authority v. Municipal Authority of the Borough
        of Conway, 689 A.2d 379 (Pa. Commw. 1997).....................................26, 27

Bell v. Aubel, 151 Pa. Super. 569, 30 A.2d 617 (1943) ...................................20

Bristol Township Water Authority v. Lower Bucks Cty. Joint Municipal
        Authority, 130 Pa. Commw. 240, 567 A.2d 110 (1989)(2) ........................27

Brown v. Commonwealth, 453 Pa. 566, 305 A.2d 868 (1973), rev'd on other
        grounds, Mayle v. Commonwealth, 479 Pa. 384, 388 A.2d 709 (1978) ....20

Commonwealth v. National Gettysburg Battlefield Tower, Inc., 454 Pa.
        193, 311 A.2d 588 (1973)..........................................................................20

Dansby v. Thomas Jefferson University Hospital, 424 Pa. Super. 549, 623
        A.2d 816 (1993).........................................................................................22

Erdman v. Mitchell, 207 Pa. 79, 56 A. 327 (1903)............................................................21

Evansburg Water Co. v. Perkiomen Township, 131 Pa. Commw. 89,
    569 A.2d 428 (1990)............................................................................................25, 27

E-Z Parks, Inc. v. Philadelphia Parking Authority, 110 Pa. Commw.
    629, 532 A.2d 1272 (1987)......................................................................................32

Highridge Water Authority v. Lower Indiana County Municipal Authority,
    689 A.2d 374 (Pa. Commw. 1997).....................................................................26, 27

Kelley v. Keiser, 340 Pa. 59, 16 A.2d 307 (1940).............................................................20

Lower Bucks Cty. Joint Municipal Authority v. Bristol Twp. Water Authority,
    137 Pa. Commw. 415, 586 A.2d 512 (1991)...............................................................27

Marshall v. Port Authority of Allegheny County, 106 Pa. Commw. 120, 525
    A.2d 857 (1987).......................................................................................................30

Northampton v. Bucks County. Water & Sewer Authority, 96 Pa. Commw.
    514, 508 A.2d 605 (1986)........................................................................................27

Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466 (1979).......................23

Western Pa. Socialist Workers v. Connecticut General Life Insurance Co.,
    335 Pa. Super. 493, 485 A.2d 1 (1984)......................................................................20

## DOCKETED CASES

Stambaugh's Aviation Service, Inc. v. Susquehanna Area Regional Airport
    Authority, Docket No. FAA-16-00-5.............................................................................7

## STATUTES

28 U.S.C. §1367(c)(3)......................................................................................................15

42 U.S.C. §1983.................................................................................................................6

49 U.S.C. §47107(a)(4)......................................................................................................7

53 P.S. § 301 et. seq. .......................................................................................................24

53 P.S. § 302(d) ...............................................................................................................24

53 P.S. § 306A(b)(2) .........................................................................................................24

53 P.S. § 306 et seq..........................................................................................................24

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

STAMBAUGH'S AIR SERVICE, INC.,          :
                                        :
               Plaintiff                :
                                        :
        v.                              :        CASE NO. 1:CV-00-0660
                                        :
SUSQUEHANNA AREA REGIONAL               :        Judge Yvette Kane
AIRPORT AUTHORITY, BAA                  :        Magistrate Judge J. Andrew Smyser
HARRISBURG, INC., DAVID FLEET,          :
individually, DAVID HOLDSWORTH,         :
individually, and DAVID C. McINTOSH,    :
individually,                           :
               Defendants               :
.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

## BRIEF IN SUPPORT OF MOTION TO DISMISS

Plaintiff Stambaugh's Air Service, Inc.'s ("Stambaugh's") Complaint takes 237 Paragraphs to say one thing – that Stambaugh's government contract to provide fixed base operator services at the Harrisburg International Airport was not renewed.  As explained below, the Complaint contains a plethora of allegations included for the sole purpose of confusing the issues in an attempt to avoid dismissal of this action.  Stambaugh's, however, cannot avoid the fact that its claims all stem from the common fact that its government contract was not renewed and that, as a matter of law, this one relevant fact does not provide a basis for the claims made in its Complaint.  As such, Stambaugh's Complaint should be dismissed.

343789.1

## I.    PROCEDURAL HISTORY

On or about April 10, 2000, Plaintiff Stambaugh's initiated this action against Susquehanna Area Regional Airport Authority ("SARAA"), BAA Harrisburg, Inc. ("BAA"), David Fleet, David Holdsworth and David C. McIntosh. In its Complaint, Stambaugh's alleges counts for violation of the Due Process Clause of the United States Constitution (Count I), violation of the Due Process Clause of the Pennsylvania Constitution (Count II), violation of the Equal Protection Clause of the United States Constitution (Count III), violation of the Equal Protection Clause of the Pennsylvania Constitution (Count IV), conspiracy (Count V), violation of the Pennsylvania Municipality Authorities Act (Count VI) and tortious interference with existing contractual relationships (Count VII). The Defendants filed their Motion to Dismiss on May 19, 2000 and file this Brief in support of that Motion.

## II.    FACTUAL BACKGROUND

Wading through the 237 paragraphs of Stambaugh's Complaint reveals only a handful of facts. The heart of Stambaugh's argument is that the Defendants, all alleged government actors, improperly awarded a Fixed Base Operator ("FBO") contract at Harrisburg International Airport ("HIA") to Stambaugh's competitor AERO Services International Incorporated ("AERO"). Stambaugh's attempts to transform its disappointment at not receiving the FBO contract into a federal civil rights action based upon the following facts and allegations.

Stambaugh's is a current tenant at HIA where it repairs and maintains airplanes. (Complaint, ¶9). Until recently, Stambaugh's, in addition to the repair and maintenance services it currently provides, also provided FBO services at HIA. (Complaint, ¶9). These FBO services

included fueling, maintenance and cargo handling services. (Complaint, ¶9). These services are provided from a hangar that Stambaugh currently leases from SARAA. (Complaint, ¶10).

SARAA is a municipal authority that owns HIA. (Complaint, ¶2). SARAA has retained BAA to manage HIA. (Complaint, ¶3). Mr. Fleet is the Airport Director of HIA and is employed by BAA. (Complaint, ¶4). Mr. Holdsworth is SARAA's Executive Director and Mr. McIntosh is SARAA's Chairman of the Board of Directors. (Complaint, ¶¶5, 6).

The genesis of this dispute is Stambaugh's failure to obtain a renewal of its contract to continue providing FBO services at HIA. Stambaugh's hangar lease expired on January 19, 2000. (Complaint, ¶16). During negotiations to extend the lease, which extension was ultimately granted, the Defendants refused to offer Stambaugh's a lease that would allow it to continue providing FBO services at HIA. (Complaint, ¶¶19, 20). Likewise, on October 5, 1999, SARAA issued a Request for Qualifications from FBO service providers (the "RFQ"). (Complaint, ¶38). Stambaugh's now complains that the FBO contract, which is required for an entity to perform FBO services at HIA, was improperly awarded to another FBO provider.[1]

Stambaugh's alleges that it should have received an FBO contract because it was the only bidder that complied with the requirements of the RFQ. (Complaint, ¶¶39-49). The Complaint goes on to allege that the Defendants contacted Stambaugh's customers prior to the final vote on the FBO contract award to inform them that Stambaugh's would not be renewed as an FBO

---

[1] Interestingly, throughout the Complaint Stambaugh's refers to AERO as the sole FBO provider that was awarded a contract through the RFQ process and that awarding the FBO contract to one entity violates the Federal Aviation Act. However, in Paragraphs 62 and 157 of the Complaint, Stambaugh's acknowledges that there are currently two FBO providers at the airport, Piedmont Hawthorne and AERO. Thus, Stambaugh's claim that the Defendants have allegedly violated the FAA's sole FBO provider requirements is without basis because, as they acknowledge, there are at least two FBO providers operating at HIA.

provider. (Complaint, ¶¶52, 53). Stambaugh's failure to obtain the FBO contract provides the sole basis for all of its claims against the Defendants.

