6·26·00

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STAMBAUGH'S AIR SERVICE, INC.,        :

     Plaintiff      :

     vs.       :  No. 1:CV-00-0660

             :

SUSQUEHANNA AREA REGIONAL AIRPORT :  (Judge Kane)
AUTHORITY, BAA HARRISBURG, INC.,  :  (Magistrate Smyser)
DAVID FLEET, individually, DAVID   :
HOLDSWORTH, individually, and DAVID C. :
MCINTOSH, individually      :

             :

     Defendants     :

## BRIEF OF PLAINTIFF STAMBAUGH'S AIR SERVICE, INC.
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

THOMAS B. SCHMIDT, III (19196)
BRIAN P. DOWNEY (59891)
RANDY L. VARNER (81943)
KELLY ANN RYAN (84096)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
Post Office Box 1181
Harrisburg, PA  17108-1181
(717) 255-1155
(717) 238-0575 (Fax)

Attorneys for Plaintiff
Stambaugh's Air Service, Inc.

Date:  June 23, 2000

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   COUNTER STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  QUESTIONS INVOLVED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Stambaugh's has stated a claim for relief under section 1983 . . . . . . 8

            1.    Defendants' systematic, arbitrary and irrational scheme to
                  preclude Stambaugh's from continuing to provide FBO
                  services at HIA is a violation of Stambaugh's right to
                  substantive due process. . . . . . . . . . . . . . . . . . . . . . . . . . 8

                  a.    Stambaugh's has pleaded fundamental property
                        interests which implicate its substantive due process
                        property rights . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                  b.    Stambaugh's has pleaded a protectable liberty
                        interest implicating its rights to substantive due
                        process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                  c.    Stambaugh's has pleaded arbitrary and irrational
                        conduct on the part of defendants which violate
                        its right to substantive due process . . . . . . . . . . . . . . 16

            2.    Taking all well-plead allegations in the complaint as
                  true, defendants have violated Stambaugh's right to equal
                  protection under the 14th Amendment. . . . . . . . . . . . . . . . . 20

B.    The individual defendants are not entitled to qualified immunity because their actions violated clearly established constitutional rights of which a reasonable person would have known, and defendants knew or should have known their actions would violate Stambaugh's rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

C.    The Pennsylvania Constitution provides Stambaugh's with a private right of action against all defendants for its due process and equal protection claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    1.    Stambaugh's claims arising under the Pennsylvania Constitution against the defendants are not barred by the Political Subdivision Torts Act . . . . . . . . . . . . . . . . . . . . . . . 30

D.    Stambaugh's has stated a claim for SARAA's violation of the Pennsylvania Municipality Authorities Act of 1945 . . . . . . . . . . . 31

    1.    The Pennsylvania Municipality Authorities Act of 1945, 53 P.S. § 301, *et seq.*, prohibits activities like those in which SARAA has engaged . . . . . . . . . . . . . . . . . . . . . . . . . . 31

    2.    Stambaugh's had an existing FBO business when SARAA took its improper actions . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

E.    Stambaugh's has stated a claim for conspiracy . . . . . . . . . . . . . . . 37

    1.    Stambaugh's has pleaded a *prima facie* conspiracy case . . . . 37

    2.    SARAA has conspired with BAA, Fleet, Holdsworth and McIntosh. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

F.    Stambaugh's has stated a claim for tortious interference with existing contractual relationships . . . . . . . . . . . . . . . . . . . . . . . . . 41

G.    The defendants are not entitled to governmental or official immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

1.  SARAA is not entitled to governmental immunity for all
    of the claims made against it. . . . . . . . . . . . . . . . . . . . . . . . . . 43

2.  Defendants Holdsworth and McIntosh are not entitled to
    official immunity for their intentional and willful acts. . . . . . 44

V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

# TABLE OF AUTHORITIES

## FEDERAL CASES

Acierno v. Cloutier, 40 F.3d 597 (3d Cir. 1994) ..................................................... 24

Agresta v. Goode, 797 F. Supp. 399 (E.D. Pa. 1995) ........................................... 31

Anderson v. Creighton, 483 U.S. 635 (1987) ........................................................ 23

Beidleman v. Stroh Brewing Co., 182 F.3d 225 (3d Cir. 1999) ..................... 41, 42

Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S.
     388 (1971) ........................................................................................................ 29

Chapman v. United States, 500 U.S. 453 (1991) ................................................... 20

Coffman v. Wilson Police Department, 739 F. Supp. 257 ........................ 28, 30, 31

Colburn v. Upper Darby Township, 838 F.2d 663 (3d Cir. 1988) ..................... 2, 7

Crighten v. Schuykill County, 882 F. Supp. 411 (E.D. Pa. 1995) ........................ 31

DeBlasio v. Zoning Board of Adjustment, 53 F.3d 592 (3d Cir.
1995) ................................................................................................. 11, 12, 25,26

Erdman v. Mitchell, 207 Pa. 79, 56 A. 327 (1903) ............................................... 29

Gemini Physical Therapy v. State Farm Mutual Automobile, 40 F.3d 63 (3d Cir.
     1994) ................................................................................................................. 42

Hampton v. Mow Sun Wong, 426 U.S. 88 (1976) ................................................. 15

Harley v. Schuykill County, 476 F. Supp. 191 (E.D. Pa. 1979) ..................... 28, 29

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ........................................................... 23

Hoffman v. Lehman, 926 F. Supp. 510 (M.D. Pa. 1996) ................................... 8, 15

Holt Cargo Systems, Inc. v. Delaware River Port Authority, 1996 U.S. Dist.
     LEXIS 5323 (E.D. Pa. April 19, 1996)(bound separately as Exhibit C) ......... 17

Holt Cargo Systems, Inc. v. Delaware River Port Authority, 1997 U.S. Dist. 18073
     (E.D. Pa. Nov. 14, 1997)(Holt II)(bound separately as Exhibit D) ............... 18

Holt Cargo Systems, Inc. v. Delaware River Port Authority, 20 F. Supp. 2d 803
     (E.D. Pa. 1998) ........................................................................................ 21

Homar v. Gilbert, 63 F. Supp. 559 (M.D. 1999) .................................................... 16

Irvin v. Borough of Darby, 937 F. Supp. 446 (E.D. Pa. 1996) ............................. 44

Kaehly v. City of Pittsburgh, 988 F. Supp. 888 (M.D. Pa. 1997) ......................... 30

Karnes v. Krutski, 62 F.3d 486 (3d Cir. 1995) ................................................. 25, 27

Lindsay v. Kvortek, 865 F. Supp. 264 (W.D. Pa. 1994) ......................................... 7

Meyer v. Nebraska, 262 U.S. 390, 67 L. Ed. 1042, 43 S. Ct. 625 (1923) ............ 15

Midnight Sessions v. City of Philadelphia, 954 F.2d 667 (3d Cir. 1991) ............ 10

Neiderhiser v. Borough of Berwick, 840 F.2d 213 (3d Cir. 1988) ................. 13, 14

Northeast Jet Center, 1996 U.S. Dist. LEXIS at 42 ................................... 36, 37, 43

Northeast Jet Center, Ltd. v. Lehigh-Northampton Airport, No. 90-1262, 1996
     U.S. Dist. LEXIS 11177 (E.D. Pa. August 1, 1996)(citing Helmerick

Northeast Jet Center v. Lehigh-Northampton Airport Authority, 767 F. Supp. 672
     (E.D. Pa. 1991) .......................................................................................... 21

In re Orthopedic Bone Screw Products, 193 F.3d 781 (3d Cir. 1999) ............ 38, 39

Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685
 (3d Cir. 1993) .................................................... 8, 13, 14, 16, 17, 18, 19

Queen City Aviation, Inc. v. City of Allentown, 1992 U.S. Dist. LEXIS 9042
 (E.D. Pa. 1992) ....................................................................... 10

Rental Guide, Inc. v. Brown, 1997 U.S. Dist. LEXIS 1025 (E.D. Pa.
Feb. 5, 1997) .................................................................... 10, 19

Sameric Corp. v. City of Philadelphia, 142 F.3d 582 (2d Cir. 1998) ............ 30, 31

Sammon v. New Jersey Board of Medical Examiners, 66 F.3d 639 (3d Cir. 1995)16

Santos v. City of Houston, 852 F. Supp. 601 (S.D. Tex. 1994) ........................ 8, 15

Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997) ........................................ 24, 25, 28

Tyler v. O'Neill, 994 F. Supp. 603 (E.D.Pa. 1998) ................................................. 40

Vartan v. Susquehanna Twp., No. 1:CV-98-1944 (M.D. Pa. February 25, 2000)
 ................................................................................................ 24, 25, 26

Wilkerson v. Sutton, 699 F.2d 325 (6th Cir. 1983) ........................................ 10, 19

