

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STAMBAUGH'S AIR SERVICE,      :      CIVIL NO.  **1:00-CV-0660**
INC.,                         :
                              :
              Plaintiff       :      (Judge Kane)
                              :
        v.                    :      (Magistrate Judge Smyser)
                              :
SUSQUEHANNA AREA REGIONAL      :
AIRPORT AUTHORITY;             :
BAA HARRISBURG, INC.;          :      **FILED**
DAVID FLEET;                   :      **HARRISBURG, PA**
DAVID HOLDSWORTH; and          :
DAVID C. MCINTOSH,             :      AUG 3  2000
                              :
              Defendants       :      MARY E. D'ANDREA, CLERK
                                      Per _____
                                           Deputy Clerk

## REPORT AND RECOMMENDATION

The complaint in this case was filed on April 10, 2000.  A

motion was filed by the defendants on May 19, 2000 to dismiss

the complaint.  The defendants' brief was filed on May 30,

2000.  A brief in opposition was filed on June 23, 2000.  A

reply brief was filed on July 13, 2000.  The motion is ripe.

The plaintiff is Stambaugh's Air Service, Inc.

(Stambaugh's).  The defendants are the Susquehanna Regional

Airport Authority (SARAA), BAA Harrisburg, Inc. (BAA), David

Fleet, David Holdsworth and David C. McIntosh.  Stambaugh's is

a Pennsylvania corporation that operates a fixed base operator (FBO) business at the Harrisburg International Airport (HIA). Stambaugh's accuses the defendants of attempting to destroy Stambaugh's longstanding FBO business at HIA. BAA manages HIA on behalf of SARAA. Fleet, a BAA employee, is the Airport Director, HIA. Holdsworth is the executive director of SARAA. McIntosh is Chairman of the Board of Directors of SARAA.

The complaint alleges that Stambaugh's has operated continuously as a tenant at HIA since 1975, during which time it has engaged in the business of providing FBO services, including fueling, to aircraft landing at HIA. Stambaugh's provided such services out of the same hangar that it currently leases from SARAA, and which it had previously leased from the Commonwealth of Pennsylvania. Stambaugh's had a lease agreement with SARAA. The lease terminated on January 19, 2000. While negotiating a new lease with Stambaugh's, the defendants refused to offer any lease to Stambaugh's that would permit Stambaugh's to continue to provide FBO services at HIA. The defendants permitted another FBO provider, AERO, to continue to operate as an FBO, and ultimately permitted another FBO provider, Piedmont Hawthorne, to operate at HIA. It is

2

alleged that the defendants used harassment and intimidation as tools to drive Stambaugh's out of HIA and to create an exclusive FBO arrangement. SARAA purchased a hangar formerly owned by the AMP Corporation to lease it to an entity to provide FBO services out of the hangar. As a part of this process, SARAA issued a Request for Qualifications (RFQ) from FBO service providers on October 5, 1999, requiring proposers to attend a pre-submission conference and tour. Proposals were required to be submitted in advance of a deadline of 4:00 p.m. EST, November 2, 1999. The RFQ stated, "ATTENDANCE AT THIS MEETING IS MANDATORY IN ORDER FOR YOUR COMPANY TO BECOME A CANDIDATE FOR CONSIDERATION". Stambaugh's was the only company to comply with both the submission and the attendance requirements. However, Stambaugh's was not the company selected to provide FBO services at the AMP hangar. The defendants solicited and accepted proposals that did not comply with the RFQ, the complaint claims, to ensure that Stambaugh's would not be able to lease the AMP hangar. The proposals that were submitted were submitted on the basis of representations made to the new bidders by SARAA that Stambaugh's would no longer be conducting an FBO business at HIA.

3

The complaint alleges that the defendants' conduct resulted in an unlawful exclusive FBO arrangement at HIA and that the defendants violated federally protected rights of the plaintiff in the process.

