FILED
HARRISBURG, PA

SEP 1 3 2000

MARY E. D'ANDREA, CLERK
Per/

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STAMBAUGH'S AIR SERVICE, INC.,           :
                                         :
                Plaintiff                :
                                         :
        vs.                              :      No. 1:CV-00-0660
                                         :
SUSQUEHANNA AREA REGIONAL AIRPORT :             (Judge Kane)
AUTHORITY, BAA HARRISBURG, INC.,         :      (Magistrate Smyser)
DAVID FLEET, individually, DAVID         :
HOLDSWORTH, individually, and DAVID C.   :
MCINTOSH, individually                   :
                                         :
                Defendants               :

**EXHIBITS TO REPLY BRIEF IN SUPPORT OF OBJECTIONS OF
STAMBAUGH'S AIR SERVICE, INC. TO THE REPORT AND
RECOMMENDATION OF THE MAGISTRATE JUDGE TO GRANT
IN PART DEFENDANTS' MOTION TO DISMISS**

THOMAS B. SCHMIDT, III (19196)
BRIAN P. DOWNEY (59891)
RANDY L. VARNER (81943)
KELLY ANN RYAN (84096)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
Post Office Box 1181
Harrisburg, PA  17108-1181
(717) 255-1155
(717) 238-0575 (Fax)

Attorneys for Plaintiff
DATE:  September 13, 2000          Stambaugh's Air Service, Inc.

A

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 9042    Page 1 of 6

Case 2:00-cv-00060-YK-JAS   Document 29   Filed 09/13/2000   Page 3 of 34

Service: **LEXSEE®**
Citation: **1992 us dist lexis 9042**

*1992 U.S. Dist. LEXIS 9042, \**

QUEEN CITY AVIATION, INC., Plaintiff v. CITY OF ALLENTOWN, et al., Defendant

CIVIL ACTION No. 91-7776

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1992 U.S. Dist. LEXIS 9042

June 5, 1992, Decided
June 8, 1992, Filed

**CORE TERMS:** airport, lease, antitrust claim, civil rights, motion to dismiss, bid, bidding, equal protection, discriminatory, conspiracy, dealer, competitor, Sherman Act, disappointment, manufacturer, distributor, negotiations, animus, bidding process, antitrust, Local Government Antitrust Act, failed to state, protected class, state action, new lease, et seq, geographic, monopolize, exhibited, conspired

**COUNSEL:** [\*1]  For the Plaintiff: GARY C. BENDER, CRAMP, D'IORIO, MC CONCHIE & FORBES, P.C., 215 N. OLIVE STREET, P.O. BOX 568, MEDIA, PA 19063, USA.

For the Defendants: CHARLES J. FONZONE, FONZONE & ASHLEY, 33 SOUTH SEVENTH STREET, P.O. BOX 4180, ALLENTOWN, PA 18105-4180, USA.

**JUDGES:** TROUTMAN

**OPINIONBY:** E. MAC TROUTMAN

**OPINION: MEMORANDUM**

Plaintiff, the former Fixed Based Operator ("FBO") at the Queen City Municipal Airport ("airport"), Allentown, Pennsylvania, filed a three count complaint against the City of Allentown and various city officials alleging that defendants violated its civil rights and certain of the antitrust laws. These claims arise out of the invitation to bid procedures used by the defendants and, ultimately, their award of the exclusive rights to service and operate the airport to another FBO. Defendants have filed a motion to dismiss. Since we agree with defendants that the complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), but for reasons that differ somewhat from those articulated by defendants, we will grant the motion to dismiss.

I. BACKGROUND.

The facts, as alleged in plaintiff's complaint are as follows. The City of Allentown is a municipal corporation subject  [\*2]  to the laws of Pennsylvania and the individual defendants are employees or elected officials of the City of Allentown. The City of Allentown obtained control of the Queen City Airport by a quitclaim deed granted by the United States in 1948.

Plaintiff was the FBO at the airport from 1981 under the terms of a ten year lease granted by the City of Allentown. The lease expired in May 1991 and continued on a month to month basis thereafter until the City of Allentown terminated the lease in February 1992. Plaintiff's sole operations were those at the airport and included air charter and taxi service, fuel sales,

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 9042    Page 4 of 34    Page 2 of 6

Case 1:00-cv-00009-KJ-3AS    Document 29    Filed 09/13/2000    Page 4 of 34

hanger and tie down leases, office space leasing, aircraft maintenance, sale of supplies, flight school and instruction training, aircraft rental, ground handling and customer services, snow removal, and grounds maintenance.

In June 1991, the defendants made public a proposal package for Request for Proposals to lease the airport to a full service FBO. The bids were to be received by October 10, 1991. Plaintiff and Cole Aviation submitted the only bids to be a full service FBO at the airport. In a letter dated November 27, 1991, plaintiff was informed that, pursuant to [*3] the Request for Proposals, the City of Allentown had selected a competitor, Cole Aviation, to be the FBO at the airport. Plaintiff was informed that its lease would be terminated on February 1, 1992, and that Cole Aviation would become the FBO on that date.

In counts I and II, plaintiff asserts claims pursuant to 42 U.S.C. § 1983 and 1985 against all the defendants for violating its civil rights. Plaintiff alleges in count I that the individual defendants were members of a selection committee chosen to represent the City of Allentown, and thus acted under color of state law, when they issued the Request for Proposals and selected Cole Aviation. The bid specifications and procedures, the plaintiff claims, were inconsistent, ambiguous, vague and contrary to law for a variety of reasons. Plaintiff also asserts that the selection of Cole Aviation was arbitrary, capricious, an abuse of discretion, contrary to law, and discriminatory for a variety of reasons. Plaintiff's complaint further alleges that the City of Allentown has exhibited an animus toward the plaintiff and has acted in an unfair and discriminatory manner. Thus, plaintiff concludes, the actions of the defendants amount [*4] to a taking of its property without due process or notice in violation of the 5th and 14th Amendments and in violation of the equal protection of law, as well as a conspiracy to deprive plaintiff of its business and property. Count II alleges that the actions of the individual defendants constituted an official policy and decision of the City of Allentown.

Count III assets an antitrust claim against the City of Allentown, and alleges in support thereof and in addition to the above described events, that plaintiff requested on numerous occasions to enter into lease negotiations with the City of Allentown regarding the airport and that the City of Allentown refused to enter into such negotiations. Plaintiff concludes that the refusal to negotiate a new lease with plaintiff and, instead, entering into a lease with Cole Aviation pursuant to the public bidding, is a restraint of trade prohibited by section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiff also claims that the City of Allentown and Cole Aviation have conspired to monopolize services at the airport in violation of section 2 of the Sherman Act, 15 U.S.C. § 2. Plaintiff, therefore, requests the Court to enjoin Cole Aviation [*5] and the City of Allentown from entering into a lease pursuant to the Request for Proposal.

II. STANDARDS FOR A MOTION TO DISMISS PURSUANT TO RULE 12(b)(6).

The Court, when faced with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) must accept as true all the averments in plaintiff's well pleaded complaint; the court must construe the complaint in a light most favorable to plaintiff; and the court must determine whether, "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-666 (3rd Cir. 1988). The pleading requirements that a civil rights complaint must meet to survive a motion to dismiss, however, are heightened: the complaint is sufficient if, e.g., it alleges specific conduct which violates plaintiff's rights, the time and place of the conduct, and identifies the responsible officials. Id. at 666.

III. DISCUSSION.

Like the complaint in Dunn & Mavis, Inc. v. Nu-Car Driveaway, Inc., 691 F.2d 241 (6th Cir. 1982) (an antitrust action, discussed infra), plaintiff's complaint is nothing more that the expression [*6] of its disappointment that city officials, after inviting bids, decided to offer its franchise, its grant of an exclusive lease, to someone else. The Civil Rights laws were

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 9042   Page 5 of 34

Case 1:00-cv-00600-YK-JAS   U.S. Document 29   Filed 09/13/2000   Page 3 of 6

never intended to establish liability under the current circumstances. We find that plaintiff's civil rights claims are nothing more than an attempt to federalize a routine dispute with local officals over municipal planning or procedures, i.e., bidding practices.

Further, and more specifically, plaintiff's section 1985 claim fails to show that it is a member of any protected class. Though paragraph 18 of the complaint states that the City of Allentown has exhibited an animus toward the plaintiff and has acted in an unfair and discriminatory manner, plaintiff has failed to state a claim under section 1985(3), the only subpart of section 1985 within which plaintiff could possibly and reasonably fall, n1 as it has showed no immutable characteristic, membership in a protected class, or any class based discriminatory animus. See, United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott, 463 U.S. 825, 103 S. Ct. 3352, 77 L.Ed.2d 1049 (1983); [*7] Burt v. Ferrese, 871 F.2d 14 (3rd Cir. 1989).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n1 Once again the court is faced with a complaint brought by a frustrated business entity, represented by counsel, alleging broad and sweeping civil rights violations yet fails to identify with any particularity which subpart of section 1985 was supposedly violated, thus leaving the court to determine which of the three differing parts is to apply.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

Regarding the section 1983 claims, plaintiff needs to show (1) that defendants acted under color of law and (2) that they deprived it of its constitutionally protected rights. Plaintiff's complaint meets the first requirement. As to the second requirement, however, we cannot discern from the complaint what constitutionally protected rights have been violated.

While plaintiff alleges that the defendants violated its constitutional rights to equal protection and due process, n2 which are protectable rights, the allegations of plaintiff's complaint do not rise to a constitutional violation. The only fact [*8] that could possibly, yet remotely, give rise to an equal protection claim is the allegation that "the City of Allentown improperly made contact with Cole Aviation after the bid proposals were submitted; . . . ." (Complaint at P16(f)). Presumably, plaintiff is concluding that this lead to an unfair advantage for Cole Aviation and thus implicated plaintiff's interest in equal protection. There is no support offered for why it was improper in constitutional proportions, or that it in fact could reasonably be construed to implicate constitutional equal protection.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n2 Once again the court is faced with a complaint brought by a frustrated business entity, represented by counsel, alleging broad and sweeping violations of due process without specifying what aspect of its due process rights, procedural or substantive, was violated, thus leaving the court to determine which the plaintiff believes is implicated. In this case, we find that we need not make such a determination. For example, plaintiff has not pleaded that it never received notice of the Request for Proposals, or that it had a vested property interest in a lease beyond the ten year term, or that the bidding procedures violated some local ordinance or Pennsylvania law or that it is foreclosed from pursuing a claim that the bidding procedures violated some local ordinance or Pennsylvania law in the courts or other forums provided by the state and local governments.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - [*9]

In addition, from the complaint, it appears that plaintiff merely had a lease for a certain term, which expired, and thereafter the lease was month to month. We know of no requirement that the City of Allentown, as the landlord of the airport, must even consider entering into a new lease with plaintiff, or that it structure the Request for Proposals in a manner acceptable

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 9042    Page 6 of 34   Page 4 of 6

Case 1:00-cv-00669-YK-JAS   Document 29   Filed 09/13/2000

to or approved by plaintiff. Plaintiff's complaint or its brief in opposition to the motion has not brought any such requirement to our attention. Absent that, there is no constitutional interest violated by the City of Allentown's decision to seek bids from competing companies and to chose one of plaintiff's competitors.

