**ORIGINAL**

| | |
|---|---|
| Attorneys for Plaintiff<br>Stambaugh's Air Service, Inc. | **Thomas B. Schmidt, III**<br>**Brian P. Downey**<br>**Randy L. Varner**<br>**Kelly Ann Ryan**<br>Pepper Hamilton LLP<br>200 One Keystone Plaza<br>North Front and Market Streets<br>P.O. Box 1181<br>Harrisburg, PA 17108-1181<br>(717) 255-1155<br>(717) 238-0575 (facsimile) |
| Attorneys for Defendants<br>Susquehanna Area Regional Airport Authority,<br>BAA Harrisburg, Inc., David Fleet, David<br>Holdsworth, and David C. McIntosh | **Dean F. Piermattei**<br>**Timothy J. Nieman**<br>**Susan E. Schwab**<br>Rhoads & Sinon LLP<br>One South Market Square<br>P.O. Box 1146<br>Harrisburg, PA 17108-1146<br>(717) 233-5731<br>(717) 231-6637 |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STAMBAUGH'S AIR SERVICE, INC.,

    Plaintiff

vs.                                                                    No. 1:CV-00-0660

SUSQUEHANNA AREA REGIONAL AIRPORT               (Judge Kane)
AUTHORITY, BAA HARRISBURG, INC.,                      (Magistrate Smyser)
DAVID FLEET, individually, DAVID
HOLDSWORTH, individually, and DAVID C.
MCINTOSH, individually

    Defendants

**FILED**
**HARRISBURG**

OCT 1 8 2000

MARY E. D'ANDREA, **CLERK**
Per_____
    DEPUTY CLERK

# JOINT CASE MANAGEMENT PLAN

Having complied with the meet and confer requirements set forth in the LOCAL RULES, or with any orders specifically modifying their application in the above-captioned matter, the parties hereby submit the following Joint Case Management Plan.

## 1.0     Principal Issues

1.10     Separately for each party, please give a statement summarizing this case:

By <u>Plaintiff</u>:

Stambaugh's Air Service, Inc. ("Stambaugh's") filed a complaint against defendants Susquehanna Area Regional Airport Authority ("SARAA"), BAA Harrisburg, Inc. ("BAA"), David Fleet, David Holdsworth and David McIntosh (collectively "defendants") on April 10, 2000, that alleges, *inter alia*, that defendants violated Stambaugh's federal and state rights arising under the federal and state constitutions, federal and state statutes, and the common law.

Stambaugh's has operated continuously as a tenant at Harrisburg International Airport ("HIA") since 1975, during which time it has engaged in the business of providing fixed-base operator ("FBO") services to aircraft landing at HIA. Stambaugh's provided the FBO services out of the hangar that it currently leases from SARAA, and which it had previously leased from the Commonwealth of Pennsylvania. As an FBO provider at HIA, Stambaugh's always met or exceeded the minimum standards for FBOs developed by the Commonwealth of Pennsylvania, which were incorporated into Stambaugh's lease with SARAA.

Stambaugh's had a lease agreement with SARAA that terminated on January 19, 2000. While negotiating a new lease for Stambaugh's, defendants refused to offer Stambaugh's any lease that would permit it to continue to provide FBO services at HIA, despite the fact that they were statutorily prohibited from doing so. Defendants permitted another FBO provider, AERO, to continue to operate as an FBO and, ultimately, permitted another FBO provider, Piedmont Hawthorne, to operate at HIA. Defendants used harassment and intimidation as tools to drive Stambaugh's out of HIA to create an exclusive FBO arrangement which is specifically prohibited by 49 U.S.C. §§ 47107(a)(4) and (5).

SARAA purchased a hangar formerly owned by the AMP Corporation ("AMP Hangar") to lease it to an entity to provide FBO services out of the hangar. As part of this process, SARAA issued a Request for Qualifications from FBO service providers on October 5, 1999 ("RFQ"). Despite the fact that Stambaugh's was the only bidder to qualify under the process established by defendants, defendants ignored their own requirements and refused to

permit Stambaugh's to provide FBO services at the AMP Hangar. Defendants then secretly solicited and accepted proposals which did not comply with the RFQ to ensure that Stambaugh's would not be able to lease the AMP Hangar. Moreover, these non-conforming proposals were conditioned on the requirement that defendants force Stambaugh's out of the FBO business at HIA. In other words, SARAA accepted bids which were submitted only because defendants promised those bidders that Stambaugh's FBO business would be driven out by HIA. Defendants made this promise when (1) Stambaugh's had an ongoing FBO business in the Stambaugh's Hangar, and (2) Stambaugh's had submitted the only qualifying bid on the RFQ process to provide FBO services out of the AMP Hangar. Defendants kept that promise and destroyed Stambaugh's FBO business.

