**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STAMBAUGH'S AIR SERVICE, INC.,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 1:00-CV-660** |
| | : | |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **SUSQUEHANNA AREA REGIONAL** | : | |
| **AIRPORT AUTHORITY, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM AND ORDER</u>**

Before this Court are Plaintiff's Complaint (Doc. No. 1), Magistrate Judge Smyser's

Report and Recommendation (Doc. No. 21), Plaintiff's Objections thereto (Doc. No. 25),

Defendants' Reply Brief (Doc. No. 27), Plaintiff's Reply Brief (Doc. No. 28), and Defendants'

Supplemental Brief (Doc. No. 63).  For the reasons that follow, the Court will adopt the findings

and recommendations of the Magistrate Court and remand this case to Magistrate Judge Smyser

for further proceedings.

**I.    <u>Factual and Procedural Background</u>**[1]

For more than twenty-five years, Plaintiff Stambaugh's Air Service, Inc. operated as a

fixed base operator ("FBO") business at the Harrisburg International Airport ("HIA"),

performing fueling, maintenance, and cargo handling services for airplanes.  Defendants own

and manage HIA.[2]  In a Complaint filed April 10, 2000, Plaintiff alleges that Defendants used

harassment and intimidation to force Plaintiff to leave HIA, and unlawfully refused to offer any

---

[1] The factual background of this case is detailed more fully in the Report and Recommendation.

[2] The defendants in this actions are Susquehanna Area Regional Airport Authority, BAA Harrisburg, Inc., David Fleet, David Holdsworth, and David McIntosh.

lease to Plaintiff that would allow it to continue to provide  FBO service at HIA.  In its

Complaint, Plaintiff asserts the following claims:  violation of its "rights to due process pursuant

to 42 U.S.C. § 1983" (Count I); violation of its "rights to due process guaranteed by Article I,

Section 1, of the Pennsylvania Constitution" (Count II); violation of its "rights to equal

protection pursuant to 42 U.S.C. § 1983" (Count III); violation of its "rights to equal protection

guaranteed by Article I, Sections 1 and 26, and Article III, Section 32, of the Pennsylvania

Constitution" (Count IV); conspiracy (Count V); violation of the Municipal Authorities Act of

1945, 53 Pa.C.S. § 5601 et seq. (Count VI); and tortious interference with existing contractual

relationships (Count VII).  (Doc. No. 1.)  On May 19, 2000, Defendants filed a motion to dismiss

the Complaint.  (Doc. No. 6.)  After full briefing on the motion, Magistrate Judge Smyser issued

a report, recommending that this Court grant Defendants' motion regarding Counts I, II, IV, V,

and VI as to all Defendants and Count VII as to Defendant Susquehanna Area Regional Airport

Authority ("SARAA"), but deny the motion in all other respects.  The parties filed briefs in

response to the Magistrate's Report and Recommendation.  However, the case was subsequently

stayed due to Plaintiff's bankruptcy proceedings until August 31, 2005.  In its Order lifting the

stay, this Court allowed the parties to file supplemental briefs regarding the Magistrate Judge's

Report and Recommendation.  On September 30, 2005, Defendants filed a supplemental brief.

Plaintiff did not to submit any additional briefing.

**II.    Discussion**

Pursuant to 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo

determination of those portions of the report or specified proposed findings or recommendations

to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in

part, the findings or recommendations made by the magistrate judge." Id.  A motion to dismiss

tests the legal sufficiency of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.

1993).  When considering a motion to dismiss, the court accepts as true all factual allegations

contained in the complaint and views them in the light most favorable to the plaintiff.  U.S.

Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  The plaintiff is required to "set

forth sufficient information to outline the elements of his claim or to permit inferences to be

drawn that those elements exist."  Kost, 1 F.3d at 183 (citations omitted).  A court should grant a

motion to dismiss only if it appears the plaintiff can prove no set of facts in support of his claim

that would entitle him to relief.  Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir.

1985) (citations omitted).

### A.    Substantive Due Process (Count I)

Finding that Plaintiff "[did] not assert a procedural due process right and [did] not assert

that there was a state-created property interest that was taken without due process of law[,]" the

Magistrate Judge examined the claims as a "violation of substantive due process rights in the act

of excluding the plaintiff as a potential bidder."  (Doc. No. 21 at 5.)  Relying on Independent

Enterprise Inc. v. Pittsburgh Water and Sewer Authority, 103 F.3d 1165 (3d Cir. 1997), the

Magistrate Court found that the right:

> to be the HIA FBO operator is not a fundamental right such as the
> property interests that may in some contexts arise from the ownership of
> land . . . .  It is a contractual right. . . .  Stambaugh's did not have a right as
> a matter of substantive due process to continue to have the HIA FBO
> contract or to have its bid considered in any particular manner.

