IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STAMBAUGH'S AIR SERVICE, INC., : | |
| : | |
| Plaintiff : | |
| v. : | CASE NO. 1:CV-00-0660 |
| : | |
| SUSQUEHANNA AREA REGIONAL : | Judge Yvette Kane |
| AIRPORT AUTHORITY, BAA : | Magistrate Judge J. Andrew Smyser |
| HARRISBURG, INC., DAVID FLEET, : | |
| individually, DAVID HOLDSWORTH, : | |
| individually, and DAVID C. McINTOSH, : | JURY TRIAL DEMANDED |
| individually, : | |
| Defendants : | |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. : | |

**FIRST AMENDED COMPLAINT**

AND NOW, comes Stambaugh's Air Service, Inc., by and through its counsel, Cunningham & Chernicoff, P.C., and pursuant to this Court's Order of March 16, 2006, files this Amended Complaint restating Count III of the Original Complaint as Count I, Amending Count V of the Original Complaint as Count II and restating Count VII of the Original Complaint as Count III as follows:

**COUNT I
(FORMERLY COUNT III)
VIOLATION OF STAMBAUGH'S AIR SERVICE, INC.'S RIGHT TO
EQUAL PROTECTION PURSUANT TO 42 U.S.C. §1983
STAMBAUGH'S vs. SARAA, BAA, FLEET, HOLDSWORTH AND
McINTOSH**

1. Plaintiff, Stambaugh's Air Service, Inc. (hereinafter "Plaintiff") incorporates by reference the allegations contained in Paragraphs 1 through 116 of the Original Complaint, as if more fully set forth herein.

2. The Fourteenth Amendment to the United States Constitution guarantees all citizens the right to equal protection under the law.

3. 42 U.S.C. §1983 provides Plaintiff, *inter alia,* with a right to bring suit to redress constitutional grievances.

4. As a municipal authority, Defendant Susquehanna Area Regional Airport Authority (hereinafter referred to as "SARAA") is a state actor for purposes of constitutional analysis and, at all times relevant to this Complaint, acted under color of state law.

5. As the entity managing Harrisburg International Airport (hereinafter referred to as "HIA") for SARAA, Defendant BAA Harrisburg, Inc (hereinafter referred to as "BAA") is also a state actor for purposes of constitutional analysis and, at all times relevant to this Complaint, acted under color of state law.

6. As the Airport Director of HIA for SARAA and BAA, Defendant David Fleet (hereinafter referred to as "Fleet") is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

7. As the Executive Director of SARAA, Defendant David Holdsworth (hereinafter referred to as "Holdsworth") is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

8. As the Chairman for the Board of Directors of SARAA, Defendant David C. McIntosh (hereinafter referred to as "McIntosh") is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

9. As the Airport Director of HIA for SARAA and BAA, Fleet is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

10. Defendants SARAA, BAA, Fleet, Holdsworth and McIntosh have treated Plaintiff differently from AERO, a similarly situated Fixed Based Operation (hereinafter referred to as "FBO"), without any rational basis for doing so, in violation of Plaintiff's right to equal protection under the law.

11. SARAA, BAA, Fleet, Holdsworth and McIntosh have treated Plaintiff differently from AERO, a similarly situated FBO, by refusing to enforce lease terms requiring payment of rent against SARAA while, at the same time, requiring that Plaintiff comply with its lease terms.

12. SARAA, BAA, Fleet, Holdsworth and McIntosh have treated Plaintiff differently from other similarly situated entities without any rational basis for doing so by refusing to permit Plaintiff to provide FBO services at HIA.

13. SARAA, BAA, Fleet, Holdsworth and McIntosh treated Plaintiff differently from AERO to inhibit or to prevent Plaintiff from engaging in commercial activity and to afford others the opportunity to do so.

14. SARAA, BAA, Fleet, Holdsworth and McIntosh have violated Plaintiff's constitutional right to equal protection under the law.

15. As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's treatment of Stambaugh's, Stambaugh's has suffered, and will continue to suffer, substantial business losses as the result of its inability to provide FBO services at HIA.

16. As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's unconstitutional deprivations of its rights to equal protections, Stambaugh's has lost the value of its FBO business.

17. Stambaugh's FBO business was valued in excess of $5,000,000.00.

18. As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

19. As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

20. Stambaugh's has incurred or will incur expenses in excess of $1,000,000.00 related to the dismantling and relocation of its FBO and maintenance operations.

21. As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will have to incur substantial expenses in order to relocate dislocated employees.

22. Stambaugh's estimates that it will have to incur expenses in excess of $1,000,000.00 related to the relocation of its employees.

23. As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's has lost the substantial past and future income it would have derived from providing FBO services at HIA due to its inability to provide FBO services at HIA.

24. Based on SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's own projections, Stambaugh's nominal net income for FBO services over the next eighteen (18) years would have exceeded $13,000,000.00.

25. As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will incur substantial damages related to business interruption.

26. Stambaugh's estimates that it will have to incur expenses in excess of $1,500,000.00 related to business interruption.

