IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STAMBAUGH'S AIR SERVICE, INC., : | |
| : | |
| Plaintiff : | |
| v. : | CASE NO. 1:CV-00-0660 |
| : | |
| SUSQUEHANNA AREA REGIONAL : | Judge Yvette Kane |
| AIRPORT AUTHORITY, BAA : | Magistrate Judge J. Andrew Smyser |
| HARRISBURG, INC., DAVID FLEET, : | |
| individually, DAVID HOLDSWORTH, : | |
| individually, and DAVID C. McINTOSH, : | |
| individually, : | JURY TRIAL DEMANDED |
| Defendants : | |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. : | |

## SECOND AMENDED COMPLAINT

AND NOW, comes Stambaugh's Air Service, Inc., by and through its

counsel, Cunningham & Chernicoff, P.C., and pursuant to this Court's Order of

March 16, 2006, files this Amended Complaint restating Count III of the Original

Complaint as Count I, restating Count V of the Original Complaint as Count II and

restating Count VII of the Original Complaint as Count III as follows:

## INTRODUCTORY STATEMENT

This matter arises out of SARAA's and BAA's attempt to destroy Stambaugh's longstanding fixed based operator ("FBO") business at the Harrisburg International Airport ("HIA"). SARAA, BAA, Fleet, Holdsworth, and McIntosh conspired together to grant an exclusive FBO right at HIA in direct violation of federal law. SARAA, through Holdsworth, and McIntosh, fraudulently represented to the federal government that SARAA had not and would not create such an exclusive arrangement in order to obtain federal funds. On information and belief, as the result of there fraudulent representations, SARAA obtained at least $4,983,869.00 in federal funds between 1998 and the present. Additionally, SARAA, BAA, Fleet, Holdsworth and McIntosh conspired together to violate Stambaugh's federal and state constitutional rights by depriving it of its right to provide FBO services at HIA. Finally, BAA, Fleet, Holdsworth, and McIntosh tortiously interfered with Stambaugh's contracts. As a result of these actions, Stambaugh's has suffered and will suffer damages in excess of $35,000,000.00. Stambaugh's brings this suit to recover those damages.

<u>PARTIES</u>

1.     Stambaugh's is a Pennsylvania corporation with its principal place of business at Harrisburg International Airport, P.O. Box 149, Middletown, PA 17057.

2.     SARAA is a municipal authority created pursuant to the Municipal Authorities Act of 1945, 53 P.S. § 301, *et seq.,* located at 135 York Drive, Suite 100, Harrisburg International Airport, Middletown, PA  17057.  SARAA owns and operates the Harrisburg International Airport ("HIA"), having assumed ownership of HIA from the Commonwealth of Pennsylvanian on January 1, 1998.

3.     BAA is a Pennsylvania corporation located at 135 York Drive, Suite 100, Harrisburg International Airport, Middletown, PA  17057.  BAA manages HIA on behalf of SARAA.

4.     David Fleet is an adult individual with a business address of 135 York Drive, Suite 100, Harrisburg International Airport, Middletown, PA  17057.  Fleet is the Airport Director of HIA and is an employee of BAA.

5.     David Holdsworth is an adult individual with a business address of 135 York Drive, Suite 100, Harrisburg International Airport, Middletown, PA 17057.  Holdsworth is the Executive Director of SARAA.

6.     David C. McIntosh is an adult individual with a business address of 135 York Drive, Suite 100, Harrisburg International Airport, Middletown, PA 17057.  McIntosh is the Chairman of Board of Directors of SARAA.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this matter by virtue of the provisions of 28 U.S.C. § 1331 as a matter arising under the Constitution and laws of the United States and may, by virtue of 28 U.S.C. § 1367(a), exercise supplemental jurisdiction over all state law claims because they form part of the same case or controversy as the federal claims.

8.     Venue lies within this District pursuant to 28 U.S.C. § 1391(a) because the defendants reside, and the events giving rise to this claim occurred within this District.

## FACTUAL BACKGROUND

9.     Stambaugh's had operated continuously as a tenant at HIA since 1975 through 2003, where it was engaged in the business of, *inter alia*, repairing and maintaining airplanes, and had also provided fixed base operator ("FBO") services, including fueling, maintenance, and cargo handling.

