**ORDER**    U.S. DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION

5190.1A

10/10/85

SUBJ: EXCLUSIVE RIGHTS AT AIRPORTS

1. PURPOSE. This order sets forth agency policy on the conduct of aeronautical activities at public-use airports on which Federal funds, administered by the agency, have been expended. It does not apply to the conduct of aeronautical activities by a governmental authority using its own employees, facilities, and resources.

2. DISTRIBUTION. This order is distributed to the director level in Washington with a branch level distribution in the Offices of Airport Planning and Programming, Airport Standards, and the Chief Counsel; to the branch level in the regional Airports) Airway Facilities, and Flight Standards Division and the Regional Counsel; and a standard distribution to all Airport District/Field Offices.

3. CANCELLATION. Order 5190.1, Exclusive Rights at Airports, dated 10/12/65.

4. BACKGROUND. Since the enactment of the Civil Aeronautics Act of 1938, there have been statutory prohibitions against the grant of an exclusive right to conduct an aeronautical activity at an airport on which Federal funds have been expended. This exclusive right provision has been extended since 1938 through various laws and now applies to approximately 2800 airports open to the public.

5. EXPLANATION OF CHANGES. The Airport Improvement Act of 1982 changed the exclusive rights provision of previous statutes. The new provision provided for economic evaluation of a single fixed-base operator being required to give up leased space for a second fixed-base operator to come on the airport. The agency has refined and clarified its policies as referred to in paragraph 8 to reflect this statute change.

6. DEFINITIONS.

   a. Exclusive Right - a power, privilege, or other right excluding or debarring another from enjoying or exercising a like power, privilege, or right. An exclusive right may be conferred either by express agreement, by imposition of unreasonable standards or requirements, or by any other means. Such a right conferred on one or more parties but excluding others from enjoying or exercising a similar right or rights would be an exclusive right.

   b. Aeronautical Activity - any activity which involves, makes possible, or is required for the operation of aircraft, or which contributes to or is required for the safety of such operations.

      (1) The following activities, commonly on airports, are aeronautical activities within this definition: charter operations, pilot training, aircraft rental and sightseeing, aerial photography, crop dusting, aerial advertising and surveying,



Distribution: A-W (minus AS/PP/GC) -1; A-W (AS/PP/GC) -3          Initiated By: AAS-300
A-X (GC/AS/AF/FS) -3; A-FAS-1 (STD)

air carrier operations, aircraft sales and services, sale of aviation petroleum products whether or not conducted in conjunction with other included activities, repair and maintenance of aircraft, sale of aircraft parts, and any other activities which because of their direct relationship to the operation of aircraft can appropriately be regarded as an "aeronautical activity."

(2) The **following** are examples of what are not considered aeronautical activities: ground transportation (taxis, car rentals, and limousines); restaurants; barber shops; and auto parking lots.

c. <u>Minimum Standards</u> - the qualifications which **may be** established by an airport owner as the minimum requirements to **be** met as a **condition** for the right to conduct an aeronautical activity on the airport.

7. <u>PERTINENT LAWS AND REGULATIONS</u>.

a. **Section 308(**a) of the Federal Aviation Act, as amended in **1982,** provides that "there shall be no exclusive **right** for the use of any **landing** area or air navigation facility upon which Federal funds **have** been expended. For purposes of the preceding sentence, **the** providing of **services** at an **airport by a** single **fixed-**base operator shall not be construed **as** an exclusive right if it **would be** unreasonably costly, burdensome, or impractical for more than one fixed-base operator to provide such services, and if **allowing** more than one **fixed-base** operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-base operator and such airport." Section 303 of the Civil Aeronautics Act of **1938** contained identical language to the **above** quoted Section **308(a)** of the Federal Aviation Act **except** for the second sentence. Section 308(a) of the Federal Aviation Act also applies to all airports developed or improved pursuant to **AP-4** Agreements. Although all **AP-4**-Agreements **have** expired, termination of the agreement only relieves the airport owner of contractual obligations imposed by it. Since the airport is one upon which Federal funds have been expended, it is still subject to the exclusive rights prohibition for as long as it is operated as an airport. Recipients of grant agreements and agreements under the **F & E** Program for the installation of navigational equipment on privately owned airports are also subject to the continuing **obligation** of Section 308(a), as amended in **1982,** regardless of the date of the agreement.

b. Following World War II, a large number of former military installations were conveyed under provisions of the Surplus Property Act of **1944** to local public agencies without monetary consideration. The Act, which was amended by **P.L. 80-289**, provides in Section 13(**g**) that:

> "(c) No exclusive right for the use of the airport at which
> the property disposed of is located shall be vested
> (either directly or indirectly) in any person or
> persons to the exclusion of others in the same class.
> For the purpose of the conditions, an exclusive
> right is defined to mean --
>
> (1) **any** exclusive right to use the airport for
>     conducting **any** particular aeronautical activity
>     requiring operation of aircraft;

10/10/85                                                                    5190.1A

> (2) any **exclusive** right to engage in the sale or
>     supplying of aircraft, aircraft accessories,
>     equipment, or supplies or aircraft- services
>     necessary for the operations of aircraft
>     (**including** the maintenance and repair of
>     aircraft, aircraft engines, propellers, and
>     appliances)."

c. Section 511(a)(1) of the Airport and Airway Improvement Act of 1982 requires that the Administrator shall receive assurances in writing, satisfactory to him, that

> "the airport to which the project relates will be
> available for public use on fair and reasonable
> terms and without unjust discrimination --;"

d  Section 51 1(a)(2) of the Airport and Airway Improvement Act of 1982 requires the airport owner to assure that

> "There will be no exclusive right for the use of
> the airport by any person providing, or intending
> to provide, aeronautical services to the public.
> For purposes of this paragraph, the providing of
> services at an airport by a single fixed-base
> operator shall not be construed as an exclusive
> right if it would be unreasonably costly, burdensome,
> or impractical for more than one fixed-base operator
> to provide such services, and if allowing more than
> one fixed-based operator to provide such services
> would require the reduction of space leased
> pursuant to an existing agreement between such
> single fixed-base operator and such airport."

