# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STAMBAUGH'S AIR SERVICE, INC., : | |
| : | |
| Plaintiff : | |
| v. : | CASE NO. 1:CV-00-0660 |
| : | |
| SUSQUEHANNA AREA REGIONAL : | Judge Yvette Kane |
| AIRPORT AUTHORITY, BAA : | Magistrate Judge J. Andrew Smyser |
| HARRISBURG, INC., DAVID FLEET, : | |
| individually, DAVID HOLDSWORTH, : | |
| individually, and DAVID C. McINTOSH, : | |
| individually, : | |
| Defendants : | |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

## DEFENDANTS' REQUESTS FOR PRODUCTION OF
## DOCUMENTS DIRECTED TO PLAINTIFF – FIRST SET

TO:   Stambaugh's Air Service, Inc.
      c/o Jordan D. Cunningham, Esq.
      Cunningham & Chernicoff, P.C.
      2320 North Second Street
      Harrisburg, PA 17110

PLEASE TAKE NOTICE that pursuant to Rule 34 of the Federal Rules of

Civil Procedure, please furnish at our expense, at our office on or before thirty (30)

days of service hereof, a photostatic copy of like reproduction of the materials

concerning this action or its subject matter which are in your possession, custody or

control and which are not protected by the attorney/client privilege; or, in the

630270 I

alternative, produce the said matter at said time to permit inspection and copying thereof.

## DEFINITIONS AND INSTRUCTIONS

1. "You" or "your" refers to the Plaintiff, Stambaugh's Air Service, Inc., individually, its agents, representatives, or attorneys.

2. "And" and "or" shall be construed conjunctively and disjunctively.

3. "Document" means any correspondence, memoranda inter-office communication, intra-office communication, agreement, minute, report, note, schedule, check, draft, diary, log, telegram, drawing, picture, table, graph, chart, map, or survey, including the originals and working drafts of all of the above and any copies thereof which are different from the original by way of interlineation or notation, any transcript or summary of the foregoing and any other tangible representation of information which may be retrievable.

4. If you claim that the subject matter of a document is privileged, you are required to identify the document by stating the following information:

   a.  Its nature (e.g., letter, memorandum, etc.);
   b.  Its date (or if it bears no date, the date when it was prepared);
   c.  The name, address, employer and job position of the signer or signers (or if there is no signer, of the person who prepared it);
   d.  The name, address, employer, and job position of the person, if any, to whom the document was sent;

e.   The name, address, employer, and job position of each person known or believed to have originals or copies of the document; or

f.   A brief statement of the subject matter of the document; and

g.   State the ground or basis on which you contend that the document is privileged.

5.   If you do not have possession, custody, or control of a document requested, but know who does have possession, custody, or control, you are required to identify the document and the person who has possession, custody, or control in the manner requested in subparagraph 4 above.

# REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    All documents identified, referred to, consulted, or used by you in your Second, Amended Complaint.

2.    All documents identified, referred to, consulted, or used by you in your Answers to Defendants' Interrogatories Directed to Plaintiff – First Set.

3.    All documents that refer, reflect, or relate to any agreement between you and SARAA and/or BAA.

4.    All documents and communications between you and any other party to this litigation which refer, relate, or in any way pertain to the issue or matters raised in the pleadings filed in this case.

5.    Any and all documents which evidence any facts on the basis of which it will be asserted that, as set forth in your Second, Amended Complaint, that when negotiating with Stambaugh's regarding its new lease, SARAA, in conjunction with BAA, Fleet, Holdsworth, or McIntosh, refused to offer Stambaugh's any lease that would permit it to continue to provide FBO services at HIA.

6.    Any and all documents which evidence any facts on the basis of which it will be asserted that, as set forth in your Second, Amended Complaint, that Stambaugh's did not require any additional leased space to continue to provide FBO

services beyond that which was leased to it previously, and that which it leased through 2003.

7.    Any and all documents which evidence any facts on the basis of which it will be asserted that, as set forth in your Second, Amended Complaint, that when negotiating with Stambaugh's regarding its new lease, SARAA, in conjunction with BAA, Fleet, Holdsworth, and McIntosh, refused to offer Stambaugh's any lease that would permit it to remain in the Stambaugh's Hangar at HIA beyond 2003.

8.    Any and all documents which evidence any facts on the basis of which it will be asserted that, as set forth in your Second, Amended Complaint, SARAA, BAA, Fleet, Holdsworth or McIntosh failed to enforce lease terms against AERO that have been enforced against Stambaugh's

9.    Any and all documents which evidence any facts on the basis of which it will be asserted that, as set forth in your Second, Amended Complaint, you incurred damages as a result of Defendants' conduct.

10.    All statements, summaries of statements, transcripts of recorded statements or interviews, or any memoranda or transcripts of statements or interviews of any party, person or witness, or their agents or employees, relating to, referring to or in any way describing the allegations and events regarding the issues of this case,

who have any knowledge of the facts surrounding any of the matters, transactions or occurrences involved in this case.

Attached to each statement provided pursuant to the preceding request should be an explanation including:

    (a)    the name, address and occupation of the person who gave
           the statement, and of the person who obtained the statement
           and the date and time it was obtained; and

    (b)    the manner in which the statement was taken; i.e.,
           electronic recording, written, oral, etc.

