# EXHIBIT E

Case 1:00-cv-00660-YK-JAS    Document 100-7    Filed 07/05/2007    Page 1 of 12

## MEMORANDUM

TO: Heather Kelly, Esquire

FROM: Jordan D. Cunningham, Esquire

DATE: June 30, 2007

RE: *Stambaugh Air Services v. SARAA, et al.*
**Our File No. 424405**

**Document Receipt**

---

This memorandum is regarding the receipt of documents tendered by Plaintiff's counsel in the above referenced matter to Defendants' counsel on Saturday, June 30, 2007. The description of the documents contained in the boxes is generally descriptive and is not exhaustive nor is it intended to be construed as a complete listing of all the documents provided to Defendants' counsel. All of the documents do, however, support the Statement of Damages provided to you on this date.

a. Two (2) copies of the Audit, Internal and Bankruptcy year end reports from 1997 through 2006;

b. Box 1: 2000 Accounts Receivable; 2000 Accounts Payable; 2000 General Ledger;

c. Box 2: 2000 Bank Statements; Operating; Payroll; Fuel;

d. Box 3: 2000 Payroll Reports;

e. Box 4: 2000/2001 Accounts Receivable;

f. Box 5: 2001 Accounts Payable;

g. Box 6: 2001 Invoices Accounts Payable;

h. Box 7: 2001 General Ledger;

i. Box 8: 2002 Accounts Payable, "A-F";

j. Box 8(a): 2002 Bank Statements;

k. Box 9: 2002 Accounts Payable, "G-Q";

l.     <u>Box 10:</u> 2002 Accounts Payable, "R-Z";

m.     <u>Box 11:</u> 2002 Accounts Payable; Payroll Journal Register and Distribution to General Register;

n.     <u>Box 12:</u> 2003 Accounts Receivable; 2003 Accounts Payable; 2003 Payroll Distribution; 2003 Distribution Register

o.     <u>Box 13:</u> 2003 Accounts Payable;

p.     <u>Box 14:</u> 2004/2005 Accounts Payable;

q.     <u>Box 15:</u> 2004 General Ledger; 2005 General Ledger;

r.     <u>Box 16:</u> 2003/2004/2005 Bank Statements SAS/SAI

# Exhibit F

ORIGINAL

```
             IN THE UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF PENNSYLVANIA

STAMBAUGH'S AIR SERVICE, INC.,      :
          PLAINTIFF                 :
                                    :
          VS                        :  CASE NO. 1:CV-00-0660
                                    :
SUSQUEHANNA AREA REGIONAL AIRPORT   :  JUDGE YVETTE KANE
AUTHORITY, BAA HARRISBURG, INC.,    :
DAVID FLEET, individually,          :
DAVID HOLDSWORTH, individually,     :
DAVID C. McINTOSH, individually,    :
          DEFENDANTS                :


                   TRANSCRIPT OF PROCEEDINGS

          DEPOSITION OF:   MARK R. STAMBAUGH, SR.

          TAKEN BY:        DEFENDANTS

          BEFORE:          HILLARY M. HAZLETT, REPORTER
                           NOTARY PUBLIC

          DATE:            JUNE 25, 2007, 12:11 P.M.

          PLACE            ONE SOUTH MARKET STREET
                           SEVENTH FLOOR
                           HARRISBURG, PENNSYLVANIA


APPEARANCE:

CUNNINGHAM & CHERNICOFF
BY:  KELLY M. KNIGHT, ESQUIRE

       FOR - PLAINTIFF

RHOADS & SINON
BY:  DEAN F. PIERMATTEI, ESQUIRE

       FOR - DEFENDANTS
```



**ARCHIVE REPORTING & CAPTIONING SERVICE, INC.**
2336 N. Second Street • Harrisburg, PA 17110
(717) 234-5922
FAX (717) 234-6190

```
 1   I have a right and I told Jordan I would ask you.
 2           In your complaint at Paragraph 88-C, let me
 3   see.  That's not 88-C.  Yeah, Paragraph 88-C, which
 4   is -- yeah, Paragraph 88, Stambaugh -- that's on page
 5   20.
 6           You're talking about your damage.
 7   Stambaugh has incurred and will continue -- and will
 8   incur in excess of $1 million relating to dismantling
 9   and relocation of the FBO.
10       A    And maintenance --
11            MS. KNIGHT:  Can we go off the record for
12   one second?
13            MR. PIERMATTEI:  Yeah.
14            (Off the record.)
15   BY MR. PIERMATTEI:
16       Q    Do you see that Paragraph 88?
17       A    I see it.
18       Q    What expenses did you incur in summary?
19       A    They'll be furnished.
20       Q    Did you incur $1 million?
21       A    More than that.  They'll be furnished to
22   you.
23       Q    You provided documentation supporting that?
24       A    I supplied statements to my counsel for
25   their review and have people who will give them what
```

```
 1  they need or what they --
 2      Q    Do you understand my question?
 3      A    Yes.
 4      Q    Did you supply documentation for the $1
 5  million relating to the expenses for dismantling or
 6  relocating the FBO and maintenance operations?
 7      A    I don't believe they sent actual receipts.
 8  I think they have sent in summaries.
 9      Q    Who is they?
10      A    Well, we're using an accounting firm out in
11  Pittsburgh to do this.
12      Q    So --
13      A    They're the ones --
14      Q    As we sit here today, you haven't supplied
15  receipts or the actual dollars associated with this
16  relocation expense of $1 million, you just have a
17  summary --
18      A    We have the breakdown of the individual
19  numbers.
20      Q    I'm going to ask you to look at Paragraph
21  90 of the complaint.  You estimated that you've
22  incurred expenses, it says, of one million dollars
23  relating to relocation of employees.  Do you see --
24      A    Yes, sir.
25      Q    Do you have any documentation to support
```

