IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STAMBAUGH'S AIR SERVICE, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 1:00-CV-0660 |
| | : | |
| SUSQUEHANNA AREA REGIONAL | : | |
| AIRPORT AUTHORITY, BAA | : Chief Judge Yvette Kane | |
| HARRISBURG, INC., DAVID FLEET, | : Magistrate Judge Smyser | |
| individually, DAVID HOLDSWORTH, | : | |
| individually, and DAVID C. McINTOSH, | : | |
| individually, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SANCTIONS FOR FAILURE TO TIMELY AND PROPERLY DISCLOSE DOCUMENTS SUPPORTING DAMAGES CLAIM

Rhoads & Sinon LLP
Dean F. Piermattei
Pa. I.D. No. 53847
Heather Z. Kelly
Pa. I.D. No. 86291
One South Market Square
P. O. Box 1146
Harrisburg, PA 17108-1146
(717) 233-5731

Attorneys for Defendants

656287 1

TABLE OF CONTENTS

Table of Contents.............................................................................................i

Table of Authorities.........................................................................................ii

**I.   PROCEDURAL HISTORY & STATEMENT OF FACTS**............................................ 1

**II.  STATEMENT OF QUESTION INVOLVED**.......................................................... 6

**III. ARGUMENT**.................................................................................... 6

   **A.   Plaintiff Was Required Under Both Rule 26 and Rule 34 to Timely   Produce Documents Upon Which Damages Claims are Based**............................................ 6

   **B.   Rule 37 Provides for Sanctions For Violations of Rules 26 and 34**............................... 7

   **C.   Plaintiff Failed to Timely and Properly Produce Damages Documents**....................... 9

   **D.   Defendants are Prejudiced in their Ability to Defend the Case**................................... 15

   **E.   Plaintiff's Responsive Pleading is Procedurally Improper and Fails to Justify the Untimely and Improper Production**................................................................... 16

      1.   Defense Counsel Cannot Ascertain the Relevance of the Contents of the 18 Boxes... 18

      2.   At a Minimum, Plaintiff Should Be Limited to Presenting Evidence of Damages Calculated Using Fuel Flowage Reports................................................................. 21

      3.   Complaints About Defendants' Document Production are Unfounded ....................... 22

**IV. CONCLUSION**.................................................................................. 24

# TABLE OF AUTHORITIES

## FEDERAL STATUTES

42 U.S.C. §1983 .................................................................................................................... 1

F.R.C.P. 26(a) ............................................................................................................... 6, 7, 9

F.R.C.P. 34 ...................................................................................................................... 6, 7

F.R.C.P. 37 ............................................................................................................... 7, 8, 9, 10

## I.    PROCEDURAL HISTORY & STATEMENT OF FACTS

Plaintiff commenced this action by filing a Complaint on April 14, 2000. (Doc. 1).    After an automatic bankruptcy stay and disposition of Defendants' Motion to Dismiss,  Plaintiff filed a Second Amended Complaint on November 1, 2006 which contains three claims:  Equal Protecion pursuant to 42 U.S.C. §1983 (Count I), Conspiracy (Count II), and Tortious Interference (Count III).  (Doc. 84).

Plaintiff's Second Amended Complaint seeks damages for "business losses as the result of its inability to provide FBO services at HIA" (Doc. 84, at ¶84), including the following:

- in excess of $5 million for the "lost value" of Plaintiff's FBO business (Doc. 84, at ¶¶ 85-86);

- expenses in excess of $1 million in dismantling and relocation of FBO operations (Doc. 84, at ¶¶87-88);

- expenses in excess of $1 million to relocate employees (Doc. 84, at ¶¶89-90);

- lost "past and future income" in excess of $13 million due to the inability to provide FBO services at HIA over an 18 year period (Doc. 84, at ¶¶91-92);

- expenses in excess of $1.5 million "related to business interruption" (Doc. 84, at ¶¶93-94)

- $3 million to $5 million "related to lost productivity" (Doc. 84, at ¶¶95-96)

■   expenses in excess of $16 million for construction of a new facility. (Doc. 84, at ¶¶97-98).[1]

Plaintiff did not produce any documents related to damages within 14 days of the parties Rule 26(f) conference.  On February 21-22, 2007, Defendants served Requests for Production of Documents and Interrogatories on Plaintiff, which included extensive and detailed requests for documents supporting each of the categories of damages outlined above. ("Defendants' Discovery Requests"). (Motion for Sanctions, Doc. 100, Ex. A).  With the exception of a reference in an Interrogatory Response to damages based on fuel flowage figures, none of Plaintiff's responses to Defendants' damages-related Discovery Requests provided information supporting the damages claims. (Doc. 100, Ex. A).

