IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STAMBAUGH'S AIR SERVICE, INC., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CASE NO. 1:00-CV-0660 |
| : | |
| SUSQUEHANNA AREA REGIONAL : | |
| AIRPORT AUTHORITY, BAA : | Chief Judge Yvette Kane |
| HARRISBURG, INC., DAVID FLEET, : | Magistrate Judge Smyser |
| individually, DAVID HOLDSWORTH, : | |
| individually, and DAVID C. McINTOSH, : | |
| individually, : | |
| : | |
| Defendants. : | |

**DEFENDANTS' BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR EXTENSION OF TIME
TO PROVIDE EXPERT REPORT RELATED TO DAMAGES**

Rhoads & Sinon LLP
Dean F. Piermattei
Pa. I.D. No. 53847
Heather Z. Kelly
Pa. I.D. No. 86291
One South Market Square
P. O. Box 1146
Harrisburg, PA 17108-1146
(717) 233-5731

Attorneys for Defendants

657330.1

I.   **PROCEDURAL HISTORY & STATEMENT OF FACTS**

Plaintiff commenced this action by filing a Complaint on April 14, 2000. (Doc. 1). After an automatic bankruptcy stay and disposition of Defendants' Motion to Dismiss, Plaintiff filed a Second Amended Complaint on November 1, 2006 which contains three claims: Equal Protecion pursuant to 42 U.S.C. §1983 (Count I), Conspiracy (Count II), and Tortious Interference (Count III). (Doc. 84).

Plaintiff's Second Amended Complaint seeks damages for "business losses as the result of its inability to provide FBO services at HIA" (Doc. 84, at ¶84), including the following:

- in excess of $5 million for the "lost value" of Plaintiff's FBO business (Doc. 84, at ¶¶ 85-86);

- expenses in excess of $1 million in dismantling and relocation of FBO operations (Doc. 84, at ¶¶87-88);

- expenses in excess of $1 million to relocate employees (Doc. 84, at ¶¶89-90);

- lost "past and future income" in excess of $13 million due to the inability to provide FBO services at HIA over an 18 year period (Doc. 84, at ¶¶91-92);

- expenses in excess of $1.5 million "related to business interruption" (Doc. 84, at ¶¶93-94)

- $3 million to $5 million "related to lost productivity" (Doc. 84, at ¶¶95-96)

- expenses in excess of $16 million for construction of a new facility. (Doc. 84, at ¶¶97-98).[1]

In December 2006, Plaintiff served its First Request for Production of Documents, which requested only one set of documents: "all audited financials for the years 2000; 2001; 2002; 2003; 2004; and 2005" (attached as Exhibit "A"). These financial statements were produced to Plaintiff. After Plaintiff realized that the requested statements did not contain fuel flowage figures, it served Plaintiff's Second Set of Document Requests on June 14, 2007, requesting "Fuel Flowage Reports for both Commercial and General Aviation submitted to the F.A.A." (attached as Exhibit "B").

Plaintiff's Second Set of Document Requests were untimely under the Court's April 2, 2007 Case Management Order which requires all discovery to be commenced in time for completion on June 30, 2007. (Doc. 89). As of June 14, 2007, when Plaintiff served its Second Set of Document Requests, no "Fuel Flowage Reports for both Commercial and General Aviation submitted to the F.A.A." existed. Rather, employees of SARAA had to compile fuel sales information and create a document reflecting fuel flowage for the years in question. SARAA employees created such a document and it was produced to

---

[1] It is undisputed that Plaintiff has dropped this element of its damages claims. (Doc. 100, at ¶6; Doc. 105 at ¶6).

Plaintiff on June 26, 2007. (June 25, 2007 Correspondence, which was hand-delivered on June 26, 2007, attached hereto as Exhibit "C").

Subsequently, on June 30, 2007, Defendants produced another copy of the fuel flowage records to Plaintiff's counsel. ("HIA Gallons By Month," attached hereto as Exhibit "D"). ***The only difference between the fuel flowage document served on June 26, 2007 and that produced on June 30, 2007 is that Defendants added Bates numbers to the first document.***

Also on June 30, 2007, Plaintiff provided Defendants with a copy of a summary of its alleged damages titled "Damages – Stambaugh Air Service vs. Susquehanna Area Regional Airport Authority," ("Damages Summary," attached hereto as Exhibit "E"). The Damages Summary references the fuel flowage reports that Defendants had already provided.