Stambaugh's due process claims (Counts I and II) recite that Stambaugh's has a constitutionally protected interest in its ability to continue to engage in FBO services at HIA. (Complaint, ¶¶75, 98). Likewise, all of Stambaugh's due process allegations   except those dealing with alleged violations of the Federal Aviation Act   are premised entirely upon Stambaugh's inability to provide FBO services at HIA, in other words, its failure to obtain an FBO contract. (Complaint, ¶¶77-78, 81-96, 100-101, 103-116).

Stambaugh's equal protection claims (Counts III and IV) recite that Stambaugh's has been treated "differently from other similarly situated entities without any rational basis for doing so by refusing to permit it to provide FBO services at HIA." (Complaint, ¶157). Likewise, all of Stambaugh's equal protection allegations focus on and refer to Stambaugh's inability to provide FBO services at HIA. (Complaint, ¶¶131-146, 160-175).

Stambaugh's conspiracy claim (Count V) focuses entirely on its failure to obtain an FBO contract and the Defendants' alleged conspiracy to not award an FBO contract to Stambaugh's. (Complaint, ¶¶177-202). Stambaugh's Municipal Authorities Act (Count VI) and tortious interference with existing contractual relationships claims focus on the award of the FBO contracts as well. (Complaint, ¶¶208-225, 227-236).

Also sprinkled throughout Stambaugh's Complaint are allegations that Stambaugh's was treated differently than its competitor AERO because AERO failed to pay rent (Complaint, ¶23) and that Stambaugh's employees were "harassed" because the Defendants checked their identification (Complaint, ¶¶26, 27). Additionally, Stambaugh's claims that SARAA improperly purchased a hangar at HIA that Stambaugh's was interested in purchasing. (Complaint, ¶¶33-

36). The Complaint, however, contains no explanation of how these alleged events impacted the

real issue in this case, Stambaugh's failure to obtain an FBO contract.

## III.    QUESTIONS PRESENTED

I.    Whether claims for the violation of a business entity's equal protection and
substantive due process rights premised entirely on the business entity's failure to
obtain a government contract should be dismissed for failure to state a claim?

        Suggested Answer:  Yes.

II.    Whether claims for violation of a business entity's equal protection rights should
be dismissed for failure to state a claim where there was a rational basis for the
government's actions?

        Suggested Answer:  Yes.

III.    Whether claims for violation of a business entity's constitutional rights should be
dismissed against individual defendants where those defendants' actions did not
violate a clearly established constitutional right?

        Suggested Answer:  Yes.

IV.    Whether a business entity's claims for violation of the Pennsylvania Constitution
should be dismissed because there is no private right of action for such violations?

        Suggested Answer:  Yes.

V.    Whether a business entity's conspiracy claim should be dismissed where the
claim is plead as a separate tort and the alleged conspirators are employees and
agents of the entity that is alleged to have committed the tort?

        Suggested Answer:  Yes.

VI.    Whether a business entity's claim under the Pennsylvania Municipal Authorities
Act should be dismissed where there is no allegation of competition by the
municipal authority?

        Suggested Answer:  Yes.

VII.   Whether a business entity's claim for tortious interference with existing contractual relationships should be dismissed where there is no allegation that the defendants directed their activities at third parties?

Suggested Answer:  Yes.

## IV.   ARGUMENT

### A.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed for failure to state a claim where it appears that the plaintiff can present no set of facts that would entitle him or her to relief.  Labalokie v. Capitol Area Intermediate Unit, 926 F. Supp. 503, 506 (M.D. Pa. 1996) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  In reaching this decision, a court must consider all well pleaded allegations as true and in the light most favorable to the plaintiff.  Id. (citing Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988)). In the instant case Stambaugh's is not entitled to relief under any set of facts, and accordingly, its Complaint must be dismissed.

### B.   PLAINTIFF FAILS TO PLEAD A VIOLATION OF ITS CIVIL RIGHTS (COUNTS I-IV).

Stambaugh's alleges violations of its civil rights pursuant 42 U.S.C. §1983 and the Due Process and Equal Protection clauses of the United States Constitution (Counts I and III) and the Due Process and Equal Protection clauses of the Pennsylvania Constitution (Counts II and IV). Since Stambaugh's has failed to sufficiently plead a violation of its Civil Rights.  Counts I through IV must be dismissed.

**1.    Stambaugh's Federal Due Process and Equal Protection Claims Fail
To Allege A Constitutionally Protected Property Right**

In its Complaint, Stambaugh alleges that it "has a constitutionally protected interest in its ability to continue to engage in FBO and maintenance operations at HIA." (Complaint, ¶75). Additionally, all of the damages alleged by Stambaugh's in Counts I through IV of the Complaint stem from either Stambaugh's inability to provide FBO services at HIA or the Defendants' alleged violation of the Federal Aviation Act. Even the "Introductory Statement" to Stambaugh's Complaint states that "SARAA, BAA, Fleet, Holdsworth and McIntosh conspired together to violate Stambaugh's federal and state constitutional rights by depriving it of its right to provide FBO services at HIA." However, Stambaugh's failure to receive a government contract to operate as an FBO provider is not a constitutionally protected property interest, and accordingly, Stambaugh's constitutional claims must be dismissed. Likewise, Stambaugh's allegations that the Defendant's violated the Federal Aviation Act do not give rise to a constitutional claim.

As a preliminary matter, Stambaugh's alleges in connection with its due process claim that the Defendants "were specifically prohibited from taking action designed to drive Stambaugh's out of business or to refuse to allow it to provide FBO services at HIA by the prohibition against creating exclusive arrangements contained in 49 U.S.C. §47107(a)(4)." (Complaint, ¶77). It is well established that the "comprehensive enforcement scheme provided in the Federal Aviation Act manifests congressional intent to foreclose an action under §1983." Montauk-Caribbean Airways, Inc. v. Hope, 784 F.2d 91, 98 (2d Cir. 1986) (where the court granted a 12(b)(6) Motion to Dismiss plaintiff's 1983 claim that was based on the airport's refusal to grant plaintiff a year-round license to operate as an FBO provider and air carrier); see

also Northeast Jet Center, Ltd. v. Lehigh-Northampton Airport Auth., 767 F. Supp. 672, 677 (E.D. Pa. 1991) (where the court, in relying upon Montauk held that a plaintiff cannot base its §1983 action on conduct alleged to be violative of the Federal Aviation Act). Instead, Stambaugh's "must look to the administrative agency responsible for the enforcement of these provisions."[2] Id. Thus, any allegation that Stambaugh's constitutional rights were violated by the Defendants' alleged failure to follow Section 47107(a)(4) of the Federal Aviation Act is of no consequence in connection with Stambaugh's 1983 claims. Id.