Windsor Securities, Inc. v. Hartford Life Insurance Co., 986 F.2d 655 (3d Cir.
 1993), cited by ........................................................................... 42

Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118 (3d Cir. 2000) .. 8, 9, 10,  11

## STATES CASES

Beaver Falls Municipal Authority v. Municipal Authority of the Borough of
 Conway, 689 A.2d 379 (Pa. Commwlth.  1997) ................................... 33, 34, 43

City of Philadelphia v. Glim, 613 A.2d 613 (Pa. Commwlth. 1992) .................... 44

Commonwealth v. Edmunds, 586 A.2d 887 (Pa. 1991) ......................................... 30

Delate v. Kolle, 667 A.2d 1218 (Pa. Commwlth. 1995), *appeal denied*, 678 A.2d
    367 (Pa.1995) ................................................................................................. 44

Evansburg Water Co. v. Perkiomen Twp., 569 A.2d 428 (Pa. Commwlth.
1990) .............................................................................................................. 35, 43

Hartford Accident and Indemnification Co. v. Insurance Commissioner, 482 A.2d
    542 (Pa. 1984) ............................................................................................... 28

Highridge Water Authority v. Lower Indiana County Municipal Authority, 689
    A.2d 274 (Pa. Commwlth. 1997) .................................................................. 34

Holland Enterprises, Inc. v. Joka, 439 A.2d 876 (Pa. Commwlth. 1982) ............ 28

Kuzel v. Krause, 658 A.2d 856 (Pa. Commwlth. 1995) ....................................... 44

Northampton v. Bucks County Water & Sewer Authority, 508 A.2d 605 (Pa.
    Commwlth. 1986) ...................................................................................... 35, 36

Drive-it-Yourself v. Erie Mun. Airport Authority, 612 A.2d 562, 564 n.2
(Pa. Commwlth. 1992) ................................................................................... 33

Skipworth by Williams v. Lead Industries Association, Inc., 547 Pa. 224, 690 A.2d
169 (1997) ................................................................................................... 37, 38

Williams v. City of Pittsburgh, 531 A.2d 42 (Pa. Commwlth. 1987) ................... 28

## FEDERAL AND STATE STATUTES

42 U.S.C. § 1983 ................................................................................................... 8

42 Pa.C.S. §§ 8541, *et seq.*, ................................................................... 30, 37, 43,44

42 Pa.C.S. § 8550 ............................................................................................ 44, 45

49 U.S.C. §§ 47107(a)(4) and (5) ........................................................ 3, 18, 26,27

53 P.S. § 301, et seq., ...................................................................................... 31, 32

53 P.S. § 306(A)(b)(2) ............................................................................. 32, 33, 34, 35

## I.    INTRODUCTION

Plaintiff Stambaugh's Air Service, Inc. ("Stambaugh's"), by its undersigned attorneys, files this brief in opposition to the motion to dismiss of defendants Susquehanna Area Regional Airport Authority ("SARAA"), BAA Harrisburg, Inc. ("BAA"), David Fleet ("Fleet"), David Holdsworth ("Holdsworth"), and David C. McIntosh ("McIntosh") (collectively "defendants"). Defendants respond to the complaint by setting up a strawman and then attempting to knock him down. Defendants attempt to cast Stambaugh's as merely a disappointed bidder, and argue that, as such, it has no rights which defendants could have violated. But this is not a case about a disappointed bidder. It is about a group of defendants who have engaged in a calculated scheme to destroy Stambaugh's longstanding fixed base operator ("FBO") business at Harrisburg International Airport ("HIA"). To further this scheme, defendants have illegally created an exclusive FBO, have violated Stambaugh's federal and state constitutional rights, have violated the Pennsylvania statute governing municipal authorities, and have tortiously interfered with Stambaugh's business relationships. Because that conduct gives rise to liability of each of the defendants, their motion to dismiss must be denied.

## II.    COUNTER STATEMENT OF FACTS

In considering defendants' motion to dismiss, all well-pled facts in the complaint must be accepted as true.  Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988).  As set forth in the complaint, Stambaugh's has operated continuously as a tenant at HIA since 1975, during which time it has engaged in the business of providing FBO services, including fueling, to aircraft landing at HIA.  (Complaint ¶ 9).  Stambaugh's provided the FBO services out of the hangar that it currently leases from SARAA, and which it had previously leased from the Commonwealth of Pennsylvania.  (Complaint ¶ 10).  As an FBO provider at HIA, Stambaugh's always met or exceeded the minimum standards for FBOs developed by the Commonwealth of Pennsylvania, which were incorporated into Stambaugh's lease with SARAA (Complaint ¶¶ 13-15).

Stambaugh's had a lease agreement with SARAA that terminated on January 19, 2000.  (Complaint ¶ 16).  While negotiating a new lease for Stambaugh's, defendants refused to offer Stambaugh's any lease that would permit it to continue to provide FBO services at HIA, despite the fact that they were statutorily prohibited from doing so.  (Complaint ¶ 19).  Defendants permitted another FBO provider, AERO, to continue to operate as an FBO (Complaint ¶ 21)

-2-

and, ultimately, permitted another FBO provider, Piedmont Hawthorne, to operate at HIA. (Complaint ¶ 62). Defendants used harassment and intimidation as tools to drive Stambaugh's out of HIA to create an exclusive FBO arrangement which is specifically prohibited by 49 U.S.C. §§ 47107(a)(4) and (5). (Complaint ¶¶ 16-29).

SARAA purchased a hangar formerly owned by the AMP Corporation ("AMP Hangar") to lease it to an entity to provide FBO services out of the hangar. (Complaint ¶ 37). As part of this process, SARAA issued a Request for Qualifications from FBO service providers on October 5, 1999 ("RFQ"). The RFQ required proposers to attend a pre-submission conference and tour (Complaint ¶¶ 39-41), and required proposals to be submitted by 4:00 p.m. EST on November 2, 1999. (Complaint ¶ 42). The RFQ was explicit that "ATTENDANCE AT THIS [pre-submission] MEETING IS MANDATORY IN ORDER FOR YOUR COMPANY TO BECOME A CANDIDATE FOR CONSIDERATION" for the AMP Hangar. (Complaint ¶ 40). Stambaugh's was the only entity that complied with both requirements. (Complaint ¶ 45). Despite the fact that Stambaugh's was the only bidder to qualify under the process established by defendants, defendants ignored their own requirements and refused to permit Stambaugh's to provide FBO services at the AMP Hangar. (Complaint ¶

46). Defendants then secretly solicited and accepted proposals which did not comply with the RFQ to ensure that Stambaugh's would not be able to lease the AMP Hangar. (Complaint ¶ 50). Moreover, these non-conforming proposals were conditioned on the requirement that defendants force Stambaugh's out of the FBO business at HIA. (Complaint ¶ 51). In other words, SARAA accepted bids which were submitted only because defendants promised those bidders that Stambaugh's FBO business would be driven out by HIA. Defendants made this promise when (1) Stambaugh's had an ongoing FBO business in the Stambaugh's Hangar, and (2) Stambaugh's had submitted the only qualifying bid on the RFQ process to provide FBO services out of the AMP Hangar. Defendants kept that promise and destroyed Stambaugh's FBO business.

The result of defendants' conduct was to create an unlawful exclusive FBO arrangement at HIA and, in the process, deprived Stambaugh's various rights by destroying its FBO business. It is that conduct which is the subject of suit.

## III.  QUESTIONS INVOLVED

1.    Whether this Court should deny defendants' motion to dismiss Stambaugh's due process and equal protection claims where Stambaugh's has alleged deprivations of property and liberty interests, together with equal protection interests, that are entitled to constitutional protection?

Suggested answer:  YES.

2.    Whether this Court should reject defendants' claim of qualified immunity where the defendants violated Stambaugh's clearly established constitutional rights and a reasonable person in the positions of the defendants would have known, or should have known, that his or her actions would violate those clearly established constitutional rights?

Suggested answer:  YES.

3.    Whether this Court should deny defendants' motion to dismiss Stambaugh's due process and equal protection claims under the Pennsylvania Constitution where Stambaugh's has adequately stated that defendants have violated provisions of the Pennsylvania Constitution and the law permits private causes of action for violations of the Pennsylvania Constitution?

Suggested answer:  YES.

-5-

4.     Whether this Court should reject defendants' claim that they are entitled to governmental or official immunity for all of their constitutional violations where the legislature is powerless to grant immunity for constitutional violations?

Suggested answer:  YES.

5.     Whether this Court should deny defendants' motion to dismiss Count V of the complaint where Stambaugh's has pled a *prima facie* case of conspiracy and alleged attendant torts and unlawful acts as predicates to the conspiracy?

Suggested answer:  YES.