Count I is a 42 U.S.C. § 1983 claim based upon a theory of a due process violation under the United States Constitution. Count II is a claim of a due process violation under Article I, Section I of the Pennsylvania Constitution. Count III is a 42 U.S.C. § 1983 claim of a violation of the Equal Protection Clause of the Fourteenth Amendment. Count IV is a claim of a violation of equal protection as guaranteed under Article 1, Sections 1 and 26, and Article III, Section 32 of the Pennsylvania Constitution. Count V states a claim of conspiracy. Count VI states a claim of a violation of the Pennsylvania Municipality Authorities Act.

Count I of the complaint claims that the defendants violated the right of Stambaugh's to due process under the United States Constitution in that the defendants exercised governmental power in a manner that was arbitrary and irrational. Stambaugh's identifies its constitutionally

4

protected interest as "its ability to continue to engage in FBO and maintenance operation services at HIA". The theory of the plaintiff is that it was a violation of the right of Stambaugh's, which complied with SARAA's announced procedural prerequisites to become an eligible applicant for the FBO contract, for SARAA to have excluded Stambaugh's from consideration and for it to have awarded the contract to an applicant which did not comply with those procedural prerequisites.

The defendants argue that the complaint fails to state a constitutional claim upon which relief can be granted.

The plaintiff does not assert a procedural due process right and does not assert that there was a state-created property interest that was taken without due process of law. The claim is that there was a violation of substantive due process rights in the act of excluding the plaintiff as a potential bidder. In *Independent Enterprises Inc. v. Pittsburgh Water and Sewer Authority*, 103 F. 3d 1165 (3d Cir. 1997), the question of the application of constitutional substantive due process protections to expectations of

contractual interests with state or local governmental entities

was considered. The court said:

> Although the Third Circuit has recognized that a
> governmental deprivation that comports with
> procedural due process may still give rise to a
> substantive due process claim 'upon allegations that
> the government deliberately and arbitrarily abused
> its power,' *Midnight Sessions*, 945 F.2d at 683
> (citing *Bello v. Walker*, 840 F.2d 1124, 1129-30 (3d
> Cir.), *cert. denied*, 488 U.S. 851, 109 S.Ct. 134, 102
> L.Ed. 2d 107, *and cert. denied*, 488 U.S. 868, 109
> S.Ct. 176, 102 L.Ed.2d 145 (1988)), we have also held
> that a substantive due process claim grounded in an
> arbitrary exercise of governmental authority may be
> maintained only where the plaintiff has been deprived
> of a 'particular quality of property interest.'
> *DeBlasio v. Zoning Bd. Of Adjustment*, 53 F.3d 592,
> 600 (3d Cir. 1995); *see also Homar v. Gilbert*, 89
> F.3d 1009, 1021 (3d Cir. 1996); *Reich v. Beharry,* 883
> F.2d 239, 244 (3d Cir. 1989) ('[I]n this circuit at
> least, not all property interests worthy of
> procedural due process protection are protected by
> the concept of substantive due process.'). [Footnote
> 12: Although *Bello* and *Midnight Sessions* both
> contained language indicating that substantive due
> process is violated whenever a governmental entity
> deliberately or arbitrarily abuses government power
> by, for example, taking actions that are motivated by
> bias, bad faith, or partisan or personal motives
> unrelated to the merits of the matter before it.
> *Midnight Sessions*, 945 F.2d at 683; *Bello*, 840 F.2d
> at 1129; *see also Blanche Rd. Corp. v. Bensalem
> Township*, 57 F.3d 253, 267-68 (3d Cir.), *cert.
> denied*, ___ U.S. ___, 116 S.Ct. 303, 133 L.Ed. 2d 208
> (1995); *Neiderhiser v. Borough of Berwick*, 840 F.2d
> 213, 217 (3d Cir.), *cert. denied*, 488 US. 822, 109
> S.Ct. 67, 102 L.Ed. 2d 44 (1988), we do not read the
> cases to stand for that broad principle. The court
> in *Midnight Sessions* expressly stated that it was
> assuming, *without deciding*, that the plaintiffs were