At best, plaintiff has alleged that it does not agree with the procedures employed by the defendants, that the Request for Proposal did not require, it seems, enough information, and that, in plaintiff's estimation, Cole Aviation is not as qualified as it to be the FBO at the airport. Plaintiff's complaint, read in its entirety, simply airs its disappointment that it is no longer the exclusive FBO at the airport. n3

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n3 A reading of plaintiff's complaint gives the impression that it is proper for the City of Allentown to convey it the right to be the exclusive FBO at the airport, but not anyone else; that it is proper to convey these exclusive rights through private, non-competitive negotiations, but not through a public bidding process. Plaintiff's complaint, in short, leaves the impression that it is proper for the City of Allentown to disregard the public interest in competitive bidding and in open and public government, so long as it is treated specially. The fact that the bidding process may not have been perfect, which is plaintiff's basic claim, is not by itself a constitutional violation and is a matter best pursued at the state or local level. See note 6, infra.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - [*10]

Defendants have argued that such a civil rights action against them is barred by the Federal Aviation Act, 49 U.S.C. § 1300 et seq., citing Montauk-Caribbean Airways, Inc. v. Hope, 784 F.2d 91 (2nd Cir. 1986). Because we conclude, as discussed above, that plaintiff has failed to state a civil rights claim against the defendants, we do not need to reach and, so, do not address, the issue regarding whether the claims are barred.

Plaintiff's final count is an antitrust claim. This sort of claim, when made in circumstances similar to those currently before us, was characterized in Dunn & Mavis, Inc. v. Nu-Car Driveaway, Inc., 691 F.2d 241 (6th Cir. 1982): n4

> The complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language regarding the elimination of competition and improper purpose. When stripped to its essential allegations, the complaint does no more than state plaintiffs' commercial disappointment at losing Chrysler's patronage - the recurrent case of the jilted customer, dealer or supplier who loses a manufacturer's franchise and accuses the manufacturer and the [*11] new suitor of attempting to monopolize something. See Burdett v. Altec Corp., 515 F.2d 1245, 1249 (5th Cir. 1975). [footnote omitted] An agreement promising a new dealer the old dealer's business is presumptively reasonable, and the old dealer does not have an antitrust claim unless the conduct is incident to an unlawful arrangement or an attempt to monopolize an identifiable market. A contrary rule limiting a buyer's right to displace an old seller in favor of a new one would undermine the principle of competition the antitrust laws are designed to secure.

Id. at 243-244. In the footnote that was omitted from the above quote, the Court in Dunn & Mavis quoted from Burdett v. Altec Corp., 515 F.2d 1245, 1249 (5th Cir. 1975): "Lest any other former distributors succumb to the temptation of treble damages, we reiterate that it is

simply not an antitrust violation for a manufacturer to contract with a new distributor, even if the effect of the new contract is to seriously damage the former distributor's business." We find the thrust of these cases sufficiently analogous and entirely persuasive.

- - - - - - - - - - - - - - - - - Footnotes- - - - - - - - - - - - - - - - - -

n4 In Dunn & Mavis, the plaintiff had been the exclusive provider of auto transport services between Chrysler assembly plants in the Detroit area and railheads and other distribution points. When Chrysler replaced plaintiff with a competitor as the exclusive provider of these services, plaintiff asserted antitrust claims against Chysler and the competitor.

- - - - - - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - - -   [*12]

To recover on its antitrust claim, plaintiff would need to prove "(1) that the defendants contracted, combined or conspired among each other; (2) that the combination or conspiracy produced adverse, anti-competitive effects within the relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that the plaintiffs were injured as a proximate result of that conspiracy." Tunis Bros. Co., Inc. v. Ford Motor Co., 763 F.2d 1482, 1489 (3rd Cir. 1985) ("Tunis I") (vacated and remanded for other reasons, 475 U.S. 1105, 106 S. Ct. 1509, 89 L. Ed. 2d 909 (1986), as explained in Tunis Bros. Co., Inc. v. Ford Motor Co., 952 F.2d 715, 720 (3rd Cir. 1991) ("Tunis II")).

We note that plaintiff's complaint does not plead certain details of an antitrust claim, such as, inter alia, the appropriate product and geographic markets, the effects upon interstate commerce, nor does plaintiff inform us whether its claim proceeds on a per se or rule of reason theory. More detrimental to plaintiff's complaint is that, as explained above,   [*13] the circumstances plaintiff alleges simply do not rise to the level of a violation of the Sherman Act §§ 1 and 2.

Finally, defendants argue that the antitrust claim is barred due to the Local Government Antitrust Act, 15 U.S.C. § 34 et seq. As with the defendants' argument that the civil rights claims against them are barred, since we conclude that the plaintiff has failed to allege circumstances sufficient to state an antitrust claim, we do not reach the issue. n5

- - - - - - - - - - - - - - - - - Footnotes- - - - - - - - - - - - - - - - - -

n5 Plaintiff's brief in opposition argues that it is seeking only injunctive relief, not money damages, and therefore, the Local Government Antitrust Act does not bar its claim. On this point, considering the stage of the proceedings and the facts of the complaint, but for our determination otherwise, we would agree.

We note, however, that defendants might have asserted the "state action doctrine" which, it seems, would bar even the injunctive relief plaintiff seeks, Northeast Jet Center v. Lehigh-Northampton Airport Authority, 767 F. Supp. 672 (E.D. Pa. 1991), but for the dearth of infomation in the complaint. The exact authority of the defendants regarding their actions related to the entire bidding process, and from whence that authority stems, e.g., based upon a state statute requiring competitive public bidding, id., cannot be discerned from the complaint. Such information is crucial to determine if the "state action doctrine" would apply. Absent amendment to the complaint, which the defendants have sought in the alternative to their motion to dismiss, we would not be able to determine this issue on a motion to dismiss, which is presumably the reason why defendants did not raise the issue and instead sought a more definite statement.

- - - - - - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - - -   [*14]

IV. CONCLUSION.

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 9042

Case 1:00-cv-00660-YK-JAS   Document 29   Filed 09/13/2000   Page 8 of 34   Page 6 of 6

Based upon the foregoing reasons we conclude that plaintiff's complaint fails to state a claim for which relief can be granted. n6 Hence, an appropriate order follows.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n6 At best, plaintiff's complaint may allege the violation of some state or local law, although it has not specifically alleged. Regardless, "a violation of state law in itself does not constitute a denial of . . . due process. Federal courts do not sit in federal question cases to grant remedies for mere violations of state law. [footnote omitted]" <u>Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 684 (3rd Cir. 1991).</u>

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - - -

## ORDER

And now, this 5th day of June, 1992, upon consideration the Motion of Defendants City of Allentown, Mayor Joseph Daddona, Carl Kercher, Donald Bernhard, Michael Hefele, Al Salinger, Linda Bodnar, William Cramsey, Michael Rosenfeld, Charles Burianek, and Jill Winters Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. #3), the response thereto and the complaint, [*15] IT IS **ORDERED** that the motion is **GRANTED** and the complaint is **DISMISSED** as to all defendants and the case is closed.

E. Mac Troutman, S.J.

Service: **LEXSEE®**
Citation: **1992 us dist lexis 9042**
View: Full
Date/Time: Wednesday, September 13, 2000 - 9:13 AM EDT

About LEXIS-NEXIS | Terms and Conditions

Copyright © 2000 LEXIS-NEXIS Group.  All rights reserved.



Service: **LEXSEE®**
Citation: **1992 U.S. Dist. LEXIS 11456**

*1992 U.S. Dist. LEXIS 11456, \**

QUEEN CITY AVIATION, INC., Plaintiff vs. CITY OF ALLENTOWN, et al., Defendant

CIVIL ACTION NO. 91-7776

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1992 U.S. Dist. LEXIS 11456

August 3, 1992, Filed

**DISPOSITION:**  [\*1]  Plaintiff's motion will be denied.

**CORE TERMS:** memorandum, bid, animosity, civil rights, awarding, cure, reasons stated, discovery, plead

**COUNSEL:** For QUEEN CITY AVIATION, INC., PLAINTIFF: GARY C. BENDER, CRAMP, D'IORIO, MC CONCHIE & FORBES, P.C., 215 N. OLIVE STREET, P.O. BOX 568, MEDIA, PA 19063, USA.

For CITY OF ALLENTOWN, JOSEPH DADDONA, MAYOR, CARL KERCHER, DONALD BERNHARD, MICHAEL HEFELE, AL SALINGER, LINDA BODNAR, WILLIAM CRAMSEY, MICHAEL ROSENFELD, CHARLES BURIANEK, JILL WINTERS, DEFENDANTS: CHARLES J. FONZONE, FONZONE & ASHLEY, 33 SOUTH SEVENTH STREET, P.O. BOX 4180, ALLENTOWN, PA 18105-4180, USA.

**JUDGES:** Troutman

**OPINIONBY:** E. MAC TROUTMAN

**OPINION: MEMORANDUM**

Previously we dismissed plaintiff's complaint in the above captioned matter due to the deficiency of its pleading averments and its failure to state a claim. Slip Op., CA No. 91-7776 (June 8, 1992). Plaintiff has filed a Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) and For Reconsideration under E.D. Loc. Civ. R. 20(g). For the reasons stated in our original memorandum and for reasons stated herein, we conclude that plaintiff's motion should be denied.

Plaintiff requests that we alter our previous order to allow it to amend its complaint, and in support thereof, incorporates in its Brief in Support certain averments that  [\*2]  it would include in an amended complaint. Plaintiff has not attached as an exhibit to its motion a proposed amended complaint for our review and which could also be filed if such were appropriate. n1 Plaintiff's memorandum, however, is insufficient for us to find that the filing of an amended complaint is justified in this case.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 Defendants point out that plaintiff has not filed such any amended complaint which we could review. while it is true, as plaintiff states, that it could not "file" an amended complaint at this point, plaintiff could have provided a proposed amended complaint along with its motion. We have not asked plaintiff to supplement its motion in this manner since it has chosen to incorporate suitable material in its memorandum and we find that this additional information would not make a sufficient amended complaint.