The result of defendants' conduct was to create an unlawful exclusive FBO arrangement at HIA and, in the process, deprived Stambaugh's various rights by destroying its FBO business. It is that conduct which is the subject of this suit.

By <u>Defendants</u>:

Under the terms of a lease which expired on January 19, 2000, Stambaugh's leased a Hangar at HIA from SARAA in which Stambaugh's maintained and repaired aircraft and provided FBO services. During the negotiations to extend the lease, SARAA made the business decision not to allow the continuation of an FBO operation co-located with Stambaugh's aircraft maintenance facility. The genesis of Stambaugh's action is Stambaugh's failure to obtain a renewal of its contract to continue to provide FBO services at HIA.

SARAA's decision not to renew Stambaugh's FBO contract was based on its desire to upgrade the FBO services provided to the public at HIA. SARAA has decided that, at this point in the Airport's development, it is not appropriate to have an FBO operation that cannot be accessed from the landside without passing through a storage area containing assorted wreckage and then through a heavy maintenance facility, particularly when there are two other sites on the Airport for FBO services, including the newly available AMP site. No one is or will be allowed to operate an FBO facility that does not provide direct landside access, whether at Stambaugh's location or at any other maintenance facility that may be located on the Airport in the future.

At all times relevant hereto, SARAA communicated the issues it was facing and its decisions concerning the FBOs at HIA to the local FAA Airports District Office ("ADO"). The ADO recognized that SARAA was making business decisions based on valid reasons, and advised that there was no problem with SARAA's decision from the standpoint of compliance with federal requirements.

Moreover, contrary to Stambaugh's assertions, it did not always meet or exceed the minimum standards for FBO's required by its lease with SARAA. For example, the minimum standards require that fueling operations be conducted in compliance with FAA regulations and advisory circulars and any federal, state, and local regulations. In addition, HIA's standard leases contain provisions that require compliance with state and federal regulations and Airport rules and regulations. Throughout its tenure at HIA as an FBO provider, Stambaugh's failed to meet minimum standards by its failure to pay huge amounts of rent, failures to follow proper FAA fueling procedures repeated, noncompliance with FAA's security requirements concerning access to the Air Operations Area ("AOA"), and other safety violations.

What Stambaugh's characterizes as "harassment" and "intimidation" is actually SARAA's compliance with and enforcement of FAA security regulations requiring airport employees (and any other badge holders) to challenge anyone who is in the AOA and not displaying the proper airport-issued identification demonstrating that the person is authorized to have access to the AOA. Airport officials, and Stambaugh's own employees, are required by the FAA to challenge any person on the AOA who is not displaying proper identification (unless escorted by an authorized person with proper identification). Were the Airport not to challenge anyone failing to display the proper identification while in the AOA--- whether a Stambaugh's employee or not --- SARAA could be cited by the FAA for a violation of its security requirements. Stambaugh's Complaint omits the relevant facts relating to the number of times that Stambaugh's employees appeared unbadged and unaccompanied on the AOA. In several of the incidents, the employees never obtained the necessary airport identification before Stambaugh's sent them out onto the AOA.

Also missing are the facts surrounding the RFQ process for the AMP Hangar. Stambaugh's did not qualify under the bid process. In fact, there were no bids that met all of the requirements of the RFQ. Stambaughs' bid contained defects such as the failure to include the required financial information. Nevertheless, the language of the RFQ permitted SARAA to waive irregularities in the bids, if it was in the interest of SARAA to do so. While the Authority could have required a new round of bids, it was not required to do so. SARAA was perfectly within its rights in extending the RFQ response deadline in order to obtain more bids to evaluate.

Contrary to Stambaugh's claims, SARAA did not secretly solicit and accept proposals which did not comply with the RFQ, but rather followed the clear language of the RFQ in selecting the FBO operator for the AMP Hangar. It is simply not true that in accepting additional bids, SARAA promised those bidders that Stambaugh's FBO business would be driven out of HIA. It is further unfounded that SARAA would make any promises or conditions in connection with the RFQ process that would require that Stambaugh's be forced out of the FBO business at HIA. Simply put, Stambaugh's was not selected as a lessee for the AMP Hangar after the conclusion of the RFQ process which included several competitors. SARAA selected the competitor it believed would provide the best service to the public.