(Id. at 8.)  The Magistrate Judge also found that Plaintiff failed to allege a constitutionally

protected liberty interest, rejecting Plaintiff's argument that "the taking of its business interests

at HIA is tantamount to the state's taking of a professional license by wrongfully withholding or revoking certification." (Id. at 9.)  Accordingly, the Magistrate Judge recommended that the Court dismiss Plaintiff's substantive due process claim.  (Id. at 10.)

Plaintiff objects to the Magistrate Court's characterization of its claim.  Plaintiff argues that its "claim arises from its interest in not being arbitrarily denied permission to be an FBO operator anywhere at HIA, even from the space which it has leased." (Doc. No. 25 at 4.) Plaintiff analogizes its claim to cases where the state or municipality failed to grant permission to a property owner or lessor for an intended land use.  (Id. at 6.)  Plaintiff also contends that this Court should analogize Defendants' action to that of a licensing authority's wrongful denial of certification, as "defendants, by unlawfully excluding [Plaintiff] from a public airport, have excluded [Plaintiff] from the market for FBO services." (Doc. No. 11.)  Plaintiff further argues that "[t]he Magistrate Judge failed to recognize, that in the market in which Stambaugh's operates and which SARAA controls, defendants by their actions, in effect, have denied Stambaugh's the opportunity to operate as an FBO at all." (Doc. No. 25 at 10.)

Plaintiff's attempt to analogize the denial of its FBO contract to land-use cases is misguided.  Contrary to the cases Plaintiff cites, Defendants' alleged actions in the case at bar do not amount to a governmental entity placing use limitations on private land.  According to the allegations made in the Complaint, Plaintiff's inability to continue to provide FBO services at HIA stems directly from Defendants' decision not to renew their lease with Plaintiff.  (Doc. No. 1 at 4-5.)  Plaintiff's "right" to perform FBO services at HIA arises entirely from its former contractual relationship with Defendants to provide such services, and is therefore merely a contractual right.  No constitutionally protected property interests exist in a government contract

unless the contract confers a protected status or contains a provision that the state entity can terminate the contract only for cause.  Linan-Faye Constr. Co., Inc. v. Housing Auth. of the City of Camden, 49 F.3d 915, 932 (3d Cir. 1995) (citing Unger v. National Residents Matching Program, 928 F.2d 1392, 1399 (3d Cir. 1991); see also Reich v. Beharry, 883 F.2d 239, 242 (3d Cir. 1989) ("Many . . . courts have observed that if every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contract claims against public entities.  We agree that such a wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause").  Neither Defendants' refusal to renew Plaintiff's former lease nor Defendants' refusal to lease Plaintiff the former AMP hanger rise to the quality of property rights worthy of substantive due process protection.  See Independent Enterprise Inc., 103 F. 3d at 1179 ("substantive due process claim grounded in an arbitrary exercise of governmental authority may be maintained only where the plaintiff has been deprived of a 'particular quality of property interest'); see e.g. Queen City Aviation, Inc. v. Allentown, 1992 U.S. Dist. LEXIS 9042 (E.D. Pa. 1992) (city officials decision to grant an exclusive lease to another bidder did not amount to a substantive due process violation).

Moreover, Plaintiff's contractual right to provide FBO services to airplanes at HIA does not amount to a constitutionally-protected liberty interest.  "[D]ischarge from governmental employment will not by itself constitute a deprivation of liberty."  Bb. of Regents v. Roth, 408 U.S. 564, 575 (1972).  As the Magistrate Judge correctly noted, "[t]he state when acting in a governmental capacity of regulating persons' eligibility and suitability to practice their trade or

profession gives rise to an application of due process principles and expectations whereas the state's contractual interactions with service providers do not."  (Doc. No. 21 at 10.)  In declining to renew Plaintiff's contract or lease, Defendants precluded Plaintiff from providing FBO services at HIAA, but it did not impair Plaintiff's ability to provide such services at any other airport in the Commonwealth.  The difficult market realities allegedly inherent in the FBO industry and the economic significance of Plaintiff's loss of the service contract do not convert a mere contract claim into a deprivation of liberty.  See Linan-Faye Constr. Co., 49 F.3d at 932 ("[a]lthough the consequential damages of an alleged breach may be severe, this fact alone cannot convert a contract claim into a deprivation of liberty") (citing S & D Maintenance Co. v. Goldin, 844 F.2d 962 (2d Cir. 1988)).  Plaintiff fails to establish a claim of constitutional magnitude.  Accordingly, Plaintiff's due process claim will be dismissed (Count I).