27. As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will incur substantial damages related to lost productivity.

28. Stambaugh's estimates that it will have to incur expenses in excess of $3,000,000.00 to $5,000,000.00 related to lost productivity.

29. As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will incur substantial damages related to its need to construct new facilities at a different location.

30. Stambaugh's estimates that it will have to incur expenses in excess of $16,000,000.00 plus interest over the next thirty (30) years related to its need to construct new facilities at a different location for its FBO and maintenance operation.

WHEREFORE, Plaintiff, Stambaugh's Air Service, Inc., demands that judgment be entered in its favor and against Defendants SARAA, BAA, Fleet, Holdsworth and McIntosh, in an amount not less than the damages set forth above, plus costs of this suit, attorney fees and all other relief which the Court deems to be equitable.

# COUNT II
# (FORMERLY COUNT V)
# CONSPIRACY
# STAMBAUGH'S v. BAA, FLEET, HOLDSWORTH AND McINTOSH

31. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 175 of the Original Complaint and Paragraphs 1 through 30 of the Amended Complaint as if fully set forth herein.

32. Plaintiff had existing contractual relationships with various customers to provide "FBO" services at HIA.

33. Defendants were aware of the existence of those relationships.

34. On information and belief, Defendants agreed among themselves not later than November 1999 to force Plaintiff out of the FBO business at HIA.

35. On information and belief, Defendants agreed that they would deprive Plaintiff of its right to provide FBO services at HIA, even though, pursuant to the terms of the Request for Qualifications (hereinafter referred to as "RFQ"), Plaintiff was the only bidder who was actually eligible to bid to provide FBO serves at the AMP Hangar.

36. In furtherance of the conspiracy, Defendants contacted other potential FBO providers and informed them that Plaintiff would not be permitted to provide FBO services at HIA even though Plaintiff was the only qualified bidder on the AMP Hangar pursuant to the terms of the RFQ.

37. On information and belief, Defendants solicited proposals from other bidders by promising that Plaintiff would be prohibited from providing FBO services at HIA despite the prohibition on exclusive arrangements and despite the fact that Plaintiff had submitted the only responsive proposal to the RFQ.

38. Defendants intentionally interfered with Plaintiff's existing relationships by contacting Plaintiff's customers and informing them that Plaintiff would no longer be permitted to provide those services at HIA before the SARAA board had even voted on the question of who would provide FBO services at the AMP Hangar at HIA.

39. Defendants intentionally interfered with those relationships by refusing to allow Plaintiff to provide FBO services at HIA out of the Stambaugh Hangar despite the prohibition on creating exclusive arrangements.

40. Defendants intentionally interfered with those relationships by refusing to allow Plaintiff to provide FBO services at HIA out of the AMP Hangar despite the fact that Plaintiff was the only entity to satisfy the requirements of the RFQ.

41. Defendants intentionally interfered with these relationships for the purpose of harming Plaintiff.

42. These contracts with other potential bidders occurred *before* the proposals submitted on the AMP Hangar had been submitted to the SARAA board for approval.

43. In furtherance of the conspiracy, Defendants contacted customers of Plaintiff and informed them that Plaintiff would not be permitted to provide FBO services at HIA.

44. These contacts with Plaintiff's customers occurred *before* the proposals submitted on the AMP Hangar had been submitted to the SARAA board for approval.

45. The interference with Plaintiff's contracts by Defendants SARAA, BAA and Fleet was neither privileged nor justified.

46. In furtherance of the conspiracy, Defendants refused to permit Plaintiff to provide FBO services out of the AMP Hangar.

47. In furtherance of the conspiracy, Defendants refused to permit Plaintiff to provide FBO services out of the Stambaugh Hangar.

48. In furtherance of the conspiracy and at all times relevant hereto, Defendants negotiated an understanding with Piedmont Aviation to provide FBO services at HIA, the provisions of which understanding provide Piedmont Aviation did not have to pay either rent or fuel flowage charges to SARAA as long as Plaintiff continued to have the right to provide fuel and conduct FBO operations at HIA.

49. In furtherance of the conspiracy, Defendants contacted Plaintiff's customers Delta Airlines, U.S. Air, Northwest Airlines, United Airlines, Federal Express and Energy Air Freight, among others, and advised the customers Plaintiff's right to provide FBO services at HIA had been terminated effective immediately. The object of the Defendants' actions was to cause Plaintiff's customers not to perform contracts or continue to deal with Plaintiff due to the fact Plaintiff was no longer able to provide fueling and FBO services at HIA. The ultimate object of the Defendants' actions was to force Plaintiff out of business.

50. By withdrawing Plaintiff's right to provide FBO services at HIA, Defendants interferred with Plaintiff's customers' abilities to perform their contracts with Plaintiff.

51. As the result of this interference with Plaintiff's existing contracts, Plaintiff lost the substantial past and future income it would have derived from providing FBO services at HIA due to its inability to provide FBO services at HIA.

52. As the result of this interference with Plaintiff's existing contracts, Plaintiff has lost the substantial future income it would have derived from providing FBO services at HIA.