10.    Stambaugh's provided those FBO and maintenance operation services out of the hangar that it rented from SARAA and which it had rented previously from the Commonwealth of Pennsylvania ("Stambaugh's Hangar").

11.    At various times prior to 1997, Stambaugh's was the only FBO at HIA.

12.    Beginning in 1997, AERO Services International Incorporated ("AERO") also began to provide certain FBO services at HIA.

13.    During the time that it owned and operated HIA, the Commonwealth of Pennsylvania developed and published minimum standards required in order to operate at HIA as an FBO ("HIA Minimum Standards").  67 Pa. Code § 476.1, *et seq.*

14.    The HIA Minimum Standards have been incorporated as a requirement of Stambaugh's lease with SARAA.

15.    Stambaugh's has always met or exceeded the HIA Minimum Standards for operating as an FBO.

## THE CAMPAIGN TO DRIVE STAMBAUGH'S OUT OF
## HIA TO CREATE AN EXCLUSIVE FBO ARRANGEMENT

16.    Stambaugh's had a lease agreement with SARAA that terminated as of January 19, 2000.

17.    SARAA receives funds from the Federal Aviation Administration ("FAA").

18.    As a recipient of such funds, SARAA and HIA are prohibited from creating exclusive arrangements or engaging in economic discrimination pursuant to 49 U.S.C. §§ 47107(a)(4) and (5).

19.    When negotiating with Stambaugh's regarding its new lease, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, refused to offer Stambaugh's any lease that would permit it to continue to provide FBO services at HIA, even though Stambaugh's did not require any additional leased space to continue to provide FBO services beyond that which was leased to it previously and that which it leased through 2003.

20.     When negotiating with Stambaugh's regarding its new lease, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, refused to offer Stambaugh's any lease that would permit it to remain in the Stambaugh's Hangar at HIA beyond 2003, even though, according to HIA "Master Plan" which provides planning of HIA, the Stambaugh's Hangar is not scheduled to be torn down until 2008 at the earliest.

21.     SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has permitted AERO to continue to provide FBO services at HIA.

22.     As part of its effort to force Stambaugh's out of HIA to establish an exclusive FBO arrangement, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has not enforced lease terms against AERO that have been enforced against Stambaugh's.

23.     Specifically, on information and belief, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has permitted AERO to continue to operate at HIA despite its failure to pay rent.

24.     SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has engaged in economic discrimination in violation of 49 U.S.C. § 47107(a)(b) by permitting AERO to continue to operate as an FBO at HIA despite its failure to pay rent.

7

25.    In a further effort to create an exclusive FBO at HIA, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has engaged in a policy of intimidation and harassment directed at Stambaugh's and its employees.

26.    SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has repeatedly harassed Stambaugh's employees and forced them to discontinue working on Stambaugh's projects under the guise of checking the identities of the employees.  In order to continue this harassment, SARAA representatives routinely require Stambaugh's employees to stop working and to produce identification despite the fact that the SARAA representatives involved know both the identity of the Stambaugh's employees and are aware that the people involved are employed by Stambaugh's.

27.    On information and belief, SARAA does not engage in this harassing conduct with any other tenant at HIA and specifically does not engage in this conduct with AERO.

28.    SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has attempted to create an exclusive FBO by manufacturing disputes and fabricating alleged lease violations by Stambaugh's.

8

29.     On information and belief, SARAA does not engage in this harassing conduct with any other tenant at HIA and specifically does not engage in this conduct with AERO.

## SALE OF THE AMP HANGAR

30.     In 1999, Stambaugh's learned that an aircraft hangar at HIA that was owned by the AMP Corporation ("AMP Hangar") was going to be available for purchase.

31.     Stambuagh's entered into negotiations with AMP to purchase the AMP Hangar.

32.     Stambaugh's intended to use the AMP Hangar to provide FBO services at HIA.

33.     In an effort to drive Stambaugh's out of HIA to create an exclusive FBO arrangement and to interfere with Stambaugh's contracts and business operations, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, interfered in those negotiations and threatened that it would refuse to allow any purchaser of the AMP Hanger to extend the AMP lease despite the fact that the AMP lease  permitted such extensions.

9

34.    As a result of this interference, Stambaugh's was unable to purchase the AMP Hangar.

35.    SARAA subsequently announced that it had purchased the AMP Hangar for $1.5 million, the same price that Stambaugh's would have paid for the hangar had SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, not interfered in the negotiations.