8  POLICY. The grant of an exclusive right for the conduct of any aeronautical activity, on an airport to which this order applies, is regarded as contrary to the requirements of applicable laws, whether such exclusive right results from an express agreement, from the imposition of unreasonable standards or requirements, or by any other means.

9. INTERPRETATION OF POLICY.

   a. <u>Single Activity Not Necessarily an Exclusive Right</u>. The presence on an airport of only one person engaged in an aeronautical **activity** as herein defined will not itself be considered a violation of this **policy** if there is no intent by express **agreement,** imposition of unreasonable standards or requirements, or by any other means to exclude others. This would occur where the volume of business may not be sufficient to attract more than one person. As long as the opportunity to engage in an aeronautical activity is available to those meeting reasonable qualifications and standards relevant to such activity, the fact that only one person takes advantage of the opportunity does not constitute the grant of an exclusive right.

5190.1A                                                                                                  10/10/85

    b. <u>Single Activity Due to Space Limitation</u>. The leasing of all available airport land or improvements suitable for an aeronautical activity to one person will be construed as evidence of an intent to exclude others unless it can be reasonably demonstrated that the entire leased area is presently required and will be immediately used to conduct that activity. In some instances an aeronautical activity may be limited, as the result of this policy or otherwise, to the lease of such space as is demonstrably needed. If additional space is needed at a later date, it must be made available to all qualified proponents or bidders, including the incumbent. The advance grant of options or preferences on all future sites to the incumbent is an exclusive right. On the other hand, nothing in this policy should be construed as limiting the expansion of such aeronautical activities when additional space is required, even though it could ultimately result in complete saturation of all space by the one activity.

    c. <u>Single Activity to Delete Space for Second Fixed-Base Operator</u>. If an airport has only a single aeronautical activity which has a demonstrable need for all the space leased (paragraph 9b) and it would be required to give up a portion of its leased space to accommodate a second aeronautical activity, then a determination must be made by the airport owner if it would be unreasonably costly, burdensome, or impractical for more than one aeronautical activity to provide such aeronautical services on the airport. The justification for this determination must be fully documented. If a complaint in opposition to the airport owner's determination is filed with FAA, the responsible region will review and evaluate the documentation used by the airport owner for its determination. If further investigation is needed to review the determination, it will be done by the region.

    d. <u>Restrictions Based on Safety</u>. Under some circumstances, a person may be denied the right to engage in an aeronautical activity at an airport for reasons of safety. The justification for such denials should be fully documented.

    e. <u>Restrictions on Self-Service</u>. Any unreasonable restriction imposed on the owners or operators of aircraft regarding the servicing of their own aircraft and equipment will be construed as a violation of this policy. Owners of an aircraft should be permitted to fuel, wash, repair, paint, and otherwise take care of their own aircraft. A restriction which has the effect of diverting such business to an operator of such an aeronautical activity will be deemed to be an exclusive right violation contrary to law. However, local airport regulations may include such restrictions on these self-service activities as are reasonably necessary for safety, preservation of facilities, and protection of the public interest.

10/10/85                                                                              5190.1A

10. ENFORCEMENT.

   a. *Remedies*. At any airport where there has been a grant of an exclusive right contrary to law and this policy, that airport and any other airport owned or controlled by the offending airport owner will be Ineligible for assistance under the Airport Improvement Program and the agency will not expend Facilities and Equipment (F&E) funds for installations designed to benefit traffic at such airports unless necessary to remedy a safety problem. No grant agreement may be executed, and no payment of funds due under prior grant agreements shall be made, nor shall any F&E equipment funds be expended until the exclusive right has been terminated.

   b. *National Defense and National Interest*. This order shall not be construed as precluding the grant or expenditure of Federal funds when required for the national defense, or when determined by the Administrator to be In the national interest.

11. ADMINISTRATION OF POLICY.

   a. *Intent*. The FAA does not routinely conduct a special investigation or inquiry solely to determine whether an exclusive right may have been granted. However, the agency will review any complaint by a person who claims to have been denied the right to exercise an aeronautical activity because of the grant of an exclusive right which is contrary to law and the provisions hereof. Further, the agency will investigate any apparent violation which is discovered during routine visits to, and inspection of, airports.

   b. *Project Application*. As a material part of any grant agreement' in anticipation of financial assistance under the Airport and Airway Improvement Act of 1982, all applicants for such assistance will be required to assure that there is no grant of exclusive right which would preclude expenditure of funds by the FAA under the provisions hereof at any public-use airport then owned or controlled by the applicant.

   c. *Imposition of Standards*. It is the intent of the foregoing policies to promote fair competition at public-use airports. It is expected that public-use airport owners will adopt and enforce minimum standards and qualifications to be met by those who propose to engage in commercial aeronautical activities. Primarily such standards should protect the interest of the public. The application of any unreasonable requirement or standard to the proposed activities, or any requirement or standard which is applied In a discriminatory manner, shall be considered to be a constructive grant of an exclusive right contrary to applicable laws and the provisions hereof.

*Donald D. Engen* (signature)
Donald D. Engen
Administrator