11.    The complete investigation or claim file, whether formally designated as such or otherwise, maintained by you concerning the issues raised in your Second, Amended Complaint.

12.    All statements of any person(s) who will be called as witness at trial of this matter.

13.    All documents or other demonstrative evidence which will be introduced or used at trial.

14.    All documents, including but not limited to, advertisements, circulars, brochures, pamphlets, leaflets, writings, and other such promotional items any expert witness you have retained for use at trial uses and has used in the past to promote his services as an expert witness.

15.    All documents prepared by you, or by any representative, agent, or anyone acting on your behalf, except your attorneys, during an investigation of the allegations and events regarding the issues of this case, or prepared in anticipation of litigation or trial of this matter. Such documents shall include any documents made or prepared up through the present time, with the exclusion of the mental impressions, conclusions, or the opinions respecting the value or merit of the claim or respecting strategy or tactics.

16.    Any and all documents which refer, relate, or pertain to the HIA "Master Plan," or indicate that the Stambaugh's Hangar is not scheduled to be torn down until 2008

17.    All statements, summaries of statements, transcripts of recorded statements or interviews, or any memoranda or transcripts of statements or interviews of any party, person or witness, or their agents or employees, relating to, referring to or in any way describing the acts of intimidation and harassment directed to Stambaugh's and its employees by SARAA, BAA, Fleet, Holdsworth, McIntosh or other SARAA or BAA representatives.

18.    Any and all documents which refer, relate, or pertain to negotiations to purchase the AMP Hangar.

19.    Any and all documents which refer, relate, or pertain to SARAA, BAA,

Fleet, Holdsworth, or McIntosh refusing to negotiate with Stambaugh's for the lease of the AMP Hangar.

20.    Any and documents which refer, relate, or pertain to the October 5, 1999 "Request for Qualifications" for FBO service providers.

21.    Any and all documents which refer, relate or pertain to your claim that Stambaugh's was the only company which participated in the pre-submission conference and tour and submitted a proposal in a timely fashion for the AMP Hangar.

22.    Any and all documents which support your claim that SARAA, BAA, Fleet, Holdsworth or McInstosh accepted non-conforming proposals to ensure that Stambaugh's would not be able to lease the AMP Hangar and to interfere with Stambaugh's contracts to provide FBO services.

23.    All documents submitted to, or received from, any state or federal agency or any other administrative agency, relating to the factual allegations set forth in the Second Amended Complaint involving your relationship with SARAA from 1975 to the present or your operations at HIA.

24.    All documents which evidence, relate to, pertain to, support, or were created in an attempt to prove the allegations in your Second Amended Complaint,

including, but not limited to, diaries, notebooks, journals, calendars, appointment books, notes, correspondence, memoranda, tape recordings, and any documents reflecting your complaint or objection(s) regarding SARAA.

25.   All documents which evidence, relate to, or pertain to the rental agreement between Stambaugh's Air Service and SARAA.

26.   Any and all documents which evidence, relate to or pertain to the minimum standards required in order to operate at HIA as an FBO and your claim that you always met or exceeded the standards as referenced in paragraph 15 of your Second Amended Complaint.

27.   All documents which evidence, relate to, or pertain to your alleged economic and non-economic damages, including, but not limited to, lost profits, and any other actual or compensatory damages you claim in your Second Amended Complaint that are owed by Defendants to you.

28.   All documents which evidence, relate to, or pertain to your experience providing fixed base operator services.

29.   Copies of all documents evidencing your contractual relationships with third parties to provide FBO services at HIA.

30.   All documents relating to communications between you and any of the

Defendants which relate to the allegations in your Second Amended Complaint.

31.    All written admissions or statements against interests which you claim were made by any Defendant or the Defendant's representatives, agents or employees.

32.    Any and all documents which support your statement that Stambaugh's FBO business was valued in excess of $5,000,000.00 as referenced in paragraph 86 in your Second Amended Complaint.

33.    Any and all documents which support or relate to your contention that Stambaugh's incurred or will incur expenses in excess of $1,000,000 related to the dismantling and relocation of FBO and maintenance operations as referenced in paragraph 88 of your Second Amended Complaint.

34.    Any and all documents which support or relate to your contention that Stambaugh's incurred will incur substantial expenses in order to relocate dislocated employees as referenced in paragraphs 89 and 90 of your Second Amended Complaint.

35.    Any and all documents which support or relate to your contention that Stambaugh's nominal net income over the next 18 years would have exceeded $13,000,000 as referenced in paragraph 92 of your Second Amended Complaint.

36.    Any and all documents which support or relate to your contention that Stambaugh's incurred will incur expenses in excess of $1,500,000 related to business interruption as referenced in paragraph 94 of your Second Amended Complaint.

37.    Any and all documents which support or relate to your contention that Stambaugh's incurred will incur expenses in excess of $3,000,000 to $5,000,000 related to lost productivity as referenced in paragraph 96 of your Second Amended Complaint.

38.    Any and all documents which support or relate to your contention that Stambaugh's incurred will incur expenses in excess of $16,000,000 plus interest to construct a new facility as referenced in paragraph 98 of your Second Amended Complaint.

39.    Any and all documents relating to your efforts to construct a new facility for the relocation of the FBO and Maintenance Operations as referenced in paragraph 98 of your Second Amended Complaint.

40.    Any and all documents relating to the claim that Stambaugh has lost value of its FBO business as referenced in paragraph 85 of your Second Amended Complaint.