1  that?
2      A      I believe we do.
3      Q      Did you supply that to your counsel?
4      A      I believe we supplied it to the CPAs.
5      Q      My question is, did you give it to your
6  attorney in this case?
7      A      I'm not sure.  In this packet I handed, no,
8  I don't believe so.  I believe it's Pittsburgh.
9      Q      And what is Pittsburgh?
10     A      Expenditures, losses.
11     Q      To move employees?
12     A      Well, that would be part of the
13 expenditures, the relocation costs, the rental of the
14 apartment buildings, moving costs.  That kind of
15 stuff was sent.
16         MR. PIERMATTEI:  Okay.  Obviously, I would
17 make a request for this stuff both for Paragraph 88
18 and 90.
19 BY MR. PIERMATTEI:
20     Q      Hang on a second.  You indicate here that
21 in Paragraph 92, you had losses based on SARAA Fleets
22 -- net income for the FBO services over the next 18
23 years would have been 13 million.  Do you see that?
24     A      I see that.
25     Q      And that's assuming you would have had an

```
 1   FBO service contract at Harrisburg International

 2   Airport for 18 years?

 3        A     I guess so.

 4        Q     Okay.  Any reason to believe you would have

 5   had, in fact, had a contract for that long?

 6        A     We had for a lot longer than that.

 7        Q     Any reason to believe you would have had a

 8   contract for that long at HIA?

 9        A     Yes.

10        Q     What is the reason?

11        A     The customers that we had.

12        Q     And you're basing that on what

13   documentation for $13 million number?

14        A     I don't know.  I don't do books.

15        Q     Did you supply any of that documentation?

16        A     There was information gathered and supplied

17   to Pittsburgh.

18        Q     Pittsburgh, your accountants?

19        A     Correct.

20        Q     Did you supply any of that information for

21   the $13 million to your counsel here in Harrisburg?

22        A     I'm not quite sure what all was supplied.

23        Q     Paragraph 94 says that 1.5 related to

24   business interruption.  What is that relating to?

25        A     Well, I would say business interruption was
```

1  the loss of all Canada and First Air contracts due to
2  the fact that we were another 800 miles south from
3  the Canadian base and they didn't want to pay the
4  cost. That was part of it.
5      Q    So that is lost FBO income. Isn't that
6  duplicative of what you're asking for in the prior
7  paragraph?
8      A    I'm not even sure what the word duplicative
9  means.
10     Q    Do you have any documentation to support
11 that particular claim, the $1.5 million business
12 interruption that you're claiming?
13     A    I'm pretty sure they did.
14     Q    Who is they?
15     A    The people sending to the accountants. I
16 don't know what they have given Jordan but there is
17 more coming to Jordan.
18     Q    Last on the issue -- lastly, on the issues
19 of damages, Paragraph 96, Stambaugh indicates it
20 would have incurred expenses in excess of $3.5
21 million in lost productivity. What is the lost
22 productivity you're referring to?
23     A    If you're taking 100 personnel that you
24 spend training and the productivity, and your
25 training would come with hiring new personnel to

1  bring them up to speed so they could do the work that
2  was needed to be done.
3       Q     Okay.  How many employees are we talking
4  about there that you had lost productivity on?
5       A     I would say out of the hundred and some,
6  probably 85 percent or something chose not to move
7  south because of their age or their families.  They
8  all had to be replaced and had to be retrained.
9       Q     Well, did some of them remain employed here
10 in Harrisburg?
11      A     Not with Stambaugh.  Some of them were
12 working warehouses.  Some of them got out of
13 aviation.  Some of them -- a lot of the employees, a
14 good bunch of them -- I think I told you about 25 or
15 30 had initially gone down, but the bulk of the
16 employees because they had been with Stambaugh so
17 long did not want to move on a permanent basis to a
18 Georgia facility.  Some other ones went down and came
19 back because the heat was so bad they couldn't stand
20 it.
21      Q     Okay.  Documentation to support for this 85
22 employees that cost $3.5 million related to lost
23 productivity, what documentation do you have for
24 supporting that?
25      A     Training and amount of hours it used to

```
 1  take to do a job versus the hours it takes to do a
 2  job to get people trained up.
 3       Q    Did you keep records --
 4       A    You just take time cards, but there's also
 5  industry standards based on familiarity with
 6  airplanes, Boeing standards.
 7       Q    And did you provide any documentation of
 8  any of that to your counsel?
 9       A    I don't think counsel has it at this point.
10  They're getting it.
11       Q    You're getting it from --
12       A    We're having the CPA people bring it in.
13       Q    What specifically -- I have a couple more
14  questions.
15       A    That's what you said an hour ago.
16       Q    You filed bankruptcy; did you not?
17       A    We filed a bankruptcy in 2002, I believe it
18  was.
19       Q    Let me ask you, what specifically did
20  Mr. -- what specific acts did Mr. McIntosh engage in
21  as a basis for --
22       A    Mr. McIntosh was the chairman of the board.
23  Mr. McIntosh gave the order.  Mr. Fleet took his
24  orders from Mr. McIntosh.
25       Q    What specific acts -- what specific acts do
```