Between June 4, 2007 and June 25, 2007, Defendants communicated with Plaintiff's counsel eight times in an effort to obtain documents supporting Plaintiff's damages calculations. (Doc. 100, Ex. B).  Plaintiff's counsel maintained that he was attempting to obtain such documents from his client.  One week prior to the close of fact discovery the damages-related documents still had not been produced.  Defendants requested a discovery conference, during which the Court indicated that it would entertain a motion for sanctions and would be likely to preclude the use of damages evidence at trial if Plaintiff did not produce responsive

---

[1] It is undisputed that Plaintiff has dropped this element of its damages claims. (Doc. 100, at ¶6; Doc. 105 at ¶6).

documents to Defendants' damages-related requests on or before June 30, 2007, the deadline for fact-discovery.

During the discovery conference, Jordan Cunningham, counsel for Plaintiff, acknowledged that Defendants were entitled to such documents and that he was having difficulty obtaining them from his client. Attorney Cunningham never indicated that Plaintiff's damage claims were to be based largely upon fuel flowage reports that Defendant SARAA had provided, or that Defendants' production of documents, including financial information and fuel flowage information, were in any way inadequate.

At the close of business on June 29, 2007, the only financial information and/or damages-related discovery produced by Plaintiff were the Stambaugh's Air Service Inc. & Affiliates Financial Statements from 1992-2000 and some general operating statements for Stambaugh's Air Services and Stambaugh Aviation, Inc. Information relating to Stambaugh Aviation, Inc. is irrelevant, as it is a separate company that operates in Georgia and is not a party to this action.

The parties held the deposition of one of Defendants' witnesses at 8:00 a.m. on Saturday, June 30, 2007, the final date for fact-discovery. At approximately 11:30 a.m., Attorney Cunningham produced thirty seven (37) pages of documents, which were supposedly a summary of Plaintiff's damages and supporting documentation. (Doc. 100, Ex. C). Attorney Cunningham informed Attorney

Kelly, counsel for Defendants, that there were "between 10 and 15 boxes in Middletown" containing documents supporting the summary provided and Plaintiff's claims for damages. While Attorney Cunningham made an "offer" for Attorney Kelly to review the boxes that day, he was aware that Attorney Kelly was only available until 3:00 p.m. At approximately 4:30 p.m. on June 30, 2007, Attorney Cunningham delivered 18[2] boxes of documents to the offices of Rhoads & Sinon LLP in Harrisburg.

While delivering the documents, Attorney Cunningham directed Attorney Kelly to certain financial statements contained in one of the boxes that were purportedly used to create the Summary of Plaintiff's damages claims that was produced earlier in the day. (Doc. 100, Ex. D). Attorney Kelly inquired into the contents of the boxes, to which Attorney Cunningham gave vague responses that offered no assistance in discerning the scope, contents, or relevance of the information within the boxes.[3]

---

[2] Defendants' Motion for Sanctions states that Plaintiff produced 16 boxes of documents on June 30, 2007. (Doc. 84, at ¶21). This was based on a list describing the contents of each box that Plaintiff provided. (Doc. 84, Ex. E). However, upon further review, there are actually 18 boxes that were produced. One of the extra boxes was labeled 8(a) on the list provided, and another box was not identified. (Doc. 84, Ex. A).