On July 2, 2007, Defendants filed a Motion for Sanctions for Failure to Timely and Properly Produce. (Doc. 100). Pending disposition of the Motion for Sanctions, Defendants sought an extension of time to produce or supplement expert reports regarding damages, which this Court granted. (Docs. 108 and 112). The deadline for exchange of initial expert reports was July 17, 2007, and Defendants produced their economic expert's initial report regarding both Plaintiff's financial strength in December 1999 and the allegations in the Second Amended Complaint regarding Plaintiff's business value. (Report of C. Kern,

attached hereto as Exhibit "F"). Plaintiff did not produce an initial expert report on July 17, 2007, but, instead, filed Plaintiff's Motion for Extension of Time to Provide Expert Report Related to Damages on the day that reports were due. (Doc. 114).

Local Rule 7.5 does not require briefs to be filed in support of motions for enlargement of time. However, Defendants sought and obtained permission from the Court to file a brief in opposition to Plaintiff's Motion for Extension of Time. For the reasons set forth below, Plaintiff's Motion should be denied.

## II. STATEMENT OF QUESTION INVOLVED

Should the Court Deny Plaintiff's Motion for Extension of Time to Provide Expert Report Related to Damages?

Answer:   YES.

## III. ARGUMENT

### A. Defendants Had No Obligation to Produce Fuel Flowage Records to Plaintiff

The gist of Plaintiff's Request for Extension of Time to Provide Expert Report Related to Damages is the timing of Defendants' production of fuel flowage information that "was in Defendants' sole possession for the years 2000 through the present." (Doc. 114, at ¶9). However, the timing of this production should not serve as a basis to extend the expert discovery deadline.

First, Defendants had no obligation whatsoever to produce the fuel flowage information, but did so anyway in an expedient manner. Plaintiff's First Request for Production of Documents did not contain a request for fuel flowage information. (Ex. "A"). Rather, it sought only financial statements. (Id.). It was not until June 14, 2007 that Plaintiff even served a written document request seeking fuel flowage information. (Ex. "B"). This request was not timely under the Court's April 2, 2007 Case Management Order, which required that all discovery be commenced in time to be completed by June 30, 2007. (Doc. 89).

Notwithstanding the untimeliness of Plaintiff's request for fuel flowage information, SARAA employees generated a document reflecting the information, and produced it to Plaintiff two weeks after receiving the request. (Ex. C). Defendants' counsel then provided a subsequent copy *of the same document* containing Bates numbers on June 30, 2007 (Ex. D). Plaintiff's averment that "[o]n June 30, 2007, Plaintiff was provided an additional statement fuel flowage at HIA which Defendants purported to be an amendment of the fuel flowage statement previously provided," is false. (Doc. 114 at ¶10).

When Attorney Kelly produced the Bates numbered document to Attorney Cunningham on June 30, she specifically indicated that she was not certain what the difference was between that document and the one previously provided. In a subsequent conversation between Attorney Cunningham and Attorney Piermattei, ***prior to the filing of Plaintiff's Motion for Extension of Time***, Attorney Piermattei made it clear that their was no substantive difference between the two documents. Thus, it is wholly improper for Plaintiff to insinuate otherwise in the present Motion for Extension of Time.

In sum, Defendants had no obligation to produce fuel flowage records to Plaintiff, but did so anyway in an expedient manner. Thus, any intimation that the Court should grant the Motion for Extension of Time based on the timing, Defendants' production should be rejected.

### B. Plaintiff Has Had the Fuel Flowage Records For Three Weeks and Relied Upon it in its Damages Summary

By Plaintiff's own admission, it has had the fuel flowage records for three weeks prior to the deadline for expert reports. (Doc. 114 at ¶9). These fuel flowage records are neither voluminous nor complex. Rather, there is one sheet of information regarding Fuel Sales for each year requested, totaling seven years, or seven pages (Ex. D). Plaintiff, by its own admission in the Damages Summary, was able to utilize these figures within three days to calculate damages. (Ex. E, at STM 04200, Plaintiff 2). Plaintiff has since had both the fuel flowage information,

and its Damages Summary, for an additional 17 days. There is no reasonable explanation or excuse provided for why Plaintiff could not timely produce an expert report when it has had the information for three full weeks.

On August 13, 2007, Defendants indicated in a pleading filed with the Court that they had retained Charles Kern as an economic expert. (Doc. 108 at ¶15). While Plaintiff blames its failure to timely provide an expert report on the fact that Defendants produced seven pages of information three weeks prior to the expert deadline, an equally plausible explanation is that Plaintiff did not retain an expert until immediately prior to the deadline when it learned that Defendants had done so.