Since there is no basis for a due process or equal protection claim pursuant to the Federal Aviation Act, the only remaining basis alleged by Stambaugh's to support its substantive due process and equal protection claim is that it did not receive a contract to provide FBO services at IIIA. In order to survive a motion to dismiss on substantive due process and equal protection claims, a plaintiff must allege that they were deprived, through government action, of a constitutionally protected property interest. See Labalokie v. Capitol Area Intermediate Unit, 926 F. Supp. 503, 508 (M.D. Pa. 1996) (stating "[t]he deprivation of a property or liberty interest is a precondition to either a procedural or substantive due process claim."); Queen City Aviation, Inc. v. City of Allentown, No. 91-7776, 1992 U.S. Dist. LEXIS 9042, *7 (E.D. Pa. June 5, 1992), aff'd 993 F.2d 225 (3d Cir. 1993)(attached hereto as Exhibit "A"). No such constitutionally protected property interests are a stake in this case.

It is well settled that there exists no constitutionally protected property interest in a government contract unless the contract involves welfare benefits, tenure or is only terminable

---

[2] While not mentioned in the Complaint, Stambaugh's has filed an action with the Federal Aviation Administration seeking similar relief. That matter is docketed at Stambaugh's Aviation Service, Inc. v. Susquehanna Area Regional Airport Authority, Docket No. FAA-16-00-5.

for cause. Linan-Faye Constr. Co., Inc. v. Housing Auth. of the City of Camden, 49 F.3d 915, 932 (3d Cir. 1995); Unger v. National Residents Matching Program, 928 F.2d 1392, 1393 (3d Cir. 1991); see also Independent Enter., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1177-1180 (3d Cir. 1997). This rationale extends to the failure of a governmental entity to renew a contract or the government's termination of a contract. See Queen City, 1992 U.S. Dist. LEXIS 9042, at *6; Linan-Faye, 49 F.3d at 932. Likewise in Labalokie, Judge Rambo has recognized that "[i]t is settled law that there can be no property interest in obtaining future government contracts. . . ." Labalokie, 926 F. Supp. at 508. The reason for this rule, as stated by the Third Circuit, is that "a wholesale federalization of state public contract law seems far afield from the great purpose of the due process clause." Unger, 928 F.2d at 1398. This standard was recently relied upon by the United States District Court for the Eastern District of Pennsylvania to dismiss a case factually identical to that presented here.

The plaintiff in the Queen City Aviation case was, pursuant to a 10-year lease, an FBO provider at the Queen City Municipal Airport located in Allentown, Pennsylvania. 1992 U.S. Dist. LEXIS 9042, at *1. After the lease expired in May 1991, the plaintiff continued as an FBO provider on a month-to month basis until February 1992 when the lease was terminated. Id. at *2. Prior to terminating the plaintiff's lease, the airport issued a request for proposals to provide FBO services at the airport and awarded the contract to plaintiff's competitor. Id. at *3. In light of its inability to provide FBO services at the airport, plaintiff brought a Section 1983 claim against the airport, the City of Allentown and a number of their employees for alleged violations of plaintiff's rights to due process and equal protection. Id. at *4.

The Court dismissed the plaintiff's due process and equal protection claims. Id. at *1. In reaching this decision, the Court noted:

- 9 -

> plaintiff's complaint is nothing more than the expression of its
> disappointment that city officials, after inviting bids, decided to
> offer its franchise, its grant of an exclusive lease, to someone else.
> The Civil Rights laws were never intended to establish liability
> under the current circumstances.   We find that plaintiff's civil
> rights claims are nothing more than an attempt to federalize a
> routine dispute with local officials over municipal planning or
> procedures, i.e., bidding practices.

Id. at *6.  In addressing the due process and equal protection claims in more detail, the Court

continued:

> In addition, from the complaint, it appears that plaintiff merely had
> a lease for a certain term, which expired, and thereafter the lease
> was month to month. We know of no requirement that the City of
> Allentown, as the landlord of the airport, must even consider
> entering into a new lease with plaintiff, or that it structure the
> Request for Proposals in a manner acceptable to or approved by
> plaintiff.  .  .  .   Absent that, there is no constitutional interest
> violated by the City of Allentown's decision to seek bids from
> competing companies and to choose one plaintiff's competitors.

Id. at *9.

Likewise in the instant action, there is no constitutional interest violated by the

Defendants' decision to seek bids from competing companies and to choose one of Stambaugh's

competitors for an FBO contract.  This action is nothing more than an attempt by Stambaugh's, a

disappointed bidder, to transform its disappointment at not being awarded an FBO contract into a

federal civil rights action and thus federalize a routine disappointed bidder claim.[3]  Since, as a

matter of law there is no constitutionally protected right in government contracts or in obtaining

---

[3] Pennsylvania law provides redress for taxpayers that claim they were injured because a governmental entity
improperly awarded a government contract.  See, e.g., American Totalisator Co., Inc. v. Seligman, 489 Pa. 568, 414
A.2d 1037 (1980).  As the Court in Queen City Aviation stated on reconsideration, "[i]f plaintiff wishes to challenge
the decision making of the defendants, a state court would provide a better forum . . . ."  1992 U.S. Dist. LEXIS
11456, at*4.  (Attached hereto as Exhibit "B").

future government contracts, Stambaugh's due process and equal protection claims cannot proceed.

Stambaugh's will undoubtedly point to the Eastern District's decision in <u>Northeast Jet Center, Ltd. v. Lehigh-Northampton Airport Authority</u>, 767 F. Supp. 672 (E.D. Pa. 1991), in opposition to Defendants' Motion to Dismiss.  This case, however, in the context of its treatment of Section 1983, is significantly different than the instant action and is of little, if any, application here.

The <u>Northeast Jet</u> case also involved an FBO provider at a Pennsylvania municipal airport.  <u>Id.</u> at 675.  The similarities, however, stop there.  In <u>Northeast Jet,</u> the plaintiff alleged that it was forced out of business and had to sell its hangar at the Allentown-Bethlehem-Easton Airport at a deflated price because the defendants treated the plaintiff differently than other FBO providers.  <u>Id.</u>  In support of this claim, the plaintiff alleged a number of instances where its competitors were treated in a manner that provided the competitors with an unfair competitive advantage and made it impossible for the plaintiff to compete, thus ruining the plaintiff's business.  <u>Id.</u>  This is quite different than the instant case where there is no allegation that Stambaugh's was forced out of business because a competitor was given an unfair competitive advantage.[4]  Rather, the sole reason that Stambaugh's is not providing FBO services at HIA is because its contract was not renewed.

---

[4]    The Defendants recognize that Stambaugh's alleges that its employees were subject to inspection by the Defendants when its competitor was not (Complaint, ¶¶26, 27) and that its competitor did not have to pay rent (Complaint, ¶23).  Nowhere in the Complaint, however, is it explained how this alleged disparate treatment led to Stambaugh's not being able to provide FBO services at HIA.  Instead, Stambaugh's inability to continue to operate as an FBO is <u>solely</u> because its FBO contract was not renewed.

In Northeast Jet the Court acknowledged that "the mere breach of a contract by a government or a government instrumentality does not give rise to a constitutional right." Id. at 676. Additionally, the Court recognized that the plaintiff could "not base its § 1983 action on conduct alleged to be violative of the Federal Aviation Act." Id. at 677. Instead, the Court found that plaintiff properly plead a Section 1983 claim because plaintiff included allegations in its Complaint that it lost "actual and prospective business relationships, as a result of the defendants' defamatory remarks." Id. This is quite different from Stambaugh's case.

Here, Stambaugh's only basis for its civil rights claim is that it no longer provides FBO services at HIA. While the Complaint contains allegations that the Defendants allegedly told Stambaugh's customers that Stambaugh's would not be renewed as an FBO provider, there is absolutely no allegation that this activity somehow prevented Stambaugh's from continuing its FBO business. The only reason that Stambaugh's is not providing FBO services at HIA is because its contract was not renewed. Likewise, there is no allegation that Stambaugh's was forced out of business because its competitors were given an unfair competitive advantage. Stambaugh's claim is simply that of a disappointed bidder. However, as stated above, this is not a sufficient basis for a Section 1983 claim and Stambaugh's due process and equal protection claims fail.