6.     Whether this Court should deny defendants' motion to dismiss Count VI of the complaint where Stambaugh's has stated a *prima facie* claim under the Pennsylvania Municipality Authorities Act of 1945 in its allegations of unlawful competitive practices on the part of SARAA?

Suggested answer: YES.

7.     Whether this Court should deny defendants' motion to dismiss Count VII of the complaint where Stambaugh's has pled a *prima facie* case of tortious interference with existing contractual relationships in its allegations that

the defendants have intentionally interfered with its existing contractual

relationships?

        Suggested answer:  Yes.

        8.     Whether this Court should reject defendants' assertion of

governmental and official immunity pursuant to the Pennsylvania Political

Subdivisions Torts Act where defendants' tortious and otherwise improper acts

were willful and intentional, and where SARAA is entitled to no governmental

immunity for violations of the Pennsylvania Municipality Authorities Act of

1945?

        Suggested answer:  Yes.

## IV.   ARGUMENT

        For the purposes of evaluating defendants' motion to dismiss, this

Court must accept all well-pled allegations in the complaint as true, construe the

complaint in the light most favorable to plaintiff, and determine whether under any

reasonable reading of the Complaint plaintiff may be entitled to relief.  Colburn v.

Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988).  The question is not

whether a plaintiff will ultimately prevail, but only whether the plaintiff should be

permitted to offer evidence to support its claim.  Lindsay v. Kvortek, 865 F. Supp.

264, 268 (W.D. Pa. 1994). Applying that standard to this case, defendants' motion

to dismiss must be denied.

**A.    Stambaugh's has stated a claim for relief under section 1983.**

**1.    Defendants' systematic, arbitrary and irrational scheme to preclude Stambaugh's from continuing to provide FBO services at HIA is a violation of Stambaugh's right to substantive due process.**

Count I of Stambaugh's complaint states that SARAA, BAA, Fleet,

Holdsworth and McIntosh violated Stambaugh's right to substantive due process

protected by 42 U.S.C. § 1983. It is axiomatic that substantive due process

protects citizens from arbitrary and irrational acts of government. Parkway

Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 692 (3d Cir. 1993).[1] In order to

prevail on a substantive due process claim, Stambaugh's "must establish as a

threshold matter that [it] has a protected interest to which the Fourteenth

Amendment's due process protection applies." Woodwind Estates, Ltd. v.

Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000). That protected interest may be in

the plaintiff's life, liberty or property. Hoffman v. Lehman, 926 F. Supp. 510, 513

(M.D. Pa. 1996); Santos v. City of Houston, 852 F. Supp. 601, 607 (S.D. Tex.

1994). In this case, Stambaugh's must also show that it was the victim of

---

[1]Defendants do not dispute that they are state actors for purposes of analyzing
Stambaugh's constitutional claims.

arbitrary, irrational or improperly motivated government action. <u>Woodwind</u>

<u>Estates</u>, 205 F.3d at 124.

>    **a.    Stambaugh's has pleaded fundamental property
>            interests which implicate its substantive due process
>            property rights.**

While defendants are correct that "Stambaugh's failure to receive a

government contract to operate as an FBO provider is not a constitutionally

protected property interest" (Br. at 7), this statement mischaracterizes the property

interest at issue in this case. Stambaugh's has stated a constitutionally protected

interest in its ability to continue to engage in FBO and maintenance operation

services at HIA, where (1) defendants' own RFQ limited their discretion to award

the AMP Hangar lease to anyone who failed to comply with the terms of the RFQ,

Stambaugh's was the only entity to comply, and defendants nonetheless arbitrarily

and in bad faith accepted the proposal of a non-conforming entity and awarded it

an FBO contract; and (2) defendants arbitrarily and irrationally debarred

Stambaugh's from continuing to engage in FBO services at the hangar

Stambaugh's has leased and from which it had operated as an FBO for more than

25 years despite the fact they were specifically prohibited from doing so.

(Complaint ¶¶ 75, 37-55).

When the state regulates occupations or land use through licensing or related rules, regulations or ordinances, the agency's definitions of rights "may give rise to competition rights and constraints that define property interests." Wilkerson v. Sutton, 699 F.2d 325, 328 (6th Cir. 1983)(citing Bell v. Burson, 402 U.S. 535, 539 (1971); Perry v. Sindermann, 408 U.S. 593 (1972)). Evidence that defendants denied Stambaugh's proposal for the AMP Hangar and FBO contract for "'reasons unrelated to the merits of the application may support a finding that the government arbitrarily or irrationally abused its power in violation of substantive due process." Woodwind Estates, 205 F.3d at 124 (quoting Bello v. Walker, 840 F.2d 1124, 1129 (3d Cir. 1988)). "Notwithstanding a constitutionally procedurally adequate scheme, [Stambaugh's] may maintain a claim of substantive due process violation upon allegations that the government deliberately and arbitrarily abused its power." Midnight Sessions v. City of Philadelphia, 954 F.2d 667, 683 (3d Cir. 1991); Rental Guide, Inc. v. Brown, 1997 U.S. Dist. LEXIS 1025 (E.D. Pa. Feb. 5, 1997)(bound separately as Exhibit A).[2] As the Third

---

[2] Stambaugh's claim that defendants have violated its substantive due process right is not analogous to the due process and equal protection claims asserted by the plaintiff in Queen City Aviation, Inc. v. City of Allentown, 1992 U.S. Dist. LEXIS 9042 (E.D. Pa. 1992) (bound separately as Exhibit B), where the plaintiff attacked the bid specifications and procedures for FBOs at an airport. Stambaugh's does not challenge the specifications and procedures of the RFQ, but rather challenges defendants' arbitrary and irrational decision to disregard the specifications and procedures defendants themselves devised, award the FBO contract to a non-

(continued...)

Circuit in <u>DeBlasio</u> noted, by way of analogy, "persons denied licenses required for the practice of certain occupations are not required to demonstrate entitlement to the license sought in order to state a substantive due process claim. To state a substantive due process claim, such persons need only assert that the license sought was arbitrarily denied." 53 F.3d at 601 n. 11 (citing <u>RRI Realty Corp., Inc. v. Village of Southhampton</u>, 870 F.2d 911, 917-18 n.4 (2d Cir. 1989)(citing <u>Wilkerson v. Johnson</u>, 699 F.2d 325 (6th Cir. 1983)).

In <u>Woodwind Estates</u>, the Third Circuit reversed the district court's grant of defendants' motion for judgment as a matter of law on the plaintiff's substantive due process claims, and held that the holder of a use permit has a property interest that implicates substantive due process protection. *Id.* at 123. The plaintiff sought to build a subdivision of single family homes for low income families in Stroud Township. *Id.* at 120. The plaintiff was awarded approximately $1.1 million in federal tax credits, conditioned on the completion of the project by December 31, 1997. *Id.* Woodwind initially submitted its development plan, which satisfied the prescribed criteria for approval as a subdivision, in March 1986. *Id.* at 121. After receiving opposition from a citizens' group, the township

---

[2](...continued)
conforming entity, and effectively drive Stambaugh's out of the FBO business at HIA.

commission rejected the plan as "incomplete," despite the fact that none of the

group's objections were conditions for subdivision approval under the relevant

ordinance. *Id.* Woodwind submitted a revised plan, which also met the prescribed

criteria, and which was also rejected *Id.* at 122. After the second rejection, it was

impossible for Woodwind to meet its deadline. *Id.*

Here, defendants inextricably intertwined state permission to operate

as an FBO at HIA with the award of a lease to the AMP Hangar, set up rules

limiting their discretion as to what entities could be awarded permission, and then

arbitrarily violated their own rules.[3]  Therefore, Stambaugh's property interest in

the FBO license and the AMP Hangar lease, triggered by its meeting or exceeding

SARAA's own RFQ specifications, is an interest worthy of substantive due

process protection.

"[C]ases involving zoning decisions, building permits, or other

governmental permission required for some intended use of land owned by

plaintiffs," also have been held to implicate the kind of property interest protected

by substantive due process. *Id.* at 123; *see also* <u>DeBlasio v. Zoning Board of</u>

---

[3]Further proof of the meshing of the AMP Hangar lease with permission to operate as an FBO is found in defendants' refusal to offer Stambaugh's a lease for Stambaugh's hangar that did not preclude Stambaugh's from continuing to operate its FBO business in the space in which it had operated as an FBO, meeting and exceeding defendants' requirements, for 25 years. (Complaint ¶¶ 9, 13-15, 19-20)

-12-

Adjustment, 53 F.3d 592, 600 (3d Cir. 1995)(reversing district court's grant of summary judgment on plaintiff's substantive due process claim under Section 1983 where plaintiff's "ownership is a property interest worthy of substantive due process protection"); Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 688 (3d Cir. 1993)(lessor had protectable property interest implicating substantive due process right); Neiderhiser v. Borough of Berwick, 840 F.2d 213, 218 (3d Cir. 1988)(implying that lessor possessed property interest worthy of substantive due process protection against arbitrary and irrational government deprivation; Homar v. Gilbert, 63 F. Supp. 559, 577 (M.D. Pa. 1999) (affirming fundamental property interest in real property worthy of substantive due process protection).