entitled to substantive due process in the
consideration of their applications for dance hall
licenses. 945 F.2d at 682 n.11. Moreover, all of
the cases involved zoning decisions, building permits
or other governmental permission required for some
intended use of land owned by the plaintiffs, matters
which were recognized in *DeBlasio* as implicating the
'fundamental' property interest in the ownership of
land. 53 F.3d at 600. Thus, in light of the court's
explicit statement in *DeBlasio* that some 'particular
quality of property interest' must be infringed
before substantive due process protection may be
invoked, *id.* at 600, these cases cannot be understood
as affording substantive due process protection from
*every* arbitrary and irrational governmental act, but
only for those that deprive the plaintiff of a
fundamental property right 'implicitly protected by
the Constitution.' *Id.* at 599; *see also Blanche Rd.,*
57 F.3d at 268 (plaintiffs stated a substantive due
process claim because they claimed that defendants
'acted deliberately and under color of state law *to
deprive them of their property rights* by interfering
in and delaying the issuance of permits') (emphasis
added); *Neiderhiser,* 840 F.2d at 218 ('[I]f
[plaintiff] can successfully demonstrate that the
[town] arbitrarily and irrationally denied the
[zoning] exemption, *visiting a constitutional
deprivation on [plaintiff],* then [plaintiff] may
prevail on its due process claim.') (emphasis
added).]    Although our court has suggested that
only *fundamental* property interests are worthy of
substantive due process protection, *DeBlasio,* 53 F.3d
at 599, it has provided little additional guidance
regarding what specific property interests should
receive substantive due process protection:

> We have held that 'ownership is a property
> interest worthy of substantive due process
> protection.' [*DeBlasio,* 53 F.3d at 600],
> but we have found that neither interest in
> prompt receipt of payment for professional
> services provided to the state, *Reich,* 883
> F.2d at 244-45, nor state law entitlement

7

> to water and sewer services, *Ransom v.
> Marrazzo*, 848 F.2d 398, 411-12 (3d Cir.
> 1988), are the 'certain quality' of
> property interest worthy of substantive due
> process protection.  We have also strongly
> suggested in dictum that a student's right
> to continued enrollment in a graduate
> program does not rise to such a level on
> the ground that such an interest bears
> 'little resemblance to the fundamental
> interests that previously have been viewed
> as implicitly protected by the
> Constitution.'  *Mauriello v. Univ. of Med.
> & Dentistry of N.J.*, 781 F.2d 46, 50 (3d
> Cir. 1986) (quoting *Regents of Univ. of
> Michigan v. Ewing*, 474 U.S. 214, 229-30,
> 106 S.Ct. 507, 516, 88 L.Ed.2d 523 (Powell,
> J., concurring)).

*Homar*, 89 F.3d at 1021.

> [19] We will leave for another day definition of
> the precise contours of the 'particular quality of
> property interest' entitled to substantive due
> process protection.  We have no difficulty in
> concluding that the property interest alleged to have
> been infringed here, which we have concluded is not
> entitled to *procedural* due process protection, is not
> the sort of 'fundamental' interest entitled to the
> protection of *substantive* due process.

103 F.3d at 1179-1180.  The right that Stambaugh's asserts, to

be the HIA FBO operator, is not a fundamental right such as the

property interests that may in some contexts arise from the

ownership of land, particularly in contexts involving state-

imposed limitations upon the uses of land.  It is a contractual

right.  The decision of the Court of Appeals in the <u>Independent</u>

8

case is dispositive of the plaintiff's property interest substantive due process claim. Stambaugh's did not have a right as a matter of substantive due process to continue to have the HIA FBO contract or to have its bid considered in any particular manner. The complaint does not state a substantive due process right upon which relief can be granted.

The plaintiff claims to have a constitutionally protected *liberty* interest, its "right to continue to engage in FBO services", that has been infringed. The plaintiff argues that the taking of its business interests at HIA is tantamount to the state's taking of a professional license by wrongfully withholding or revoking certification. There is not a reasonable analogy to be drawn between this case and a case where a state through its professional or occupational licensing authority undertakes to affect a person's opportunity to pursue a trade or profession altogether. Such are the cases that the plaintiff analogizes to here, such as *Sammon v. New Jersey Board of Medical Examiners*, 66 F.3d 639 (3d Cir. 1996). A company's contractual expectation under a contract for a limited duration and involving a particular location is not analogous or comparable on a principled basis to an

9

AO 72A
(Rev.8/82)

individual's expectation as to the practice of his or her trade, occupation or profession. The state when acting in a governmental capacity of regulating persons' eligibility and suitability to practice their trade or profession gives rise to an application of due process principles and expectations whereas the state's contractual interactions with service providers do not. Assuming that the defendants here did act arbitrarily and irrationally, there is not the requisite protected property or liberty interest for purposes of the finding of a due process violation. The defendants' motion should be granted as to the plaintiff's due process claim(s).