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 11456     Page 11 of 34

Case 1:00-cv-00660-YK-JAS    Document 25    Filed 09/13/2000    Page 2 of 3

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

Plaintiff reiterates that the defendants denied its constitutionally protected property rights. Plaintiff asserts that it has a property right in the procedures leading to the award [*3] of the lease to be a fixed based operator at the Queen City Airport, in other words, that it has a constitutional right to a fair and even handed decision by the defendants. Plaintiff repeatedly asserts that it was not so treated by the defendants, that the defendants awarded the bid in an arbitrary, capricious and discriminatory manner. Such conclusory allegations are not a sufficient statement of a civil rights complaint, no matter how often repeated. For support, plaintiff cites Teleprompter of Erie, Inc. v. City of Erie, 537 F. Supp. 6 (W.D. Pa. 1981). In Teleprompter, however, among the allegations to show wrongful treatment by city officials when awarding a contract was that at least one of the council members was accepting bribes. Id. at 8-9. Such specific pleading properly supports a civil rights action. Plaintiff's complaint and memorandum are void of any such specific instances from which it could be found that the defendants did not correctly exercise their discretion. n2

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 Plaintiff writes: "Plaintiff can cite many examples of this long standing animosity and antagonism [between defendants and plaintiff] although plaintiff believes that these are more evidentiary matters as opposed to pleading matters . . . ." (Brief in Support at 4.) Contrary to plaintiff's statement, such matters are indeed pleadings matters as our original memorandum explains. Further, if indeed there exists a long standing animosity between defendants and plaintiff, certainly plaintiff would not need discovery to be aware of such animosity; plaintiff may need discovery to prove such, but not to specifically plead such.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - [*4]

Plaintiff, as appears from the face of the complaint and its Memorandum in Support, is simply challenging the discretion of the defendants. We agree with defendants that "plaintiff, at best, contests the City's evaluation of the various factors that were considered and the respective weight that it placed upon them is awarding the bid to Cole Aviation." (Brief in Opposition at 2.) "The plaintiff merely takes issue with the defendants' evaluation of the bid proposals." (Id. at 4.) If the discretion of local officials may be challenged in federal court on the basis of some nebulous, unfounded allegations, local officials will be subjected to deluge of frivolous claims. See, Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3d Cir. 1988). If plaintiff wishes to challenge the decision making of the defendants, a state court would provide a better forum to question decisions made pursuant to 53 Pa. Con. Stat. Ann. § 36901 et seq. (See, Brief in Support at 3.)

Finally, while not permitting leave to amend a civil rights complaint for failure to plead specifically may be an abuse of our discretion, such is not an abuse of our discretion [*5] if amendment of the complaint "would be insufficient to cure the deficiency in the original complaint." Colburn, 838 F.2d at 666. Since it was our opinion, initially, that an amendment would not be able to cure the defects in the original complaint, and it is our opinion, currently, as well, leave to amend will not be permitted.

Based upon the foregoing, and for the reasons addressed in our Memorandum and Order entered June 8, 1992, plaintiff's motion will be denied. An appropriate order follows.

## ORDER

And now, this 30th day of July, 1992, upon consideration of the Motion of Plaintiff to Alter or Amend Judgment and for Reconsideration (Doc. #13), the response thereto and our

Get a Document - by Citation 1992 U.S. Dist. LEXIS 11456

Case 1:00-cv-00680-YK-DB Document 28 Filed 09/13/2000 Page 12 of 3 Page 3 of 3

Memorandum and Order entered June 8, 1992, IT IS ORDERED that the motion is DENIED.

E. Mac Troutman S.J.

Service: **LEXSEE®**
Citation: **1992 U.S. Dist. LEXIS 11456**
View: Full
Date/Time: Wednesday, September 13, 2000 - 9:14 AM EDT

About LEXIS-NEXIS I Terms and Conditions

Copyright © 2000 LEXIS-NEXIS Group.  All rights reserved.



Get a Document - by Citation - 1996 U.S. Dist. LEXIS 11177    Page 1 of 21

Case 2:00-cv-00680-YK-JRS    Document 23    Filed 09/13/2000    Page 14 of 34



Service: **LEXSEE®**
Citation: **1996 U.S. Dist. LEXIS 11177**

*1996 U.S. Dist. LEXIS 11177, \**

NORTHEAST JET CENTER, LTD., Plaintiff v. LEHIGH-NORTHAMPTON AIRPORT AUTHORITY; JACK YOHE; and SANFORD WARTELL, Defendants

CIVIL ACTION No. 90-1262

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1996 U.S. Dist. LEXIS 11177

August 1, 1996, Decided
August 1, 1996, FILED, ENTERED

**DISPOSITION:** [\*1] Said motions are DENIED with respect to count one alleging constitutional violations. Said motions are DENIED with respect to that part of count three alleging intentional interference with a prospective contractual relationship. Said motions are DENIED with respect to count six alleging defamation. Said motions are GRANTED in all other respects and judgment is entered in favor of Defendants and against Plaintiff on all claims except those above. This is not a final judgment.

**CORE TERMS:** hangar, airport, summary judgment, lease, aircraft, defamatory, tenant, defamation, contractual, default, repair, charter, lease agreement, partial, intentional interference, genuine issue, certificate, financing, space, deposition testimony, defamatory meaning, respect to count, completion, precluding, revocation, station, duty, reasonably find, aviation, innuendo

**COUNSEL:** For NORTHEAST JET CENTER, LTD., PLAINTIFF: DAVID K. MONROE, JOEL E. LAIKS, GALLAND, KHARASCH, MORSE & GARFINKLE, P.C., WASHINGTON, DC USA.

For LEHIGH-NORTHAMPTON AIRPORT AUTHORITY, JACK YOHE, Airport Director, SANFORD WARTELL, Chairman of the Board of Directors, DEFENDANTS: STEVEN M. JANOVE, TERESA N. CAVENAGH, WENDY R. HUGHES, DUANE, MORRIS & HECKSCHER, PHILA, PA USA. J. BRUCE MC KISSOCK, INGRID B. HOPKINSON, MC KISSOCK & HOFFMAN, P.C., PHILA, PA USA.

**JUDGES:** Franklin S. Van Antwerpen, United States District Judge

**OPINIONBY:** Franklin S. Van Antwerpen

**OPINION: MEMORANDUM AND ORDER**

Van Antwerpen, J.

August 1, 1996

## I. INTRODUCTION

Plaintiff makes claims in this case under 42 U.S.C. §§ 1983, [\*2] 1985; 15 U.S.C. §§ 1 and 2; 15 U.S.C. § 15; the Fourteenth Amendment to the United States Constitution; 53 Pa C.S.A. § 306; Article I, Sections 1,9, and 26 of the Pennsylvania Constitution; 42 Pa.C.S.A. § 8343 and the common law of the Commonwealth of Pennsylvania. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337 and the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367. Venue for this action lies in the Eastern District of



Pennsylvania pursuant to 28 U.S.C. § 1391(b) and (c). It is alleged that the matter in controversy exceeds the sum or value of $ 50,000, exclusive of interest and costs.

On May 31, 1991, we previously addressed this case in our prior opinion and order, at 767 F. Supp. 672 (1991). At that time, we granted a motion to dismiss in part and denied it in part. In particular, we held that: (1) the Plaintiff had failed to show how its right to be free of certain alleged misconduct rose to the level of federal right protected by § 1983 but that Plaintiff had adequately alleged a denial of equal protection actionable under § 1983; and (2) under the Local Government Antitrust Act, Defendant Airport Authority was absolutely immune  [*3]  from a damage claim based upon alleged violation of Sherman Act but that plaintiff had managed to avoid application of the state action exemption to the antitrust laws with respect to its claim for injunctive relief. This case was delayed pending the trial and subsequent conviction of Plaintiff's President, Mr. Earl M. Holtz for conspiracy to defraud the United States through improper filings with the Federal Aviation Administration. That prosecution has been the subject of several decisions of the District Court. See 1993 WL 482953; 1994 WL 750674; 1995 WL 106895; and 1995 WL 312537.

In its second amended complaint, filed June 21, 1991, Plaintiff Northeast Jet Center has alleged seven causes of action arising out of circumstances surrounding the closing of its operations and those of its affiliate, Northeast Jet Company, at the Allentown-Bethlehem-Easton Airport. n1 Defendants -- the airport authority, its director and board chairman -- through two motions filed on January 22, 1996 and one on February 8, 1996, have moved for summary judgment on all counts as well as partial summary judgment on most counts separately. n2

- - - - - - - - - - - - - - - - - - Footnotes- - - - - - - - - - - - - - - - - -

n1 We take notice of the fact that this airport is now called the Lehigh Valley International Airport.  [*4]

n2 In their motions filed on January 22, 1996, Defendants moved for summary judgment on counts three through seven. Their motion filed on February 8, 1996 seeks summary judgment on all counts based on our Order of January 22, 1996, precluding Plaintiff from presenting expert testimony. That order was in turn based on Plaintiff's failure to comply with the parties' stipulated scheduling order, approved by this Court on August 2, 1995 and filed August 3, 1995.

- - - - - - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - - -

## II. STATEMENT OF FACTS

We have taken the facts from the Plaintiffs' papers wherever they are supported by citations to the record. For the purpose of deciding these summary judgment motions, we assume they are true.

Plaintiff Northeast Jet Center, Ltd. was engaged in the business of providing ground-based aviation services at A.B.E. Airport from 1986 until February 1990. Plaintiff operated out of a large hangar on land leased from A.B.E. Airport. As a so-called fixed-base operator ("FBO"), Plaintiff provided a range of aviation services including aircraft parking, tie-down and storage services; aircraft repair, maintenance  [*5]  and inspection services; flight-line servicing, including the sale and delivery of aviation petroleum products; ground transportation services for crew and passengers within the Airport's boundaries; aircraft charter, rental and air taxi services; brokerage services for new and used aircraft; purchase and sale of aircraft parts and accessories; and lease of hangar space to aircraft owners.

During most of the period from 1986 until 1990, Plaintiff had a "Part 145" License from the Federal Aviation Administration (FAA) to provide certain specialized maintenance and

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 11177   Page 16 of 34

Case 2:00-cv-00690-KJR8   Document 28   Filed 09/13/2000   Page 3 of 21



inspection services. Plaintiff also employed FAA-licensed mechanics to provide routine aircraft maintenance and repair independently of its Part 145 Certificate. Plaintiff's major tenants for hangar space included two local business corporations, Union Pacific and Mack Truck.

Plaintiff provided substantial maintenance, inspection, fueling and other services for Northeast Jet Company, Inc. an affiliated company, which operated an air taxi service out of Plaintiff's hangar. Northeast Jet Company had a "Part 135" Certificate from the FAA permitting it to operate as an on-demand air taxi charter airline. Although Plaintiff and [*6] Northeast Jet Company were jointly owned, and both operated out of Plaintiff's hangar, for purposes of this motion they were different corporations and were in different lines of business. (See Earl M. Holtz Deposition Transcript, hereinafter "Holtz Dep.," Exhibit 24, Plaintiff's Opposition to Defendants' Motions for Summary Judgment, filed February 8, 1996 at 25.) In particular, Northeast Jet Company operated as a charter airline under Part 135 which Plaintiff did not. Similarly, Plaintiff operated as an FBO at A.B.E. Airport which Northeast Jet Company did not do. Id. at 185.

Plaintiff and the Defendant Airport Authority had an agreement which included a forty-year lease of the property from the airport. At the end of 20 years, or sooner if the lease was terminated, the Airport Authority was to take title to the hangar facility itself. Id. Exhibit 1, at Art. III.

In March 1988, Union Pacific planned to expand its airplane fleet at A.B.E. Airport. Union Pacific approached Plaintiff about obtaining additional hangar space for its use at the Center facility. Following negotiations, Plaintiff and Union Pacific entered into a written agreement whereby Plaintiff agreed to [*7] lease half of the expanded portion of a new hangar for 10 years upon its completion. Pursuant to the Center/Union Pacific agreement, the hangar expansion was scheduled to be completed by February 1989. Id., Exhibit 24, at p. 460. The extension agreement committed Union Pacific to lease the new hangar, but allowed Union Pacific to opt out of the project under certain conditions.