As a result, and again contrary to Stambaugh's allegations regarding Defendants' conduct creating an unlawful exclusive FBO arrangements at HIA, now there are two FBOs (AERO Services International Inc. and Piedmont Hawthorne) providing competing FBO services at HIA. Accordingly, competition for FBO services at HIA has increased the level and quality of services provided to the aeronautical public in keeping with the goal of the prohibition against exclusive rights avowed by the FAA.

---

The principal *factual* issues that the parties *dispute* are:

1.11  Virtually all factual issues are in dispute.

*agree* upon are:

1.20    The names and positions of the parties.

1.21    Stambaugh's had a Lease and Fixed Base Operator Agreement with SARAA expired by its own terms on January 19, 2000.

1.22    At present there are two FBO service providers operating at HIA: AREO Services International, Inc. and Piedmont Hawthorne.

1.23    Stambaugh's currently leases a hangar at HIA for its repair and maintenance business which expires on December 31, 2001, unless Stambaugh's develops, and SARAA approves, a Closure Plan for the winding down of its operation, in which case the lease expires on December 31, 2002.

1.30    The principal *legal* issues that the parties *dispute* are:

The parties disagree as to which legal issues are in dispute. It is plaintiff's position that all legal issues raised in its complaint, which are listed below, are in dispute. It is defendants' position that since Magistrate Judge Smyser has recommended in his Report and Recommendations that Counts I, II, IV, V and VI be dismissed as to all Defendants and Count VII be dismissed as to Defendant SARAA, those claims are no longer part of this case and, therefore, are not in dispute. As to Stambaugh's Count III (Equal Protection pursuant to 42 U.S.C. § 1983) against all Defendants and Count VII (Tortious Interference with Contractual Relationships) against Defendants BAA, Fleet, Holdsworth and McIntosh, all legal issues are disputed.

Plaintiff contends that its complaint raises the following issues:

1.31   Whether defendants violated Stambaugh's due process and equal protection guarantees under the United States Constitution pursuant to 42 U.S.C. § 1983.

1.32   Whether defendants violated Stambaugh's due process and equal protection guarantees under the Pennsylvania Constitution.

1.33   Whether SARAA violated the Municipality Authorities Act of 1945, 53 P.S. § 301, *et seq.*

1.34   Whether defendants conspired to tortiously interfere with Stambaugh's existing contractual relationships.

1.35   Whether defendants tortiously interfered with Stambaugh's existing contractual relationships.

1.36   Whether SARAA created an "exclusive right" in violation of federal law at HIA.

1.37   Whether SARAA has engaged in economic discrimination against Stambaugh's in violation of federal law.

1.40   *agree* upon are: None

1.50   Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:

Plaintiff has not identified any such issues. Defendants contend that Stambaugh's Complaint raises the issue of whether SARAA has violated the prohibition against exclusive arrangements and economic discrimination contained in 49 U.S.C. §§ 47107(a)(4) and (5). Case law is clear, however, that based on the claims alleged by Stambaugh's, this Court does not have subject matter jurisdiction over this claim. Montauk – Carribean Airways, Inc. v. Hope, 784 F. 2d 91, 98(2d Cir. 1986). Additionally, Stambaugh's has filed an action with the FAA regarding this issue. This matter is docketed at Stambaugh's Aviation Service, Inc. v. Susquehanna Area Regional Airport Authority, Docket No. FAA-16-00-5. Accordingly, the "exclusive rights" claim is not at issue in the instant matter nor can it be used as evidence of other issues properly before the Court.

1.60    Identify any named parties that have not yet been served:

        Plaintiff: None.

        Defendants: None.

1.70    Identify any additional parties that:

        Plaintiff intends to join: None.

        Defendants intend to join: None at this time.

1.80    Identify any additional claims that:

        Plaintiff intends to add: None.

        Defendants intend to add: At this time defendants have not determined whether they will add any additional claims.

## 2.0    Alternative Dispute Resolution ("ADR")

2.10    Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use.

| | |
|---|---|
| ADR procedure | None |
| Date ADR to be commenced | N/A |
| Date ADR to be completed | N/A |

2.20    If the parties have been unable to agree on an ADR procedure, but one or more parties believes that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:

        Plaintiff believes that alternative dispute resolution may be an appropriate vehicle for resolving the issues among the parties. No such efforts have been undertaken by the parties, but mediating this dispute may be appropriate and plaintiff will be guided by the Court as to this issue.