## B. Private Right of Action for Damages Under the Pennsylvania Constitution (Counts II and IV)

The Magistrate Judge recommends dismissal of Plaintiff's claims under the Pennsylvania Constitution "on the basis that a violation of the Pennsylvania constitution does not give rise to a cause of action seeking monetary damages as a remedy."  (Doc. No. 21 at 15.)  As the Pennsylvania Supreme Court has not yet settled the issue of whether a plaintiff may seek monetary damages for state constitutional violations, this Court will decline to exercise supplemental jurisdiction over Plaintiff's state constitutional claims pursuant to 28 U.S.C.  § 1367(c)(1).[3]  Section 1367(c)(1) states, "the district courts may decline to exercise supplemental

---

[3]  Recently, the Commonwealth Court of Pennsylvania ruled that there is "no separate cause of action for monetary damages for the use of excessive force in violation of Article I, Section 8 of the Pennsylvania Constitution."  Jones v. City of Philadelphia, 2005 WL 3695389, *18 (Pa. Cmwlth. Jan. 25, 2006).

jurisdiction over a claim . . . if the claim raises a novel or complex issue of State law." 28 U.S.C.

§ 1367(c)(1). Numerous district courts have recognized that the issue of whether an action for

monetary damages for violations of the Pennsylvania constitution is a "novel or complex issue of

State law" and accordingly, have declined to exercise supplemental jurisdiction. See Mitchell v.

Street, No. 04-3213, 2005 U.S. Dist. LEXIS 17156 at *16-18 (E.D. Pa. August 16, 2005)

(dismissing state constitutional claims without prejudice in light of the unclear status of the law);

Millar v. Windsor Twp., No. 04-CV-2529, 2005 U.S. Dist. LEXIS 17433 at *12 (M.D. Pa. June

24, 2005) (stating that there is a "dearth of case law on the issue" and declining to exercise

jurisdiction over the state constitutional claims because deference to the state appellate courts is

appropriate); see also Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d

478, 487 (3d Cir. 1998) (affirming district court's decision to refrain from exercising

supplemental jurisdiction over state constitutional claims that presented a complex issue of state

law). Therefore, the Court will decline to exercise supplemental jurisdiction over Plaintiff's

state constitutional claims pursuant to § 1376(c)(1) and will dismiss Plaintiff's state

constitutional claims (Counts II and IV) without prejudice.

### C.    Equal Protection (Count III)

In his Report and Recommendation, Magistrate Judge Smyser recommended that this

Court deny Defendants' motion to dismiss as to Plaintiff's equal protection claim. (Doc. No. 21

at 12.) Relying on Village of Willowbrook v. Olech, 528 U.S. 562 (2000), the Magistrate Judge

correctly observed that an equal protection claim can be brought by a "class of one," a plaintiff

alleging that he has been "intentionally treated differently from others similarly situated and that

there is no rational basis for the difference in treatment." Willowbrook, 528 U.S. at 564. Where

no fundamental right is impinged and where no suspect classification is used, the difference in treatment need only be rationally related to a legitimate state interest.  See Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985) (discussing the general rational basis rule and noting the exceptions for fundamental rights and suspect classifications).

Defendants argue that Plaintiff's equal protection claim "contains no factual allegations that Defendants acted irrationally or arbitrarily[,]" moreover "Plaintiff is also required to set forth supporting facts which it has failed to do."  (Doc. No. 63 at 8.)  In its Complaint, Plaintiff alleges that Defendants "engaged in a policy of intimidation and harassment directed at [Plaintiff] and its employees", fabricated lease disputes, intentionally ignored its own Request for Qualifications ("RFQ") requirements, rejected Plaintiff's lease application outside of the normal process, and violated Federal Aviation Administration Order 5190.1A in an attempt to force Plaintiff "out of the FBO business at HIAA."   (Doc. No. 1, ¶¶ 25-26, 47, 51-53, 62, 65.) Further, Plaintiff alleges that Defendants treated Plaintiff "differently from other similarly situated entities without any rational basis for doing so" and engaged in conduct designed "to inhibit or prevent [Plaintiff] from engaging in commercial activity and to afford others the opportunity to do so."  (Id. ¶¶ 128-29.)  The Court finds that Plaintiff has alleged enough irrational differential treatment to survive a motion to dismiss.  See Willowbrook, 528 U.S. at 564.  Unlike the cases from outside this circuit that Defendants cite in support of their objection, Plaintiff alleges just enough facts, which if true, could demonstrate that Defendants treated Plaintiff differently based on an illegitimate animus towards it.  Id. at 566 (J. Breyer concurring). The Court is constrained to find that Plaintiff has made a minimal showing of an equal protection violation so as to survive Defendants' motion to dismiss.