53. As the result of the conspiracy, Plaintiff has been deprived of the right to perform FBO services at HIA.

54. As the result of the conspiracy, Plaintiff has lost customers and substantial income due to its inability to provide FBO services at HIA.

55. As a result of the conspiracy, Plaintiff has lost the value of its FBO business.

56. Based on SARAA's and BAA's own projections, Plaintiff's nominal net income for FBO services over the next eighteen (18) years would have exceeded $13,000,000.00.

57. Plaintiff's FBO business was valued in excess of $5,000,000.00.

58. As the result of the conspiracy, Plaintiff has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

59. As the result of the conspiracy, Plaintiff has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

60. Plaintiff has incurred or will incur expenses in excess of $1,000,000.00 related to the dismantling and relocation of its FBO and maintenance operations.

61. As the result of the conspiracy, Plaintiff will have to incur substantial expenses in order to relocate dislocated employees.

62. Plaintiff estimates that it will have to incur expenses in excess of $1,000,000.00 to related to the relocation of its employees.

63. As the result of the conspiracy, Plaintiff will incur substantial damages related to business interruption.

64. Plaintiff estimates that it will have to incur expenses in excess of $1,500, 000.00 related to business interruption.

65. As the result of the conspiracy, Plaintiff will incur substantial damages related to lost productivity.

66. Plaintiff estimates that it will have to incur expenses in excess of $3,000,000.00 to $5,000,000.00 related to lost productivity.

67. As the result of the conspiracy, Plaintiff will incur substantial damages related to its need to construct new facilities at a different location.

68. Plaintiff estimates that it will have to incur expenses in excess of $16,000,000.00 plus interest over the next thirty (30) years related to its need to construct new facilities at a different location for its FBO and maintenance operation.

69. Defendants' conduct was willful, wanton and outrageous, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff, Stambaugh's Air Service, Inc., demands judgment be entered in its favor and against Defendants BAA, Fleet, Holdsworth and McIntosh in an amount not less than the damages set forth above, plus costs of this suit, attorneys fees, punitive damages and all other relief which the Court deems to be equitable.

## COUNT III
## (FORMERLY COUNT VII)
## TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONSHIPS
## STAMBAUGH'S vs. SARAA, BAA, FLEET, HOLDSWORTH AND McINTOSH

70. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 225 of the Original Complaint and Paragraphs 1 through 69 of the Amended Complaint as if fully set forth herein.

71. Stambaugh's had existing contractual relationships with various customers to provide FBO services at HIA.

72. SARAA, BAA, Fleet, Holdsworth and McIntosh were aware of the existence of those relationships.

73. SARAA, BAA, Fleet, Holdsworth and McIntosh intentionally interfered with these relationships for the purpose of harming Stambaugh's.

74. SARAA, BAA, Fleet, Holdsworth and McIntosh intentionally interfered with those relationships by contacting Stambaugh's customers and informing them that Stambaugh's would no longer be permitted to provide those services at HIA before the SARAA board had even voted on the question of who would provide FBO services at the AMP Hangar at HIA.

75. SARAA, BAA, Fleet, Holdsworth and McIntosh intentionally interfered with those relationships by refusing to allow Stambaugh's to provide FBO services at HIA out of the Stambaugh Hangar despite the prohibition on creating exclusive arrangements.

76. SARAA, BAA, Fleet, Holdsworth and McIntosh intentionally interfered with those relationships by refusing to allow Stambaugh's to provide FBO services at HIA out of the AMP Hangar despite the fact that Stambaugh's was the only entity to satisfy the requirements of the RFQ.

77. The interference with Stambaugh's contracts by SARAA, BAA and Fleet was not privileged or justified.

78. As the result of this interference with Stambaugh's existing contracts, Stambaugh's has lost the substantial past income it would have derived from providing FBO services at HIA due to its inability to provide FBO services at HIA.

79. As the result of this interference with Stambaugh's existing contracts, Stambaugh's has lost the substantial future income it would have derived from providing FBO services at HIA due to its inability to provide FBO services at HIA.

80. Based on SARAA's and BAA's own projections, Stambaugh's nominal net income for FBO services over the next eighteen (18) years would have exceeded $13,000,000.00.

81. SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's conduct was willful, wanton and outrageous, entitling Stambaugh's to punitive damages.

WHEREFORE, Plaintiff, Stambuagh's Air Service, Inc., demands judgment be entered in favor of Plaintiff and against Defendants SARAA, BAA, Fleet, Holdsworth and McIntosh in an amount not less than the damages set forth above, plus punitive damages, costs of this suit, attorney fees and all other relief which this Court deems to be equitable.

Respectfully submitted,

CUNNINGHAM & CHERNICOFF, P.C.

Dated: April 10, 2006    By: /s/ Jordan D. Cunningham, Esquire
Jordan D. Cunningham, Esquire
PA I.D. No. 23144
2320 North Second Street
Harrisburg, PA  17110
(717) 238-6570
*Attorneys for Plaintiff*

F:\HOME\AHEWITT\DOCS\Q-S\STAMAIR\AMNDCOMP.WPD\file no. 424405