36.    After purchasing the AMP Hangar, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, refused to negotiate in good faith with Stambaugh's for the lease of the AMP Hangar.

37.    SARAA purchased the AMP Hangar to lease it to an entity to provide FBO services out of the hangar.

38.    As part of that process, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, issued a Request for Qualifications from FBO service providers on October 5, 1999 ("RFQ").  (A copy of the RFQ is attached as Exhibit "A").

39.    The RFQ required that anyone who wished to submit a proposal was required to participate in a pre-submission conference and a tour of the AMP Hangar on October 19, 1999.

40.    The RFQ specifically provided that "ATTENDANCE AT THIS MEETING IS MANDATORY IN ORDER FOR YOUR COMPANY TO BECOME A CANDIDATE FOR CONSIDERATION" for the AMP Hangar.

41.    Stambaugh's participated in the pre-submission conference and tour of the AMP Hangar.

42.    The RFQ also provided that anyone who wished to be considered to provide FBO services out of the AMP Hanger was required to submit a proposal by 4:00 p.m. EST, on November 2, 1999.

43.    The RFQ specifically provided that "only those submittals received prior to this date and time and meeting all the requirements of the RFQ will be considered."

44.    Stambaugh's submitted its proposal on November 2, 1999, before 4:00 p.m. EST.

45.    Stambaugh's was the only company which both participated in the pre-submission conference and tour and submitted a proposal in a timely fashion.

46.    Nonetheless, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, refused to permit Stambaugh's to provide FBO services at the AMP Hangar.

11

47.     In furtherance of the scheme to deprive Stambaugh's of the right to provide FBO services and to create an exclusive FBO at HIA and to interfere with Stambaugh's rights, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, solicited proposals from entities which had not attended the pre-submission conference and tour and accepted proposals that were not submitted by November 2, 1999.

48.     By accepting these proposals, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, violated the express terms of the RFQ.

49.     SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, accepted these non-conforming proposals secretly without providing any notice to Stambaugh's or any other potential bidder that it had changed the requirements of the RFQ.

50.     On information and belief, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, accepted these non-conforming proposals to ensure that Stambaugh's would not be able to lease the AMP Hangar and to interfere with Stambaugh's contracts to provide FBO services.

51.    On information and belief, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, solicited and accepted non-conforming proposals that were conditioned on the requirement that SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, create an exclusive arrangement by forcing Stambaugh's out of the FBO business at HIA.

52.    On information and belief, on January 10, 2000, Fleet contacted various customers of Stambaugh's and informed them that Stambaugh's would not be awarded the lease to the AMP Hangar and would not have FBO rights.

53.    Fleet made this representation to Stambaugh's customers despite the fact that the SARAA board had not yet voted on who would receive the lease to the AMP Hangar and the SARAA board had not yet voted on who would receive the lease to the AMP Hangar and the SARAA board was not even presented with an opportunity to vote on this issue until January 11, 20000, the dat after Fleet informed Stambaugh's customers that Stambaugh's would not receive the lease to the AMP Hangar and would not have FBO rights.

54.    On information and belief, the RFQ process was merely a subterfuge to create an exclusive FBO and to interfere with Stambaugh's rights.

55.    On information and belief, SARAA, in conjunction with BAA, Fleet,

Holdsworth, and McIntosh, never intended to award the AMP Hangar to

Stambaugh's, even though Stambaugh's was the only bidder to comply with the

RFQ.

## SARAA HAD CREATED AN EXCLUSIVE
## FBO ARRANGEMENT IN VIOLATION OF
## 49 U.S.C. § 47107(a)(5)

56.    FAA Order 5190.1A, a copy of which is attached as Exhibit B,

defines an exclusive right as follows:

> [A] power, privilege, or other right excluding or
> debarring another from enjoying or exercising a like
> power, privilege, or right.  An exclusive right may be
> conferred either by express agreement, by imposition of
> unreasonable standards or requirements, or by any other
> means.  *Such a right conferred on one or more parties
> but excluding others from enjoying or exercising a
> similar right or rights would be an exclusive right.
> (emphasis supplied)*

57.    FAA Order 5190.6A, a copy of relevant portions of which is attached

as Exhibit C, utilizes the same definition of the term "exclusive right."