41.    Any and all records relating to the filing of bankruptcy by Stambaugh.

42.    Any and all documents relating to the termination of the contract which ended on January 19, 2000.

43.    Any and all documents that support your allegation that the defendants did not enforce the lease terms against AERO that were otherwise enforced against Stambaugh as referenced in paragraph 22 of your Second Amended Complaint.

44.    Any and all documents that support your contention that the defendants allowed AERO to operate without paying rent as noted in paragraph 23 of your Second Amended Complaint.

45.    Any and all documents to support your allegations that the defendants engaged in the economic discrimination as noted in paragraph 24 of your Second Amended Complaint.

46.    Any and all documents that relate to your contention that the defendants engaged in a policy of intimidation and harassment against you as noted in paragraphs 24 and 26 of your Second Amended Complaint.

47.    Any and all documents relating to your allegation that the defendants fabricated alleged lease violations against Stambaugh as noted in paragraph 28 of

your Second Amended Complaint.

48.    Any and all documents relating to the negotiations with AMP for the purchase of the hangars as noted in paragraph 31 of your Second Amended Complaint.

49.    Any and all documents relating to your allegation that the defendants interfered with negotiations between you and AMP for the purchase of the AMP lease as noted in paragraph 33 of your Second Amended Complaint.

50.    Any and all documents relating to your allegation that the defendants failed to negotiate in good faith with Stambaugh for the lease of the AMP hangar as noted in paragraph 36 of your Second Amended Complaint.

51.    Any and all documents supportive of your contention that the defendants violated the express terms of the RFQ and secretly without providing any notice to Stambaugh or any other potential bidder, changed the requirements of the RFQ and thereafter accepted "non-conforming proposals" as noted in paragraphs 48, 49 and 50 of your Second Amended Complaint.

52.    Any and all documents relating to your allegations that Fleet contacted "various customers of Stambaugh's and informed them that Stambaugh would not be awarded the lease to the AMP hangar and would not have FBO right"

as noted in paragraph 52 of your Second Amended Complaint.

53.    Any and all documents supportive of your allegation that SARAA obtained at least $4,983,869 in Federal Funds from the FAA as referenced in paragraph 67 of your Second Amended Complaint.

Respectfully submitted,

RHOADS & SINON LLP

By:

Dean F. Piermattei, Esq.
Stephanie E. DiVittore, Esq.
One South Market Square
P. O. Box 1146
Harrisburg, PA 17108-1146
(717) 233-5731

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this _21 st_ day of January, 2007, a true and correct

copy of the foregoing Defendants' Requests for Production of Documents Directed

to Plaintiff – First Set was served by means of E-Mail and United States mail, first

class, postage prepaid, upon the following:

Jordan D. Cunningham, Esquire
Cunningham & Chernicoff, P.C.
2320 North 2nd Street
Harrisburg, PA  17110

_Deborah L. McKinney_

S. B
2-21-07

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STAMBAUGH'S AIR SERVICE, INC., | : | |
| | : | |
| **Plaintiff** | : | |
| v. | : | CASE NO. 1:CV-00-0660 |
| | : | |
| SUSQUEHANNA AREA REGIONAL | : | Judge Yvette Kane |
| AIRPORT AUTHORITY, BAA | : | Magistrate Judge J. Andrew Smyser |
| HARRISBURG, INC., DAVID FLEET, | : | |
| individually, DAVID HOLDSWORTH, | : | |
| individually, and DAVID C. McINTOSH, | : | |
| individually, | : | |
| **Defendants** | : | |

PLAINTIFF STAMBAUGH'S AIR SERVICE, INC.'S
ANSWER TO DEFENDANTS' INTERROGATORIES
DIRECTED TO PLAINTIFF–FIRST SET

1.    State:
    a.    your full name;
    b.    each other name, if any, which you have used or by which you have been known;
    c.    your address;
    d.    your telephone number.

**ANSWER:**    **Mark R. Stambaugh**
**427 Second Street**
**Highspire, PA**
**Telephone:  717 939 1300**

2.    Identify each person who has knowledge of facts concerning your claims as set forth in the Second Amended Complaint filed in this matter or circumstances concerning these allegations.

**ANSWER:**    **Charles R. Beard**
**Scott Stambaugh**
**Mark R. Stambaugh**

3.   If you know of anyone who has given any statement (as defined by the Rules of Civil
     Procedure) concerning this action or its subject matter, state:
     a.   The identity of such person;
     b.   When, where, by whom, and to whom each statement was made, and
          whether it was reduced to writing or otherwise recorded; and
     c.   The identity of any person who has custody of any such statement that was
          reduced to writing or otherwise recorded.

**ANSWER:**

**The employees of BAA who were then working under a contract with
the Authority have made various statements concerning the fact and
events leading up to this cause of action. In addition to the managers
working under SARAA contract, the members of SARAA have made
statements concerning the facts leading up to this cause of action.**

**a.   The identity of the persons employed by BAA and who acted
      under the contract with SARAA is within the possession and
      knowledge of BAA and the Authority.**

**b.   Various statements were made at and prior to the official
      meetings at which the Request for Proposal was authorized,
      the answers evaluated and the decisions made in the form of
      Resolutions. The statements will be of record and retained by
      the Authority. Additionally, and internal correspondence
      regarding evaluation of the proposals are in the possession of
      the Authority or BAA.**

**c.   The custody of these materials is be with the appropriate
      records custodian of BAA and of the Authority.**

4.   If you know of the existence of any photographs, motion pictures, video recording, maps,
     diagrams, or models relevant to the issues in this case state:
     a.   The nature or type of such item;
     b.   The date when such item was made;
     c.   The identity of the person that prepared or made each item; and
     d.   The subject that each item represents or portrays.