[3] Specifically, Attorney Kelly inquired whether every document supporting the consolidated financial statements was contained in the additional 18 boxes of documents, to which Attorney Cunningham responded "that's what I am told." When pressed on specific categories of damages (such as employee relocation costs), and whether they are reflected in the consolidated financial statements and whether there is supporting documentation in the boxes, Attorney Cunningham again responded "that's what I am told." This response makes it clear that Attorney Cunningham

It is estimated that there are in excess of 100,000 pieces of paper in the 18 boxes delivered by Plaintiff on June 30, 2007. The only identification of the contents was a general list of categories of documents contained in each box, which include general statements relating to operations of Stambaugh Air Services and Stambaugh Aviation, Inc. There are no specific details relating company expenses to the itemized claims for damages. (Doc. 100, Ex. E). Rather, Plaintiff has merely produced general operating records for two companies (only one of which is a party in this case) for a span of eight (8) years of operations (1997-2004). There was no effort to categorize, itemize, designate, or in any way identify which portions of Plaintiff's general corporate books and records (some of which date back to 1997) support the damages alleged in the Complaint.

Due to Plaintiff's failure to disclose its documents related to damages claims consistent with its discovery obligations, as per this Court's direction, Defendants filed a Motion for Sanctions for Plaintiff's Failure to Properly and Timely Disclose Documents Supporting Damages on July 2, 2007 ("Motion for Sanctions"). (Doc. 100). Pursuant to Local Rule 7.5, Defendants had until July 16, 2007 to file a brief in support thereof. However, on July 10, 2007, prior to Defendants filing their supporting brief, Plaintiff filed a pleading response to Plaintiff's Motion for

---

himself had not reviewed the contents of the 18 boxes that he had just delivered under the guise of a document production.

Sanctions ("Plaintiff's Response"). (Doc. 100). Although this responsive pleading should not be considered by the Court, Defendants will herein address the inaccuracies, inconsistencies and irrelevant information set forth therein.

## II.    STATEMENT OF QUESTION INVOLVED

Should the Court grant Defendants' Motion for Sanctions for Failure to Timely and Properly Disclose Documents Supporting Damages Claim Where Plaintiff's Production Related to Damages Was Untimely Under Rules 26 and 34 and Evasive and Incomplete Under Rule 37?

Answer:    YES.

## III.    ARGUMENT

### A.    Plaintiff Was Required Under Both Rule 26 and Rule 34 to Timely Produce Documents Upon Which Damages Claims are Based

Federal Rule of Civil Procedure 26 specifically requires that a party "must, *without waiting for a discovery request*" provide to other parties "a computation of any category of damages claimed...making available for inspection and copying as under Rule 34 the documents or other evidentiary material...*on which such documentation is based.*"    F.R.C.P. 26(a)(1)(C) (emphasis added).    Such mandatory disclosures "must be made at or within 14 days after the Rule 26(f) conference." Id. at 26(a)(2)(E).

Federal Rule of Civil Procedure 34 requires the recipient of a request for production of documents to "serve a written response within 30 days after service of the request." F.R.C.P. 34(b). Rule 34 further provides that "a party who

- 6 -

produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." Fed.R.Civ.P. 34(b)(i). This requirement of Rule 34 also applies to Rule 26 disclosures. F.R.C.P. 26(a)(1)(C).

Here, it is undisputed that Plaintiff did not produce any damages-related documents within 14 days of the parties' Rule 26(f) conference or within 30 days of Defendants' service of document requests. Nor did Plaintiff produce such documents throughout the month of June 2007 when, on at least 8 occasions, Defendants sought them in writing. (Doc. 100, Ex. 10). Moreover, as set forth at length below, when Plaintiff finally produced documents purporting to those upon which their calculation of damages were based, such production was wholly inadequate.

**B.    Rule 37 Provides for Sanctions For Violations of Rules 26 and 34**

Federal Rule of Civil Procedure 37 provides certain remedies where a party fails to make discovery disclosures or to cooperate in discovery. F.R.C.P. 37. Specifically, Rule 37 provides that "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel the disclosure[4] *and for appropriate sanctions*." Id. at (2)(A) (emphasis added). Rule 37 goes on to state that "[a] party that without substantial justification fails to disclose the information

---

[4] Here, in accordance with the Court's preferences, Defendants sought a conference call with the Court rather than filing a written motion to compel.

required by Rule 26(a)...*is not*, unless such failure is harmless, ***permitted to use as evidence at trial...information not so disclosed***." Id. at (c). Rule 37(a) allows a party to recover reasonable expenses, including attorney's fees, caused by the failure to produce information required by Rule 26(a).