Because Plaintiff has had fuel flowage information for an ample amount of time to produce an expert report, and no valid justification for the failure to do so is provided, the Motion for Extension of Time should be denied.

### C. **Defendants Will Again Be Prejudiced By Plaintiffs' Discovery Abuses if the Motion is Granted**

Defendants have detailed at length in their Brief in Support of Defendants' Motion for Sanctions the ways in which they have been prejudiced in their ability to defend this case as a result of Plaintiff's delays and improper production of discovery related to damages in this case. (Doc. 113, at Section III.D). If the instant Motion for Extension of Time is granted, Defendants will again be put at a disadvantage. Consistent with the Court's case management schedule, Defendants

produced an expert report to Plaintiff on August 17, 2007.[2] Thus, Plaintiff now has some of Defendants' expert opinions before it in drafting its own initial expert report, a strategic advantage that Defendants do not have. Because granting the Motion for Extension of Time will give Plaintiff an unfair strategic advantage, the same should be denied.

### D. In the alternative, Plaintiff Should Be Limited to Providing an Expert Report Regarding *Only* Damages that Can Be Calculated Using Fuel Flowage Information

Again, the *only* reason provided for the requested time extension is the timing of production of the fuel flowage information. While Defendants did not have an obligation to produce such information but did so expeditiously, see supra Section III.A., if the Court finds that this is a justification to extend the expert report deadline for Plaintiff, it should be extended on a very limited basis.

Specifically, Plaintiff should be limited to providing an expert report, and therefore expert testimony at trial, to those categories of damages that can be calculated utilizing fuel flowage information. In prior pleadings Plaintiff has represented that such damages include only lost revenue, and possibly loss of business value. (Doc. 105 at ¶¶9, 29, 32, 33, 34, 44). Plaintiff has never made any assertion that fuel flowage information is in any way related to the other categories

---

[2] This expert report did not conduct an in-depth analysis of Plaintiff's damages claims, as the Court has granted Defendants leave to supplement the report upon determination of the Motion for Sanctions. (Doc. 112).

-8-

of damages claimed, including dismantling and relocation of FBO operations ($1 million); relocation of employees ($1 million); "business interruption" ($1.5 million); or "lost productivity" ($3-5 million). In fact, Plaintiff has previously averred that support for these damages are to be found in the 18 boxes of documents produced on June 30, 2007. (Doc. 105 at ¶25).

It is undisputed that Plaintiff had the 18 boxes of bank statements, cancelled checks, general ledgers, accounts payable and receivable and other general operating information in its possession throughout the seven (7) years that this case has been pending. The only exception was the period from June 30, 2007 to July 12, 2007, when the boxes were deposited at Rhoads & Sinon LLP for a period under the guise of a discovery production. However, even with that, Plaintiff reclaimed the boxes on July 12, 2007, and has had them again in its possession for several days prior to the deadline for the exchange of expert reports.[3]

Notwithstanding, Plaintiff did not provide an expert report on the relocation, lost productivity or business interruption categories of damages on July 17, 2007, and it has neither requested an extension of time related to these categories, nor has

---

[3] In opposition to Defendants' Motion for Sanctions, Plaintiff represented that it was only necessary to simply compare information in Plaintiff's financial statements to that contained in the boxes in order to properly analyze Plaintiff's claims for relocation costs, business interruption and loss of productivity. (Doc. 105, at ¶25). However, if such a task is so simple, and because Plaintiff has, at all relevant times, had this information in its own possession, there is no excuse of justification for why an expert report at least on these categories of damages was not provided on July 17, 2007.

it provided any explanation for why it could not do so. Accordingly, if the Court decides to grant Plaintiff's Motion for Extension of Time, it should do so only as to the categories of damages purportedly tied to fuel flowage information.

## IV.  CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Honorable Court deny Plaintiff's Motion for Extension of Time to Provide Expert Report Related to Damages.

Respectfully submitted,

RHOADS & SINON LLP

By:  /s/Dean F. Piermattei
Dean F. Piermattei
Pa. I.D. No. 53847
Heather Z. Kelly
Pa. I.D. No. 86291
One South Market Square
P. O. Box 1146
Harrisburg, PA 17108-1146
(717) 233-5731

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2007, a true and correct copy of the foregoing document was served by electronic means upon the following:

> jdc@cclawpc.com
> Jordan D. Cunningham, Esquire
> Cunningham & Chernicoff, P.C.
> 2320 North 2nd Street
> Harrisburg, PA 17110

/s/ Deborah L. McKinney
Deborah L. McKinney