Finally, even if Stambaugh's can some how claim that the Defendants sought to injure its reputation, it is significant that the Northeast Jet defendants ultimately prevailed on summary judgment. Northeast Jet Center, Ltd. v. Lehigh-Northampton Airport Auth., No. 90-CV-1262 1997 U.S. Dist. LEXIS 6493 (E.D. Pa. May 5, 1997)(Attached hereto as Exhibit "C"). In the summary judgment decision, the Court reversed itself and held that "injury to reputation is not a liberty or property interest protected by the due process clause of the Fourteenth Amendment"

and that "we do not believe that there is any support for the proposition that there is a constitutionally protected interest in potential business." Id. at *25, *27. Thus, based upon the rationale of the summary judgment decision, the Northeast Jet motion to dismiss should have been granted. Instead, the parties, and more importantly the Court, were required to devote significant time and resources to a case that was without legal or factual basis.

### 2.    Stambaugh's Federal Equal Protection Claim Fails To Allege Conduct That Is Constitutionally Impermissible

Since Stambaugh's does not possess a protected property right, its due process claim should be dismissed.   See Queen City Aviation, infra.   Additionally, Stambaugh's equal protection claim should be dismissed because Stambaugh's fails to sufficiently allege that it was treated differently than similarly situated entities.

Stambaugh's claims that it was treated differently than another FBO provider because its employees were asked to show identification when the other FBO employees were not (Complaint, ¶26) and another FBO provider was not required to pay rent (Complaint, ¶23). There is absolutely no indication, however, in the Complaint how Stambaugh's was injured by this alleged behavior. Instead, Stambaugh's claim focuses entirely on how it cannot operate as an FBO provider at the airport, i.e., how it did not receive the FBO contract.

To prevail on an equal protection claim, a plaintiff, in addition to showing that it was deprived of a constitutionally protected property interest, must also prove that it was treated differently from other similarly situated entities.  Holt Cargo Sys., Inc. v. Delaware River Port Auth., 20 F. Supp. 2d 803, 825 (E.D. Pa. 1998) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). Similarly, "a person bringing an action under the Equal Protection Clause must show intentional

- 13 -

discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." Holt Cargo Sys., Inc., 20 F. Supp. 2d at 825 (quoting Huebschen v. Department of Health & Social Serv., 716 F.2d 1167, 1171 (7th Cir. 1983)). Stambaugh's has not plead these elements.

"The first step in an equal protection analysis is to ascertain whether the plaintiffs were treated differently than similarly situated entities." Id. at 826.    In the Holt Cargo case the plaintiff argued that their competitors were given preferential contract terms and conditions that provided the competitors with an unfair competitive advantage. Id. Despite this, the Court found that there was not different treatment under these circumstances because "a governmental agency offer of different lease or contract terms to different entities . . . is not discriminatory treatment under the Equal Protection Clause." Id. at 827.  Stambaugh's situation is the same.

Stambaugh's main complaint is that its competitor was not required to pay rent. This is a contract term.    Thus, even assuming that this allegation is true, it at worse means that Stambaugh's competitor had a different contract than Stambaugh's. Pursuant to Holt Cargo, this is not an equal protection violation.

Even if it is determined that Stambaugh's was treated differently than a similarly situated entity, Stambaugh's must also "show that defendants acted irrationally." Id.  "Government action related to business or commercial activity is accorded deference because it does not involve a suspect class." Id. Likewise, "[a]n interest in maximizing revenues or encouraging the development of competing private enterprises is a legitimate and rational purpose." Id.  "A governmental agency may seek to encourage other private businesses in order to encourage other private businesses in order to create competition for existing private companies and prevent the formation of a monopoly." Id.  Finally, the "mere fact that a governmental entity harbored an

invidious intent does not result in a violation of equal protection when the agency had other legitimate reasons to act." Id. at 828. In other words, dismissal of an equal protection claim is appropriate where "the court can hypothesize plausible reasons for legislation that are within the legitimate goals of government. . . ." Illinois Health Care Assoc. v. Illinois Dep't of Pub. Health, 879 F.2d 286, 289 (7th Cir. 1989)(quoting Evans v. City of Chicago, 873 F.2d 1007, 1016 (7th Cir. 1989) and citing United States R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 179 (1980)). Dismissal is appropriate in such situations irrespective of "whether the reasons advanced actually motivated" the action. Id.

In the instant action, the two disparate actions alleged by Stambaugh's – allowing AERO to skip a rent payment and asking Stambaugh's employees for identification – both serve legitimate goals of government. First, and as explained in Holt Cargo, allowing AERO to avoid a rent payment can plausibly be related to the Defendants' interest in creating competition at HIA and avoiding the creation of a monopoly. Holt Cargo, 20 F. Supp 2d at 827. Additionally, it is important that there be sufficient FBO services at HIA. As for requesting identification from Stambaugh's employees, security is extremely important at an international airport. As such, it is crucial that employee identification be checked and verified to protect the welfare and safety of the traveling public. Accordingly, Stambaugh's has no equal protection claim because the alleged disparate treatment is rational and related to a legitimate government interest.[5]

---

[5] If this Court dismisses Stambaugh's 1983 claims, this Court must dismiss all of Stambaugh's claims because it would lack supplemental jurisdiction over Stambaugh's remaining state law causes of action. 28 U.S.C. §1367(c)(3).

    3.    **Stambaugh's Due Process and Equal Protection Claims Against the Individual Defendants are Barred by Qualified Immunity**

Stambaugh's federal civil rights claims against Mr. Fleet, Mr. Holdsworth and Mr. McIntosh, in their individual capacities, also fail as a matter of law because they enjoy qualified immunity from such action. In Harlow v. Fitzgerald, 457 U.S. 800 (1982) the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. Thus, there are two elements that initially must be considered: (1) whether Stambaugh's had a "clearly established constitutional right"; and, if so, (2) whether that right was violated. Id.

When a qualified immunity defense is raised, a court must first resolve whether the plaintiff has asserted a violation of a "constitutional right" at all and, only when that issue is resolved affirmatively, need the court determine whether the defendant is entitled to immunity on grounds that the action did not violate a "clearly established constitutional right" of which a reasonable person would have known. See Harlow, 457 U.S. at 818. Specifically, only if the court finds a violation of a clearly established constitutional right, must it determine whether a reasonable person in the public official's position would have known that his actions violated such rights. Anderson v. Creighton, 483 U.S. 635 (1987) (clarifying the objective test announced in Harlow and stating that the public official's subjective beliefs are irrelevant). Whether the plaintiff has asserted a violation of a clearly established constitutional right and the reasonableness of an official's belief that his conduct is lawful are questions of law for the court to decide. Sharrar v. Felsing, 128 F.3d 810, 828 (3d Cir. 1997) (admitting that prior Third Circuit

case law has not always followed the Supreme Court's instructions that the reasonableness of the official's belief is a question of law for the court and not an issue for the jury).