In Neiderheiser, the Third Circuit reversed the district court's grant of defendant's motion to dismiss plaintiff's substantive due process claim. The plaintiff alleged that the zoning board arbitrarily denied its application for a special exemption to operate a video store from the property it had leased, where the property had been used for commercial purposes for 30 years, and the proposed use was consistent with prior non-conforming use. 840 F.2d at 215. The court held that plaintiff stated a viable due process claim where it alleged that the exemption was denied for no other reason than that a portion of plaintiff's business was the sale or rental of adult videos. Id. at 218. Since a denial of the

-13-

exemption based solely on the subject matter of the videos would be arbitrary or irrational, the court allowed plaintiff to proceed with its claim. *Id.*

Likewise, in Parkway Garage, the Third Circuit reversed the district court's grant of judgment notwithstanding the verdict, reinstated a $5 million jury award, and held that plaintiff produced sufficient evidence to show that the mayor and city officials deprived plaintiff of its substantive due process right. *Id.* at 691-2. Less than a week after receiving a report from a financial advisor discussing the infeasibility of selling a city-owned, authority-managed parking garage subject to plaintiff's lease, the authority and the city commenced a course of action designed to terminate plaintiff's lease, including initiating and participating in a series of lawsuits, failing to perform mandated safety tests, closing the garage despite plaintiff's completion of city-approved repairs, and holding meetings to discuss closure of the garage and failing to give plaintiff notice of the meetings. *Id.* at 697-98. The court found the circumstances "strange" enough for a reasonable jury to conclude that the mayor's and city officials' purported reason for closing the parking garage that plaintiff leased -- that the garage was in imminent danger of collapse -- was pretextual. *Id.* at 695.

Similarly, defendants have arbitrarily denied Stambaugh's the permission required for Stambaugh's to operate its FBO business from the hangar

-14-

it leases from SARAA, and from which it had provided FBO services for 25 years.

Therefore, Stambaugh's has alleged a fundamental and protectable property

interest warranting due process protection, and defendants' motion to dismiss

Count I of Stambaugh's complaint must be denied.

> **b.    Stambaugh's has pleaded a protectable liberty
> interest implicating its rights to substantive due
> process.**

Stambaugh's also has a protected liberty interest in continuing to

engage in FBO services at HIA.  The freedom "'to engage in any of the common

occupations of life,' Meyer v. Nebraska, 262 U.S. 390, 399, 67 L. Ed. 1042, 43 S.

Ct. 625 (1923), qualifies as a liberty interest which may not be arbitrarily denied

by the State." *Id.*; Hoffman v. Lehman, 926 F. Supp. 510, 514 (M.D. Pa.

1996)(holding liberty interest in reputation as it applies to employment

opportunities is cognizable under substantive due process).  Courts have

consistently held that "the opportunity to pursue one's livelihood is a

constitutionally protected liberty interest, which may not be arbitrarily denied."

Santos v. City of Houston, 852 F. Supp. 601, 607 (S.D. Tex. 1994) (citing Cowen

v. Corley, 814 F.2d 223 (5th Cir. 1987)).  Stambaugh's has a protected liberty

interest in the opportunity to continue to provide FBO services at HIA.  *See*

Hampton v. Mow Sun Wong, 426 U.S. 88, 102 (1976)("[I]neligibility for

-15-

employment in a major sector of the economy [] is of sufficient significance to be characterized as a deprivation of an interest in liberty."); Sammon v. New Jersey Board of Medical Examiners, 66 F.3d 639 (3d Cir. 1995)("[T]he aspiring midwives' assertion of a right to practice their chosen profession is a legally cognizable one.").[4]

In this case, Stambaugh's right to continue to engage in FBO services is a liberty interest subject to constitutional protection. Defendants do not even address this liberty interest in their motion to dismiss. Because Stambaugh's has a protected liberty interest to engage in this business, whether at the AMP Hangar or merely only to do so at the Stambaugh's Hangar, defendants' motion must be denied.

### c. Stambaugh's has pleaded arbitrary and irrational conduct on the part of defendants which violate its right to substantive due process.

Substantive due process protects citizens from "arbitrary and irrational acts of government." Parkway Garage, 5 F.3d at 692 (additional

---

[4] This Court's decision in Homar v. Gilbert, 63 F. Supp. 559 (M.D. 1999), is not to the contrary. Stambaugh's has not merely alleged that it has not been granted a state contract or that its contractual rights have been violated. Rather, Stambaugh's has alleged that defendants created an exclusive FBO arrangement that deprived Stambaugh's of the opportunity to operate its business at all. This kind of systematic deprivation of liberty is the very kind of action for which Stambaugh's is entitled to constitutional protection.

-16-

citations omitted). In order to prove that defendants violated its substantive due process rights, Stambaugh's must show that (1) defendants' actions were not rationally related to a legitimate government interest; or (2) defendants' actions in Stambaugh's particular case were in fact motivated by bias, bad faith, or improper motive. *Id.* At this procedural posture, however, Stambaugh's need not "prove" its case; a motion to dismiss may be granted only "if the court finds that [Stambaugh's] can prove no set of facts in support of [its] claim which would entitle [it] to relief." Holt Cargo Systems, Inc. v. Delaware River Port Authority, 1996 U.S. Dist. LEXIS 5323 (E.D. Pa. April 19, 1996)(Holt I)(bound separately as Exhibit C). Defendants have engaged in a pattern of behavior to prevent Stambaugh's from continuing to engage in FBO and maintenance operation services at HIA that was (1) arbitrary and irrational (Complaint ¶¶ 78-79); and (2) motivated in fact by bias, bad faith or other improper motive (Complaint ¶¶ 19-23, 25-55, 77). Taking all of the allegations in Stambaugh's complaint as true, as the court must for purposes of a motion to dismiss, defendants have violated Stambaugh's right to substantive due process, and defendants' motion to dismiss must be denied.

Like the plaintiffs in Holt I and Parkway Garage, Stambaugh's has alleged a pattern of abuse of government power on the part of defendants that

-17-

violates its substantive due process rights. *See* Holt I, at *16; Parkway Garage, 5 F.3d at 692-701. Defendants have:

- used harassment and intimidation to drive Stambaugh's out of HIA (Complaint ¶¶ 25-26, 33-36);

- engaged in a policy of intimidation and harassment directed at Stambaugh's by interfering with the work of Stambaugh's employees, manufacturing disputes and fabricating lease violations (Complaint ¶¶ 25-26);

- ignored their own requirements under the RFQ and secretly solicited non-conforming proposals conditioned on the requirement that defendants force Stambaugh's out of the FBO business (Complaint ¶¶ 37-55);

- contacted Stambaugh's customers before the board voted on the AMP hangar FBO provider (Complaint ¶ 52);

- created an exclusive FBO arrangement in violation of 49 U.S.C. §§ 47107(a)(4) and (5) (Complaint ¶¶ 56-68).

These acts constitute "predatory acts, that, if true, evidence harassment and an attempt to destroy the business and property interests of the plaintiff." Holt Cargo Systems, Inc. v. Delaware River Port Authority, 1997 U.S. Dist. 18073 (E.D. Pa.

-18-

Nov. 14, 1997)(Holt II)(bound separately as Exhibit D); *see also* Parkway Garage,

5 F.3d at 691-2 (reversing the district court's grant of judgment notwithstanding

the verdict overturning a $5 million jury award on plaintiff's substantive due

process claim where plaintiffs alleged the city and the parking authority misused

political power to advance their legal and economic position by closing the garage

under the pretext that it was in imminent danger of collapse, when in fact the

garage was structurally sound); Rental Guide, Inc., at *9 (holding plaintiffs

adequately stated a cause of action under substantive due process where complaint

alleged that defendant "deliberately and arbitrarily abused his power to prevent

Plaintiffs from obtaining open access to the Pennsylvania Real Estate

Commission").  The "regular and impartial administration of public rules . . .

prohibits the subtle distortions of prejudice and bias as well as gross governmental

violations exemplified by . . . the punishment of political and economic enemies

through the administrative process."  Wilkerson, 699 F.2d at 328 (citing Gibson v.

Berryhill, 411 U.S. 564, 578-79 (1973)(holding Alabama State Board of

Optometry violated due process because those "with substantial pecuniary

interests in legal proceedings should not adjudicate those disputes")).