The plaintiff states a claim in Count III under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The defendants argue that this is not a claim upon which relief can be granted and that therefore it should be dismissed. The plaintiff's right to equal protection of the law was not violated by the award of the FBO contract to an entity other than Stambaugh's, the defendants argue. Accepting as true the complaint's averments, the defendants argue that as a matter of law no equal protection violation is stated.

10

The plaintiff argues that because Stambaugh's has alleged
that defendants arbitrarily and irrationally treated
Stambaugh's differently from similarly situated entities,
defendants' motion to dismiss must be denied.  We note that, in
*Village of Willowbrook v. Olech*, 120 S.Ct. 1073 (2000), the
court affirmed that there is a viable equal protection claim
for discrimination against a single person even in the absence
of a suspect classification.  It follows that the defendants
would need to show a rational basis for state action to defend
against this claim.  The plaintiff cites *Holt Cargo Systems,
Inc. v. Delaware River Port Authority*, E.D. Pa. Civil No. 94-
778, 1997 U.S.Dist. LEXIS 18073 (Nov. 13, 1997), Doc. 16,
Exhibit D.  The defendants cite *Holt Cargo Systems, Inc. v.
Delaware River Port Authority*, 20 F.Supp. 2d 803 (E.D. Pa.
1998).  The earlier decision ("*Holt II*") involved, *inter alia*,
the denial of a Rule 12(b)(6) motion as to an equal protection
claim substantially similar to that in this case.  The latter
decision involved the grant of a Rule 56 summary judgment
motion in the same case.  As Judge Shapiro observed in
distinguishing the Court's summary judgment analysis from its
earlier Rule 12(b)(6) analysis in the same case: "The issue now
before the court is not what plaintiffs have alleged but

11

whether plaintiffs have produced evidence from which a jury might rationally find that defendants have actually reduced the value of plaintiffs' business and taken unlawfully what they were authorized to take lawfully with due compensation. Denial of a motion to dismiss is always without prejudice to a motion for summary judgment at the end of discovery." 20 F.Supp. 2d at 818. The defendants' motion for summary judgment should not be granted as to the plaintiff's equal protection claim.

However, the individual defendants (defendants Fleet, Holdsworth and McIntosh) argue that they are entitled to a dismissal of the complaint on the basis that the complaint does not allege conduct or actions on the part of the defendants that would have been known to a reasonable person in the defendants' position to constitute a violation of the constitutional rights of Stambaugh's. We will proceed to apply qualified immunity principles to the complaint's equal protection claim. Qualified immunity principles will not be applied as to the complaint's due process claims, because we have concluded that those claims fail to state a claim upon which relief can be granted.

12

The Third Circuit Court of Appeals has said:

> A claim under section 1983 for damages against
> ... government officials will almost inevitably raise
> issues as to the availability of qualified immunity.
> Government officials performing discretionary
> functions are "shielded from liability for civil
> damages insofar as their conduct does not violate
> clearly established statutory or constitutional
> rights of which a reasonable person would have
> known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102
> S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

*    *    *

> ...[W]hether the plaintiff alleges the violation
> of a clearly established constitutional right, is
> purely a question of law, and the Supreme Court has
> made clear that this is a threshold question that
> should be decided expeditiously to spare a defendant
> the "unwarranted demands customarily imposed upon
> those defending a long drawn out lawsuit." *Seigert
> v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793,
> 114 L.Ed.2d 277 (1991).

*Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997).

The plaintiff claims that a violation of a clearly

established right to equal protection of the law, such as has

been pleaded here, is grounded upon clearly established law in

*Holt II, supra*, and in *Northeast Jet Center v. Lehigh-*

*Northampton Airport Authority*, 767 F.Supp. 672, 677-678 (E.D.