Plaintiff obtained financing for the hangar expansion from Northeastern Bank, and began the process of hiring professionals to design and build the expansion. During the summer of 1988, Plaintiff retained the services of architectural and construction companies and began the process of obtaining permits for the construction. Id. Exhibit 24, at 328-330. The hangar expansion, like the original hangar, was to be built upon the land Plaintiff had leased from the Airport.

In the Summer of 1988, The FAA began an investigation of the operations of Northeast Jet Company and the air taxi charter service it operated out of Plaintiff's hangar. On September 30, 1988, the FAA issued an emergency revocation order revoking Northeast Jet Company's Part 135 Certificate, thereby grounding Northeast Jet Company's aircraft. [*8] Id. Exhibit 24, at 53. Northeast Jet Company contested the revocation order and a hearing was scheduled before the National Transportation Safety Board (NTSB) for November 7-9, 1988.

That hearing was subsequently canceled following a settlement reached by Northeast Jet Company and the FAA on October 27, 1988. Pursuant to that settlement, the FAA authorized Northeast Jet Company to apply for recertification as a Part 135 charter air carrier. The recertification was granted in May 1990.

The issues raised in the revocation order were addressed solely to Northeast Jet Company's air charter service -- not the Plaintiff's FBO operations. The FAA took no direct action against Plaintiff, nor was its Part 145 repair station license involved in the investigation. Nonetheless, the FAA enforcement action against Northeast Jet Company did have a substantial indirect effect upon Plaintiff's business operations. Because Northeast Jet Company could not fly its aircraft following the revocation, and in fact sold off most of its aircraft, Plaintiff was faced with losing a substantial amount of maintenance and repair business which normally would have arisen from Northeast Jet Company's aircraft. [*9] Id., Exhibit 24, at 82-83.

Shortly after the revocation, Plaintiff took responsive measures in light of the loss of maintenance and repair work. Plaintiff laid off a number of personnel and voluntarily turned in its Part 145 repair station certificate on October 21, 1988. Id., at 342. Plaintiff also advised its general contractor to halt work on the hangar expansion project on October 7, 1988. Although Plaintiff hoped to recommence construction at a later date. Plaintiff conferred with its bank which expressed willingness to continue financing. During this time Plaintiff's tenant, Union Pacific, continued to express interest in Plantiff's plans for hangar expansion. That interest continued into early 1989.

The Airport sought the advice of an airport consultant as to whether the revocation of Northeast Jet Company's Part 135 License constituted an event of default under Plaintiff's lease with the Airport. The consultant advised the Airport against placing Plaintiff in default because Northeast Jet Company was no longer operating an air taxi service. He suggested that the Airport await the outcome of the scheduled November 7-9, 1988 NTSB hearing regarding the revocation order.  [*10]

On November 4, 1988, after consultation with its attorneys, the Airport notified Plaintiff that it was in breach of its lease. Plaintiff's Opposition to Defendants' Motions for Summary Judgment, filed February 8, 1996, Exhibit 5. The Airport sent the breach notice without prior discussion with Plaintiff. The Airport also sent a copy of the breach notice to Plaintiff's bank. The Airport's director was also quoted in a newspaper article that Plaintiff was in breach of its lease. Id., Exhibit 6. In that article, Defendant Yohe stated that Plaintiff had surrendered its "ground maintenance certificate" and therefore it could no longer meet the terms of the lease. Id.

Plaintiff reapplied to the FAA for a new Part 145 repair station certificate on December 8, 1988. Around the same time, Defendant Yohe, Airport Director, contacted several FAA officials in Washington with regard to the reapplication. Id Exhibits 9, 24 (at 506-510, and 25 (at 146-147, 170-171). Plaintiff was recertified in February 1989. Defendants once again hired the same consultant who again advised them there was no basis for placing Plaintiff in default of its lease. Id., Exhibits 10 and 25 (at 120-122).  [*11]  On May 25, 1989, the Airport notified Plaintiff that it had rescinded its November 4, 1988 notice of default. Id., Exhibits 11 and 25 (at 122-125). During the period in which Plaintiff had been held in breach of its lease by Airport, Plaintiff's bank withdrew its financing for the proposed hangar expansion. The Airport held Plaintiff in breach of its lease from November 4, 1988 until May 25, 1989.

Also at this time, Defendants had numerous discussions with Plaintiff's tenant, Union Pacific. These discussions involved possible alternatives for Union Pacific's increasing hangar needs. Union Pacific continued to be interested in the hangar expansion originally proposed by Plaintiff. Union Pacific's interest in a new Northeast Jet Center hangar expansion continued into March 1989, one month after the completion date specified in their binding agreement. On April 25, 1989, Union Pacific notified Plaintiff that it was pulling out of the project because it had found a satisfactory alternative. Id., Exhibit M.

In October 1989, the Airport director sent a letter to all tenants of the A.B.E. Airport -- except Plaintiff itself -- indicating that the Airport was making plans to deal  [*12]  with "A.B.E.'s lack of an adequate and reliable fixed-base operator." Id., Exhibit 21. The Airport also drafted a new FBO and charter requirements at this time. By early 1990, Plaintiff was in poor financial condition. It had lost the opportunity of constructing a hangar expansion with a 10-year commitment from its anchor tenant. Union Pacific had notified Plaintiff that it would be vacating its space in the original hangar in a short period. Plaintiff was forced to sell.

Plaintiff sold its facilities to Jaindl Aviation on February 2, 1990. Id., Exhibit 23. Jaindl subsequently assigned its rights in that purchase to the Defendant Airport Authority. The Airport subsequently installed an "interim FBO" on a management fee basis to operate out of


Plaintiff's former hangar. Thus, eventually, the Airport essentially replaced Plaintiff as the sole FBO at A.B.E. Airport.

## III. GENERAL LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered where:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material [*13] fact and the moving party is entitled to judgment as a matter of law.

Rule 56(e) further provides that, when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial."

In making its ruling on a summary judgment motion, the court must view all inferences in a light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). A "genuine issue of fact" is present, precluding summary judgment, when a reasonable trier of fact, viewing all the evidence, could rationally find in favor of the nonmoving party in light of the burden of proof placed on the nonmover. U.S. v. Premises Known as RR No.1 Box 224, Dalton Tp. and North Abington Tp., Lackawanna County, Pa., 14 F.3d 864 (3d Cir. 1994). The substantive law identifies which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). See also [*14] Josey v. John R. Hollingsworth, 996 F.2d 632 (3d Cir. 1993) on remand 1993 WL 523686 (summary judgment is precluded if disputed fact exists which might affect outcome of suit under controlling substantive law).

The Supreme Court has held that:

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

In a motion for summary judgment, the nonmoving plaintiff's burden is more than insignificant. See J.F. Feeser Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990) cert. denied, 499 U.S. 921, 113 L. Ed. 2d 246, 111 S. Ct. 1313 (1991) (although the moving party has the initial burden of identifying [*15] the evidence that demonstrates the absence of a genuine issue of material fact, the nonmovant must establish the existence of each element on which it bears the burden of proof). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, supra, 477 U.S. 242, 252, 106 S. Ct.

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 11177  Page 19 of 34

Case 1:00-cv-00800-YK-JAS    Document 28    Filed 09/13/2000    Page 6 of 21

2505, 2512 (1986). See also Coolspring Stone Supply, Inc. v. American States Life Ins. Co., 10 F.3d 144, 148 (3d Cir. 1993); Petruzzi's IGA Supermarkets, Inc. v. Darling Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993) cert. denied 126 L. Ed. 2d 455, 114 S. Ct. 554 (nonmovant must do more than create some metaphysical doubt).

While the nature of its remedy is indeed powerful, the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, supra, 477 U.S. 327, 106 S. Ct. 2555 [citation omitted].

## IV. DISCUSSION

### A. *Piercing the Corporate* [*16] *Veil*

In deposition, Mr. Earl Holtz testified that he was the President, sole shareholder and sole director of both Northeast Jet Center and Northeast Jet Company. Holtz Deposition, August 8, 1990 at 28-29., filed as Exhibit A to Defendants' Motion for Partial Summary Judgment, filed January 22, 1996. He further testified that the two corporations kept separate records, conducted separate director and shareholder meetings, and kept separate minutes. Northeast Jet Company purchased maintenance, fuel and hangar space from Northeast Jet Center. Mr. Holtz testified that the two companies were cross-guaranteed and cross-collateralized in addition to being backed by his personal guarantee. Exhibit A to Defendants Motion for Partial Summary Judgment, filed January 22, 1996, also includes a letter on Northeast Jet *Company* stationary requesting Twin County construction company to cease its efforts to build a new hangar addition for Northeast Jet *Center.* This letter was signed by Mr. Earl Holtz with the title "President."

While the similarity of interests and personnel might lead us to consider piercing the corporate veil that separates these companies, n3 such action would be [*17] inappropriate at this time in light of the presumption that corporations are separate entities, n4 and without a full record before us. In Re Cohn, 54 F.3d 1108, 1116 (3d Cir. 1995). Accordingly, at this time we treat the two companies herein as distinct entities from each other and from Mr. Holtz.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n3 See Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1521 (3d Cir. 1994); Manville Sales Corp. v. Paramount Systems, Inc., 917 F.2d 544, 552 (Fed. 1990); Joyce v. Super Fresh Food Markets, Inc., 815 F.2d 943, 945 (3d Cir. 1987); Solomon v. Klein, 770 F.2d 352, 353 (3d Cir. 1985).

n4 See Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 643 (3d Cir. 1991), cert. denied, 503 U.S. 937, 112 S. Ct. 1476, 117 L. Ed. 2d 620; Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 150 (3d Cir. 1988); American Bell Inc. v. Federation of Tel. Workers, 736 F.2d 879, 886 (3d Cir. 1984); Jiffy Lube International, Inc. v. Jiffy Lube of Pennsylvania, 848 F. Supp. 569, 580 (E.D.Pa. 1994).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - [*18]

### B. *Preclusion Order Barring Expert Testimony*

Defendants contend that our preclusion order barring Plaintiff from presenting expert testimony fatally injures Plaintiff's entire case because without such testimony Plaintiff would be unable to establish the amount of damages it suffered. Defendants' Supplemental Motion for Summary Judgment on All Counts, filed February 8, 1996 (hereinafter "Defendants' Supplemental Motion"). The law of this circuit is to the contrary.

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 11177

Case 2:00-cv-00680-KJAS U.S. Document 23 11177Filed 09/13/2000 Page 20 of 34 Page 7 of 21



Federal Rule of Evidence 701 provides that:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

In interpreting this Rule, the Third Circuit has repeatedly recognized that "the modern trend favors the admission of lay opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1175 (3d Cir. 1993) (citations [*19] omitted). More recently, the Third Circuit has said that "Rule 701 requires that a lay opinion witness have a reasonable basis grounded either in *experience or specialized knowledge* for arriving at the opinion that he or she expresses." Asplundh Mfg. Div. v. Benton Harbor Engineering, 57 F.3d 1190, 1201 (3d Cir. 1995) (emphasis in original).