2.30   If all parties share the view that no ADR procedure should be used in this case, set forth the basis for that view:

   N/A

**3.0   Consent to Jurisdiction by a Magistrate Judge**

Indicate whether all parties agree, pursuant to 28 U.S.C. § 636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit:

All parties agree to jurisdiction by a magistrate judge of this court: ___ Y   x   N

**4.0   Disclosures**

4.100   Separately for each party, list by *name and title/position* each person whose identity has been disclosed.

   4.101   Disclosed by Plaintiff:

| Name | Title/Position |
|---|---|
| 4.102 Mark Stambaugh | President, Stambaugh's |
| 4.103 Scott Stambaugh | Vice President, Stambaugh's |
| 4.104 Charles Beard | Executive Assistant, Stambaugh's |
| 4.105 Daniel Moyer | Federal Aviation Administration |
| 4.106 Joseph Green | Federal Aviation Administration |

   4.151   Disclosed by Defendants:

| Name | Title/Position |
|---|---|
| 4.152 David Fleet | Airport Director, BAA Harrisburg, Inc. |
| 4.153 David Holdsworth | Executive Director, SARAA |
| 4.154 David Macintosh | Chairman of the SARAA Board |

4.200 Separately for each party, describe by *categories* the documents that have been disclosed or produced through formal discovery, indicating which categories relate (even if not exclusively) to damages:

    4.201 Categories of documents disclosed by <u>Plaintiff</u>:

    None to date.

    4.251 Categories of documents disclosed by <u>Defendants</u>:

    None to date.

4.300 ***Additional Documents Disclosures:*** Separately for each party, describe each additional category of documents that will be disclosed without imposing on other counsel the burden of serving a formal request for production of documents:

    4.301 Additional categories of documents <u>Plaintiff</u> will disclose:

        a. Lease Agreement between Stambaugh's and SARAA

        b. FAA Circulars related to exclusive rights

        c. Telephone messages from Stambaugh's customers

        d. Lease Agreement between SARAA and Hawthorne Aviation

        e. Records related to FAA Inspections of Stambaugh's facility

        f. Records related to inspections by users of Stambaugh's FBO services

    4.351 Additional categories of documents <u>Defendants</u> will disclose:

        a. SARAA Board of Directors Meeting Notices, Minutes, and other related documents

        b. SARAA Economic Development Committee Agendas and other related documents

        c. SARAA Airport Operations Committee Agendas, Minutes and other related documents

    d.    Documents relating to Stambaugh's tenancy, utilities, environmental compliance history, security violations, accounts receivables

    e.    Stambaugh's correspondence documents from 1986 to present

    f.    Documents relating to the Request for Qualifications for the AMP Hangar

4.400  Separately for each party who claims an entitlement to damages or an offset, set forth the computation of the damages or of the offset:

    4.401  <u>Plaintiff's</u> calculation of damages:

        a.    Loss of FBO Business - $5,000,000.00.

        b.    Dismantling and relocation of its FBO and maintenance operations - $1,000,000.00

        c.    Relocation of dislocated employees - $1,000,000.00

        d.    Loss of FBO Income - $13,000,000.00 (net income for FBO services over the next 18 years)

        e.    Business interruption - $1,500,000.00

        f.    Lost productivity - $3,000,000.00 to $5,000,000.00

        g.    Construction of new facilities at a different location - $16,000,000.00 plus interest over the next 30 years.

    4.402  <u>Defendants'</u> calculation of damages: Defendants have not yet determined whether they have any damages for which they intend to seek recovery in this suit.

    4.403  Counter claimant/third party claimant's calculation of damages: N/A

**5.0   Motions**

Identify any motions(s) whose early resolution would *likely* have a significant effect either on the scope of discovery or other aspects of the litigation:

| Nature of Motion | Moving Party | Anticipated Filing Date |
|---|---|---|
| (1) Motion to Dismiss | Defendants | Magistrate Smyser recommended that the motion be granted in part and denied in part; now pending on objections to Judge Kane |
| (2) Motion for Summary Judgment | Plaintiff | After close of discovery |
| (3) Motion for Summary Judgment | Defendants | After close of discovery |

**6.0   Discovery**

6.100   Briefly describe any discovery that has been completed or is in progress:

By <u>Plaintiff</u>: Service of interrogatories and document requests. By agreement of the parties, Defendants' time for answering and objecting to these requests has been extended to a date to be agreed upon by the parties.