In their motion to dismiss, the individuals Defendants' (Defendants Fleet, Holdsworth, and McIntosh) asserted a qualified immunity defense.[4]  (Doc. No. 6.)  It is the individual Defendants' burden to establish that they are entitled to qualified immunity.  Stoneking v. Bradford Area School Dist., 882 F.2d 720, 726 (3d Cir. 1989) (citing Ryan v. Burlington County, 860 F.2d 1199, 1204 n.9 (3d Cir. 1988)).  The defendants must show "that their conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Stoneking, 882 F.2d at 726 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The defendants must demonstrate that reasonable officials in the defendants' position at the relevant time could have believed, in light of clearly established law, that their conduct comported with established legal standards.  Id.  The Third Circuit has "'adopted a broad view of what constitutes an established right of which a reasonable person would have known.'"  Id. (quoting Sourbeer v. Robinson, 791 F.2d 1094, 1103 (3d Cir. 1986)).  "Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken."  Anderson v. Creighton, 483 U.S. 635, 639 (1987) (quoting Harlow, 457 U.S. at 818-19).

The Magistrate Judge rejected the individuals Defendants' qualified immunity defense. (Doc. No. 21 at 12.)  Relying upon Northeast Jet Center, Ltd. v. Lehigh-Northampton Aairport Authority, 767 F. Supp. 672 (E.D. Pa. 1991), the Magistrate Judge found that a foundation

---

[4] Although Defendants asserted this defense generally, since only the Equal Protection claim remains, the Court will confine its discussion of qualified immunity to this claim.

existed "in clearly established law for the defendants to have known that conduct such as that alleged here was in violation of clearly established law." (Doc. No. 21 at 14.) Defendants argue that the individual Defendant's alleged actions were not unreasonable as a matter of law. (Doc. No. 63 at 13.) As stated above, Plaintiff alleges that all defendants intimidated and harassed its employees, interfered with its business operations, fabricated lease violations, and manipulated its own contract award process in an effort to drive Plaintiff out of HIA. (Doc. No. 1.) Accepting these allegations as true and viewed in a light most favorable to non-moving Plaintiff, Defendants fail to demonstrate that a reasonable person would have thought these actions comported with established legal standards. Accordingly, Defendants' motion to dismiss as to Count III will be denied.

### D.      Conspiracy (Count V)

The Magistrate Judge recommends that this Court dismiss Plaintiff's conspiracy claim because Plaintiff fails to state the underlying torts that were allegedly the object of the conspiracy. (Doc. No. 21 at 17-18.) To state a cause of action for civil conspiracy under the law, a plaintiff must show "that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (1979) (citations omitted). Plaintiff objects to the report, arguing that the conspiracy count properly references tortious interference as an underlying tort and "make[s] clear the basis of the conspiracy." (Doc. No. 25 at 16.)

The Court agrees with Magistrate Judge Smyser that Plaintiff fails to properly plead the object of the conspiracy. Although Count V alleges that Defendants contacted Plaintiff's

customers, it does not allege that Defendants interfered with existing contractual relationships nor does the conspiracy count incorporate by reference allegations pled in the tortious interference count (Count VII). Plaintiff has failed to include sufficient specificity as to put Defendants on notice as to the basis of the alleged conspiracy. Accordingly, this claim will be dismissed and Plaintiff will be granted leave to amend the Complaint.

### E.        Municipal Authorities Act (Count VI)

The Magistrate Judge recommends dismissal of Plaintiff's claim that Defendants violated the Pennsylvania's Municipal Authorities Act of 1945, 53 Pa.C.S. § 5601 et seq. (2005). (Doc. No. 21 at 21.) The act provides in part that:

> Every authority incorporated under this chapter shall be a body corporate and politic and shall be for the purposes of financing working capital; acquiring, holding, constructing, financing, improving, maintaining and operating, owning or leasing, either in the capacity of lessor or lessee, projects of the following kind and character and providing financing for insurance reserves[.]