58.    In addition to the above-referenced Orders, the FAA also has the right to issue Advisory Circulars to inform the aviation public in a systematic way of non-regulatory material.  (*See, e.g.,* 49 U.S.C. § 106(p), noting authority of FAA Management Council to review Advisory Circular process).

59.    FAA Advisory Circular No. 15015190-2A, a copy of which is attached as Exhibit D, contains the same definition of "exclusive right."

60.    Once federal funds have been expended at an airport, the "exclusive rights prohibition is applicable for as long as it is operated as an airport."  FAA Order 5190.6A, ¶ 3-8(c).

61.    As the result of SARAA's refusal to allow Stambaugh's to provide FBO services at the Stambaugh's Hangar or the AMP Hangar, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has created an exclusive FBO right at HIA in violation of 49 U.S.C. § 47107(a)(4).

62.    By permitting AERO and Piedmont Hawthorne to operate as FBO's while forcing Stambaugh's to discontinue its FBO operations, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has excluded or debarred Stambaugh's from exercising a like power, privilege, or right in violation of the prohibition against exclusive rights contained in 49 U.S.C. § 47107(a)(4).

63.    By conferring the right to operate an FBO on one or more parties but excluding Stambaugh's from enjoying or exercising a similar right or rights SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has created an exclusive right.

64.    SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has created an exclusive right by refusing Stambaugh's the opportunity to engage in an aeronautical activity despite the fact that it is qualified to do so and despite the fact that SARAA has no minimum standards for such activities.

65.    SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has engaged in economic discrimination in violation of 49 U.S.C. § 47107(a)(5) by permitting AERO to continue to operate as an FBO at HIA despite its failure to pay rent, harassing Stambaugh's employees, and fabricating lease disputes with it while treating other similarly situated entities more favorably.

66.    SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, has engaged in economic discrimination in violation of 49 U.S.C. § 47107(a)(5) by permitting AERO to continue to operate as an FBO at HIA despite its failure to pay rent.

67.    Between August 1998 and the present, SARAA has obtained at least $4,983,869.00 in federal funds from FAA through various Grant Agreements.

68.    With respect to each of these Grant Agreements, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh certified falsely to FAA that no exclusive rights had been or would be granted at HIA.

**COUNT I
(FORMERLY COUNT III)
VIOLATION OF STAMBAUGH'S AIR SERVICE, INC.'S RIGHT TO
EQUAL PROTECTION PURSUANT TO 42 U.S.C. §1983
STAMBAUGH'S vs. SARAA, BAA, FLEET, HOLDSWORTH AND
McINTOSH**

69.    Plaintiff, Stambaugh's Air Service, Inc. (hereinafter "Plaintiff") incorporates by reference the allegations contained in Paragraphs 1 through 68 of the First Amended Complaint, as if more fully set forth herein.

70.    The Fourteenth Amendment to the United States Constitution guarantees all citizens the right to equal protection under the law.

71.    42 U.S.C. §1983 provides Plaintiff, *inter alia,* with a right to bring suit to redress constitutional grievances.

72.    As a municipal authority, Defendant Susquehanna Area Regional Airport Authority (hereinafter referred to as "SARAA") is a state actor for purposes of constitutional analysis and, at all times relevant to this Complaint, acted under color of state law.

17

73.     As the entity managing Harrisburg International Airport (hereinafter referred to as "HIA") for SARAA, Defendant BAA Harrisburg, Inc (hereinafter referred to as "BAA") is also a state actor for purposes of constitutional analysis and, at all times relevant to this Complaint, acted under color of state law.

74.     As the Airport Director of HIA for SARAA and BAA, Defendant David Fleet (hereinafter referred to as "Fleet") is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

75.     As the Executive Director of SARAA, Defendant David Holdsworth (hereinafter referred to as "Holdsworth") is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

78.     As the Chairman for the Board of Directors of SARAA, Defendant David C. McIntosh (hereinafter referred to as "McIntosh") is a state actor for constitutional purposes and, at all times relevant to this Complaint, acted under color of state law.

79.    Defendants SARAA, BAA, Fleet, Holdsworth and McIntosh have treated Plaintiff differently from AERO, a similarly situated Fixed Based Operation (hereinafter referred to as "FBO"), without any rational basis for doing so, in violation of Plaintiff's right to equal protection under the law.