**ANSWER:**   **The only maps or diagrams that are relevant are the maps and
             diagrams of the airport and its buildings as they existed during the
             relevant time period. Those official materials are in the custody of the
             Authority or of BAA if it retained copies of airport materials.**

2

5.   If you, or someone not an expert, conducted any investigations of the allegations set forth in the Second Amended Complaint filed on your behalf or circumstances concerning these allegations, identify:

      a.   Each person, and the employer of each person, who conducted any investigation(s); and

      b.   All notes, reports or other documents prepared during or as a result of the investigation(s) and the persons who have custody thereof.

**ANSWER:**   **There were no investigations of the allegations, the principals and officers of the Plaintiff all experienced the facts that lead to the cause of action.**

      **a.   Mark R. Stambaugh, Scott Stambaugh and Charles Beard all of whom were employees of the plaintiff during all relevant periods.**

      **b.   All notes and memoranda are a part of the company files located at the company headquarters.**

6.   Identify each person you intend to call as a non-expert witness at the trial of this case, and for each person identified, state the address of the witness, your relationship with the witness and the substance of the facts to which the witness is expected to testify.

**ANSWER:**   **Charles Beard, employed by the Plaintiff whose address is in care of the Plaintiff. He will testify to the circumstances and negotiations leading up to the failure of the airport to renew the lease with the full FBO rights that had been enjoyed under the lease since its inception.**

**Mark R. Stambaugh, employed by the Plaintiff whose address is in care of the company will testify to the operation of the full FBO rights and fueling rights that the company enjoyed under the prior lease, the company's attempts to purchase the AMP hangar, the company's financial performance under the prior leases with regard to fuel, the performance after the failure to continue fuel rights, and the impact that the decisions of the Authority and BAA had on the company and its customers.**

**Scott Stambaugh, employed by the Plaintiff whose address is in care of the company, who will testify to the operations of the company, its fuel franchise, its FBO retail operation and its full service capacity, both before and after the illegal withholding of fueling rights.**

3

7.    Identify each expert you intend to call as a witness at the trial of this matter, and for each such expert state:

        a.    The subject matter about which the expert is expected to testify; and

        b.    The substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (You may file as your answer to this interrogatory the report of the expert or have the interrogatory answered by your expert.)

**ANSWER:**    **The expert is still being identified and will render an opinion on the fuel operation of the company, the capacity for fuel sales at the airport, the ability of an exclusive company to meet fuel demand, the effect of the exclusive operation on the fuel demand, the development of "Tankering" and its effect on fuel operation as well as its effect on the throughput income to the airport and the Authority. Finally he will testify to the effect that the denial of fuel rights had on the Plaintiff.**

4

8.    Identify all exhibits that you intend to use at the trial of this matter and state whether they
will be used during the liability or damages portions of the trial.

    <u>ANSWER:</u>    **The exhibits at trial will be the following:**

        **a.**    **The base leases identifying the rights of the company to sell fuel**

        **b.**    **The fuel sale records of the company**

        **c.**    **The company performance prior to the creation of an exclusive franchise on the airport and subsequent to the creation of an exclusive franchise at the airport.**

        **d.**    **The lease for the company that occupied the AMP building prior to the creation of an exclusive franchise and the lease subsequent to the creation of an exclusive franchise.**

        **e.**    **The income from fuel sales to the airport, prior to the creation of an exclusive franchise and subsequent to the creation of an exclusive franchise.**

        **f.**    **Throughput income figures from like airports which do not have exclusive franchises.**

        **g.**    **Any other exhibit which is appropriate to answer the defenses of the Airport or BAA**

9.    Are you withholding any documents from production in response to Defendants Request for Production of Documents Directed to Plaintiff–First Set on the grounds of privilege or immunity? If so, identify each such document and separately as to each:

      a.    State the grounds upon which the document was withheld (e.g. attorney client privilege or work product immunity) and the complete factual basis for the claim of privilege or immunity;

      b.    In the case of an allegedly privileged document, identify all persons who have been privy to it, including, but not limited to, all cc and bcc recipients, and in the case of an allegedly privileged communication also identify all persons who were privy to the underlying communication;

      c.    In the case of a document that is allegedly work product, identify the litigation in connection with which, or in anticipation of which, the document was prepared, and identify all persons who have been privy to the document; and

      d.    Identify each interrogatory and each document request to which the respective document is responsive.

**ANSWER:    Not Applicable.**

10.    If you intend to use any admission(s) of a party at trial, identify such admission(s).

**ANSWER:    The admissions of any party shall rest on the facts of the actions taken by the parties in creation of an exclusive franchise.**

11.    State with particularity the factual basis for each claim you are asserting in this case.

**ANSWER:    The factual basis of the asserted claims is contained in the complaint. The Airport Authority, directly and through ratification of the acts of its management, created an exclusive franchise in derogation of the Federal Aviation Regulations. The exclusive franchise was the direct cause of extreme financial harm to the Plaintiff, which requests damages for the said financial harm in its complaint.**

6

12.   Identify, quantify, and describe with specificity any and all damages you claim to have suffered as a result of Defendants' alleged conduct, including, but not limited to, identifying and quantifying lost profits, and any other actual or compensatory damages you claim are owed by Defendants to you.