Similarly, "if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling...inspection in accordance with the request." Id. at 37(a)(2)(B). Where a party fails to respond to a request for production of documents, the Court may enter an order providing for sanctions including orders "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;" and "striking out pleadings or parts thereof." F.R.C.P. 37(b)(2)(B) and (C); 37(d). In addition to imposing such sanctions, "the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorneys' fees" caused by the failure to respond to document requests "unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Id. at (d).[5]

---

[5] Local Rule 37.1 gives the court further discretion award attorney's fees and reasonable expenses to the moving party in order to cure any abuses of the discovery process in seeking, making, or resisting discovery.

Finally, Rule 37 states that "*an evasive or incomplete disclosure…is to be treated as a failure to disclose, answer, or respond.*"  Id. at (a)(3) (emphasis added).

**C.    Plaintiff Failed to Timely and Properly Produce Damages Documents**

There can be no dispute that Plaintiff did not satisfy its Rule 26(a) obligations or that it did not respond to Defendants' February 2007 Document Requests consistent with Rule 34.  Plaintiff's counsel admitted as much during the parties' conference call with the Court.  In fact, during that conference call, Attorney Cunningham did not in any way assert that Plaintiff had made a timely or adequate disclosure of damages-related documents or that there was any reason for the late disclosure other than Plaintiff's failure to provide him with the requested documents.

Because there is no issue as to the timeliness of Plaintiff's disclosure (which was clearly untimely), the only issue before the Court is whether Plaintiff's June 30, 2007 production of 18 boxes of general operating information – general ledgers, bank statements, accounts receivable and payable records, etc. – satisfies Plaintiff's discovery obligations.  A review of what was produced, when it was produced, and statements by Plaintiff's counsel at the time of production unequivocally establish that the June 30, 2007 production was an "evasive or

incomplete disclosure [that must be] treated as a failure to disclose." F.R.C.P. 37(a)(3).

To reiterate, after numerous written requests from defense counsel, and a conference call with this Court, Plaintiff's counsel delivered 18 boxes to defense counsel at 4:30 p.m. on Saturday June 30, 2007, the final day for fact-discovery, one week prior to the summary judgment deadline, and little more than two weeks prior to the deadline for exchange of expert reports. When asked about the content of the boxes, Plaintiff's counsel clearly indicated that he himself had not reviewed them, nor did he know whether documentation and information contained therein supported Plaintiff's damages claims.

Contained in the 18 boxes are 7 years or more of Plaintiff's bank statements (including cancelled checks), accounts receivable and payable records, general ledgers, and other corporate documents. It is estimated that there are in excess of 100,000 documents contained in these 18 boxes, none of which are itemized, categorized or identified as to their relevance or application to any specific category of damages in this case.

A cursory review of any of the boxes shows that there are tens of thousands or more of irrelevant documents, and the relevance of the information that is there is impossible to determine by anyone outside of Plaintiff's employees or agents. A

random sample of the documents produced on June 30, 2007 are filed herewith.

Included are:

- Three (3) pages from Box No. 5, designated by Plaintiff as "2001 Accounts Payable" (attached hereto as Exhibit "A");

- 19 pages from Box No. 6, designated by Plaintiff as "2001 Invoices Accounts Payable" (attached hereto as Exhibit "B");

- A series of pages from a box that was not included in Plaintiff's list of the contents of each box, but which Defendants have designated as Box No. 7(a), and which contains Plaintiff's 2001 Bank Statements (attached hereto as Exhibit "C");

- One (1) page from Box No. 15, designated by Plaintiff as "2000 Accounts Receivable; 2000 Accounts Payable; 2000 General Ledger" (attached hereto as Exhibit "D");

- Three (3) pages from Box No. 16, designated by Plaintiff as "2003/2004/2005 Bank Statements SAS/SAI[6]" (attached hereto as Exhibit "E").