The analysis of the public official's actions or beliefs depends on an assessment of the "'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson, 483 U.S. at 639 (quoting Harlow, 457 U.S. at 818-19). The defense of qualified immunity applies where public officials "of reasonable competence could disagree" about the objective reasonableness of actions, and thus the defense provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The Supreme Court has instructed that the qualified immunity defense should be resolved as early as possible in the litigation. See Mitchell v. Forsyth, 472 U.S. 511 (1985) (emphasizing that Harlow requires pretrial matters such as discovery to be avoided if possible as such inquiries are disruptive of effective government). Accordingly, in D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364 (3d Cir. 1992), the Third Circuit recanted its prior ruling in Black v. Bayer, 672 F.2d 309 (3d Cir. 1982) wherein it stated that the affirmative defense of qualified immunity could not be successfully asserted through a Rule 12 (b)(6) motion. Based on the subsequent Supreme Court case law, the court held that the rule "enunciated" in Black "is no longer viable" and went on to affirm the district court's dismissal of the plaintiff's civil rights claims pursuant to defendants' 12(b)(6) motion on the basis of the qualified immunity defense. D.R., 972 F.2d at 1368 n7. Dismissal here is similarly warranted.

As stated herein, Stambaugh's does not possess a "clearly established constitutional right" in either government contracts or the renewal of a government contract. Rather, it is undisputed that Stambaugh's ability to provide FBO services at HIA was controlled solely by its

- 17 -

contract with SARAA, which Stambaugh's admits expired in January 2000. Stambaugh's fails to allege that its contract contained any provisions requiring SARAA to retain it as an FBO provider after the expiration of the lease terms. Accordingly, Stambaugh's had no guarantee of the continued ability to be an FBO service provider at HIA. In such circumstances, because Stambaugh's had no property interest that was affected by the termination of its FBO contract, it cannot prove the existence of a clearly established constitutional right.

Moreover, even in the event this Court finds that Stambaugh's has alleged a constitutionally protected property right in providing FBO services at HIA, on the facts as alleged, it cannot be said that Stambaugh's possessed a "clearly established" constitutional right to the continuation of its FBO business at HIA. In Anderson, the Supreme Court explained the term "clearly established" for the purposes of the qualified immunity analysis as follows:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson, 483 U.S. at 640 (citations omitted). In conducting this analysis, "the courts are required to conduct more than a generalized inquiry into whether an abstract constitutional right is implicated." Gruenke v. Seip, No. 97-5454, 1998 U.S. Dist. LEXIS 16439 (E.D. Pa. October 21, 1998)(attached hereto as Exhibit "D"). Where substantially similar caselaw on point is lacking, the Third Circuit has held that the law cannot be said to be clearly established. Id. at *6 (citing Johnson v. Horn, 150 F.3d 276, 286 (3d Cir. 1998); Sharrar v. Felsing, 128 F.3d 810, 828-829 (3d Cir. 1997); and Pro v. Donatucci, 81 F.3d 1283, 1292 (3d Cir. 1996)). In such cases, the public official is entitled to the qualified immunity defense. Sharrar, 128 F.3d at 829 (holding

- 18 -

that the police officer defendants were protected by qualified immunity where the law regarding protective sweeps incident to arrests made outside of the home was not clearly established).

In the present case, there simply cannot be any dispute that a reasonable public official in the same position as the individual defendants could have believed that the failure to renew a municipal authority's contract with an FBO provider, by its terms, was anything but lawful. Based on the case law discussed above regarding the non-existence of a constitutionally protected property interest in government contracts, Mr. Fleet, Mr. Holdsworth and Mr. McIntosh, as a matter of law, reasonably could have believed that their actions regarding Stambaugh's FBO contract were permissible under the existing law. Contrary case law than that presented herein is lacking. Therefore, should this Court decide a constitutional right exists in this case, the law cannot be said to be "clearly established". Consequently, whether Stambaugh's possesses a constitutionally protected property right or not, the application of the qualified immunity defense is proper in this case, compelling the dismissal of Stambaugh's Due Process and Equal Protection claims against Mr. Fleet, Mr. Holdsworth and Mr. McIntosh.

**4.    Stambaugh's State Due Process and Equal Protection Claims Are Barred Because There Is No Private Right of Action for Violations of The Pennsylvania Constitution**

Stambaugh's claims under the Pennsylvania Constitution are barred because there is no analogous statute to Section 1983 providing for private actions for damages of alleged state constitutional violations. Count II of Stambaugh's Complaint alleges a claim for money damages based on Defendants' alleged violation of Stambaugh's due process rights guaranteed by Article I, Section 1, of the Pennsylvania Constitution. In Count IV of its Complaint, Stambaugh's seeks the same relief for violation of the equal protection rights guaranteed by Article I, Sections 1 and

26, and Article III, Section 32, of the Pennsylvania Constitution.  There is not, however, a private right of action for money damages for alleged violations of the Pennsylvania Constitution.

The Pennsylvania Supreme Court has explained that if a constitutional provision is self-executing, that is, the constitutional provision itself provides for a private right of action.  "no further legislation is necessary to vest these rights in the people." <u>Commonwealth v. National Gettysburg Battlefield Tower, Inc.</u>, 454 Pa. 193, 198, 311 A.2d 588, 590 (1973).   Generally, protections provided for in the Pennsylvania Constitution are not self-executing and thus there is no private right of action for damages for violations thereof.  <u>See</u> <u>Sabatini v. Reinstein</u>, No. 99-2393, 1999 U.S. Dist. LEXIS 12820, *7 (E.D. Pa. August 20, 1999)[6] (stating "[a]lthough its courts have not decided whether a private cause of action exists under sections 7 and 20 of the Pennsylvania Constitution, federal courts have held that there is no such right"); <u>Holder v. City of Allentown</u>, No. 91-240, 1994 U.S. Dist. LEXIS 7220, *11-12 (E.D. Pa. May 27, 1994)[7] (stating "the Court concludes that no cause of action exists under article I, section 7"); <u>Lees v. West Greene Sch. Dist.</u>, 632 F. Supp. 1327, 1335 (W.D. Pa. 1986) (declining to find a "private right of action for violations of an individual's right to free speech"); <u>Western Pa. Socialist Workers v. Connecticut Gen. Life Ins. Co.</u>, 335 Pa. Super. 493, 501, 485 A.2d 1, 5 (1984); <u>Pendress v. Chatham College</u>, 386 F. Supp. 341, 344 (W.D. Pa. 1974); <u>Brown v. Commonwealth</u>, 453 Pa. 566, 572, 305 A.2d 868, 871 (1973), <u>rev'd</u> <u>on other grounds</u>, <u>Mayle v. Commonwealth</u>, 479 Pa. 384, 399, 388 A.2d 709, 716 (1978) (expressly determining that "Article I, Section 11 is not self-executing"); <u>Kelley v. Keiser</u>, 340 Pa. 59, 63, 16 A.2d 307

---

[6] Attached hereto as Exhibit "E".

[7] Attached hereto as Exhibit "F".

(1940) (stating Article V, Section 12 "has been held not to be self-executing"); Bell v. Aubel, 151 Pa. Super. 569, 571, 30 A.2d 617, 618 (1943) (finding Article 16, § 7 of the Pennsylvania Constitution "is not self-executing. . . and the enforcement of the constitutional prohibition must be pursuant to and in accordance with the statutory provisions implementing it").

Defendants have uncovered only one case for a violation of the Pennsylvania Constitution in which a private right of action for money damages was permitted to proceed. Harley v. Schuylkill County, 476 F. Supp. 191 (E.D. Pa. 1979). This decision, however, goes against the great weight of authority both in the federal and state courts that there is no private right of action under the Pennsylvania Constitution, and improperly expands the holding of the 1903 decision of the Pennsylvania Supreme Court it relies upon.