Stambaugh's has alleged conduct on the part of defendants that violates

Stambaugh's substantive due process rights grounded in Stambaugh's protected

liberty and property interests.  Therefore, defendants' motion to dismiss Count I of

Stambaugh's complaint must be denied.

> **2.    Taking all well-plead allegations in the complaint as true, defendants have violated Stambaugh's right to equal protection under the 14th Amendment.**

The Equal Protection Clause directs that "all persons similarly

situated should be treated alike."  Holt II, at *19(quoting City of Cleburne v.

Cleburne Living Center, 473 U.S. 432, 439 (1985)).  The decisions to treat

Stambaugh's differently from other FBO providers and to destroy Stambaugh's

FBO business are permissible only if those decisions are rationally related to a

legitimate governmental goal.  *Id.* (citing Artway, *supra*; Chapman v. United

States, 500 U.S. 453, 465 (1991))(additional citations omitted).  Because

Stambaugh's has alleged that defendants arbitrarily and irrationally treated

Stambaugh's differently from similarly situated entities, defendants' motion to

dismiss must be denied.

"Government agencies may legitimately act to ensure competition in

the marketplace, but 'intentional discrimination to destroy or reduce the value of a

particular business would not be rationally related to a legitimate government

purpose.'"  Holt II, at *21(citing Holt I, at *10).   The court in Holt II refused to

dismiss plaintiff's equal protection claim where, under facts similar to those at

-20-

issue here, the complaint alleged that defendants conspired to drive Holt out of business, offered Holt's competitors more favorable lease terms, and developed and constructed plaintiff's competitors' facilities while refusing to fulfill their obligations under Holt's amended lease.  Holt II, at *22;[5] *see also* Northeast Jet Center v. Lehigh-Northampton Airport Authority, 767 F. Supp. 672, 677-678 (E.D. Pa. 1991)( motion to dismiss denied where plaintiff alleged airport authority's regulations and policies were applied to it and not to others who were similarly situated).  Stambaugh's complaint alleges strikingly similar conduct:

- Defendants refused to offer Stambaugh's any lease that would permit it to continue to provide FBO services at HIA, while they offered Stambaugh's a lease that enabled it to operate as an FBO (Complaint ¶¶ 19-20, 62-63);

- Defendants engaged in intimidation and harassment directed at Stambaugh's by interfering with the work of Stambaugh's employees,

---

[5] In their Brief, defendants apply the standards set forth in Holt Cargo Systems, Inc. v. Delaware River Port Authority, 20 F. Supp. 2d 803, 825 (E.D. Pa. 1998)(Holt III), in their analysis of whether Stambaugh's has stated a claim for purposes of a motion to dismiss.  (Br. at 13-15).  Holt III, on summary judgment, addressed whether plaintiff had adduced evidence to support its claim.  The Holt III court specifically noted that its analysis of the summary judgment motion, which it granted, was vastly different from its analysis of the motion to dismiss, which it denied in Holt II.  *See* Holt III, 20 F. Supp. 2d at 818 ("The issue before the court [on summary judgment] is not what plaintiffs have alleged but whether plaintiffs have produced evidence from which a jury might rationally find that defendants have actually reduced the value of plaintiffs' business . . . .")  Under the analysis of Holt II, defendants' motion must be denied.

-21-

manufactured disputes with Stambaugh's, and fabricated lease violations by Stambaugh's, while they did not engage in this type of intimidation and harassment with other FBOs (Complaint ¶¶ 25-29);

- Defendants enforced the term of Stambaugh's lease that requires it to pay rent, while it did not enforce the term of AERO's lease that requires it to pay rent (Complaint ¶¶ 22-24).

Defendants explain that they "allowed AERO to skip a rent payment" (Br. at 15); that they have an "interest in creating competition at HIA and avoiding the creation of a monopoly" (Br. at 15); that "security is extremely important at an international airport" (Br. at 15); and that "the alleged disparate treatment is rational and related to a legitimate governmental interest" (Br. at 15). Defendants' allegation that AERO was permitted to skip a single rent payment, as opposed to being excused from paying rent altogether, is nowhere in the complaint and cannot be used as a basis for granting this motion. Defendants do not explain how continual harassment of Stambaugh's employees promotes security when other tenants are not subject to such treatment. Finally, defendants' allegations regarding competition ring particularly hollow given that this case arises from the reduction of competition at HIA by the destruction of a competitive business. At

-22-

this stage, however, these factual assertions are inappropriate and defendants'

motion to dismiss Count III of Stambaugh's complaint must be denied.

**B.    The individual defendants are not entitled to qualified immunity because their actions violated clearly established constitutional rights of which a reasonable person would have known, and defendants knew or should have known their actions would violate Stambaugh's rights.**

Defendants' argument that Fleet, Holdsworth and McIntosh

("individual defendants") are entitled to qualified immunity incorrectly assumes

that Stambaugh's had no constitutionally-protected interest.  As discussed above,

Stambaugh's has pleaded three constitutionally-protected interests that were

violated by the defendants.  Additionally, a reasonable person would have been

aware that defendants' actions would violate Stambaugh's clearly established

constitutional rights.  As such, defendants' plea for qualified immunity must fail.

Recently, this Court explained the doctrine of qualified immunity as

follows:

> "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640

-23-

(1987); *see also* <u>Acierno v. Cloutier</u>, 40 F.3d 597, 616
(3d Cir. 1994) (en banc).

In determining whether defendants are entitled to claim
qualified immunity, we engage in a three-part inquiry:
(1) whether the plaintiffs alleged a violation of their
constitutional rights; (2) whether the right alleged to
have been violated was clearly established in the existing
law at the time of the violation; and (3) whether a
reasonable official knew or should have known that the
alleged violation violated the plaintiff's rights.

<u>Vartan v. Susquehanna Twp.</u>, No. 1:CV-98-1944 (M.D. Pa. February 25, 2000)

(Kane, J.) (citing <u>Rouse v. Plantier</u>, 182 F.3d 192, 196-97 (3d Cir. 1999)

(hereinafter "<u>Vartan</u>") (bound separately as Exhibit E).

The first two prongs in the analysis, whether plaintiffs alleged a

violation of their constitutional rights and whether the rights alleged to have been

violated were clearly established in the existing law at the time of the violation,

are legal questions for the Court. *See* <u>Sharrar v. Felsing</u>, 128 F.3d 810, 826 (3d

Cir. 1997). While the final prong of the analysis is also in most cases decided by

the court, the Third Circuit has recognized that whether a reasonable official knew

or should have known that the action alleged violated a plaintiff's rights can be a

question for the jury:

We thus hold, following the Supreme Court's decision in
<u>Hunter</u>, that in deciding whether defendant officers are
entitled to qualified immunity it is not only the evidence

-24-

> of "clearly established law" that is for the court but also
> whether the actions of the officers were objectively
> reasonable. Only if the historical facts material to the
> latter are in dispute, as in <u>Karnes</u>, will there be an issue
> for the jury.

<u>Sharrar</u>, 128 F.3d at 828. *See also* <u>Karnes v. Krutski</u>, 62 F.3d 486 (3d Cir. 1995)

(reversing qualified immunity judgment where material factual disputes as to

police belief that material on the floor of a vehicle was marijuana was an issue of

fact for the jury).

As discussed in Section A of this brief, Stambaugh's has alleged a

violation of its constitutionally-protected substantive due process and equal

protection rights.

These rights were clearly established at the time the individual

defendants violated them. In <u>Vartan</u>, this Court looked to the dates of the

defendants' actions and compared them to the dates that the rights became clearly

established. The <u>Vartan</u> defendants' actions took place in 1997 and 1998.    The

constitutionally protected interest in <u>Vartan</u> had been established not later than the

<u>DeBlasio</u> case in 1995. As a result, the plaintiffs' due process rights were clearly

established at the time of the alleged violation because, had the township applied

the general principles of <u>DeBlasio</u> to the facts in the case, they would have been

aware that their conduct violated the Third Circuit's conception of due process.

-25-

Vartan, p. 13.  Similarly, in the present matter, had the individual defendants

applied the general principles of the many cases establishing Stambaugh's

constitutionally protected interests, for example, Hampton (decided in 1976); City

of Cleburne (decided in 1985); Neiderhiser (decided in 1988); Midnight Sessions

(decided in 1991); Parkway Garage, Inc. (decided in 1993); DeBlasio (decided in

1995); and  Sammon (decided in 1995), the individual defendants would have

realized their actions, which were taken in 1999 and 2000, violated Stambaugh's

clearly established due process and equal protection rights as set forth in Third

Circuit precedent.  Adding weight to this argument is the fact that defendants

specifically guaranteed the federal government as a condition to receiving grant

money that they would not create an exclusive right with respect to FBO services

(Complaint ¶ 68), in light of the prohibition on exclusive rights and economic

discrimination pursuant to 49 U.S.C. §47107(a)(4) and (5), as further defined in

FAA Orders 5190.1A, 5190.6A, and FAA Advisory Circular No. 15015190-2A

(Complaint ¶¶ 56-68).