Pa. 1991).  Both of the cited cases involve courts' denials of

Rule 12(b)(6) motions to dismiss.  The question is whether

13

either decision involves an establishment of clear law that can

be seen to have placed a reasonable state actor on notice of

law that would be applicable in the present factual situation.

In *Northeast Jet Center*, the court held as to the pending equal

protection 42 U.S.C. § 1983 claim:

> Construing the allegations of the complaint in
> the light most favorable to the plaintiff, we
> conclude that the plaintiff has adequately alleged
> that a governmental entity has enforced certain
> regulations and policies solely against the plaintiff
> and not against other similarly situated FBOs.  This,
> in conjunction with the plaintiff's allegations of
> conspiracy among the defendants, and their purpose of
> harassing the plaintiff with the intent of injuring
> its business and appropriating its business and
> property, convinces us that the plaintiff has met the
> *Snowden [Snowden v. Hughes*, 321 U.S. 1, 8 (1944)]
> requirements for a proper pleading of a denial of
> equal protection.

*Northeast Jet Center*, *supra*, at 677-678.

The *Northeast Jet Center* case decision, holding an

actionable equal protection claim to have been stated by

allegations materially quite similar to the allegations in this

complaint, must be seen at present to provide a foundation in

clearly established law for the defendants to have known that

conduct such as that alleged here was in violation of clearly

established law.  The responsibility of a state actor in taking

14

state action and in drawing classifications to have a rational
basis for the action is itself clearly established.  *Village of
Willowbrook v. Olech, supra.*

It is recommended that the individual defendants'
motion(s) to dismiss the equal protection claim as to them on
the basis of qualified immunity be denied.

The defendants argue that Stambaugh's claims (Counts II
and IV) under the Pennsylvania Constitution should be dismissed
on the basis that a violation of the Pennsylvania Constitution
does not give rise to a cause of action seeking monetary
damages as a remedy.

In *Harley v. Schuylkill County,* 476 F.Supp. 191 (E.D.Pa.
1979), the United States District Court for the Eastern
District of Pennsylvania held that Article I, Section I of the
Pennsylvania Constitution is self-executing.  The decision
stated that defendant County of Schuylkill "is liable for acts
of its employees which violate article I, section I of the
Pennsylvania Constitution where those employees are acting
within the scope of their official duties."  476 F.Supp. at

15

196.  The defendants argue that the *Harley* decision represents
an unjustified and unprecedented expansion of the range of
private causes of action for monetary damages under
Pennsylvania law.  The defendants' argument is persuasive.  At
the federal level, a private cause of action for monetary
damages for a violation of a federally protected right by a
defendant acting under color of state law is established by 42
U.S.C. § 1983. [There is, as well, the judge-made parallel
cause of action for constitutional torts by federal actors,
*Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971).]
There is not a Pennsylvania statute that establishes a cause of
action against a defendant acting under color of law for a
violation of the Pennsylvania Constitution.  The Pennsylvania
Supreme Court has not stated that there is such a cause of
action.  For the federal court to imply such a cause of action
under state law under a theory of "self-execution" or some
other theory would seem to be difficult to justify when,
against the backdrop of 42 U.S.C. § 1983, the state legislature
has not acted to establish a parallel state law cause of action
and when the Pennsylvania courts have not established a
jurisprudence of claims for damages for violations of
Pennsylvania constitutional rights.  We do not believe that

16

plaintiffs here have justified such a state law cause of action.   The *Harley* case was not correctly decided, and this court should not follow it.

The defendants' motion to dismiss should be granted as to Counts II and IV of the complaint.

Count V of the complaint states a claim of conspiracy. The defendants move to dismiss Count V because the conspiracy claim is not annexed or grounded to any particular tort.

The plaintiff argues that an allegation that "SARAA, BAA, Fleet, Holdsworth and McIntosh agreed not later [than] November 1993 to force Stambaugh's out of the FBO business at HIA" is enough of a factual allegation to support a cause of action or claim upon which relief can be granted.   The plaintiff asserts that the various alleged wrongs and torts pleaded elsewhere in the complaint are properly referenced, any or all of them, to supply the "unlawful act" or "lawful act by unlawful means" element of a conspiracy claim (citing *Skipworth by Williams v. Lead Industries Ass'n., Inc.*, 547 Pa. 224, 690 A.2d 169, 174

17

(1997)). "Stambaugh's complaint is replete with examples of defendants' unlawful activity ..." (Doc. 15, p.38).