At this stage in the litigation, prior to any hearings before us, it appears that Mr. Holtz, as President of both Plaintiff Northeast Jet Center and its affiliate, Northeast Jet Company, has relevant first-hand experience and specialized knowledge of both companies' operations. In his deposition of September 5, 1995, Mr. Holtz testified as to how he prepared financial documents purporting to show Plaintiff's projected income as well as the value of Plaintiff and each of its components. Plaintiff's Opposition to Defendants' Supplemental Motion, and Exhibit 2 thereto, filed February 22, 1996. Defendants have asserted Mr. Holtz's subsequent deposition testimony of September 8, 1995 demonstrates that Mr. Holtz is "unable to elaborate on how he allegedly calculated [plaintiff's] damages." Defendants' Supplemental Motion, at 4. Nonetheless, [*20] in addition to his position as President, Mr. Holtz was the sole shareholder and director of Plaintiff Northeast Jet Center and its affiliate, Northeast Jet Company. In those positions, his personal experience and knowledge of Plaintiff's operations appears to be "germane to the lay opinion offered." Asplundh Mfg. Div. 57 F.3d at 1201. We believe that "at least some of" Mr. Holtz's assumptions are valid and that his testimony would be helpful to a jury. Lightning Lube, 4 F.3d at 1175. Taking the Plaintiff's claims as true for our purposes here, Mr. Holtz's lay opinion qualifies under Federal Rule of Evidence 701. That opinion represents the "best evidence available -- first-hand knowledge versus second-hand knowledge" that must be presented to the jury. Joy Mfg. Co. v. Sola Basic Indus., Inc., 697 F.2d 104, 111 (3d Cir. 1982). While Mr. Holtz's assumptions may well be subject to vigorous cross examination, their credibility is ultimately a question for a jury to decide. Douglas v. Owens, 50 F.3d 1226, 1230, n.6 (3d Cir. 1995).

Defendants' Supplemental Motion to Dismiss on all grounds, filed February 8, 1996, must accordingly be DENIED at this time.

### C. Count [*21] *One: Violation of Plaintiff's Constitutional Rights.*

Plaintiff broadly asserts that Defendants deprived and conspired to deprive Plaintiff of its equal protection and due process rights under the Fourteenth Amendment to the United States Constitution and Article I, §§ 2, 9 and 26 of the Pennsylvania Constitution. This alleged deprivation consisted of "selective enforcement of 'certain regulations and requirements which the Airport Defendants knew were not in effect.'" Second Amended Complaint, filed June 21, 1991, P41. n5

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n5 Specifically, Plaintiff alleges seven instances of purposeful discrimination that evidence a


Get a Document - by Citation - 1996 U.S. Dist. LEXIS 11177

Case 1:00-cv-00660-YK-JAS   Document 23   Filed 09/13/2000   Page 21 of 34   Page 8 of 21

"pervasive pattern of arbitrary, capricious and discriminatory acts." Second Amended Complaint, P42. Additionally, Plaintiff asserts Defendants have violated its Due Process rights in at least four instances. Id., P44. A demand is made for money damages. Id., P46.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

With the possible exception of their Motion to Dismiss on All Counts discussed above, Defendants have yet to address Plaintiff's  [*22]  equal protection and due process claim. Defendants maintain that Plaintiff cannot recover on its constitutional claims without first showing a quantified business loss. Defendants' Supplemental Motion at 3. Although Plaintiff has been precluded from presenting expert testimony, for purposes of the summary judgment motions we must view all facts and inferences in favor of Plaintiff. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). At this stage, we believe a jury could reasonably find Mr. Holtz's testimony sufficiently credible to form the basis of a damages award. As set forth above, because we do not find our order precluding presentation of expert testimony fatal to Plaintiff's entire case.

Defendants have not otherwise briefed or argued this count before us, and we believe it clearly merits further consideration. We would like to know the exact nature of Plaintiff's constitutional claims. n6 We are also concerned about what evidence, if any, supports Plaintiff's claims and whether qualified immunity applies to some defendants.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n6 Some limitations on these claims are obvious. If plaintiff is making claims directly under the Constitution, these claims are deemed stricken because if they do have merit, they can be sufficiently vindicated by an action under 42 U.S.C. § 1983. Rogin v. Bensalem, 616 F.2d 680, 686-87 (3d Cir. 1980); Mahone v. Waddle, 564 F.2d 1018, 1024 (3d Cir. 1977); Hammond v. Creative Planning Organization, 800 F. Supp. 1244, 1248 (E.D.Pa. 1992); La Plant v. Frazier, 564 F. Supp. 1095, 1097-1098 (E.D.Pa. 1983); DiGiovanni v. City of Philadelphia, 531 F. Supp. 141, 144 (E.D.Pa. 1982).

We note additionally that if Plaintiff is making procedural due process claims for the taking of legal property, as the result of random and unauthorized conduct, then resort must be had to state rights and procedures rather than a § 1983 action. Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204, 82 L. Ed. 2d 393 (1984); Williamson Co. Regional Planning v. Hamilton Bank, 473 U.S. 172, 195, 105 S. Ct. 3108, 3121, 87 L. Ed. 2d 126 (1985). Zilich v. Lucht, 981 F.2d 694, 696 (3d Cir. 1992); Hicks v. Feeney, 770 F.2d 375, 378 (3d Cir. 1985); Berlanti v. Bodman, 780 F.2d 296, 301 (3d Cir. 1985).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -  [*23]

## D. *Count Two: Violation of the Sherman Act*

In our prior opinion, we dismissed Plaintiff's claim for damages under the Sherman Act with prejudice. See 767 F. Supp. 672, 681. We further allowed Plaintiff to amend its complaint to seek injunctive relief. Id. at 682. Defendants' now argue that this claim is moot due to the hypothetical nature of Plaintiff's claim. We agree that the case law of the Third Circuit supports Defendants' position.

In Acierno v. New Castle County, 40 F.3d 645 (3d Cir. 1994), the Court stated that for an injunction to be granted,

> more than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 11177    Page 22 of 34    Page 9 of 21

Case 1:00-cv-00686-YK-JAS    U.S. Document 25    Filed 09/13/2000    Page 22 of 34

irreparable injury,' or a 'presently existing actual threat; an injunction may not be used simply to eliminate a possibility of a remote future injury.'

Id., at 655 (citing Continental Group, Inc. v. Amoco Chem. Corp., 614 F.2d 351, 359 (3d Cir. 1980); Ammond v. McGahn, 532 F.2d 325, 329 (3d Cir. 1976); Holiday Inns of America, Inc. v. B & B Corp., 409 F.2d 614, 618 (3d Cir. 1969); and Campbell Soup Co. v. Conagra, Inc. 977 [*24] F.2d 86, 91-92 (3d Cir. 1992). Plaintiff is no longer in business. Plaintiff asserts however that "Center and/or its principal *may at some point in time seek to re-enter the FBO market,"* Defendants' Supplemental Motion, at 12 (emphasis added). We believe the basis of Plaintiff's Count Two represents a mere possibility of a remote injury, and presently nothing more. "[A] permanent injunction will issue only where a threat of harm exists, not just where potential harm exists." McLendon v. Continental Can Co., 908 F.2d 1171, 1182 (3d Cir. 1990). See also Natural Footwear Ltd. v. Hart, Schaffner & Marx, 760 F.2d 1383, 1404 (3d Cir. 1985); Northeast Women's Center, Inc. v. McMonagle, 665 F. Supp. 1147, 1154 (E.D.Pa. 1987).

Defendants' Motion for summary judgment, filed February 8, 1996 is accordingly GRANTED with respect to count two of Plaintiff's second amended complaint.

### E. *Count Three: Tortious Interference with Business Relations*

Count three of Plaintiff's second amended complaint claims that Defendants intentionally disrupted an agreement between Plaintiff Northeast Jet Center and Union Pacific by: (1) wrongfully declaring Plaintiff in default of [*25] its lease; (2) contacting Plaintiff's bank in late 1988 and early 1989, falsely informing it that Plaintiff was in default of the lease, and expressing doubts as to Plaintiff's financial viability to discourage the bank's financing of the proposed new hangar; and (3) attempting to persuade Union Pacific to abandon Plaintiff's facility and move to an alternative facility at the A.B.E. airport.

The Pennsylvania Supreme Court has adopted the Restatement (Second) of Tort's formulation of the tort of interference with existing contractual relationships. n7 A chief and threshold requirement of this tort is the existence of a contract. As we discuss below, we do not believe the agreement and the proposed lease were one and the same nor that Defendants' alleged interference with the lease (in draft form) relates back to the agreement itself. We conclude that the agreement was a binding agreement to enter into a lease upon the fulfillment of conditions precedent.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n7 As recited in Silver v. Mendel, 894 F.2d 598 (3d Cir. 1990), the elements of a claim for intentional interference with existing contractual relations are:

> (1) the existence of one or more contracts; (2) the purpose or intent to harm plaintiff by preventing the completion of the contractual relation(s); (3) conduct by defendant which is not proper as a matter of law and which a factfinder could reasonably find improper; and (4) harm actually resulting from defendants' actions.

Id. at 604-605, citing Adler Barish v. Epstein, 482 Pa. 416, 393 A.2d 1175, 1183 (1978).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - [*26]

In their Motion for Partial Summary Judgment filed January 22, 1996, Defendants claim this count must fail as a matter of law because no such lease agreement existed at the time between Plaintiff and Union Pacific. Instead they assert Plaintiff had a contract with Union

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 11177    Page 23 of 34

Case 1:00-cv-00600-YK-JAS    Document 25    Filed 09/13/2000    Page 10 of 21

Pacific to enter into such a lease agreement. Defendants maintain that Plaintiff has offered no objective proof that there was a reasonable probability that the proposed lease agreement would ever have been executed, as required by Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 209, 412 A.2d 466, 471 (1979). Defendants' Brief in support of their motion for partial summary judgment, filed January 22, 1996 at 24.

Defendants further state that prior to their own in actions, it was clear to Plaintiff and to Union Pacific that Plaintiff would not complete the proposed hangar by the deadline specified in their agreement. Defendants claim that the FAA's revocation of Northeast Jet Company's operations and its poor financial condition ended the prospects of its affiliate, Northeast Jet Center, for the proposed new hangar facility. Defendants' Motion for Partial Summary Judgment, filed January 22, 1996 at 25.