By <u>Defendants</u>: None to date.

6.200   Describe any *discovery* that all *parties agree* should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (e.g., "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):

> The parties should be deposed as should other witnesses as yet unknown to determine underlying facts.

-11-

6.300 Describe any *discovery* that one or more parties want(s) to conduct but *to which another party objects,* indicating for each such discovery undertaking its purpose or what kings of information would be developed through it:

>None at this time. Defendants contend that because Magistrate Judge Smyser has recommended that certain claims be dismissed in his Report and Recommendation dated October 2, 2000, those claims are no longer part of this case and, therefore, no discovery should be permitted with respect to them. Defendants further contend that this Court does not have subject matter jurisdiction over Stambaugh's FAA "exclusive rights" issue, and, therefore, discovery related to this issue should not be permitted.

6.400 Identify any *subject area limitations on discovery* that one or more parties would like imposed, at the first stage of or throughout the litigation:

>Plaintiff has not identified any at this time. Defendants contend that because Magistrate Judge Smyser has recommended that certain claims be dismissed in his Report and Recommendation dated October 2, 2000, those claims are no longer part of this case and, therefore, no discovery should be permitted with respect to them. Defendants further contend that this Court does not have subject matter jurisdiction over Stambaugh's FAA "exclusive rights" issue, and, therefore, discovery related to this issue should not be permitted.

6.500 For each of the following discovery tools, *recommend the per-party or per-side limitations* (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by Plaintiff and by Defendant):

  6.501 depositions (excluding experts) to be taken by:

   Plaintiff: 20        Defendants (collectively): 20

  6.502 interrogatories to be served by:

   Plaintiff: 60        Defendants (collectively): 60

  6.503 document production requests to be served by:

   Plaintiff: 60        Defendants (collectively): 60

      6.504  requests for admission to be served by:

            <u>Plaintiff</u>: 40        <u>Defendants</u> (collectively): 40

  6.600  All discovery commenced in time to be completed by:

            June 30, 2001

  6.700  Reports from retained experts due:

            from plaintiff:      30 days after close of discovery
            from defendants:    30 days after receipt of plaintiff's expert report.

**7.0  Protective Order**

  7.1  If entry of a protective order is sought, attach to this statement a copy of proposed order.

            None at this time.

  7.2  If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below:

            N/A

**8.0   Certification of Settlement Authority (All Parties Shall Complete the Certification)**

I hereby certify that the following individual(s) have settlement authority:

<u>For Plaintiff:</u>

| | | |
|---|---|---|
| Mark R. Stambaugh<br>Stambaugh's Air Service, Inc.<br>427 Second Street<br>Highspire, PA  17034 | c/o | Thomas B. Schmidt, III<br>Brian P. Downey<br>Randy L. Varner<br>Pepper Hamilton LLP<br>200 One Keystone Plaza<br>North Front and Market Streets<br>P.O. Box 1181<br>Harrisburg, PA  17108-1181<br>(717) 255-1155 |

<u>For Defendants:</u>

Dean F. Piermattei
Rhoads & Sinon LLP
One South Market Street
P.O. Box 1146
Harrisburg, PA  17108-1146
(717) 233-5731
(717) 231-6631 (facsimile)

**9.0   Scheduling**

9.1   This case may be appropriate for trial in approximately:

425 days from the filing of the action in this court

9.2   Suggested Date for Trial:

September 2001

9.3   Suggested Date for the final Pretrial Conference:

August 2001

9.4    Final date for joining additional parties:

March 31, 2001

9.5    Final date for amending pleadings:

March 31, 2001

9.6    All potentially dispositive motions should be filed by:

Within 30 days after the close of discovery.

**10.0    Other Matters**

Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute.

None at present.

**11.0   Identification of Lead Counsel**

Identify by name, address and telephone number lead counsel for each party:

For Plaintiff:

Date:   October 18, 2000

THOMAS B. SCHMIDT, III
BRIAN P. DOWNEY
RANDY L. VARNER
KELLY ANN RYAN
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA  17108-1181
(717) 255-1155
(717) 238-0575 (facsimile)

For Defendants:

Date:  October 18, 2000

DEAN F. PIERMATTEI
TIMOTHY J. NIEMAN
SUSAN E. SCHWAB
Rhoads & Sinon LLP
One South Market Street
P.O. Box 1146
Harrisbug, PA  17108-1146
(717) 233-5731
(717) 231-6631 (facsimile)