53 Pa.C.S. § 5607(a). The type of projects listed by the statute include transportation, parks, sewers, waterworks, hospitals, schools and other projects similarly associated with the public sector. Id. The section then places a limit on the types of works that can be established by a municipal authority:

> The purpose and intent of this chapter being to benefit the people of the Commonwealth by, among other things, increasing their commerce, health, safety and prosperity and not to unnecessarily burden or interfere with existing business by the establishment of competitive enterprises; none of the powers granted by this chapter shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project or projects or providing financing for insurance reserves which in whole or in part shall duplicate or compete with existing enterprises serving substantially the same purposes.

53 Pa.C.S. § 5607(b)(2).[5]

Plaintiff argues that Defendants interfered with Plaintiff's business and subsequently awarded the FBO contract to Plaintiff's rivals and that such conduct constituted unlawful competition by SARAA.  (Doc. No. 28 at 14.)  This argument is without merit.  Defendants did not establish a competing FBO enterprise at HIA; Defendants are alleged to have merely favored other FBO firms over Plaintiff.  Section 5607(b)(2) prohibits municipal authorities themselves from competing against existing businesses.  There are no allegations that the FBO companies which replaced Plaintiff at HIA were constructed, financed, or operated by SARAA.  As the Magistrate Court correctly notes, "Stambaugh's had no statutory right not to be replaced by SARAA."  (Doc. No. 21 at 21.)  Accordingly, this claim will be dismissed (Count VI).

### F.    Tortious Interference (Count VII)

Magistrate Judge Smyser recommends that Plaintiff's tortious interference count not be dismissed, finding that the Complaint properly alleges each of the prima facie elements of the claim.  (Doc. No. 21 at 25.)  Defendants argue that this claim should also be dismissed as to the individual defendants based upon the doctrine of qualified immunity.  (Doc. No. 63 at 9.) Defendants assert that the alleged tortious interference, even if true, was not unreasonable as a matter of law.  (Id. at 13.)  However, for the reasons discussed more fully above in § II(c) of this Order, the Court will overrule this objection.  Tortious interference is a well-established tort, one which the individual Defendants should have reasonably been aware.  Accepting all allegations

---

[5] SARAA is a municipal authority created pursuant to the Municipal Authorities Act. (Doc. No. 1 at 2.)

as true and viewed in a light favorable to non-moving Plaintiff, Defendants fail to demonstrate that a reasonable person would have thought intentionally interfering with the relationships between Plaintiff and its clients, for the direct purpose of injuring Plaintiff, comported with established legal standards.  Accordingly, the Court will not dismiss this count as to the individual Defendants.

However, Magistrate Judge Smyser does recommend that the Court dismiss this claim against SARAA on the basis of governmental immunity.  (Id.)  See 42 Pa.C.S. § 8541.  Plaintiff raises no objections against this recommendation.  (Doc. No. 25.)  Accordingly, upon review of the record and the applicable law, the Court will adopt this recommendation by the Magistrate Court and dismiss Count VII as to Defendant SARAA.

### G.    Leave to Amend

If a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  For the reasons discussed more fully above, leave to amend Counts I, II, IV, and VI would be futile.  However, Plaintiff shall be permitted leave to amend Count V of the Complaint.

**III.**      **Order**

      **AND NOW**, this 16th day of March, 2006, **IT IS ORDERED THAT:**

1.      Magistrate Judge Smyser's Report and Recommendation is **HEREBY ADOPTED.**

2.      Defendants' motion to Dismiss is granted in part as follows: Counts I, V, and VI are **DISMISSED**; Count VII is **DISMISSED** as to Defendant SARAA; and Counts II and IV are **DISMISSED** without prejudice.  In all other regards Defendants' motion is denied.

3.      Plaintiff's and Defendants' Objections are **OVERRULED**.

4.      Plaintiff may file an Amended Complaint as to Count V within ten (10) days of this Order.

5.      The Clerk of Court is directed to refrain from entering judgment until the disposition of the proceedings.

6.      This case is **REMANDED** to Magistrate Judge Smyser for further proceedings.

                                _____S/ Yvette Kane_____

                                Yvette Kane

                                United States District Judge