80.    SARAA, BAA, Fleet, Holdsworth and McIntosh have treated Plaintiff differently from AERO, a similarly situated FBO, by refusing to enforce lease terms requiring payment of rent against SARAA while, at the same time, requiring that Plaintiff comply with its lease terms.

81.    SARAA, BAA, Fleet, Holdsworth and McIntosh have treated Plaintiff differently from other similarly situated entities without any rational basis for doing so by refusing to permit Plaintiff to provide FBO services at HIA.

82.    SARAA, BAA, Fleet, Holdsworth and McIntosh treated Plaintiff differently from AERO to inhibit or to prevent Plaintiff from engaging in commercial activity and to afford others the opportunity to do so.

83.    SARAA, BAA, Fleet, Holdsworth and McIntosh have violated Plaintiff's constitutional right to equal protection under the law.

84.     As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's treatment of Stambaugh's, Stambaugh's has suffered, and will continue to suffer, substantial business losses as the result of its inability to provide FBO services at HIA.

85.     As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's unconstitutional deprivations of its rights to equal protections, Stambaugh's has lost the value of its FBO business.

86.     Stambaugh's FBO business was valued in excess of $5,000,000.00.

87.     As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

88.     Stambaugh's has incurred or will incur expenses in excess of $1,000,000.00 related to the dismantling and relocation of its FBO and maintenance operations.

89.     As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will have to incur substantial expenses in order to relocate dislocated employees.

20

90.     Stambaugh's estimates that it will have to incur expenses in excess of $1,000,000.00 related to the relocation of its employees.

91.     As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's has lost the substantial past and future income it would have derived from providing FBO services at HIA due to its inability to provide FBO services at HIA.

92.     Based on SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's own projections, Stambaugh's nominal net income for FBO services over the next eighteen (18) years would have exceeded $13,000,000.00.

93.     As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will incur substantial damages related to business interruption.

94.     Stambaugh's estimates that it will have to incur expenses in excess of $1,500,000.00 related to business interruption.

95.     As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will incur substantial damages related to lost productivity.

96.    Stambaugh's estimates that it will have to incur expenses in excess of $3,000,000.00 to $5,000,000.00 related to lost productivity.

97.    As the result of SARAA's, BAA's, Fleet's, Holdsworth's and McIntosh's unconstitutional deprivation of its rights to equal protection, Stambaugh's will incur substantial damages related to its need to construct new facilities at a different location.

98.    Stambaugh's estimates that it will have to incur expenses in excess of $16,000,000.00 plus interest over the next thirty (30) years related to its need to construct new facilities at a different location for its FBO and maintenance operation.

WHEREFORE, Plaintiff, Stambaugh's Air Service, Inc., demands that judgment be entered in its favor and against Defendants SARAA, BAA, Fleet, Holdsworth and McIntosh, in an amount not less than the damages set forth above, plus costs of this suit, attorney fees and all other relief which the Court deems to be equitable.

**COUNT II**
**(FORMERLY COUNT V)**
**CONSPIRACY**
**STAMBAUGH'S v. SARAA, BAA, FLEET, HOLDSWORTH AND McINTOSH**

99.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 98 of the First Amended Complaint as if fully set forth herein.

100.    Plaintiff had existing contractual relationships with various customers to provide FBO services at HIA.

101.    Defendants SARAA, BAA, Fleet, Holdsworth and McIntosh were aware of the existence of those relationships.

102.    On information and belief, Defendants agreed among themselves not later than November 1999 to force Plaintiff out of the FBO business at HIA.

103.    On information and belief, Defendants agreed that they would deprive Plaintiff of its right to provide FBO services at HIA, even though, pursuant to the terms of the Request for Qualifications (hereinafter referred to as "RFQ"), Plaintiff was the only bidder who was actually eligible to bid to provide FBO serves at the AMP Hangar.

104.   In furtherance of the conspiracy, Defendants contacted other potential FBO providers and informed them that Plaintiff would not be permitted to provide FBO services at HIA even though Plaintiff was the only qualified bidder on the AMP Hangar pursuant to the terms of the RFQ.