   **ANSWER:**   **The damages claimed are based upon the data between the costs of delivering the fuel; whether through direct sales or by throughput to the carriers serving the airport. The amount is based upon $.74 per gallon. The damage will be quantified only after the defendant answers its interrogatories and discloses the gallonage that was pumped on the airport over the course of the time subsequent to the creation of the exclusive franchise. That amount then must be adjusted for the "tankering" which was created through the grant of the exclusive franchise and the resultant increase in the cost of fuel, causing a diminution in the gallonage pumped. There is also the loss of General Aviation business which limitation was also imposed by the "take it or leave it" form of lease tendered by the defendants.**

13.   Identify, and quantify, any and all profits earned by you from 1975 to the present, including, but not limited to, identifying the source of said income, the amount of said income, the work or services you provided in exchange for the income and the amount of such income resulting from operations at HIA.

   **ANSWER:**   **The relevant information is being prepared and will be seasonably provided.**

14.   If you seek any relief other than monetary damages specified in Answer to Interrogatory No. 13, state with specificity each other type or relief sought and each reason why you think you are entitled to such relief.

   **ANSWER:**   **Not applicable.**

15. In paragraph 87 of your Second, Amended Complaint, you state that "Stambaugh's has had to incur substantial expenses in order to remove equipment utilized in its FBO operation." With respect to such allegation, please state each fact or circumstance which you contend supports this contention, identify each witness with knowledge relative to this contention, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegation.

   **ANSWER:** **The Plaintiff had to dismantle the retail FBO operation, remove the trucks, tugs, access stairs, deicing equipment, fuel trucks, lights, cargo handling equipment, chalks, tie downs, heaters, air starts, and miscellaneous tooling, equipment, and documents relative to fueling and other FBO activities. Scott Stambaugh and Mark Stambaugh will testify to this issue. The documents relating to this issue are the miscellaneous invoices for removal and movement and storage or destruction of these elements.**

16. In paragraph 100 of your Second, Amended Complaint, you state that "Plaintiff had existing contractual relationships with various customers to provide FBO services at HIA." With respect to such allegation, please identify each entity or individual with whom you had a contractual relationship to provide FBA services at HIA, please state each fact or circumstance which you contend supports this contention, identify each witness with knowledge relative to this contention, and identify each documents with discusses, refers to, or in any way pertains to the information contained in said allegation.

   **ANSWER:** **The standing contracts were both oral and written. The written contract with Untied is attached. Scott Stambaugh and Mark Stambaugh will testify to the standing orders and agreements for fueling as well as overnight maintenance, parking, baggage and cargo handling and other FBO services.**

8

17.    In paragraph 102 of your Second, Amended Complaint, you state that "Defendants agreed among themselves to force Plaintiff out of the FBO business at HIA no later than November 1999." With respect to such allegation, please identify each fact or circumstance which you contend supports this contention, identify each witness with knowledge relative to this contention, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegation.

      **ANSWER:**   **The chief document for this allegation is the lease entered into with the company that occupied the APM Hangar, the incentives and provisions in that lease, the actions of the airport managers and the Board in the drafting of the Request for Proposal and the evaluation and decisions that followed the issuance of the request for Proposal.**

18.    In paragraph 105 of your Second, Amended Complaint, you state that "Defendants solicited proposals from other bidders such as Piedmont Aviation by promising that Plaintiff would be prohibited from providing FBO services at HIA...despite the fact that Plaintiff had submitted the only responsive proposal to the RFQ." With respect to such allegation, please identify each alleged bidder promised that Stambaugh's would be prohibited from providing FBO services at HIA, the date and nature of such promise, please state each fact or circumstance which you contend supports this contention, identify each witness with knowledge relative to this contention, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegation.

      **ANSWER:**   **See the answer to Question 17 plus the list of parties who answered the Request for Proposal, the list of telephone contacts made by the airport management company, the attendees at the pre submission conference and the presentations and script for the pre submission conference.**

9

19.   In paragraph 107 of your Second, Amended Complaint, you state that "Defendants intentionally interfered with Plaintiff's existing relationships by contacting Plaintiff's customers and informing them that Plaintiff would no longer be permitted to provide those services at HIA before the SARAA board has even voted on the question of who would provide FBO services at the AMP Hangar at HIA." With respect to such allegation, please identify each customer contacted by Defendants, the date and type of such contact, identify which Defendant contacted the customer, please state each fact or circumstance which you contend supports this contention, identify each witness with knowledge to this contention, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegation.

  **ANSWER:**  **The following customers were contacted by the airport manager by telephone and were informed of the decision to create an exclusive franchise:**

      **Northwest Airlines;**
      **United Airlines;**
      **American Airlines;**
      **Delta Airlines;**
      **Com Air;**
      **Airborn;**
      **Emery;**
      **Fed Ex;**
      **US Air;**
      **Mr. Sutliff;**
      **Mr. Adair; and**
      **Mr. Supan.**

      **All of the above were called by Mr. Fleet of BAA and told that their services from the Plaintiff would no longer be available.**

20.    In paragraph 108 of your Second, Amended Complaint, you state that "The ultimate object of the Defendants' actions was to force Plaintiff out of business." With respect to such allegation, please state each fact or circumstance which you contend supports this contention, identify each witness with knowledge relative to this contention, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegation.