Among the documents, there are likely 10,000 cancelled checks,[7] made out

to individuals or entities that Defendants cannot identify such as "WESCO,"

"Frank Crystal & Co.," and "Landis Bros." (Ex. C, Check Nos. 8121, 22845, and

8090). It is impossible to ascertain what these entities even are, much less whether

they are in any way related to Plaintiff's damages. If they are materials suppliers,

---

[6] "SAS" refers to Plaintiff, Stambaugh's Air Service, Inc. "SAI" refers to Stambaugh Aviation Inc., a separate corporate entity that is not even a party to this action.

[7] This figure is based on Defendants' review of one months worth of cancelled checks contained in the 6 years worth of account statements. (Doc. 100, Ex. E). The boxes contain 81 cancelled checks from May 1, 2001 through May 31, 2001. If every month contains an average of 80 cancelled checks, there are approximately 10,000 cancelled checks contained in the boxes.

they likely do not relate to Plaintiff's damages. If they are moving companies, they could be relevant to Plaintiff's alleged relocation damages. There are thousands of other examples just like this.

Defendants have retained Charles Kern of Kern and Company, PC to serve as an economic expert in this matter, including to render an opinion on the damages alleged in Plaintiff's Second Amended Complaint. Mr. Kern has reviewed the Second Amended Complaint, the summary of damages provided to counsel on June 30, 2007, the audited and unaudited financial statements produced by Plaintiff, as well as the Motion for Sanctions and Plaintiff's Response thereto. (July 12, 2007 Correspondence, attached hereto as Exhibit "F").

Mr. Kern is also aware of the nature of the documents contained in the 18 boxes of financial statements, bankruptcy statements, general ledgers, accounts receivables listings, accounts payable listings, bank statements, cancelled checks and payroll journals. Mr. Kern has reached the conclusion that the documents produced by Plaintiff "are not adequate to allow an appropriate analysis of the damages claimed." (Ex. F). Mr. Kern further explains that financial statements are "summaries of thousands and thousands of individual transactions…[t]hey do not identify, address, nor disclose information about specific types of transactions as found in the [damages] claims [in the Second Amended Complaint." (Ex. F, at p. 2).

Similarly, "the ledgers and journals are merely tools used to summarize the thousands or more transactions that the companies were involved in each year," and cancelled checks/bank statements "reveal little or nothing about the nature of individual transactions." (Ex. F, at p. 2). In order to properly analyze and defend against Plaintiff's damages claims, Defendants and their expert need "invoices, contracts, leases, and items that would indicate the nature, purpose, amount, and classification of transactions." (Ex. F, at p. 2). Such documents have not been produced by Plaintiff.

In sum, Plaintiff's production of documents related to damages is "***woefully inadequate***" for Defendants or its expert to conduct an appropriate analysis of Plaintiff's alleged damages.

Even if Defendants' counsel or economic expert could ascertain the applicability of documents contained in the boxes, which they cannot, Defendants should not be expected to expend the time and resources necessary to examine 100,000 documents in order to defend a case where Plaintiff bears the burden of establishing its damages. Furthermore, such an exercise would produce a result largely based on speculation as to the relevance of specific documents.

Because Plaintiff's production was untimely, was well as evasive and/or incomplete, the Court should grant the Motion for Sanctions in its entirety.

**D.**     <u>Defendants are Prejudiced in their Ability to Defend the Case</u>

The timing and manner of Plaintiff's production related to damages has and will prejudice Defendants in their ability to defend against Plaintiff's unsupported allegations of more than $27 million in damages. First, as set forth above, it is impossible for Defendants' counsel or economic expert to ascertain from the 18 pages of documents produced by Plaintiff what, if any, information is supportive of Plaintiff's damages claims. <u>See</u>, <u>supra</u>, Section III.C. Without Plaintiff identifying for Defendants which cancelled checks, general ledger entries, or accounts payable records relate to purported damages, Defendants cannot depose[8] or cross-examine Plaintiff's witnesses at trial regarding the figures that they are claiming.