The court in Harley based its decision on Erdman v. Mitchell, 207 Pa. 79, 56 A. 327 (1903). In Erdman, plaintiffs, a group of plumbers organized as a trade union, sought injunctive relief against defendants, another union that utilized intimidation and other unlawful means to prevent plaintiff from obtaining employment. Id. Plaintiffs attempted to invoke the Pennsylvania Constitution "to prevent further intimidation of those who would otherwise employ them, they seek by this suit to restrain defendants from future acts of intimidation." Id. The Court granted the **injunction**, finding that this Constitutional provision was self-executing, and created a private right of action. Id. The Harley court, without addressing the numerous cases holding to the contrary, expanded the Erdman decision to include claims for money damages. However because the Harley decision is an unwarranted expansion of Erdman and ignores the weight of authority that there is not a private right of action for violations of the Pennsylvania Constitution, this Court should dismiss Stambaugh's claim for damages which are premised on the Pennsylvania Constitution.

- 21 -

5. **Stambaugh's State Due Process and Equal Protection Claims Fail To Allege A Constitutionally Protected Property Right**

While there exists no private right of actions for damages for violations of the Pennsylvania Constitution, when Courts have examined the constitutionality of legislation or other governmental actions under the Pennsylvania Constitution, the analysis employed for state due process and equal protection claims is the same as that for federal claims. See Kaehly v. City of Pittsburgh, 988 F. Supp. 888 n. 1, n. 5 (W.D. Pa. 1997); Dansby v. Thomas Jefferson Univ. Hosp., 424 Pa. Super. 549, 556, 623 A.2d 816, 820 (1993). Thus, Stambaugh's claims under the Pennsylvania Constitution should be dismissed for the same reasons outlined above in connection with the claims under the United States Constitution.

C. **STAMBAUGH'S FAILS TO STATE A CLAIM FOR CONSPIRACY (COUNT V)**

The crux of Stambaugh's conspiracy claim is its belief that the Defendants "agreed not later that [sic] November 1999 to force Stambaugh's out of the FBO business at HIA." (Complaint, ¶177). Nowhere in the Complaint does Stambaugh's explain what specific torts the Defendants conspired to violate. Rather the Complaint focuses entirely on the Defendants' failure to award an FBO contract to Stambaugh's according to the terms of the RFQ, (Complaint, ¶¶178-180, 185, 186), and the Defendants' failure to award Stambaugh's a lease for the AMP Hangar, (Complaint, ¶¶181-184). Stambaugh's claims that statements were made to its customers that Stambaugh's would not receive an FBO contract before the official announcement. (Complaint, ¶¶182, 183). The ultimate conclusion, however, with respect to alleged damages and the alleged conspiracy, is contained in Paragraph 187 of the Complaint,

which provides, "As a result of the conspiracy, Stambaugh's has lost customers and substantial income due to its inability to provide FBO services at HIA."

To prevail on a claim for civil conspiracy, there must be "a separate underlying tort as a predicate for liability." In re Orthopedic Bone Screw Prod. Liab. Litig., 193 F.3d 781, 789 (3d Cir. 1999). There is no indication in Stambaugh's Complaint what underlying torts the Defendants conspired to commit. Absent such an allegation, there can be no conspiracy claim. Instead, a close reading of the Complaint leads to the conclusion that Stambaugh's is making a **separate** tort claim that the Defendants conspired and decided not to award an FBO contract to Stambaugh's. Since a conspiracy claim requires a predicate tort and is not itself a distinct tort, Stambaugh's conspiracy count should be dismissed.[8]

In addition, it is well established that a business entity cannot conspire with its employees and/or agents. See, e.g., Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 212-13, 412 A.2d 466, 470 (1979). Here, it is alleged that SARAA was the entity that awarded the FBO contracts. (Complaint, ¶¶38-46; Exhibit A). It is also alleged that SARAA made its decision "in conjunction with BAA, Fleet, Holdsworth and McIntosh". (Complaint, ¶¶38, 46-51). BAA, Mr. Fleet, Mr. Holdsworth and Mr. McIntosh are all employees or agents of SARAA.

Mr. Holdsworth and Mr. McIntosh are respectively SARAA's executive director and chairman of the board. (Complaint, ¶¶5, 6). BAA "manages HIA on behalf of SARAA." (Complaint, ¶3). Mr. Fleet is "the Airport Director of HIA and an employee of BAA." (Complaint, ¶4). Since BAA, Mr. Fleet, Mr. Holdsworth and Mr. McIntosh are either agents or

---

[8] Additionally, as outlined in this Brief, Stambaugh's underlying predicate tort claims should be dismissed. As such, the conspiracy claim should be dismissed.

employees of SARAA there can be no conspiracy between the Defendants and the conspiracy claim should be dismissed.

## D.    STAMBAUGH'S FAILS TO STATE A CLAIM FOR VIOLATION OF THE PENNSYLVANIA MUNICIPAL AUTHORITIES ACT (COUNT IV).

Stambaugh's Complaint also fails to state a claim under the Municipal Authorities Act of 1945, 53 P.S. § 306 et seq. (the "Act") and, therefore, Count VI must be dismissed.[9] Stambaugh's contends that SARAA has violated Section 306A(b)(2) of the Act by:    (1) interfering with Stambaugh's attempt to purchase the AMP Hangar so that Stambaugh's could continue to provide FBO services; (2) refusing to lease the AMP Hangar to Stambaugh's and leasing the hangar to another; and (3) refusing to permit Stambaugh's to provide FBO services at HIA.    (Complaint, ¶¶ 209-211.)    Such actions, according to Stambaugh's, have duplicated or competed with Stambaugh's existing FBO business in violation of the Act.    Id.

The Act authorizes the creation of municipal authorities, defined as a "body or board authorized by law to enact ordinances or adopt resolutions for the particular municipality."    53 P.S. § 302(d).    The statute sets forth the method of incorporation for these authorities, their purposes and powers, authorizes the issuance of municipal bonds, and otherwise defines the scope of municipal authority in the Commonwealth. 53 P.S. § 301 et seq.

Section 306A(b)(2), provides a limitation on the exercise of the powers granted to municipal authorities under the Act:

---

[9] Actions of municipal officials "are presumed to be valid and in compliance with the Act." Northeast Jet Center, Ltd. v. Lehigh-Northampton Airport, No. 90-1262, 1996 U.S. Dist. LEXIS 11177 (E.D. Pa. August 1, 1996) (citing Helmerick Drive-It-Yourself v. Erie Mun. Airport Auth., 149 Pa. Commw. 1, 3-4, 612 A.2d 562, 564 n.2 (1992) and attached hereto as Exhibit "G").  As explained more fully herein, Stambaugh's has failed to overcome this presumption despite the numerous allegations in its Complaint.

(2) The purpose and intent of this act being to benefit the people of the Commonwealth by, among other things, increasing their commerce, health, safety and prosperity, and not to unnecessarily burden or interfere with existing business by the establishment of competitive enterprises, none of the power granted by this act shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project or projects which in whole or in part shall duplicate or compete with existing enterprises serving substantially the same purposes.

53 P.S. § 306A(b)(2).

Pennsylvania courts consistently have held that a municipal authority violates the Act when it directly duplicates or competes with an existing enterprise. See Evansburg Water Co. v. Perkiomen Township, 131 Pa. Commw. 89, 569 A.2d 428 (1990). In addition, the Act is violated when the authority participates in construction, financing, improvement maintenance, extension or operation of a "project" or "projects" "serving substantially the same purposes."