The individual defendants' arbitrary and bad faith actions, which

deprived Stambaugh's of its constitutional rights, when coupled with the fact that

the individual defendants knew or should have known that their underhanded

-26-

behavior violated Stambaugh's rights, must defeat their claim of qualified immunity.

A reasonable person in the shoes of the individual defendants would have known that his arbitrary and irrational actions would result in a violation of Stambaugh's rights. It is hard to argue how a reasonable person in the shoes of the individual defendants who, *inter alia*: (1) abused his organizations' own RFQ process by not accepting the proposal of the only conforming entity – Stambaugh's (Complaint ¶ 37-55); (2) violated the prohibition against the creation of exclusive rights in 49 U.S.C. §47107(a)(4) and (5); and (3) did not enforce lease terms against another tenant, including the payment of rent, that he did against Stambaugh's (Complaint ¶ 22-23), could have believed that his actions were not infringing upon Stambaugh's rights. As stated above, normally this question of "reasonableness" is a question for the Court; however, as was the case in <u>Karnes</u>, there are material historical facts at issue in this matter that require it to go to the jury. Notably, defendants, while attempting to set forth Stambaugh's claim as a "failure to receive a government contract," have not addressed the actual decision-making process alleged to have been improper. The decision-making process and the actions of the individual defendants in that process are "historical

facts material to the dispute," and as such, should be evaluated by a jury not

disposed of at this early stage in litigation.  Sharrar, 128 F.3d at 828.

### C.    The Pennsylvania Constitution provides Stambaugh's with a private right of action against all defendants for its due process and equal protection claims.

Contrary to defendants' assertion, Article I, § 1 of the Pennsylvania

Constitution gives rise to a private right of action.  The United States District

Court for the Eastern District of Pennsylvania, which addressed this issue,

recognized not only that such actions exist, but that governments may be

defendants in such suits.  Coffman v. Wilson Police Department, 739 F.Supp 257.

266, 266 n.12 (E.D.Pa. 1990) ( "[c]laims arising from violations of the

Pennsylvania Constitution may still be raised against local governments") (citing,

inter alia,  Hartford Accident and Indemnification Co. v. Insurance Commissioner,

482 A.2d 542 (Pa. 1984) (Article 1, § 28); Holland Enters., Inc. v. Joka, 439 A.2d

876 (Pa. Commwlth. 1982) (Article I, § 1 due process); Williams v. City of

Pittsburgh, 531 A.2d 42 (Pa. Commwlth. 1987) (Article I, § 1 equal protection)).

As defendants concede, Harley v. Schuykill County, 476 F. Supp. 191

(E.D. Pa. 1979), specifically permitted a private cause of action for money

damages to proceed on alleged violations of the Pennsylvania Constitution.  In

Harley, the court recognized that Article I, § 1 was self-executing, and quoted

language in <u>Erdman v. Mitchell</u>, 207 Pa. 79, 56 A. 327 (1903), that notes the

importance of Article I, § 1:

> This clause, unlike many others in the Constitution,
> needs no affirmative legislation, civil or criminal, for its
> enforcement in the civil courts.  Wherever a court of
> common pleas can be reached by the citizen, these great
> and essential principles of free government must be
> recognized and vindicated by that court .

<u>Harley</u>, 476 F. Supp. at 195-96 (quoting <u>Erdman</u>, 207 Pa. at 90-91, 56 A. at 331).

Defendants argue in their brief that <u>Harley</u> was an improper expansion of <u>Erdman</u>

and that the <u>Harley</u> court ignored the "numerous cases holding to the contrary."

(Br. p. 21).  However, defendants have cited no cases that have foreclosed a

private right of action for Article I, § 1 violations.  While the Pennsylvania

Supreme Court has yet to address the issue of whether facts such as those which

exist in the instant matter give rise to a private right of action for *money damages*

under the Pennsylvania Constitution, such a right does exist under the United

States Supreme Court's analysis in <u>Bivens v. Six Unknown Named Agents of</u>

<u>Federal Bureau of Narcotics</u>, 403 U.S. 388, 395 (1971) ("'[t]he very essence of

civil liberty certainly consists in the right of every individual to claim the

protection of the laws, whenever he receives an injury.'" (citations omitted)).

This Court should recognize the validity of this analysis as applied to the

Pennsylvania Constitution, especially when the analysis for due process and equal

protection claims arising under the Pennsylvania Constitution is very similar to the

analysis used when evaluating due process and equal protection under the federal

Constitution.[6] Kaehly v. City of Pittsburgh, 988 F. Supp. 888, n.1, n.5 (M.D. Pa.

1997).

> **1.    Stambaugh's claims arising under the Pennsylvania Constitution against the defendants are not barred by the Political Subdivision Torts Act.**

The immunity granted to employees of local agencies by the Political

Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541, *et seq.*,  as the title implies, only

cloaks employees acting within the scope of their employment with immunity

from liability for claims sounding in tort and, more specifically, negligence.

Coffman, 739 F. Supp. at 266.  Of course, "it would be peculiar if the legislature

could abrogate rights protected by the Constitution." *Id.*  Indeed, it is difficult to

reason how the General Assembly, as a creature of the Constitution, has the power

to enact a law that would eviscerate the Constitution by making many of its

provisions unenforceable against the government and its officials.  The cases

defendants cite in support of their immunity argument, Sameric Corp. v. City of

---

[6] While a similar analysis is used, a Pennsylvania court has the power to provide broader standards and go beyond the minimum floor established by the federal Constitution. Commonwealth v. Edmunds, 586 A.2d 887, 894 (Pa. 1991).

Philadelphia, 142 F.3d 582 (2d Cir. 1998)[7], Crighten v. Schuykill County, 882 F.

Supp. 411, 416 (E.D. Pa. 1995), and Agresta v. Goode, 797 F. Supp. 399 (E.D. Pa.

1995), while concluding that immunity exists for constitutional violations, do not

engage in any discussion as to whether the legislature, *as a creature of the*

*Constitution*, can grant officials immunity for its violation.  This Court should

recognize that it would be "peculiar," Coffman, 739 F. Supp. at 266, if such a

result were permitted to occur.

Therefore, based upon the foregoing, this Court should deny

defendants' motion to dismiss the state constitutional claims and reject defendants'

argument of governmental and official immunity.

> **D.    Stambaugh's has stated a claim for SARAA's  violation of the Pennsylvania Municipality Authorities Act of 1945.**
>
> **1.    The Pennsylvania Municipality Authorities Act of 1945, 53 P.S. § 301, *et seq.*, prohibits activities like those in which SARAA has engaged.**

Section 306(A)(b)(2) of the Municipality Authorities Act of 1945

("MAA") states:

> The purpose and intent of this act being to benefit the
> people of the Commonwealth by, among other things,
> increasing their commerce, health, safety and prosperity,

---

[7] In Sameric, the plaintiff waived the constitutional immunity argument at the district
court level.

> and not to unnecessarily burden or interfere with existing
> business by the establishment of competitive enterprises,
> none of the powers granted by this act shall be exercised
> in the construction, financing, improvement,
> maintenance, extension or operation of any project or
> projects . . . which in whole or in part shall duplicate or
> compete with existing enterprises serving substantially
> the same purposes.

53 P.S. § 306(A)(b)(2) (emphasis supplied). On its face, § 306(A)(b)(2) prohibits

the exact type of action which SARAA has taken against Stambaugh's.

Stambaugh's alleges that SARAA has interfered with its existing business by

burdening and interfering with Stambaugh's existing FBO business in violation of

the MAA. (Complaint ¶ 209). The complaint also alleges that SARAA, by

refusing to lease the AMP Hangar to Stambaugh's and by depriving Stambaugh's

of the opportunity to provide FBO services at HIA so SARAA could install an

FBO operation that did not satisfy the RFQ in the AMP Hangar, unnecessarily

duplicated or competed with Stambaugh's existing enterprise serving substantially

the same purpose. (Complaint ¶ 210). Finally, the complaint alleges that SARAA

burdened and interfered with Stambaugh's existing FBO business by refusing to

permit Stambaugh's to provide FBO services at HIA so that it could have another

enterprise provide those services. (Complaint ¶ 211). Thus, Stambaugh's

allegations contain facts which easily overcome the proposition that actions of

-32-

municipal officials "are presumed to be valid and in compliance with the Act."