The incorporation of specific separately pleaded torts into a separately pleaded conspiracy claim is not self-evident or logically required or manifest. Firmer and more certain pleading is required by Rules 8 and 11 of the Federal Rules of Civil Procedure. Given plaintiff's pleading theory, a defendant would be required to address a conspiracy theory with reference to each and every theory and cause of action in the complaint in filing a Rule 12(b)(6) or Rule 56 motion. Moreover, the application of Rule 11(b)'s listing of the implicit representations of plaintiff's attorney to such a pleading would be very difficult, since the complaint commits the plaintiff to no one particular conspiracy theory.

A plaintiff pleading a conspiracy claim must state the unlawful act or acts that were the object of the conspiracy. *Skipworth*, *supra*. The conspiracy claim in the complaint here fails to do that. Count V of the complaint should be dismissed for the reason that there is no reference in Count V to all of the elements of a civil conspiracy claim in that there is no

18

reference to the provision or provisions of law that were allegedly violated by the conspirators.

The defendants have moved to dismiss Count VI of the complaint. Count VI of the complaint is brought under the Pennsylvania Municipal Authorities Act of 1945, 53 P.S. § 306 *et seq.* 53 P.S. § 306A(b)(2) provides:

> (2) The purpose and intent of this act being to benefit the people of the Commonwealth by, among other things, increasing their commerce, health, safety and prosperity, and not to unnecessarily burden or interfere with existing business by the establishment of competitive enterprises, none of the powers granted by this act shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project or projects or providing financing for insurance reserves which in whole or in part shall duplicate or compete with existing enterprises serving substantially the same purposes.

The defendants argue that Count VI of the complaint fails to state a claim upon which relief can be granted because a municipal authority's termination of a contract with an existing service provider and subsequent entry into a contract with a new provider does not constitute a violation of section 306A(b)(2).

19

Stambaugh's alleges that SARAA refused to renew Stambaugh's FBO contract and did so with the intent to begin itself to operate an FBO service at HIA or to replace Stambaugh's with another service provider.

Under the construction of the facts pleaded in the complaint that is most favorable to Stambaugh's, SARAA did not unnecessarily burden or interfere with an existing business by establishing a competitive enterprise. The action of SARAA not to renew Stambaugh's FBO contract did not have the effect of duplicating or competing with Stambaugh's or an existing enterprise, but rather is alleged to have had the effect of replacing Stambaugh's as an FBO service provider by not considering the renewal of Stambaugh's expired FBO service provider agreement. In terms of the statutory concerns of the commerce, health, safety and prosperity of the people of the Commonwealth, a municipal authority's construction, financing, improvement, maintenance, extension or operation of a project that duplicates or competes with an existing enterprise serving substantially the same purpose(s) negatively affects those concerns when the enterprise has operated and would continue to be operated independent of the municipal authority's regulatory

20

and contractual authority.  Here, SARAA had launched

Stambaugh's FBO service provider status through SARAA's

authority and exercise of contractual choice.  Stambaugh's

contractual life, so created, had expired.  SARAA's replacement

of Stambaugh's with another similar FBO service provider could

not be seen to have given rise to a duplication of Stambaugh's

enterprise since Stambaugh's enterprise had come to an end with

the expiration of the contract.  SARAA's selection of another

vendor would not and did not serve to create a competitive

environment where one had not existed before – the status quo

of one HIA FBO service provider was not changed.  There was no

duplication.  Although Stambaugh's had been competitively

displaced, no competitive marketplace was created beyond what

had existed before: one FBO service provider.  We agree with

the defendants that, by application of *Beaver Falls Municipal*

*Authority v. Municipal Authority of the Borough of Conway*, 689

A.2d 379 (Pa. Commonwealth Ct. 1997), and by application of the

statutory language, no violation of the Municipal Authorities

Act is stated.  Stambaugh's had no statutory right not to be

replaced by SARAA.