According [*27] to Defendants, Union Pacific began searching for an alternative site for their aircraft on their own initiative and were apparently successful through an "internal connection." Id. at 26 and Exhibit M thereto, at 35-38. Union Pacific's Vice President, Mr. John Halan testified that his company was never approached by Defendants, and that Union Pacific initiated conversations with Defendants -- not vice versa -- concerning its desire to acquire land on the airport to build its own hangar. Defendants Motion for Partial Summary Judgment, filed January 22, 1996, Exhibit M, at 24-26. Mr. Halan testified that the accident involving Northeast Jet Company's plane and the FAA's revocation of Northeast Jet Company's operating license was one factor in Union Pacific's decision to look elsewhere for hangar space. Exhibit N to Defendants' Motion for Partial Summary Judgment, filed January 22, 1996, at 79-80. However, he stated repeatedly that the primary factor was that time was running out and the hangar would not be completed in time for the worst period of winter. Mr. Halan stated that Defendants were reluctant to consider providing Union Pacific with land because their objective was to strengthen [*28] Plaintiff's position at A.B.E. Airport. Id. at 83-84. According to Mr. Halan, Defendants went so far as to discourage Union Pacific from acquiring land independently and attempted to reinforce rather than undermine Plaintiff's viability at the airport. Defendants Motion for Partial Summary Judgment, filed January 22, 1996, Exhibit M, at 24-26.

In March and April, 1989, Mr. Halan sent three letters on behalf of Union Pacific to Mr. Holtz as President of Northeast Jet Center, Ltd. On March 6, 1989, Mr. Halan stated that Union Pacific was "concerned about the project" since the initial target occupancy time had passed, but was "encouraged" concerning plans to go forward with the new hangar. "In the meantime," he continued, "we will be reviewing our various options and alternatives should you elect not to go forward with the new facility." Id.

Ten days later, Mr. Halan sent another letter which stated in its entirety:

> With regard to our discussions on the new facility you are planning to build, I would like to confirm that Union Pacific has *no commitment* with respect to this facility unless a new written agreement is signed. *We are not waiving any rights* [*29] *under our previous agreement that we might have because of the passage of the February 1989 completion date.*

Id., (emphasis added). On April 25, Mr. Halan sent a final letter informing Mr. Holtz that Union Pacific had no further interest in the proposed hangar addition because it had found a "satisfactory alternative." Id.

Plaintiff claims that conditions precedent do not render the agreement illusory and that the agreement contains all essential terms of the arrangement between Union Pacific and Plaintiff, including price. Id. at 20. Plaintiff asserts, "Put another way, had Center been able


to construct the hangar expansion, Union Pacific could not have arbitrarily refused to execute the form lease..." Id. Plaintiff further contends both parties intended to honor these obligations -- including executing the form lease --under the lease extension agreement. We cannot help but make the plain observation that Center never was able to build the new hangar and thus by Plaintiff's own reasoning Union Pacific's obligation never arose.

Plaintiff maintains that the 10-year lease extension agreement is not an illusory contract but instead obligates it to use its  [*30]  best efforts to take all steps necessary to construct the hangar extension while simultaneously obligating Union Pacific to lease hangar and office space in the new facility upon its completion. Plaintiff's Opposition to Defendants' Motions for Summary Judgment, filed February 8, 1996 at 19. Plaintiff's maintain that the scheduled completion date set forth in the lease extension agreement was a waivable condition which was indeed waived as "clearly evidenced" until Union Pacific was "lured away by the Airport's offers of alternative hangar space in early 1989." Id. at 21.

Plaintiff has failed to persuade us any such clear evidence exists to counter the plain language of Mr. Halan's letter which specifically and conclusively shows Union Pacific's intention not to waive the time condition. Indeed, Mr. Halan's letters and his deposition testimony make clear that the time condition was the most important consideration in Union Pacific's decision whether to continue to do business with Mr. Holtz and his companies.

> To constitute a waiver of a legal right, there must be a clear, unequivocal and decisive act of the party who is claimed to have waived its rights, with knowledge  [*31]  of such right and an evident purpose to surrender it.

Keenan v. Scott Tp. Authority, 151 Pa. Commw. 226, 616 A.2d 751, 755 (Pa.Cmwlth. 1992) (citation omitted). Even if the language of the March and April 1989 letters could reasonably be construed to evidence a continued willingness on the part of Union Pacific to occupy Plaintiff's proposed hangar, there is absolutely no evidence of record that Union Pacific would have done so under the terms and conditions set forth in the original draft 10-year lease agreement.

Defendants cite and Plaintiff's attempt to distinguish Schulman v. J.P. Morgan Inv. Management, Inc., 829 F. Supp. 782 (E.D.Pa. 1993), which held that where a draft lease agreement was prepared for execution but never signed, that alone did not create a lease. Id at 785. Plaintiff asserts that the agreement involved in Schulman was a draft whereas here it was an "executed final agreement." Plaintiff's Opposition to Defendants' Motions for Summary Judgment, filed February 8, 1996 at 21. In Schulman, the Court held that references to a draft by a real estate developer's employees as a "lease" did not transform an agreement to open a food service  [*32]  operation into a formal lease where the developer never signed the agreement as required. Id. Similarly here, the executed agreement required Union Pacific and Plaintiff to execute a 10-year lease when certain conditions were met. Those conditions were not met; and while the proposed 10-year lease agreement was indeed prepared for execution, we similarly conclude that that proposal alone did not create a lease.

On March 1, 1988 Plaintiff and Union Pacific entered a signed, written Agreement which outlined their relationship with regard to the proposed hangar expansion. Id Exhibit 2. In pertinent part, the Agreement states:

> Subject to the terms and conditions of this Agreement, upon the occurrence or waiver of the conditions precedent set forth...below, Northeast and Union Pacific shall enter the form of lease agreement for the Premises attached hereto...

Id. at 1. The Agreement then lists the duties of each side including compliance with the interim lease by both parties and financing and regulatory approval for Northeast Jet Center. Id. at 2-4. Union Pacific's portion of the Agreement states at the outset that Union Pacific's obligations are subject [*33] to the condition, among others, that:

> (a) The intended Aviation Complex shall have been substantially completed and the Premises shall be suitable for the intended use by Union Pacific on or before February 1, 1989. Northeast shall give Union Pacific at least 30 days prior written notice of the anticipated date of substantial completion of the Premises.

Id. at 3. The undated and unsigned "Lease Agreement" was attached to the signed "Agreement." The lease purports to concern a "Contemplated Aviation Complex" located at A.B.E. International Airport. Id. It includes the terms of a 10-year lease between Union Pacific and Plaintiff for the proposed hangar expansion, including rents, taxes, services, use, maintenance, regulations, insurance, fire risk, assignment & subletting, condemnation, entry and access, default & remedy, subordination, surrender and waiver. Id.

To defeat summary judgment the non-moving party -- Plaintiff Northeast Jet Center, Ltd. in this case -- must respond with facts of record that contradict the facts identified by the movant, and may not rest on mere denials. Celotex Corp. v. Catrett, 477 U.S. at 321, n.3, 106 S. Ct. at 2552, n.3 [*34] (quoting Fed. R. Civ. P. 56(e)); see also First National Bank of Pennsylvania v. Lincoln National Life Insurance Co., 824 F.2d 277, 282 (3d Cir. 1987). In a case where the non-moving party is the plaintiff and therefore bears the burden of proof, it must by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case." Celotex Corp., 477 U.S. at 322-24, 106 S. Ct. at 2552-53; Anderson, 106 S. Ct. at 2514; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); Fed. R. Civ. P. 56(e). Plaintiff has failed to meet this burden and we find that no such intentional action was taken by Defendants to interfere with the business relationship between Plaintiff and Union Pacific.

In sum, we believe the original agreement was a binding contract subject to conditions precedent. However, we do not believe that those conditions were met. Even if they were, and even if the deadline was waived, Defendants' proffer of Union Pacific's John Halan deposition testimony unequivocally refutes the core of Plaintiff's allegation -- that Defendant's [*35] intentionally interfered with the business relationship between Union Pacific and Plaintiff. Plaintiff simply has not offered sufficient testimony or other evidence to counter Mr. Halan's testimony.

Defendants' Motion for partial summary judgment, filed January 22, 1996 is accordingly GRANTED with respect to that portion of count three of Plaintiff's second amended complaint covering intentional interference with existing contract.

### F. Count Three: Interference with Prospective Business Relations

Plaintiff has also alleged that Defendants' actions amounted to an intentional interference with Plaintiff's prospective contractual relationship with Union Pacific. Plaintiff's Opposition to Defendants' Motions for Summary Judgment, filed February 8, 1996, at 21.

In Pennsylvania, the elements of the tort of intentional interference with prospective contractual relations are: (1) a prospective contractual relation; (2) intent to harm the plaintiff by preventing the relation from occurring; (3) absence of privilege or justification on

the defendant's part; and (4) actual damage resulting from defendant's conduct. Silver v. Mendel, 894 F.2d 598, 601-02 (3d Cir. 1990); [*36] Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466, 471 (1979), cert. denied, 496 U.S. 926, 110 S. Ct. 2620 (1990)). See also Schulman v. J.P. Morgan Inv. Management, Inc., 829 F. Supp. 782, 786 (E.D.Pa. 1993). As the Pennsylvania Supreme Court has stated:

> We are not dealing with certainties, but with reasonable likelihood or probability. This must be something more than a mere hope or the innate optimism of the salesman...The rule to be applied is that the [plaintiff] may recover when the jury is satisfied that but for the wrongful acts of the defendant it is *reasonable* [sic] *probable* that the plaintiff would have [entered and performed the contract].

Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466, 471 (Pa. 1979).

Plaintiff has set forth sufficient allegations of Defendants' interference with prospective business relations to proceed beyond the summary judgment stage. Although we do not believe the signed agreement and unsigned draft lease amount to an existing contract, for the purposes of summary judgment they do amount to a prospective business relation. To be "prospective," a contractual relation must have [*37] "objectively appeared to be reasonably probable." Schulman, 829 F. Supp. 782, 786. Plaintiff maintains that Union Pacific would have signed the lease even when a delay in constructing the new hangar was apparent and that the delay itself was caused by Defendants' notice of default to Plaintiff. This version of events markedly contrasts with that of Defendants and should more appropriately be decided at trial.

As already discussed above, Union Pacific expressed to Plaintiff as late as March 6, 1989 that it was "encouraged" concerning plans to proceed with the new hangar and stating Union Pacific's intention to review its options "should [Plaintiff] elect not to go forward with the new facility." Plaintiff has alleged that Defendants wrongfully contacted Plaintiff's bank as early as late 1988 and early 1989, informed the bank that Plaintiff was in default of its lease, and expressed doubts as to Plaintiff's financial viability. P55(b), Plaintiff's Second Amended Complaint, filed June 21, 1991. At this stage, we believe a jury could find a reasonable probability that Plaintiff and Union Pacific would have entered into a lease agreement for the expanded hangar, even if such a lease [*38] agreement were not identical with the original draft lease.

Defendants' Motion for partial summary judgment, filed January 22, 1996 is accordingly DENIED at this time with respect to that portion of count three of Plaintiff's second amended complaint covering intentional interference with a prospective contractual relationship.