105.   On information and belief, Defendants solicited proposals from other bidders such as Piedmont Aviation by promising that Plaintiff would be prohibited from providing FBO services at HIA despite the prohibition on exclusive arrangements and despite the fact that Plaintiff had submitted the only responsive proposal to the RFQ.

106.   In furtherance of the conspiracy and at all times relevant hereto, Defendants negotiated an understanding with Piedmont Aviation to provide FBO services at HIA, the provisions of which understanding provide Piedmont Aviation did not have to pay either rent or fuel flowage charges to SARAA as long as Plaintiff continued to have the right to provide fuel and conduct FBO operations at HIA.

107. Defendants intentionally interfered with Plaintiff's existing relationships by contacting Plaintiff's customers and informing them that Plaintiff would no longer be permitted to provide those services at HIA before the SARAA board had even voted on the question of who would provide FBO services at the AMP Hangar at HIA.

108. In furtherance of the conspiracy, Defendants contacted Plaintiff's customers Delta Airlines, U.S. Air, Northwest Airlines, United Airlines, Federal Express and Energy Air Freight, among others, and advised the customers Plaintiff's right to provide FBO services at HIA had been terminated effective immediately. The object of the Defendants' actions was to cause Plaintiff's customers not to perform contracts or continue to deal with Plaintiff due to the fact Plaintiff was no longer able to provide fueling and FBO services at HIA. The ultimate object of the Defendants' actions was to force Plaintiff out of business.

109. Defendants intentionally interfered with those relationships by refusing to allow Plaintiff to provide FBO services at HIA out of the Stambaugh Hangar despite the prohibition on creating exclusive arrangements.

110.   Defendants intentionally interfered with those relationships by refusing to allow Plaintiff to provide FBO services at HIA out of the AMP Hangar despite the fact that Plaintiff was the only entity to satisfy the requirements of the RFQ.

111.   Defendants intentionally interfered with these relationships for the purpose of harming Plaintiff.

112.   These contracts with other potential bidders occurred *before* the proposals submitted on the AMP Hangar had been submitted to the SARAA board for approval.

113.   In furtherance of the conspiracy, Defendants contacted customers of Plaintiff and informed them that Plaintiff would not be permitted to provide FBO services at HIA.

114.   These contacts with Plaintiff's customers occurred *before* the proposals submitted on the AMP Hangar had been submitted to the SARAA board for approval.

115.   The interference with Plaintiff's contracts by Defendants was neither privileged nor justified.

116.   In furtherance of the conspiracy, Defendants refused to permit Plaintiff to provide FBO services out of the AMP Hangar.

26

117.    In furtherance of the conspiracy, Defendants refused to permit Plaintiff to provide FBO services out of the Stambaugh Hangar.

118.    By withdrawing Plaintiff's right to provide FBO services at HIA, Defendants interfered with Plaintiff's customers' abilities to perform their contracts with Plaintiff.

119.    As the result of this interference with Plaintiff's existing contracts, Plaintiff lost the substantial past and future income it would have derived from providing FBO services at HIA due to its inability to provide FBO services at HIA.

120.    As the result of this interference with Plaintiff's existing contracts, Plaintiff has lost the substantial future income it would have derived from providing FBO services at HIA.

121.    As the result of the conspiracy, Plaintiff has been deprived of the right to perform FBO services at HIA.

122.    As the result of the conspiracy, Plaintiff has lost customers and substantial income due to its inability to provide FBO services at HIA.

123.    As a result of the conspiracy, Plaintiff has lost the value of its FBO business.

124.   Based on SARAA's and BAA's own projections, Plaintiff's nominal net income for FBO services over the next eighteen (18) years would have exceeded $13,000,000.00.

125.   Plaintiff's FBO business was valued in excess of $5,000,000.00.

126.   As the result of the conspiracy, Plaintiff has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

127.   As the result of the conspiracy, Plaintiff has had to incur substantial expenses in order to remove equipment utilized in its FBO operation.

128.   Plaintiff has incurred or will incur expenses in excess of $1,000,000.00 related to the dismantling and relocation of its FBO and maintenance operations.

129.   As the result of the conspiracy, Plaintiff will have to incur substantial expenses in order to relocate dislocated employees.

130.   Plaintiff estimates that it will have to incur expenses in excess of $1,000,000.00 to related to the relocation of its employees.