     **ANSWER:**   **See the answer to Question 17, plus the remarks and minutes of the Authority meeting at which the new lease for Stambaugh was authorized, plus the negotiations with the new fuel source at the airport all in contravention of the FAA Regulations prohibiting exclusive franchises.**

21.    In paragraph 24 of your Second, Amended Complaint, you state that "Defendants' engaged in economic discrimination in violation of 49 U.S.C. § 47107(a)(b) by permitting AERO to continue to operate as an FBO at HIA despite its failure to pay rent." With respect to such allegation, please state each fact or circumstance which you contend supports this contention, identify each witness with knowledge relative to this contention, and identify each document which discusses, refers to, or in any way pertains to this information contained in said allegation.

     **ANSWER:**   **The facts that are in the records of the airport which records reflect; the rent record of Piedmont - Hawthorn , the terms and conditions of the lease entered into with each which incented Piedmont – Hawthorn to compete with Plaintiff on a financial basis that granted Piedmont - Hawthorn free occupancy and operational considerations which had no historical basis or justification all in contravention of the FAA Regulations prohibiting exclusive franchises.**

11

22.    In paragraph 25 of your Second, Amended Complaint, you state that "In a further effort to create an exclusive FBO at HIA, Defendants have engaged in a policy of intimidation and harassment directed at Stambaugh's and its employees." With respect to such allegation, please identify each Stambaugh's employee allegedly intimidated or harassed by Defendants, the date of such intimidation or harassment, please state each fact or circumstance which you contend supports this contention, identify each witness with knowledge relative to this contention, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegation.

   **ANSWER:**    **Plaintiff's FBO operations were the subject of intensified airport security scrutiny, interference and actions which constituted a danger to the employees of the Plaintiff and the Defendant. Cars were positioned in unauthorized locations relative to aircraft operations and movement; security personnel interfered with fueling by demanding to inspect airport security clearance documents in the middle of operations; security personnel required engine runs to be terminated so that security documents could be inspected, night call mechanics were called out by security personnel in order to address minor operational details; such as pressurization and dump valves; and otherwise interfering with the routine operations which had taken place over a course of two decades prior to the creation of an exclusive franchise.**

23.    In paragraph 28 of your Second, Amended Complaint, you state that "SARAA, in conjunction with BAA, Fleet, Holdsworth and McIntosh, has attempted to create an exclusive FBO by manufacturing disputes and fabricating alleged lease violations by Stambaugh's." With respect to such allegation, please state each fact or circumstance which you contend supports this contention, identify each witness with knowledge relative to this contention, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegation.

   **ANSWER:**    **Unfounded allegations of lease and regulatory violations relative to safety documents, fueling procedures, minor environmental events and personnel functions were alleged. The aggregate list of the manufactured allegations did not represent any action that was outside of the normal course of business activity for an FBO, and further more many constituted administrative interpretations of actions that were required for safe operation.**

12

24.   In paragraphs 47 and 49 of your Second, Amended Complaint, you state that the SARAA solicited proposals from entities which had not attended the pre-submission conference or tour, accepted proposals that were not submitted by November 2, 1999, and changed the requirements of the RFQ.  With respect to such allegations, please identify each company failing to attend the pre-submission conference or tour from whom SARAA solicited proposals, please identify each proposal submitted after November 2, 1999 that SARAA accepted, please state which RFQ requirements were changed, please state each fact or circumstance which you contend supports these contentions, identify each witness with knowledge relative to these contentions, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegations.

     **ANSWER:**    **The changes on the RFQ are apparent on the face of each document which is in the possession of the Airport and its management team. There is a list of conference attendees and then a list of entities contacted by the airport management team. Those lists are also in the possession of the airport management team. Defendant management team of the airport contacted the following companies by telephone: Piedmont Hawthorn (a company related to BAA), Signature Aviation.**

                         **The RFQ changed the amount of hangar space required, the number of FAA bundled services required and the financial commitment required all in contravention of the FAA Regulations prohibiting exclusive franchises.**

13

25.    In paragraph 52 of your Second, Amended Complaint, you state that "Fleet contacted carious (*sic*) customers of Stambaugh's and informed them that Stambaugh's would not be awarded the lease to the AMP Hangar and would not have FBO rights." With respect to such allegation, please identify each of the Stambaugh's customers contacted by Fleet, the date and type of contact, please state each fact or circumstance which you contend supports these contentions, identify each witness with knowledge relative to these contentions, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegations.

      **ANSWER:**    **The following customers of Plaintiff were contacted:**

                  **Northwest Airlines;**
                  **United Airlines;**
                  **American Airlines;**
                  **Delta Airlines;**
                  **Com Air;**
                  **Airborn;**
                  **Emery;**
                  **Fed Ex; and**
                  **US Air.**

            **Those customers called Scott Stambaugh and Mark Stambaugh who will testify to those telephone calls.**

26.    In paragraph 88 of your Second, Amended Complaint, you state that "Stambaugh's has incurred or will incur expenses in excess of $1,000,000 related to the dismantling and relocation of FBO and maintenance operations." With respect to such allegations, please state the amount of each expense with an explanation regarding the need for each expense, please state each fact or circumstance which you contend supports these contentions, identify each witness with knowledge relative to these contentions, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegations.