Moreover, even if everything that Defendants do need to prepare their defense is contained within the 18 boxes of documents produced by Plaintiff on the last day of discovery, it cannot be disputed that these boxes also contain an overwhelming amount of extraneous and irrelevant information. <u>See</u>, <u>supra</u>, Section III.C. Additionally, Plaintiff has not (or at least had not as of June 30, 2007) invested the time and resources necessary to sort through these documents to identify relevant information. Defendants would be severely prejudiced by having to pay counsel and an expert to sift through more than 100,000 documents in order

---

[8] During the discovery conference with the Court on these matters, Plaintiff's counsel agreed that he would not object to Defendants recalling any of Plaintiff's witnesses for further depositions outside the discovery period if Plaintiff produced documentation related to its damages.

to try to determine whether certain documents support Plaintiff's damages claims, even if such a task could be completed in the few remaining months before trial. Certainly, as set forth in Plaintiff's Motion for Extension of Time to Provide Expert Report Related to Damages (Doc. 108), there is no way that such a task can be completed by Tuesday July 17, 2007, the current deadline for exchanging expert reports.

In sum, Defendants will be severely prejudiced in their ability to defend this case based on Plaintiff's evasive and incomplete disclosure of 18 boxes of documents on the last day of discovery, and the Court should, therefore, grant Defendants' Motion for Sanctions.

**E.      Plaintiff's Responsive Pleading is Procedurally Improper and Fails to Justify the Untimely and Improper Production**

As set forth above, on July 10, 2007, Plaintiff filed a responsive pleading to the Motion for Sanctions prior to Defendants' having the opportunity to file their supporting brief consistent with the timing set forth in the local rules. (Doc. 105). While this responsive pleading is procedurally improper and should not be considered, Defendants are nonetheless compelled to address it herein.

First, it is important to note what Plaintiff *admits* in its Response. Plaintiff admits (1) that it produced 18 boxes of documents at 4:30 p.m. on the last day of discovery (Doc. 100, at ¶¶21-22; Doc. 105 at ¶¶22-22); (2) that Plaintiff's counsel had no personal knowledge of whether the documents produced even supported

Plaintiff's specific damages allegations (Doc. 100, at ¶¶23-24; Doc. 105 at ¶¶23-24); and, by omission of any specifics, admits (3) that it has not and/or cannot identify or specify how a single document contained in the 18 boxes supports any *specific* category of damages alleged by Plaintiff. (Doc. 105).

While admitting all of the above, Plaintiff attempts to salvage its damages claims in the following ways: (1) arguing generally, without reference to a single document contained in the 18 boxes, that support for all of Plaintiff's categories of damages is "readily available and extractable" from the 18 boxes delivered on June 30 "if Defendants' would have taken the opportunity" to compare financial statements and the summary of damages to the contents of the 18 boxes (Doc. 105 at ¶¶30, 25); (2) asserting that "the vast majority" of Plaintiff's damages claim is lost revenue or income, which Plaintiff contends will be calculated based on fuel flowage reports provided by SARAA.[9] (Doc. 105 at ¶32); and (3) complaining *for*

---

[9] Plaintiff improperly intimates that Defendants were dilatory in producing fuel flowage reports to Plaintiff. Plaintiff's First Request for Production of Documents, served in December 2007, requests only "all audited financials for the years 2000; 2001; 2002; 2003; 2004; and 2005" (attached as Exhibit "G"). These audited financial statements were produced to Plaintiff. It was only after Plaintiff realized that these statements did not contain fuel flowage figures that it requested in a Second Set of Document Requests "Fuel Flowage Reports for both Commercial and General Aviation submitted to the F.A.A." (attached as Exhibit "H"). This Request was untimely under the Court's case management order which requires all discovery to be commenced in time for completion on June 30, 2007. Notwithstanding, SARAA employees generated a document reflecting fuel sales for the requested years (no such individual document existed) and produced it on June 25, 2007. (see June 25, 2007 correspondence, attached hereto as Exhibit "I"). The fuel flowage information produced on June 30, 2007 was no different in substance than that produced on June 25, it simply contained Bates numbers.