Stambaugh's, however, does not, and cannot, allege that SARAA has directly competed with or duplicated Stambaugh's business by operating an FBO service itself at HIA. Stambaugh's also does not assert that SARAA participated in a "project" or "projects" that served substantially the same purpose as Stambaugh's. Rather, Stambaugh's arguments all flow from SARAA's alleged refusal to lease the AMP Hangar to Stambaugh's and SARAA's non-renewal of Stambaugh's FBO contract. These actions concern SARAA's ability to contract with entities serving HIA and not, as Stambaugh's would have this Court believe, issues of impermissible competition by a municipal authority.

A municipal authority's termination of a contract with an existing service provider and subsequent entry into a contract with a new provider does not constitute impermissible competition under Section 306A(b)(2) of the Act. In Beaver Falls Municipal Authority v. Municipal Authority of the Borough of Conway, 689 A.2d 379 (Pa. Commw. 1997), Beaver

Falls Municipal Authority ("Beaver Falls") argued that Ambridge Authority ("Ambridge") violated the Act by supplying water to Conway Authority ("Conway") pursuant to a new contract which had in the past been awarded to Beaver Falls. Disagreeing with Beaver Falls, the court distinguished between the right to protection from non-competition under the Act where the right to provide water service is identified in the enabling legislation and where the right is acquired by way of contract. Beaver Falls, 689 A.2d at 383. Since Beaver Falls' ability to provide water services to Conway was derived from a contract with Conway, the court concluded that Conway was free to terminate the contract and enter into a contract with another provider. Id. According to the court, the rights and duties of contracting parties are limited by the terms of the contract and such rights cannot be extended or expanded by the Act. Id.; see also Highridge Water Auth. v. Lower Indiana County Mun. Auth., 689 A.2d 374 (Pa. Commw. 1997) (finding that where the right to provide service is fixed by a contract, the provisions of the contract govern rather than the provisions of the Act).

Here, as in Beaver Falls, Stambaugh's "right" to continue as an FBO service provider was derived from its contract with SARAA which expired in January 19, 2000. (Complaint, ¶ 16). Moreover, as the owner/lessor of the AMP Hangar, SARAA was, and is, free to lease the Hangar to whomever it chooses.

Even assuming, however, that SARAA's actions with regard to leasing the AMP Hangar could be viewed as a direct entry by SARAA into the FBO business, decisions under Section 306A(b)(2) are clear that "[t]his clause of the statute is phrased in the present tense" and must be applied to projects that compete with existing enterprises as opposed to potential enterprises. The Complaint acknowledges that the lease of the AMP Hangar to a new FBO was not entered into until after Stambaugh's FBO status at HIA had terminated in January 2000. See

(Complaint, ¶¶ 16, 52 and 53). Accordingly, Stambaugh's was no longer an existing FBO at HIA at the time of any alleged competition stemming from SARAA's lease of the AMP Hangar, and SARAA was free to contract with another entity for those services. See Northeast Jet Center, Ltd., 1996 U.S. Dist. LEXIS 11177 (finding no violation of the Act where plaintiff was no longer an existing FBO at the time of the alleged competition); Evansburg Water Co. v. Perkiomen Township., 131 Pa. Commw. 89, 569 A.2d 428 (1990) (upholding preliminary injunction where the complaining water company, at the time of the lawsuit, did not serve in whole, or in part, the area to be developed); Northampton v. Bucks County. Water & Sewer Auth., 96 Pa. Commw. 514, 508 A.2d 605 (1986) (finding that where plaintiff was not providing services proposed by the project, § 306A(b)(2) of the Act was not implicated).

Thus, Stambaugh's Count IV against SARAA for violation of the Municipal Authorities Act must be dismissed.[10]

---

[10]It is important to note that even if Stambaugh's could establish a cause of action for violation of the Act, it would not be entitled to the damages remedy it seeks for alleged lost income, business interruption expenses, expenses for dismantling and relocating its business and employees, lost productivity, and the costs to construct new facilities. (Complaint, ¶¶ 204-225). An examination of the statutory language establishes the clear legislative intent to preclude a private right of action to recover monetary damages under the Act. As the court in Evansburg Water Co. instructed, Section 306A(b)(2), "by its own terms, is intended to benefit the people of the Commonwealth" generally, rather than a single entity. Evansburg Water Co., 131 Pa. Commw. at 94, 569 A.2d at 430. Additionally, all of the Pennsylvania court decisions addressing Section 306A(b)(2) involved claims for injunctive relief, not monetary damages. See Beaver Falls Mun. Auth., 689 A.2d at 381 (involving a request for preliminary injunction only); Highridge Water Auth., 689 A.2d at 376 (examining suit "for preliminary injunction . . . . contending that the sale of non-emergency water by Central would violate the non-competition clause of § 4A(b)(2) [306A(b)(2)] of the Act. . . . ."); Lower Bucks Cty. Joint Mun. Auth. v. Bristol Twp. Water Auth., 137 Pa. Commw. 415, 586 A.2d 512, (1991) (explaining "[w]ater authority brought action to enjoin competitor from servicing particular area"); Evansburg Water Co. v. Perkiomen Township, 131 Pa. Commw. 89, 569 A.2d 428 (1990) (denying action in which private water company sought "to enjoin township and municipal authority from establishing public water system for planning residential development" based on the non-competition clause in the Act); Bristol Township Water Auth. v. Lower Bucks Cty. Joint Mun. Auth., 130 Pa. Commw. 240, 250, 567 A.2d 110, 114-15 (1989) (appealing grant of "final injunctive relief" for competition in violation of Section 306A(b)(2); and Northampton, Bucks Cty. Mun. Auth. v. Bucks Cty. Water & Sewer Auth., 96 Pa. Commw. 514, 517, 508 A.2d 605, 607 (1986) (involving an action in equity to invalidate agreement alleged to cause competition). Finally, the sole federal case considering Section 306A(b)(2), Northeast Jet Center, Ltd. involved a claim for punitive damages only, not compensatory damages, which was rejected on the basis of Pennsylvania Political Subdivision Tort Claims Act. 1996 U.S. Dist. LEXIS 11177 at *43-*47.

**E.    STAMBAUGH'S FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONSHIPS (COUNT VII).**

In Count VII, Stambaugh's alleges it had "existing contractual relationships with various customers to provide FBO services at IIIA" and that Defendants "intentionally interfered with these relationships for the purpose of harming Stambaugh's." (Complaint, ¶¶227, 229).  The basis for this alleged interference is, as in all of its other claims, based entirely on Stambaugh's disappointment at its failure to obtain an FBO contract and thus entails alleged behavior of the Defendants directed at Stambaugh's and not at Stambaugh's customers.

For example, Stambaugh's alleges that Defendants "interfered with those relationships by refusing to allow Stambaugh's to provide FBO services at HIA out of the Stambaugh's Hangar despite the prohibition on creating exclusive arrangements." (Complaint, ¶231).  Likewise, Stambaugh's claims that Defendants "intentionally interfered with those relationships by refusing to allow Stambaugh's to provide FBO services at IIIA out of the AMP Hangar despite the fact that Stambaugh's was the only entity to satisfy the requirements of the RFQ." (Complaint, ¶232).  While Stambaugh's does allege that the Defendants contacted Stambaugh's customers and informed "them that Stambaugh's would no longer be permitted to provide [FBO] services at HIA before the SARAA board had voted on the question", (Complaint, ¶230), there is no explanation as to how this allegation interfered with Stambaugh's ability to provide FBO services at HIA.  Rather, and as with all the other claims in the Complaint, the reason that Stambaugh's is unable to service its former FBO customers is that it did not receive an FBO contract.  That, however, is not sufficient to support a tortious interference with existing contractual relationship claim.