Northeast Jet Center, Ltd. v. Lehigh-Northampton Airport, No. 90-1262, 1996

U.S. Dist. LEXIS 11177 (E.D. Pa. August 1, 1996) (bound separately as Exhibit

F)(citing Helmerick Drive-it-Yourself v. Erie Mun. Airport Authority, 612 A.2d

562, 564 n.2 (Pa. Commwlth. 1992).  Here, the actions of SARAA are in direct

violation of the prohibitions in § 306(A)(b)(2).

      Defendants allege that Stambaugh's does not "allege that SARAA has

directly competed with or duplicated Stambaugh's business by operating an FBO

service itself at HIA." (Br. p. 25).  As stated above, in addition to citing specific

examples of SARAA's conduct that burdened or interfered with Stambaugh's FBO

business, Stambaugh's complaint alleges that SARAA installed its own FBO

provider that had not complied with the RFQ process which unnecessarily

duplicated or competed with Stambaugh's existing enterprise serving the same

purpose. (Complaint ¶ 210).  Similarly, defendants argue that Stambaugh's has

not alleged that SARAA participated in any "project" that served substantially the

same purpose as Stambaugh's. (Br. p. 25).  Again, Stambaugh's has alleged that

very conduct in ¶ 210 of the complaint.

      Defendants' reliance on Beaver Falls Municipal Authority v.

Municipal Authority of the Borough of Conway, 689 A.2d 379 (Pa. Commwlth.

1997) and <u>Highridge Water Authority v. Lower Indiana County Municipal Authority</u>, 689 A.2d 274 (Pa. Commwlth. 1997), as authority for the argument that no claim has been stated is misplaced.  Both <u>Beaver Falls</u> and <u>Highridge</u> dealt with a municipal authority challenging another municipal authority's ability to provide water to a municipality outside the legislatively-prescribed service area of both authorities.  <u>Beaver Falls</u>, 689 A.2d at 380-81; <u>Highridge</u>, 689 A.2d 375-76.  The issue in those cases was whether a municipal authority's contract right with a municipality outside its legislatively-prescribed service area was worthy of § 306(A)(b)(2) protection against other municipal authorities.  In the instant matter, Stambaugh's is not asserting any such claim of contractual rights or extraterritorial protection; rather, Stambaugh's only invokes § 306(A)(b)(2) to challenge the unlawful competition from SARAA.  Stambaugh's, as a private entity, has no legislatively-prescribed "non-compete" zone – the mere existence of its business is sufficient to invoke MAA's protections.  Stambaugh's right to be free from competition from SARAA, a municipal authority, stem not from any contract, but from § 306(A)(b)(2).

### 2.    Stambaugh's had an existing FBO business when SARAA took its improper actions.

Defendants' argument that Stambaugh's has no "existing" FBO business and, therefore, is not entitled to the protections of § 306(A)(b)(2) should be rejected because Stambaugh's alleges throughout its complaint that SARAA took its improper actions when Stambaugh's still had an FBO business. Further, even if Stambaugh's had failed to allege improper activity while it had an existing FBO business, SARAA should not be heard to argue that since Stambaugh's FBO business has been destroyed by behavior and actions prohibited by § 306(A)(B)(2), it should not be entitled to the section's protection.

The cases relied upon by defendants in support of their "existing" enterprise argument are also distinguishable from the facts of this case. First, in Evansburg Water Co. v. Perkiomen Twp., 569 A.2d 428 (Pa. Commwlth. 1990), plaintiff water company did not serve, nor did it ever serve, the area proposed to be served by defendant municipal authority. *Id.* at 428-30. That is not the case in the present matter, as Stambaugh's had provided FBO services to HIA since 1975. (Complaint ¶ 9). Similarly, in Northampton v. Bucks County Water & Sewer Authority, 508 A.2d 605 (Pa. Commwlth. 1986), the plaintiff water authority would have needed to build new water lines to serve the area in dispute, so the

court held that the defendant municipal authority did not "duplicate" "existing" enterprise. *Id.* at 615. In the present matter, Stambaugh's provided FBO services at HIA and always met the requirements to be an FBO at HIA. (Complaint ¶¶ 9, 15). Finally, in <u>Northeast Jet Center</u>, the court noted that at the time of the alleged [violations of § 306(A)(B)(4)], plaintiff itself was no longer an existing enterprise, due in part to the fact that plaintiff had already agreed to sell its assets. *Id.* at *44-46. Such is not the case here because Stambaugh's has alleged improper conduct during the time Stambaugh's was an FBO provide, and remains a tenant at HIA.

Footnote 10 to defendants' brief argues that there was a "clear legislative intent to preclude a private right of action to recover monetary damages under the Act." (Br. p. 27 n.10.). No such legislative intent is apparent in the case law. Defendants cite no cases that prohibited monetary damages under the MAA. Defendants' reliance on <u>Northeast Jet Center</u> for the proposition that money damages are not available because the case "involved a claim for punitive damages only, not compensatory damages, which was rejected on the basis of the Pennsylvania Political Subdivision Tort Claims Act," is inappropriate. The <u>Northeast Jet Center</u> court never held that damages were not available; rather, after disposing of plaintiff's MAA competition and misappropriation claims on the merits, the court observed *in dicta* that "[w]e note in passing that even if Plaintiff

-36-

could establish a cause of action for *misappropriation* . . . Plaintiff *would most probably not be* entitled to punitive damages.  42 Pa.C.S. § 8553(c) precludes the award of punitive damages in actions against municipal authorities."  Northeast Jet Center, 1996 U.S. Dist. LEXIS at * 47 n.10 (emphasis supplied).  Even if this *dicta* were the law, it refers explicitly to a  *misappropriation* claim, not one based upon a competition claim like the one Stambaugh's has asserted, and refers to the statutory prohibition of awarding punitive damages in cases where compensatory damages are permitted.

Based upon the foregoing, Stambaugh's has stated a claim against SARAA for violations of the MAA and defendants' motion to dismiss Count VI must be denied.

**E.      Stambaugh's has stated a claim for conspiracy**

**1.      Stambaugh's has pleaded a *prima facie* conspiracy case.**

In order to state a cause of action for civil conspiracy under Pennsylvania law, plaintiff must show only that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means, with an intent to injure the plaintiff.  Skipworth by Williams v. Lead Industries Ass'n, Inc., 547 Pa. 224, 690 A.2d 169, 174 (1997).  In its complaint, Stambaugh's alleges that "SARAA, BAA, Fleet, Holdsworth, and

McIntosh agreed not later [than] November 1999 to force Stambaugh's out of the
FBO business at HIA." (Complaint ¶ 177).  Thus, Stambaugh's has met the "two
or more persons"and "the intent to injure the plaintiff" requirements of <u>Skipworth</u>.
In its complaint, Stambaugh's also alleges that "SARAA, BAA, Fleet, Holdsworth,
and McIntosh agreed that they would deprive Stambaugh's of its right to provide
FBO services at HIA . . ."  (Complaint ¶ 78).  Thus, Stambaugh's has satisfied the
"combined or agreed with intent to do an unlawful act" element of the *prima facie*
case.  Despite defendants' assertions to the contrary, Stambaugh's complaint is
replete with examples of defendants' unlawful activity, including deprivations of
Stambaugh's constitutionally protected interests (Complaint ¶¶ 69-175) and the
tortious interference with Stambaugh's existing contractual relations (Complaint
¶¶ 226-237).

Defendants' reliance on <u>In re Orthopedic Bone Screw Products</u>, 193
F.3d 781 (3d Cir. 1999), for the proposition that one must identify an underlying
tort to state a valid conspiracy claim is incorrect.[8]  Defendants correctly quote
language in <u>Orthopedic Bone Screw</u> which states that "a separate underlying tort"
*can* be used as a predicate for liability, *Id.* at 789, but the Third Circuit went on to

---

[8]  Stambaugh's has pleaded the underlying tort of tortious interference with existing
contractual relationships, so assuming defendants' characterization of the holding in <u>Orthopedic
Bone Screw</u> were accurate, Stambaugh's has still stated a *prima facie* case.

state that an "actionable civil conspiracy must be based on an existing independent *wrong or* tort that would constitute a valid cause of action if committed by one actor." *Id.* (emphasis supplied) (internal citations omitted).   Thus, all of the wrongs that defendants have perpetrated upon Stambaugh's serve as predicates to the conspiracy claim.  Defendants' motion to dismiss Count V must be denied.

### 2. SARAA has conspired with BAA, Fleet, Holdsworth and McIntosh.

Defendants argue that since BAA and Fleet are agents or employees of SARAA, they cannot have conspired with SARAA and the other defendants. (Br. pp. 23-24).  Nowhere is it alleged in Stambaugh's complaint that BAA and Fleet are either agents or employees of SARAA.  As a result, the agency exception to conspiracy on which defendants rely is inappropriate.  Whether an agency relationship exists is for discovery.  Therefore, for the purposes of the defendants' motion to dismiss, SARAA did conspire with BAA and Fleet as alleged in ¶¶ 176-203.