21

Count VI of the complaint should be dismissed for failure to state a claim upon which relief can be granted.

The defendants argue that Count VII of the complaint should be dismissed.  The defendants argue that plaintiff's allegation that the defendants contacted the plaintiff's customers and told them that Stambaugh's would no longer be permitted to provide FBO services at HIA before the SARAA board had voted on the question is not an adequate allegation to state an actionable claim of tortious interference with existing contractual relations.

Pennsylvania law requires a plaintiff to prove four elements in order to prevail on an interference with existing contractual relations claim: (1) existence of a contractual relationship; (2) intent on the part of the defendant to harm plaintiff by interfering with that contractual relationship; (3) absence of privilege or justification for such interference; and (4) damages resulting from defendant's conduct.  *Beidleman v. Stroh Brewing Co.*, 182 F.3d 225, 234-35 (3d Cir. 1999).  In Count VII of the complaint, Stambaugh's alleges that: (1) it had existing contractual relationships

22

with various customers to provide FBO services at HIA

(Complaint ¶ 227); (2) defendants intentionally interfered with

those relationships for the purpose of hurting Stambaugh's

(Complaint ¶ 229); (3) the interference was not privileged or

justified (Complaint ¶ 233); and (4) it suffered damages in

excess of $13,000,000 (Complaint ¶¶ 235-236).  Therefore the

*prima facie* elements have been stated.  Further, Stambaugh's

alleges that defendants contacted Stambaugh's customers and

informed them that Stambaugh's would no longer be able to

provide FBO services.  (Complaint ¶ 230).

The position taken by the defendants is that, as the

plaintiff alleges, the reason that Stambaugh's is unable to

service its former FBO customers at HIA is that it did not

receive an FBO contract.  Stambaugh's complaint alleges injury

not from the defendants' alleged actions directed at

Stambaugh's customers, but rather from the action(s) allegedly

directed at Stambaugh's, the termination of Stambaugh's status

as an FBO service provider at HIA.

The defendants' interference with Stambaugh's

relationships with Stambaugh's FBO customers was the product of

AO 72A
(Rev.8/82)

the defendants' exercise of their prerogatives and duties as HIA owner and operator and under the FBO contract with Stambaugh's, which contract they declined to renew.  Complaint, ¶¶ 2, 9, 10, 16, 19, 20.  As the owner of HIA and the party with the authority to extend or not to extend Stambaugh's lease, SARAA had the capacity and apparent authority to exercise a contractual option not to renew a lease with Stambaugh's.  The defendants' argument that SARAA's actions directed at Stambaugh's; *i.e.*, the non-renewal of this lease agreement, is the cause of Stambaugh's injuries, does not directly address Stambaugh's contention that it was the defendants' contacts with Stambaugh's customers that made up the tortious interference.  But since SARAA was contractually empowered to terminate Stambaugh's lease, the defendants' contacts with Stambaugh's customers might reasonably be seen as conduct that was privileged and justified.  SARAA as owner and operator of HIA, as the entity that was to terminate the incumbent FBO provider's lease and as the entity that would be responsible to replace the incumbent's FBO services with those of a new provider, may have been justified in contacting customers of the incumbent provider.

24

Construing the complaint in Stambaugh's favor, we can not say that there are not presented *prima facie* the elements of a cause of action for a tortious interference with existing contractual relationships.

It will be recommended that Count VII of the complaint not be dismissed on the basis that no claim is stated upon which relief can be granted, but dismissal as to defendant SARAA is recommended on the basis of governmental immunity.

The defendants argue that the state law claims of the plaintiff should be dismissed on the basis of governmental immunity. We will apply the relevant standard to the Count VII tortious interference claim, having recommended the dismissal of the other state law claims.

Under 42 Pa. C.S.A. § 8541, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. § 8541. SARAA is entitled to immunity under this provision as to the plaintiff's claim of a tortious interference with existing contractual

relations.  The plaintiff does not argue an absence of
governmental immunity on the part of SARAA as to that claim
(Doc. 15, page 43).