## G. *Count Four: Tortious Interference with Prospective Business Relations with Other Companies*

In its Count Four, Plaintiff also asserts that there was a reasonable probability of its entering into contractual relationships with various entities other than Union Pacific, n8 and that Defendants interfered with those prospective contractual relationships. Plaintiff's Opposition to Defendants' Motions for Summary Judgment, filed February 8, 1996, at 23-25. It is well-established that summary judgment cannot be avoided unless the non-moving party sets forth *"specific facts"* showing that there is a genuine issue for trial." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1985) (emphasis added) (quoting Fed.R.Civ.P. 56(e)). Plaintiff has failed to provide the requisite specific facts to [*39] defeat a motion for summary judgment. In their brief, Plaintiff sufficiently states the standard to be applied for determining whether an action for intentional interference with prospective contractual relations will lie. However, they make no citations or

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 11177    Page 27 of 34

Case 00-cv-00800-KJM    Document 28    Filed 09/13/2000    Page 14 of 21

references whatsoever to deposition testimony or other evidence before us. In contrast, Defendants have in several instances cited to deposition testimony and exhibits strongly supporting their position that Plaintiff did not enjoy a prospective contractual relationship with any of the various entities (other than Union Pacific as discussed above) listed by Plaintiff. Defendants' Motion for Partial Summary Judgment, filed Jan. 22, 1996, at 27-35.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n8 Plaintiff claims these entities include USAir, United Airlines, Delta Airlines, Continental Airlines, Northwest Airlines, Union Pacific, Bethlehem Steel, K.C. Aviation, Duncan Aviation and Universal Jet Sales. Plaintiff's Opposition to Defendants' Motion for Summary Judgment, filed February 8, 1996, at 24, n.2.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -  [*40]

Plaintiff bases this count on the supposition that had it stayed in business into early 1990, it would have been, at that point,

> the sole FBO at the Airport, thus greatly increasing its opportunity to service airlines it had not previously served. Moreover, Center had the only useable fuel farm at the Airport, thus assuring it the lion's share of fuel sales at A.B.E.

Plaintiff's Opposition to Defendants' Motions for Summary Judgment, filed February 8, 1996, at 25. Plaintiff suggests that as a result of outside factors, it would have enjoyed a windfall, if not a monopoly, n9 in providing fueling and maintenance services at the A.B.E. Airport. In response, Defendants quite accurately point to Plaintiff's lack of citations to the record to support this assertion. Even before Plaintiff's one and only competitor at A.B.E. airport, Suburban Aviation, closed its doors in March 1990, Plaintiff had agreed to sell its facility and equipment. See Exhibit D-61 attached to Exhibit "V" to Defendants' Motion for Partial Summary Judgment, filed January 22, 1996. Also, the fact that the Airport sought to replace Suburban with an "interim FBO" does not preclude the possibility  [*41]  that another suitable FBO could have entered the Airport at some time. Plaintiff's evidence of prospective contractual relationships more accurately represents the dreams of its president and is simply too weak to sustain a motion for summary judgment.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n9 We find it interesting to compare this explanation with count two of Plaintiff's complaint. There, Plaintiff charges Defendants with anti-trust violations of the Sherman Act by unreasonably restraining trade in the provision of ground-based aviation support services by FBOs at the airport. Specifically, Plaintiff asserts:

> As a result of the Airport Defendants' activities, competition in the provision of ground-based aviation support service by FBOs at A.B.E. has been eliminated and Dynair, operating on behalf of the Airport Authority, will be the only FBO at A.B.E. as of March 1, 1990. Accordingly, Dynair and the Airport Authority will have a total monopoly on FBO services at A.B.E. as of March 1, 1990.

Plaintiff's Second Amended Complaint, filed June 21, 1990, P49. Plaintiff apparently accepts some monopolies while rejecting others.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -  [*42]

Because Plaintiff has failed to raise any objective proof that there was a reasonable

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 11127

Case 1:00-cv-00600-YK-JAS Document 28 Filed 09/13/2000 Page 28 of 34    Page 15 of 21

probability that it would have developed a contractual or business relationship with any of the other listed entities other than Union Pacific, Defendants' Motion for Summary Judgment with respect to Count Four is accordingly GRANTED.

## H. *Count Five: Violation of the Municipal Authorities Act of 1945*

Plaintiff contends that the Defendant Airport Authority has violated § 306(2) of their enabling act, the Municipal Authorities Act of 1945, 53 Pa. C.S.A. § 306 (the "Act"). Second Amended Complaint, PP 66, 67. According to Plaintiff, it is entitled to punitive damages because the Authority' maliciously violated the Act by: (1) misusing its powers under the Act "to establish an enterprise to compete" with Plaintiff on an unfair basis; and (2) unlawfully misappropriating Plaintiff's property "in an effort to secure unfair and unlawful advantages contrary to the requirements of the Act." Second Amended Complaint at P 67.

Unless the contrary is proven, the acts of municipal officials are presumed to be valid and in compliance with the Act. Helmerick Drive-It-Yourself v. Erie Municipal [*43] Airport Authority, 149 Pa. Commw. 1, 612 A.2d 562, 564 n.2 (1992). Summary judgment is appropriate on Count Five because Plaintiff has failed to overcome this presumption with evidence sufficient to support either of its claims.

Section 306 A(b)(2) of the Pennsylvania Municipal Authorities Act reads in part:

> None of the powers granted by this act shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project or projects or providing financing for insurance reserves *which in whole or part shall duplicate or compete with existing enterprises serving substantially the same purpose.*

(emphasis added). Pennsylvania courts have held that in order to violate the Act, the municipal authority must "duplicate" or "compete" with services provided by an "existing" enterprise. Evansburg Water Co. v. Perkiomen Township, 131 Pa. Commw. 89, 569 A.2d 428 (1990). In Evansburg, the plaintiff complained that the township would be providing water service in a geographic area not served by the plaintiff at the time, but which the plaintiff wished to service. The Court held that the Act does not afford a plaintiff the unfettered [*44] right to expand its business into different areas that are already being serviced by a municipal authority, and thus found no violation of the Act. 131 Pa. Commw. at 93, 569 A.2d at 430. In so holding, the Court relied on its earlier decision, Northampton v. Bucks County Water & Sewer Authority, 96 Pa. Commonwealth Ct. 514, 508 A.2d 605 (1986), quoting it as follows:

> The plain wording of the statute is such that it prohibits projects which *'shall* duplicate ... *existing* enterprises *serving* substantially the same purposes.' This clause of the statute is phrased in the present tense, it is not worded in such a manner that what Northampton could *possibly* do is in any way relevant.

Id., 508 A.2d at 430 (emphasis in original). Plaintiff's claim that the Airport Authority's actions interfered with its operations fail to acknowledge the clear evidence that at the time of those alleged acts, Plaintiff itself was no longer an "existing enterprise[] serving substantially the same purposes" as the operation that succeeded it.

In Lower Bucks County Joint Municipal Authority v. Bristol Township Water Authority, 137 Pa. Commw. 415, 586 A.2d 512 (1991), [*45] the Court held that an attempt by a township

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 11177    Page 29 of 34

Case 2:00-cv-00860-FPK-JWS   Document 28   Filed 09/13/2000   Page 16 of 21

and its associated water authority to "take over" an area to which the plaintiff had long provided water services constituted an act of competition prohibited by the Act. Id., 586 A.2d at 516. While Lower Bucks found a violation of the Act had occurred, we believe the case is distinct from the instant one. In Lower Bucks, The Commonwealth Court agreed with the trial court's reasoning that the defendants' furnishing of water in the contested area "constituted 'existing enterprises' which competed with those of [plaintiff]." Id. By contrast here, the Airport Authority could not and did not violate the Act because Plaintiff was no longer an existing FBO at the airport at the time of the alleged competition. Plaintiff's allegation of the Authority's "misuse" refers to the Authority's selection of DynAir Fuelling as an interim provider of FBO services at the airport on February 2, 1990. See Exhibit 2, Brief in Support of Defendants' Motion for Partial Summary Judgment, filed January 22, 1996. By this time, however, Plaintiff and Mr. Holtz had already signed an agreement to sell Plaintiff's assets including hangar and leasehold [*46] rights at the Airport to Jaindl Aviation. According to deposition testimony cited by Defendants, the Authority did enter into an agreement with DynAir to act as an FBO. At the time that agreement was signed, however, Plaintiff had already agreed to sell its assets and was effectively out of business. Further, DynAir did not commence operations until March 1, 1990 -- after Plaintiff closed its sales of assets to Jaindl on February 16, 1990. See Exhibit Y, Brief in Support of Defendants' Motion for Partial Summary Judgment, filed January 22, 1996.

Plaintiff's claim of unlawful misappropriation must also be discounted. There is no evidence of any such misappropriation by the Authority of any property belonging to Plaintiff. The only property the Authority "appropriated" was effectuated by way of Jaindl's assignment to the Authority of its right to purchase Plaintiff's hangar facilities. Furthermore, that assignment was expressly agreed to by Mr. Holtz and Plaintiff. See Exhibit V, Brief in Support of Defendants' Motion for Partial Summary Judgment, filed January 22, 1996.

Despite their frequent assertion that factual disputes exist rendering summary judgment inappropriate on [*47] this count, Plaintiff has made no citations to the record to support its claim. In the record before us on this count, we conclude there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Partial summary judgment is accordingly GRANTED with respect to count five. n10

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n10 We note in passing that even if Plaintiff could establish a cause of action for unlawful misappropriation (which we have concluded it cannot) Plaintiff would most probably not be entitled to punitive damages against the Authority. 42 Pa. C.S.A. § 8553(c) precludes the award of punitive damages in actions against municipal authorities.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

## I. *Count Six: Defamation*

Plaintiff's count six alleges that Defendants maliciously and falsely published and disseminated false and disparaging statements regarding Plaintiff. At issue are: (1) statements made to Plaintiff's bank that Plaintiff was in default of its lease and that doubts existed as to whether Plaintiff could meet its financial obligations; and (2) communications [*48] made to tenants of A.B.E. Airport that the Airport lacked "an adequate and reliable fixed-base operator." Second Amended Complaint, filed June 21, 1991, P73.

In a claim of defamation, the Court must first make a threshold determination as to whether the statement is capable of defamatory meaning. "The test is the effect the [statement] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." U.S. Healthcare v. Blue Cross of Gr. Philadelphia, 898 F.2d 914, 923 (3d Cir. 1990). A critical factor to be considered by the Court in making that determination is the nature of the statement's audience. Id. The

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 11127     Page 30 of 34

Case 1:00-cv-00600-KJ/S    Document 29    Filed 09/13/2000    Page 17 of 21

relevant audiences in this case were the bank officers and the airport tenants who received Defendants' letters. We are confident that both groups were sufficiently sophisticated to understand the plain meaning of Defendants' letters. Nothing in the record has led us to believe otherwise. While we have not concluded that these letters were defamatory in nature, it is reasonably possible that either the bank or the airport tenants could interpret them as attacks on the viability of [*49] Plaintiff's business.

Defendants argue that their statements were good faith opinions based upon two disclosed non-defamatory facts -- (1) that Northeast Jet Company had lost its Part 135 charter license; and (2) that Plaintiff temporarily voluntarily surrendered its Part 145 repair station license. A quick review of the lease in question reveals that it did not require Plaintiff to maintain a Part 135 Certificate. Indeed Plaintiff never did have such a certificate, and never directly provided charter service even prior to the revocation. Similarly, the Airport lease never mentioned a Part 145 repair station certificate. Nor did the Airport's minimum standards for FBO's-- upon which Defendants apparently seek to rely -- require that Plaintiff have a Part 145 repair station certificate.