131.   As the result of the conspiracy, Plaintiff will incur substantial damages related to business interruption.

132.   Plaintiff estimates that it will have to incur expenses in excess of $1,500, 000.00 related to business interruption.

28

133.   As the result of the conspiracy, Plaintiff will incur substantial damages related to lost productivity.

134.   Plaintiff estimates that it will have to incur expenses in excess of $3,000,000.00 to $5,000,000.00 related to lost productivity.

135.   As the result of the conspiracy, Plaintiff will incur substantial damages related to its need to construct new facilities at a different location.

136.   Plaintiff estimates that it will have to incur expenses in excess of $16,000,000.00 plus interest over the next thirty (30) years related to its need to construct new facilities at a different location for its FBO and maintenance operation.

137.   Defendants' conduct was willful, wanton and outrageous, entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff, Stambaugh's Air Service, Inc., demands judgment be entered in its favor and against Defendants SARAA, BAA, Fleet, Holdsworth and McIntosh in an amount not less than the damages set forth above, plus costs of this suit, attorneys fees, punitive damages and all other relief which the Court deems to be equitable.

## COUNT III
## (FORMERLY COUNT VII)
## TORTIOUS INTERFERENCE WITH EXISTING
## CONTRACTUAL RELATIONSHIPS
## STAMBAUGH'S vs. SARAA, BAA, FLEET, HOLDSWORTH AND
## McINTOSH

138.   Plaintiff incorporates by reference the allegations contained in
Paragraphs 1 through 137 of the First Amended Complaint as if fully set forth
herein.

139.   Stambaugh's had existing contractual relationships with various
customers to provide FBO services at HIA.

140.   BAA, Fleet, Holdsworth and McIntosh were aware of the existence of
those relationships.

141.   BAA, Fleet, Holdsworth and McIntosh intentionally interfered with
these relationships for the purpose of harming Stambaugh's.

142.   BAA, Fleet, Holdsworth and McIntosh intentionally interfered with
those relationships by contacting Stambaugh's customers and informing them that
Stambaugh's would no longer be permitted to provide those services at HIA
before the SARAA board had even voted on the question of who would provide
FBO services at the AMP Hangar at HIA.

143.    BAA, Fleet, Holdsworth and McIntosh intentionally interfered with those relationships by refusing to allow Stambaugh's to provide FBO services at HIA out of the Stambaugh Hangar despite the prohibition on creating exclusive arrangements.

144.    BAA, Fleet, Holdsworth and McIntosh intentionally interfered with those relationships by refusing to allow Stambaugh's to provide FBO services at HIA out of the AMP Hangar despite the fact that Stambaugh's was the only entity to satisfy the requirements of the RFQ.

145.    The interference with Stambaugh's contracts by BAA and Fleet was not privileged or justified.

146.    As the result of this interference with Stambaugh's existing contracts, Stambaugh's has lost the substantial past income it would have derived from providing FBO services at HIA due to its inability to provide FBO services at HIA.

147.    As the result of this interference with Stambaugh's existing contracts, Stambaugh's has lost the substantial future income it would have derived from providing FBO services at HIA due to its inability to provide FBO services at HIA.

148.    Based on SARAA's and BAA's own projections, Stambaugh's nominal net income for FBO services over the next eighteen (18) years would have exceeded $13,000,000.00.

149.    BAA's, Fleet's, Holdsworth's and McIntosh's conduct was willful, wanton and outrageous, entitling Stambaugh's to punitive damages.

WHEREFORE, Plaintiff, Stambuagh's Air Service, Inc., demands judgment be entered in favor of Plaintiff and against Defendants BAA, Fleet, Holdsworth and McIntosh in an amount not less than the damages set forth above, plus punitive damages, costs of this suit, attorney fees and all other relief which this Court deems to be equitable.

Respectfully submitted,

CUNNINGHAM & CHERNICOFF, P.C.


Dated: <u>November 1, 2006</u>    By:    <u>/s/ Jordan D. Cunningham, Esquire</u>
Jordan D. Cunningham, Esquire
PA I.D. No. 23144
2320 North Second Street
Harrisburg, PA  17110
(717) 238-6570
*Attorneys for Plaintiff*

F:\HOME\AHEWITT\DOCS\Q-S\STAMAIR\PLEADING\2NDAMDC.WPD\file no. 424405