      **ANSWER:**    **See the answer to Question 15. Mark Stambaugh will testify to the necessity of moving the said equipment and the cost thereof.**

27.  In paragraph 90 of your Second, Amended Complaint, you state "Stambaugh's estimates that it will have to incur expenses in excess of $1,000,000 related to relocation of its employees." With respect to such allegation, please provide an itemized description of each expense and each employee relocated by Stambaugh's listing the job position and whether the employee is currently employed by Stambaugh's, please state whether each amount has been paid, please state each fact of circumstance which you contend supports these contentions, identify each witness with knowledge relative to these contentions, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegations.

**ANSWER:**    **The list of employees and relocation expense to Georgia is being compiled and will be seasonably provided.**

28.  In paragraph 91 of your Second, Amended Complaint, you state that as a result of Defendants' alleged actions, "Stambaughs has lost the substantial past and future income that it would have derived from providing FBO services at HIA..." With respect to such allegation, please state the amount of past and future income Stambaugh's contends it has lost, please state each fact or circumstance which you contend supports these contentions, identify each witness with knowledge relative to these contentions, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegations.

**ANSWER:**    **The lost income is based on a review of past gallonage, the extrapolation of future gallonage, the calculation of the effect of the "Tankering" through Harrisburg created by the increased cost of the exclusive franchise market created as well as the disclosure, by the airport of the gallonage pumped subsequent to the creation of the exclusive franchise and market. Mark Stambaugh will testify to the pre exclusive gallonage and the expert will testify to the post exclusive impact.**

29.  In paragraph 92 of your Second, Amended Complaint, you state that "Stambaugh's nominal net income over the next 18 years would have exceeded $18,000,000." With respect to such allegation, lease (*sic*) state each fact or circumstance which you contend supports this contention, identify each witness with knowledge relative to this contention, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegation.

**ANSWER:**    **See the answer to Question 28.**

15

30.    In paragraph 94 of your Second, Amended Complaint, you state that "Stambaugh's estimates that it will have to incur expenses in excess of $1,500,000 related to business interruption." With respect to such allegations, please list each expense and the amount of each expense related to business interruption, whether these amounts have been paid, please state each fact or circumstance which you contends supports these contentions, identify each witness with knowledge relative to these contentions, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegations.

   **ANSWER:    The list of business interruption expenses is being compiled and will be seasonably provided.**

31.    In paragraph 96 of your Second, Amended Complaint, you state that "Stambaugh's estimates that it will have to incur expenses of $3,000,000 to $5,000,000 related to lost productivity." With respect to such allegations, please list each expenses and the amount of each expense related to lost productivity, whether these amounts have been paid, please state each fact or circumstance which you contend supports these contentions, identify each witness with knowledge relative to these contentions, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegations.

   **ANSWER:    The incurred lost productivity is the cost of retaining employees when the operation of the company is changed subsequent to the creation of an exclusive franchise. That lost cost is being prepared and will be seasonably provided.**

32.    In paragraph 98 of your Second, Amended Complaint, you state that "Stambaugh's estimates that it will have to incur expenses in excess of $16,000,000 plus interest...related to its need to construct new facilities..." With respect to such allegations, please list each expense and the amount of each expense related to constructing new facilities, whether these amounts have been incurred and, if so, whether each as paid, please state each fact or circumstance which you contend supports these contentions, identify each witness with knowledge relative to these contentions, and identify each document which discusses, refers to these contentions, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegations.

   **ANSWER:    Stambaugh did not construct new facilities in that it was promised a piece of land south of the National Guard, called "Crawford Station." That land was never developed and delivered to Plaintiff, although the promise of that land was an inducement to retain the hangars at the airport subsequent to the creation of the exclusive franchise.**

33.   In paragraph 106 of your Second, Amended Complaint, you state that "SARAA negotiated an understanding with Piedmont Aviation...the provisions of which understanding provide Piedmont Aviation did not have to pay rent or fuel flowage charges provided Plaintiff continued to have the right to provide fuel and conduct FBO operations at HIA." With respect to such allegations, please list each expense and the amount of each expense related to constructing new facilities, whether these amounts have been incurred and, if so, whether each as paid, please state each fact or circumstance which you contend supports these contentions, identify each witness with knowledge relative to these contentions, and indentify each document which discusses, refers to, or in any way pertains to the information contained in said allegations.

   **ANSWER:**   **The basis of this allegation is contained in the terms of the lease document which clearly demonstrates the creation of an inequitable relevant market with a competitive advantage for the new entrant all in contravention of the FAA Regulations prohibiting exclusive franchises.**

34.   In paragraph 84 of your Second, Amended Complaint, you state "......., Stambaugh's has suffered, and will continue to suffer, substantial business losses as the result of its inability to provide FBO services at HIA". With respect to such allegation, please state each fact or circumstance which you contend supports this contention, identify each witness with knowledge relative to this contention, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegation.