***the first time*** about the timing and manner of Plaintiff's document production. (Doc. 105 at ¶¶9, 28, 29,44).

      1.    <u>Defense Counsel Cannot Ascertain the Relevance of the Contents of the 18 Boxes</u>

The most egregious assertions contained in Plaintiff's Response are those intimating that defense counsel has and is trying to avoid conducting a simple review of the information provided in the 18 boxes. Plaintiff makes the entirely inaccurate assertion that that an offer was made on Saturday June 30 to "identify those documents which Defendants' counsel felt were necessary in order to comply with [Defendants'] numerous requests for documents." (Doc. 105 at ¶19). Not only was such an offer never made, it would have been impossible to do in the three hours available to defense counsel on the afternoon of June 30. Moreover, as admitted by Plaintiff, its own counsel had no personal knowledge of the contents of the 18 boxes, and Mark Stambaugh, the only other person present on June 30 testified during his deposition that he does not "do the books." (Doc. 100, at ¶¶23-24, 33; Doc. 105, at ¶¶23-24, 33). Thus, it would have been impossible to conduct such a review in three hours.

Similarly, denying that the documents produced were general business operations information and the entirety of corporate books, general ledgers, etc., Plaintiff states, "if Defendants' counsel would have taken the opportunity to review the consolidated financial statement and the statement of the summary of

damages *and compare those to the documents provided*, it would have found the information which Defendant had requested concerning the identity of documents supporting Plaintiff's claims of business loss; business loss value; the dismantling and relocation; relocation of employees; lost of pass and future income." (Doc. 105 at ¶25) (emphasis added).

It defies logic that Plaintiff's production is adequate and Defendants are trying to avoid a simple document review. If it is a simple task to compare the contents of the boxes to Plaintiff's financial statements, summary of damages, or the allegations in the Second Amended Complaint, Plaintiff's counsel would have done some at some point in the past seven years. Attorney Cunningham was not even aware on the day of production or at the time that Plaintiff's Response was filed (because the boxes were still at Rhoads & Sinon) whether or not the information purportedly in the 18 boxes is actually there.

Defendants have already addressed above the impossibility of ascertaining which if any of the years worth of bank statements, general ledger entries and/or accounts payable records have anything to do with Plaintiff's claimed damages. See, supra, Section III.C. If none of Plaintiff's witnesses were able to provide any concrete or specific testimony regarding Plaintiff's damages, and Plaintiff admits that its own counsel represented on June 30 that he had no personal knowledge of the contents of the 18 boxes produced, Plaintiff's position that defense counsel is

somehow not doing its job by scouring through 18 boxes of corporate records is entirely meritless. Plaintiff, which not only has discovery obligations, but also bears the ultimate burden of proving its alleged damages, should not be permitted to put the onus on Defendants, their counsel and their economic expert to do what their witnesses and attorney were unable or unwilling to do prior to the close of discovery.

2.    At a Minimum, Plaintiff Should Be Limited to Presenting Evidence of Damages Calculated Using Fuel Flowage Reports

Plaintiff's Response repeatedly references damages that can be calculated based on fuel flowage records provided in discovery by SARAA. (Doc. 105 at ¶¶9, 29, 32, 33, 34, 44). Plaintiff contends that the fuel flowage reports are essential to its claims for "lost value of Plaintiff's FBO business" and "loss of past and future income" are to be calculated using reports reflecting how much fuel was sold at HIA during certain years. (Doc. 105 at ¶29).[10]

Plaintiff makes no assertion that the fuel flowage information is in any way related to the other categories of damages claimed, including dismantling and relocation of FBO operations ($1 million); relocation of employees ($1 million); "business interruption" ($1.5 million); and "lost productivity" ($3-5 million).

_____

[10] Defendants intend to raise on motions *in limine* the inability of Plaintiff to simultaneously seek damages for loss of business value and lost profits, as collecting for both amounts to the proverbial "double dipping." Additionally, by raising the arguments herein, Defendants are not waiving any other *in limine* arguments that they may raise at a later date regarding any and all categories of alleged damages.

Plaintiff downplays these claims, but they still total anywhere from $6.5 million to $8.5 million in damages, for which Plaintiff has not identified a single supporting document during discovery.