In Pennsylvania, a claim for tortious interference with existing contractual relationship is premised upon Section 766 of the Restatement (Second) of Torts which "addresses disruptions caused by an act directed not at the plaintiff, but at a third person." Windsor Sec., Inc. v. Hartford Life Ins., 986 F.2d 655, 660 (3d Cir. 1993). Specifically, Section 766 provides:

> One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by **inducing or otherwise causing the third person** not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

(Emphasis added). Stambaugh's Complaint alleges injury not from the Defendants' alleged actions directed at Stambaugh's customers, but rather from the actions allegedly directed at Stambaugh's, i.e., Stambaugh's failure to provide FBO services at HIA. (Complaint, ¶¶230-232). Thus, Stambaugh's tortious interference with existing contractual relationship claim must be dismissed.

Arguably, Section 766A of the Restatement (Second) of Torts does address the situation alleged in Stambaugh's Complaint, namely "disruptions caused by an act directed at the plaintiff: the defendant prevents or impedes the plaintiff's own performance."[11] Windsor Sec., 986 F.2d at 660. The Supreme Court of Pennsylvania and the Third Circuit Court of Appeals, however, have not adopted Section 766A. Gemini Physical Therapy & Rehabilitation, Inc. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 66 (3d Cir. 1994); Allen v. Washington Hosp., 34 F. Supp. 2d 958, 964 (W.D. Pa. 1999). As the Third Circuit stated in Gemini, "we are not persuaded that the Pennsylvania Supreme Court would adopt section 766A, and we see no error in the district court's dismissal of Gemini's section 766A claim." 40 F.3d at 66.

- 29 -

Here, the sole basis for Stambaugh's tortious interference claim is that the Defendants improperly denied Stambaugh's an FBO contract and, as a result, Stambaugh's is unable to provide FBO services to its former customers at HIA. In light of the Third Circuit's decision in Gemini and Windsor Securities that there can be no claim for tortious interference with contract under Pennsylvania law for "disruptions caused by an act directed at the plaintiff", that is "the defendant prevents or impedes the plaintiff's own performance", Stambaugh's tortious interference claim must be dismissed.

### F.  STAMBAUGH'S STATE CAUSES OF ACTION AGAINST SARAA, MR. HOLDSWORTH AND MR. McINTOSH ARE BARRED BY GOVERNMENTAL IMMUNITY

Stambaugh's makes five state law claims against SARAA, SARAA's executive director Mr. Holdsworth and the chairman of SARAA's board of directors Mr. McIntosh: violation of Article I, Section 1 of the Pennsylvania Constitution (Count II); violation of Article I, Sections 1 and 26 and Article III, Section 32 of the Pennsylvania Corporation (Count IV); conspiracy (Count V); violation of the Pennsylvania Municipal Authorities Act (Count VI); and tortious interference with existing contractual relationships (Count VII). These claims, however, are barred by governmental immunity.

---

[11] Section 766A of the Restatement (Second) of Torts provides, "One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him."

### 1.    Claims against SARAA.

The general rule of governmental immunity is that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa.C.S.A. §8541.  SARAA, as "a municipal authority created pursuant to the Municipal Authorities Act of 1945, 53 P.S. § 301, et seq.", (Complaint, ¶2), is a local agency afforded the protection of governmental immunity.  See Weinerman v. City of Philadelphia, 785 F. Supp. 1174, 1178 (E.D. Pa. 1992); Marshall v. Port Auth. of Allegheny County, 106 Pa. Commw. 120, 134-36, 525 A.2d 857, 858-59 (1987).  Once it is determined that a defendant is a local agency, "[t]he only remaining question . . . is whether [the] entity is subject to liability because of the exceptions to governmental immunity set forth in the Political Subdivision Tort Claims Act."  Weinerman, 785 F. Supp. at 1179.

The Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §8542, provides a narrow range of exceptions to governmental immunity.  The exceptions provided in Section 8542(b) relate to vehicle liability; the care, custody or control of personal property; real property; trees, traffic controls and street lighting; utility service facilities; streets; sidewalks; and the care, custody or control of animals.  42 Pa.C.S.A. § 8542(b).  Additionally, to fall within these exceptions, the injury must be "caused by the negligent acts of the local agency or an employee thereof . . ."  42 Pa.C.S.A. §8542(a)(2).  Since none of the Section 8542(b) exceptions are applicable here, the state law claims against SARAA are barred by governmental immunity.

First, Stambaugh's Pennsylvania due process and equal protection claims against SARAA are barred by governmental immunity because they do not fall within the Section 8542(b) exceptions and are not negligence based.  See Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 600 (3d Cir. 1998); Crighten v. Schuylkill County, 882 F. Supp. 411, 416 (E.D.

- 31 -

Pa. 1995); Agresta v. Goode, 797 F. Supp. 399, 409 (E.D. Pa. 1992).[12]  Likewise, Stambaugh's

conspiracy claim against SARAA must be dismissed because it is not a negligence based action

and does not fall within the exceptions of governmental immunity.  See E-Z Parks, Inc. v.

Philadelphia Parking Auth., 110 Pa. Commw. 629, 633, 532 A.2d 1272, 1275 (1987).  The

Municipal Authorities Act claim is also barred because it does not fall within the Section 8542(b)

exceptions.  Finally, the tortious interference with contract claim against SARAA is barred by

governmental immunity.  See Id.


### 2.    Claims against Mr. Holdsworth and Mr. McIntosh.

Liability for employees and other individuals associated with local agencies is separately

provided for in Subchapter C of the Political Subdivision Tort Claims Act, which provides,

"[a]n employee of a local agency is liable for civil damages on account of any injury to a person

or property caused by acts of the employee which are within the scope of his office or duties only

to the same extent as his employing local agency and subject to the same limitations imposed by

this subchapter."  42 Pa. C.S.A. § 8545.  In this case, Stambaugh's has made no allegation that

Mr. Holdsworth and Mr. McIntosh were acting outside the scope of their "office or duties".

Accordingly, they are protected by official immunity.

---

[12] Defendants recognize that on the surface there may be a conflict between their argument that there is no private
right of action for violations of the Pennsylvania Constitution and their argument that claims under the Pennsylvania
Constitution are barred by governmental immunity.  This conflict is addressed in Agresta where the Court noted that
"[n]either party has briefed what would appear to be a substantial and complex issue of whether Pennsylvania
recognizes a private right of action for money damages against government officials for violations of the
Pennsylvania Constitution." 797 F. Supp. at 406.  The Agresta Court ignored this oversight and assumed for
purposes of resolving the immunity issue that such an action existed.  Id.  Thus, it appears that these two issues have
not been previously raised in the same case.

In addition, even if it is determined that Stambaugh's has adequately alleged that Mr. Holdsworth and Mr. McIntosh were acting outside the scope of their office or duties, the Pennsylvania Constitutional claims against the individual defendants must be dismissed because Stambaugh's does not allege any willful misconduct or intentional behavior in connection with those claims. <u>See</u> 42 Pa.C.S.A. §8550. Instead the Complaint merely alleges that the defendants, including the individuals, "acted irrationally and without legal justification in depriving Stambaugh's of its due process rights." Complaint, ¶102. As such, official immunity bars the Pennsylvania equal protection and due process claims against Mr. Holdsworth and Mr. McIntosh.

## V.    CONCLUSION

Based upon the foregoing facts and law presented above, Stambaugh's Complaint should be dismissed with prejudice.

Respectfully Submitted,

RHOADS & SINON LLP

By: Dean F. Piermattei
Timothy J. Nieman
Susan E. Schwab
One South Market Square
P. O. Box 1146
Harrisburg, PA 17108-1146
(717) 233-5731
Attorneys for Defendants

Date: May 30, 2000

- 33 -