Defendants correctly state that, generally, "a business entity cannot conspire with its employees and/or agents." (Br. p. 23).  However, defendants fail to recognize that this rule is abrogated when, as here, the "agents or employees are acting not for the [business entity], but for personal reasons and one of the parties

-39-

to the conspiracy is not an agent or employee of the [business entity]." <u>Tyler v.</u>

<u>O'Neill</u>, 994 F. Supp. 603 (E.D.Pa. 1998). Also, as discussed above, BAA and

Fleet are not alleged to be agents or employees of SARAA, and SARAA,

McIntosh and Holdsworth are not employees or agents of BAA or Fleet.

However, the status of BAA and Fleet with respect to SARAA loses its

importance in this analysis as the <u>Tyler</u> court explained that the aforementioned

exception to the general rule is not as strict as it appears:

> This rule has been so liberally construed, however, so as
> to allow a civil conspiracy claim to proceed where agents
> or employees act outside of their corporate roles even in
> the absence of a co-conspirator from outside the
> corporation.

<u>Id.</u> at 613.

Thus, even if BAA and Fleet are considered to be agents of SARAA,

the <u>Tyler</u>-articulated exception to the general rule would apply due to the co-

conspirators acting *outside* of any appropriate corporate or business role.

Defendants failed to address any of these exceptions and arguments in their brief.

Instead, they inserted their own "facts" as to the relationship between BAA, Fleet

and SARAA, which is inappropriate for purposes of their motion to dismiss.

Accepting all facts pleaded as true and in the light most favorable to Stambaugh's,

defendants' motion to dismiss Count V of the complaint must be denied.

**F.**   **Stambaugh's has stated a claim for tortious interference with existing contractual relationships**.

Pennsylvania law requires a plaintiff to prove four elements in order to prevail on an interference with existing contractual relations claim: (1) existence of a contractual relationship; (2) intent on the part of the defendant to harm plaintiff by interfering with that contractual relationship; (3) absence of privilege or justification for such interference; and (4) damages resulting from defendant's conduct. <u>Beidleman v. Stroh Brewing Co.</u>, 182 F.3d 225, 234-35 (3d Cir. 1999). In Count VII of the complaint, Stambaugh's alleges that: (1) it had existing contractual relationships with various customers to provide FBO services at HIA (Complaint ¶ 227); (2) defendants intentionally interfered with those relationships for the purpose of hurting Stambaugh's (Complaint ¶ 229); (3) the interference was not privileged or justified (Complaint ¶ 233); and (4) it suffered damages in excess of $13,000,000 (Complaint ¶¶ 235-236). Therefore the *prima facie* elements have been stated. Further, Stambaugh's alleges that defendants contacted Stambaugh's customers and informed them that Stambaugh's would no longer be able to provide FBO services. (Complaint ¶ 230).

Defendants concentrate their argument on where the "harm" was directed, (Br. p. 28-30), and engage in an irrelevant application of Restatement

(Second) of Torts § 766A. Stambaugh's claim is based upon Restatement
(Second) of Torts § 766, not 766A.[9] Stambaugh's alleges exactly what the
defendants assert it is alleging – that defendants caused the customers of
Stambaugh's not to perform contracts due to the fact that Stambaugh's was no
longer able to provide FBO services at HIA. While certainly there was action
taken toward Stambaugh's (the constitutionally and statutorily improper
withholding of FBO rights), the effect of the action was to cause third persons,
Stambaugh's customers, not to perform their contracts with Stambaugh's. This is
a clear *prima facie* case under the Beidleman standard. Certainly by withholding
the right to provide FBO services, defendants interfered with the customers'
ability to perform their contracts with Stambaugh's. Because Stambaugh's has
stated a *prima facie* case, this Court must deny defendants' motion to dismiss the
tortious interference with existing contractual relationships claim.

---

[9] Defendants' analysis of this issue must be clarified. The Third Circuit in Windsor
Securities, Inc. v. Hartford Life Ins. Co., 986 F.2d 655 (3d Cir. 1993), cited by defendants (Br. p.
29-30), stated that "[w]e are aware that some district courts have implicitly assumed that
Pennsylvania would adopt (or has adopted) § 766A." Id. at 660 (internal citations omitted).
Ultimately, the Windsor court *did not opine* on whether the Pennsylvania Supreme Court would
embrace or reject § 766A. *Id.* at 663. In Gemini Physical Therapy v. State Farm Mut. Auto., 40
F.3d 63 (3d Cir. 1994), also cited by defendants in their § 766A analysis (Br. p. 29-30), the Third
Circuit addressed only the situation where a defendant made performance of a contract "more
expensive or burdensome." *Id.* at 66. Obviously, that is not the claim that Stambaugh's makes in
its complaint.

**G.    The defendants are not entitled to governmental or official immunity**.

    **1.    SARAA is not entitled to governmental immunity for all of the claims made against it.**

Generally, subject to exceptions, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. However, as discussed previously, SARAA enjoys no governmental immunity for its state constitutional violations. Nor is SARAA entitled to governmental immunity for its violation of the Pennsylvania Municipality Authorities Act, as Pennsylvania and federal courts routinely allow suits against municipal authorities when violations of the Act are alleged. *See e.g.* <u>Beaver Falls,</u> 689 A.2d 379 (alleged violation of § 306A(b)(2) of Act); <u>Evansburg Water Co. v. Perkiomen Township,</u> 569 A.2d 428 (alleged violation of § 306(A)(b)(2) of Act); <u>Northeast Jet Center,</u> 1996 U.S. Dist. LEXIS at *42 (alleged violation of § 306(A)(b)(2) of Act). Therefore, the Court should reject SARAA's claim of governmental immunity for its constitutional and statutory violations.

2.    **Defendants Holdsworth and McIntosh are not entitled to official immunity for their intentional and willful acts.**

Holdsworth and McIntosh are not immune for their intentional and willful acts:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or wilful misconduct, the provisions [granting governmental immunity] shall not apply.

42 Pa.C.S. § 8550.

In short, § 8550 withdraws immunity afforded to governmental employee if actions alleged were performed willfully. Irvin v. Borough of Darby, 937 F. Supp. 446, 452 (E.D. Pa. 1996). Pennsylvania law is clear that if a plaintiff is able to establish willful misconduct on the part of employees of local governments, the plaintiff may recover directly from those employees. City of Philadelphia v. Glim, 613 A.2d 613, 617 n.9 (Pa. Commwlth. 1992). For the purposes of § 8550, "willful misconduct" has the same meaning as an intentional tort. Delate v. Kolle, 667 A.2d 1218, 1221 (Pa. Commwlth. 1995), *appeal denied* 678 A.2d 367 (Pa. 1995); Kuzel v. Krause, 658 A.2d 856, 859 (Pa. Commwlth. 1995).

-44-

Stambaugh's alleges that Holdsworth and McIntosh committed two intentional torts, conspiracy (Complaint ¶¶ 176-203) and intentional interference with existing contractual relations (Complaint ¶¶ 226-237). Further, Stambaugh's alleges that the conduct of Holdsworth and McIntosh was "willful" with respect to the conspiracy claim (Complaint ¶ 203) and the intentional interference with existing contractual relationships claim (Complaint ¶ 237). Finally, Stambaugh's alleges that Holdsworth and McIntosh intentionally violated Stambaugh's state constitutional rights. (Complaint ¶¶ 97-116, 147-175). Therefore, in light of the plain language of § 8550 and Stambaugh's well-pled allegations of willful conduct, Holdsworth and McInstosh are entitled to no immunity protections.

## V.    CONCLUSION

For the reasons stated above, when all of the well-pleaded material facts in Stambaugh's complaint are accepted as true and in the light most favorable to Stambaugh's, defendants' motion to dismiss must fail.  Accordingly, Stambaugh's requests this Court to deny defendants' motion to dismiss and order defendants to answer the complaint.

Respectfully submitted,

THOMAS B. SCHMIDT, III (19196)
BRIAN P. DOWNEY (59891)
RANDY L. VARNER (81943)
KELLY ANN RYAN (84096)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
Post Office Box 1181
Harrisburg, PA  17108-1181
(717) 255-1155
(717) 238-0575 (Fax)

Attorneys for Plaintiff
Stambaugh's Air Service, Inc.

Date:  June 23, 2000

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2000, I served the foregoing brief in opposition to defendants' motion to dismiss and accompanying exhibits by hand delivering a true and correct copy thereof to the individual below, addressed as follows:

Dean F. Piermattei, Esquire
Rhoads & Sinon LLP
One South Market Street
P.O. Box 1146
Harrisburg, PA  17108-1146


RANDY L. VARNER (81943)