As to defendants Holdsworth and McIntosh, with reference
to the intentional interference with contractual relationships
claim, the plaintiff argues for the retention of the claim
because an exception to immunity exists as to an employee if
wilful misconduct is found.  42 Pa. C.S. § 8550.  Stambaugh's
complaint pleads wilful conduct as to the intentional
interference with contractual relationships claims as to these
two defendants.  The defendants argue also a "scope of duties"
basis for the official immunity protection for Holdsworth and
McIntosh.  42 Pa. C.S. § 8545.  We are not presented with a
factual basis to make a "scope of office or duties" finding as
to these defendants.  The motion to dismiss as to defendants
Holdsworth and McIntosh on governmental immunity grounds should
be denied; therefore, Count VII of the complaint should not be
dismissed as to defendants Holdsworth and McIntosh.

For the foregoing reasons, it is recommended that the
defendants' motion be granted in part.  It is recommended that

Counts I, II, IV, V and VI be dismissed.  It is recommended that Count VII be dismissed as to defendant SARAA.  It is recommended that the defendants' motion be denied as to Count III and denied as to defendants BAA, Fleet, Holdsworth and McIntosh as to Count VII.


J. Andrew Smyser
Magistrate Judge


Dated:  August _____, 2000.

27

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STAMBAUGH'S AIR SERVICE, INC., | : | CIVIL NO. **1:00-CV-0660** |
| Plaintiff | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Smyser) |
| SUSQUEHANNA AREA REGIONAL AIRPORT AUTHORITY; | : | |
| BAA HARRISBURG, INC.; | : | |
| DAVID FLEET; | : | |
| DAVID HOLDSWORTH; and | : | |
| DAVID C. MCINTOSH, | : | |
| Defendants | : | |

**FILED**
HARRISBURG, PA

AUG 3 2000

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## NOTICE

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3 of the Rules of Court, M.D.Pa., which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

J. Andrew Smyser
Magistrate Judge

Dated: August___3___, 2000.

AO 72A
(Rev.8/82)



UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

August 3, 2000

Re:  1:00-cv-00660    Stambaugh's Air Serv v. Susquehanna Area Reg

True and correct copies of the attached were mailed by the clerk
to the following:

    Thomas B. Schmidt III, Esq.
    Pepper, Hamilton & Scheetz
    200 One Keystone Plaza P.O. Box 1181
    North Front & Market Streets
    Harrisburg, PA  17108-1181

    Brian P. Downey, Esq.
    200 One Keystone Plaza
    N. Front & Market Sts.
    Harrisburg, PA  17101

    Randy L. Varner, Esq.
    Pepper Hamilton LLP
    200 One Keystone Plaza
    North Front and Market Streets
    P.O. Box 1181
    Harrisburg, PA  17108-1181

    Dean Frank Piermattei, Esq.
    Rhoads & Sinon
    One Market Square
    Harrisburg, PA  17101

    Timothy J. Nieman, Esq.
    RHOADS & SINON LLP
    One South Market Square
    Dauphin Deposit Bank Building
    Harrisburg, PA  17101

    Susan E. Schwab, Esq.
    Rhoads & Simon
    One South Market Square
    P.O. Box 1146
    Harrisburg, PA  17108-1146

```
cc:
Judge                     ( / )
Magistrate Judge          (   )
U.S. Marshal              (   )
Probation                 (   )
U.S. Attorney             (   )
Atty. for Deft.           (   )
Defendant                 (   )
Warden                    (   )
Bureau of Prisons         (   )
Ct Reporter               (   )
Ctroom Deputy             (   )
Orig-Security             (   )
Federal Public Defender   (   )
Summons Issued            (   )  with N/C attached to complt. and served by:
                                 U.S. Marshal ( )    Pltf's Attorney ( )

Standard Order 93-5       (   )
Order to Show Cause       (   )  with Petition attached & mailed certified mail
                                 to:  US Atty Gen   ( )   PA Atty Gen ( )
                                      DA of County  ( )   Respondents ( )

Bankruptcy Court          (   )
Other  _9/Coy dep_        ( )
```

MARY E. D'ANDREA, Clerk

DATE: _____8/3/00_____          BY: _____

                                            Deputy Clerk