Plaintiff argues that Defendants' lack of good faith can be seen in the fact that Defendants did not immediately lift the default upon learning that Plaintiff had obtained a Part 145 Certificate. Instead, they waited an additional three months, during which time Plaintiff lost its anchor tenant for the expansion project. Plaintiff's Opposition to Summary Judgment, filed February 8, 1996, at 35-36. [*50] While we need not conclude at this point that Defendants' statements were indeed defamatory, we do believe that they are reasonably capable of such an interpretation.

Once the threshold test has been met, the plaintiff has the burden of showing a prima facie case for defamation under Pennsylvania law. The elements of such a claim are:

> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
> (6) Special harm resulting to the plaintiff from its publication. [and]
> (7) Abuse of a conditionally privileged occasion.

42 Pa. C.S.A. § 8343(a) (1982). Even if a conditional privilege were to apply, a genuine issue might still exist as to whether the Defendants have abused the privilege. Abuse of the privilege is shown where a defendant's defamatory communication is motivated by malice, consisting of a wrongful act, done intentionally without just cause or excuse, or generated from reckless or wanton disregard of another's rights. See Elia v. Erie [*51] Ins. Exchange, 430 Pa. Super. 384, 634 A.2d 657 (1993), 634 A.2d 657, appeal den., 644 A.2d 1200.

When the plaintiff has established these elements, the defendant then has the burden of proving:

> (1) The truth of the defamatory communication.
> (2) The privileged character of the occasion on which it was published. [or]
> (3) The character of the subject matter of defamatory comment as of public concern.

42 Pa. C.S.A. § 8343(b) (1982). See also <u>U.S. Healthcare, supra, at 923.</u>

Defendant Yohe, the Airport Director, sent a letter to all tenants and potential customers at A.B.E. Airport on October 27, 1989. See Exhibit E to Defendants' Motion for Partial Summary Judgment on Count Six, filed January 22, 1996. That letter states, "A.B.E.'s lack of an adequate and reliable fixed-based operator has caused us considerable anxiety during my tenure here." Defendants argue that because the letter does not explicitly identify Plaintiff as an inadequate or unreliable FBO, that the statement cannot reasonably be interpreted as defamatory to Plaintiff. We do not agree.

A communication is capable of defamatory meaning by innuendo even though the words used are not themselves [*52] defamatory. Livingston v. Murray, 417 Pa. Super. 202, 612 A.2d 443, appeal den., 533 Pa. 601, 617 A.2d 1275 (1992). To establish defamation by innuendo, the "innuendo must be warranted, justified and supported by the publication." Id., citing Thomas Burton Center v. Rockwell International Corp., 497 Pa. 460, 467, 442 A.2d 213, 217 (1981), cert. den., 457 U.S. 1134, 102 S. Ct. 2961, 73 L. Ed. 2d 1351 (1982)). Moreover, innuendo cannot be used to introduce new matter, or to enlarge the natural meaning of words. Id. However, in the present case, the context and circumstances of Defendants' letter are clearly capable of defamatory meaning as to Plaintiff. Since there were only two FBO's at A.B.E. Airport, Defendants' reference to the absence of an adequate and reliable FBO could very reasonably be interpreted as a critique of Plaintiff's adequacy and reliability.

Section 564 of the Restatement (Second) of Torts, comment b, states:

> It is not necessary that the plaintiff be designated by name; it is enough that there is such a description of or reference to him that those who hear or read reasonably understand the plaintiff to be the person intended. Extrinsic [*53] facts may make it clear that a statement refers to a particular individual although the language used appears to defame nobody.

Where words are reasonably susceptible to defamatory meaning as well as to an innocent one, the plaintiff may by innuendo ascribe defamatory meaning to the statement. See Stompler v. Richman, 125 Pa. Super. 385, 189 A. 730 (1937). See also Saenz v. Playboy Enterprises, Inc., 653 F. Supp. 552, 559 (N.E.Ill. 1987) ("a statement could be shown to be 'of and concerning' [a plaintiff] through inference as well as direct reference."). Applying this analysis to the circumstances of this case, it is clear at this stage that an inference of defamation to Plaintiff could reasonably be made by a jury.

Defendants claim protection under the Political Subdivision Tort Claims Act, 42 Pa. C.S.A. § 8541 et seq. (1982), on the grounds that nothing in the record establishes that Defendants acted with knowledge of falsity or reckless disregard for the truth. As discussed above, however, there is evidence in the record to support the conclusion that Defendants acted maliciously with knowledge that their statements were false, and with the intent of injuring [*54] Plaintiff. Under these circumstances, Defendants are not entitled to automatic immunity under the statute.

Courts have been reluctant to grant summary judgment in defamation cases where there remained outstanding issues of fact as to whether defendants acted with malice in defaming plaintiff. See, e.g., Savitsky v. Shenandoah Valley Pub. Corp., 566 A.2d 901, 904, 389 Pa. Super. 176 (1989) (genuine issue of material fact existed, precluding summary judgment for editor and newspaper, on whether they exhibited recklessness necessary to constitute actual malice in publishing report that incumbent union official was transported to polling places by coal company helicopter); Chicarella v. Passant, 343 Pa. Super. 330, 494 A.2d 1109, 1115 (1985) (allegations by plaintiff that credit manager of hospital had made defamatory

statements to employees of investigator hired by insurance company raised genuine issue of material fact as to whether credit manager actually made such statements, in light of manager's specific denial, precluding summary judgment); Braig v. Field Communications, 310 Pa. Super. 569, 456 A.2d 1366, 1376 (Pa. Super. 1983) (in judge's defamation actions against [*55] assistant district attorney and television station owner, there were fact questions, precluding summary judgment, as to existence of actual malice as to defendant and his "state of mind" in deciding to rebroadcast program over judge's objection); and Brophy v. Philadelphia Newspapers Inc., 281 Pa. Super. 588 422 A.2d 625, 632 (1980) (trial court confronted with motion for summary judgment in public official or figure defamation case must deny motion if, viewing evidence and all inferences arising therefrom in light most favorable to plaintiff, there appears genuine issue of fact from which jury could reasonably find actual malice with convincing clarity).

We conclude that a jury could reasonably find that statements made by Defendants were defamatory in nature. Partial summary judgment is accordingly DENIED at this time with respect to count six.

## J. Count Seven: Breach of Contractual Duty of Good Faith Dealing

Count seven alleges that Defendants breached a duty of good faith and fair dealing to Plaintiff. Defendants aver that no such duty existed because: (1) no confidential relationship existed between Plaintiff and Defendants; and (2) an established cause of [*56] action already exists upon which Plaintiff could recover for the alleged wrongdoing.

The Third Circuit has recognized that under Pennsylvania law,

> In the absence of a dispute about the parties' reasonable expectations under a particular term of the contract, an independent duty of good faith has been recognized only in limited situations. After all, if contracting parties cannot profitably use their contractual powers without fear that a jury will second-guess them under a vague standard of good faith, the law will impair the predictability that an orderly commerce requires.

Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995) (citations omitted). Pennsylvania courts in this District have recognized a duty of good faith performance of contracts only in special limited situations such as a confidential or fiduciary relationship.

> Chrysler Credit Corp. v. B.J.M., Jr., Inc., 834 F. Supp. 813 (E.D.Pa. 1993).
> A confidential or fiduciary relationship exists when "one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an over-mastering dominance [*57] on one side, or weakness, dependence or justifiable trust, on the other. A business association may be the basis of a confidential relationship only if one party surrenders substantial control over some portion of the affairs to the other.

Id., 834 F. Supp. 841 (citations omitted). Plaintiff has not shown it enjoyed such a confidential, fiduciary relationship with Union Pacific. There is no evidence before us that Union Pacific exercised an unequal dominance over Plaintiff nor that Plaintiff had surrendered substantial control over its affairs to Union Pacific. As the Third Circuit has concluded,

> In this context -- where two sophisticated business entities have engaged in an

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 11177        Page 33 of 34

Case 1:00-cv-00600-YK-KAS   Document 29   Filed 09/13/2000   Page 20 of 21

arms-length transaction -- we do not believe that Pennsylvania courts would impose an independent duty of good faith not tied to a contractual term.

Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995) (citations omitted). n11

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n11 Plaintiff has cited several decisions of the Pennsylvania Superior Court in support of its assertion that a good faith duty exists for all contracts in Pennsylvania. See Somers v. Somers, 418 Pa. Super. 131, 613 A.2d 1211, 1213 (Pa. Super. 1992) and Liazis v. Kasta, Inc., 613 A.2d 450, 454 (Pa. Super. 1992). We recognize there is some basis for this position. See also Garvey v. National Grange Mutual Ins. Co., 1995 WL 461228, (E.D.Pa.) citing Bethlehem Steel Corp v. Litton Indus. Inc., 507 Pa. 88, 488 A.2d 581, 600 (1985) (opinion in support of reversal) and Restatement (Second) of Contracts § 205, (every contract in Pennsylvania also imposes on each party the duty of good faith and fair dealing; Atlantic Richfield Co. v. Razumic, 480 Pa. 366, 390 A.2d 736, 742 n.7a (Pa. 1978) (recognizing Restatement (Second) of Contracts § 231 which imposes standard of good faith on contracting parties). Nonetheless, we follow the Third Circuit's interpretation which we note was based in part on Somers v. Somers, supra, amongst others. Duquesne Light, 66 F.3d 604.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -  [*58]

Defendants' Motion for partial summary' judgment, filed January 22, 1996 is accordingly GRANTED with respect to count seven of Plaintiff's second amended complaint.

## IV. CONCLUSION

Consistent with the preceding discussion, partial summary judgment for Defendants will be granted at this time with respect to all counts except count 1 (alleging constitutional violations); that part of count 3 alleging intentional interference with a prospective contractual relationship; and count 6 (defamation). Although we will include the entry of judgment in our order, this judgment will not be final or appealable under Fed.R.Civ.P. 54(b).

An appropriate order follows.

AND NOW, this 1st day of August 1996, upon consideration of Defendants' Motions for Summary Judgment, filed on January 22, 1996 and February 8, 1996, it is hereby ORDERED, consistent with the foregoing memorandum, that said motions are GRANTED in part and DENIED in part as follows:

1. Said motions are DENIED with respect to count one alleging constitutional violations. However, the parties are directed to further brief the issues pertaining to this count;

2. Said motions are DENIED with respect to that part of  [*59]  count three alleging intentional interference with a prospective contractual relationship;

3. Said motions are DENIED with respect to count six alleging defamation; and

4. Said motions are GRANTED in all other respects and judgment is entered in favor of Defendants and against Plaintiff on all claims except those enumerated above. This is not a final judgment.

BY THE COURT

Franklin S. Van Antwerpen

United States District Judge

Service: **LEXSEE®**
Citation: **1996 U.S. Dist. LEXIS 11177**
View: Full
Date/Time: Wednesday, September 13, 2000 - 9:15 AM EDT

About LEXIS-NEXIS I Terms and Conditions

Copyright © 2000 LEXIS-NEXIS Group.  All rights reserved.