   **ANSWER:**   **Stambaugh, without the fueling privileges, lost a substantial portion of its gross income. The inability to have a single source for fueling, maintenance and ground handling in the passenger and cargo arena caused customers of the maintenance area to depart. The company had to request the ability to maintain trucks for defueling and refueling its maintenance customers. This was a commonly accepted industry custom of which the airport management had no knowledge. The adversarial relationship between the airport and the company had a negative effect on the company's reputation within the industry.**

35.  In paragraph 85 of your Second, Amended Complaint, you state that "......., Stambaugh's has lost the value of its FBO business". With respect to such allegation, please state each fact or circumstance which you contend supports this contention, identify each witness with knowledge relative to this contention, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegation.

**ANSWER:**   **When the lease was presented which prevented Plaintiff any FBO rights, Stambaugh, was without fueling rights, service rights and all other bundled FBO services, and therefore had no fueling business. Fueling is the lifeblood of the aviation business and the main sector of the bundled services authorized under the FAA FBO circulars. Fueling leads to other maintenance and contacts within the industry sector using the airfield. Without fueling rights you have no ability to conduct typical FBO business such as ground power, parking, hangaring and therefore no classic FBO business. Stambaugh was forced to retreat to a straight Part 145 maintenance business.**

36.  In paragraph 89 of your Second, Amended Complaint, you state that "......., Stambaugh's will have to incur substantial expenses in order to relocate dislocated employees." With respect to such allegation, please state each fact or circumstance which you contend supports this contention, identify each witness with knowledge relative to this contention, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegation.

**ANSWER:**   **See the answer to Question 27.**

37.  In paragraph 22 of your Second, Amended Complaint, you state that "......., has not enforced lease terms against AERO that have been enforced against Stambaugh's". With respect to such allegation, please state each fact or circumstance which you contend supports this contention, identify each witness with knowledge relative to this contention, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegation.

**ANSWER:**   **AERO was allowed to occupy real property rent free. AERO was allowed to operate non licensed fuel trucks on airport roads without CDL qualified drivers. AERO was given priority in aircraft direction.**

18

38.    In paragraph 23 of your Second, Amended Complaint, you state that "......., has permitted Aero to continue to operate at HIA despite its failure to pay rent". With respect to such allegation, please state each fact or circumstance which you contend supports this contention, identify each witness with knowledge relative to this contention, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegation.

**ANSWER:** **The lease provisions and the rent rolls in possession of the airport management demonstrate the actions of the defendants.**

39.    In paragraph 22 of your Second, Amended Complaint, you state that "......., interfered in those negotiations and threatened that it would refuse to allow any purchaser of the AMP Hanger to extend the AMP lease despite the fact that the AMP lease permitted such extensions". With respect to such allegations, please state each fact or circumstance which you contend supports this contention, identify each witness with knowledge relation to this contention, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegations.

**ANSWER:** **Stambaugh made a valid offer on the AMP hangar, the financing of which depended on a lease extension. The Airport refused a lease extension despite the right of AMP, under the terms of its lease, to extend.**

40.    In paragraph 36 of your Second, Amended Complaint, you state that "........, SARAA, ......., refused to negotiate in good faith with Stambaugh's for the lease of the AMP Hangar. With respect to such allegation, please state each fact or circumstance which you contend supports this contention, identify each witness with knowledge relative to this contention, and identify each document which discusses, refers to, or in any way pertains to the information contained in said allegation.

**ANSWER:** **SARAA, or its management team refused to extend the AMP lease which would have freed the hangar for purchase or extended sub leasing.**

19

Respectfully submitted,

CUNNINGHAM & CHERNICOFF, P.C.

Dated: _May 8, 2007_                    By: _____
                                        Jordan D. Cunningham, Esquire
                                        PA I.D. No.: 23144
                                        2320 North Second Street
                                        Harrisburg, PA 17110
                                        Telephone:    (717) 238-6570
                                        Facsimile:    (717) 238-4809
                                        Email:       jcunningham@cclawpc.com
                                        *Attorneys for Plaintiff*

*F:\Home\AHEWITT\DOCS\Q-S\STAMAIR\DISCOVER\ANSWERS TO INTERROGATORIES.wpd*

20

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STAMBAUGH'S AIR SERVICE, INC., | : | |
| | : | |
| Plaintiff | : | |
| v. | : | CASE NO. 1:CV-00-0660 |
| | : | |
| SUSQUEHANNA AREA REGIONAL | : | Judge Yvette Kane |
| AIRPORT AUTHORITY, BAA | : | Magistrate Judge J. Andrew Smyser |
| HARRISBURG, INC., DAVID FLEET, | : | |
| individually, DAVID HOLDSWORTH, | : | |
| individually, and DAVID C. McINTOSH, | : | |
| individually, | : | JURY TRIAL DEMANDED |
| Defendants | : | |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | : | |

### CERTIFICATE OF SERVICE

I, Angela L. Hewitt, legal secretary with the law firm of Cunningham & Chernicoff, P.C., hereby certify that on the **9th** day of **May, 2007** a true and correct copy of the foregoing **Plaintiff, Stambaugh's Air Service, Inc.'s, Answer to Defendants' Interrogatories Directed to Plaintiff–First Set** was served by first-class U.S. Mail, postage prepaid, to:

Dean F. Piermattei, Esquire
Timothy J. Nieman, Esquire
Susan E. Schwab, Esquire
Rhoads & Sinon LLP
One South Market Sq., 12th Flr.
P.O. Box 1146
Harrisburg, PA 17108-1146

/s/Angela L. Hewitt
Angela L. Hewitt