Having alleged these very specific categories of damages in its Second Amended Complaint, Plaintiff's Response states "the damages in this case do not generally relate to specific out-of-pocket damages which one can particularly identify." (Doc. 105 at ¶44). To the contrary, if Plaintiff is seeking millions of dollars for what it allegedly spent to dismantle equipment, relocate operations and employees, as well as for "business interruption" and "lost productivity" (which Plaintiff has not even defined), Plaintiff should be required to produce receipts and/or other specific evidence of what it spent or lost in this regard. Without such, the figures set forth in Plaintiff's Second Amended Complaint are pure speculation.

In sum, because fuel flowage figures are the only concrete documentation that Plaintiff has asserted in support of its damages claims, the Court should, at a minimum, impose sanctions on Plaintiff for failing to timely and properly produce evidence of any damages calculated in any way other than based on fuel flowage reports.[11]

---

[11] Defendants would, however, require Mark Stambaugh to submit to further deposition testimony in this regard based on the conference from the Court wherein it was agreed that damages-related testimony would be subject to further inquiry.

3.    Complaints About Defendants' Document Production are Unfounded

Finally, in an attempt to cloud the issues and distract from the fact of Plaintiff's untimely, incomplete and improper production of damages-related information, Plaintiff criticizes the timing and manner of Defendants' discovery responses. (Doc. 105 at ¶¶9, 28, 29,44). Defendants have already addressed the production of fuel flowage reports above, which were produced as quickly as they could be generated upon Plaintiff's specific requests for the same. See, supra, n.8.

Plaintiff also criticizes the manner in which Defendants produced documents. (Doc. 105, at ¶¶28-29). During the discovery conference with the Court, Plaintiff's counsel never expressed to the Court any concerns with the timing, manner or content of Defendants' document production. Rather, he only admitted that Defendants were entitled to the information that they sought and explained that he was having trouble obtaining the information from his clients. Notwithstanding that Plaintiff has never previously complained about Defendants' production, it now complains about the organization of the documents produced. These complaints are unfounded, and, more important, irrelevant to the instant Motion for Sanctions.

Plaintiff fails to mention that Defendants were not required to produce a single document in this case beyond the audited financial statements requested in Plaintiff's First Set of Requests for Documents. Plaintiff's only other document

- 21 -

request was served on June 14, 2007, which was an inadequate amount of time to comply with the Court's case management order, but Defendants produced responsive documents in a quick and orderly fashion. Moreover, the 9,000 documents that were produced, in the way that they had been kept in the regular course of business, were produced in time for Plaintiff's counsel to thoroughly review them, obtain copies, and utilize them during depositions of the 8 witnesses that he deposed in this case.

In sum, Defendants' produced thousands of documents that they had no obligation to produce, and Plaintiff was in no way prejudiced by the manner or timing of production. Accordingly, the Court should disregard all references thereto in Plaintiff's Response.

## IV.  CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Honorable Court, in reviewing Defendants Motion for Sanctions for Failure to Timely and Properly Produce Damages-Related Documents, preclude Plaintiff from introducing evidence of damages at trial.

Respectfully submitted,

RHOADS & SINON LLP

By:     /s/Dean F. Piermattei
        Dean F. Piermattei
        Pa. I.D. No. 53847
        Heather Z. Kelly
        Pa. I.D. No. 86291
        One South Market Square
        P. O. Box 1146
        Harrisburg, PA 17108-1146
        (717) 233-5731

        Attorneys for Defendants

## **CERTIFICATE OF WORD COUNT**

The undersigned hereby certifies that this Brief complies with the type-volume limitation contained in Local Rule 7.8 in that it contains 4,586 words, which is less than the 5,000 allowed by the aforesaid rule. This certification is based upon the word count of the word processing system used to prepare this Brief.

Respectfully submitted,

RHOADS & SINON LLP

By:    /s/ Dean F. Piermattei
Dean F. Piermattei

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of July, 2007, a true and correct copy of

the foregoing document was served by electronic means upon the following:

> jdc@cclawpc.com
> Jordan D. Cunningham, Esquire
> Cunningham & Chernicoff, P.C.
> 2320 North 2nd Street
> Harrisburg, PA 17110

> /s/ Deborah L. McKinney
> Deborah L. McKinney